GRANT B. GELBERG (SBN 229454)
Grant.Gelberg@halpernmay.com
S. ALBERT WANG (SBN 250163)
S.Albert.Wang@halpernmay.com
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071 – 2680
Tel: (213) 402-1900
Fax: (213) 402-1901

Attorneys for Defendant
RADIANCE SURGERY CENTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBER TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, GSK SPINE, GREG KHOUNGANIAN, and RADIANCE SURGERY CENTER, <br><br> Defendants. | Case No. 2:25-cv-06612 SPG (PDx) <br><br> Judge:   Hon. Sherilyn Peace Garnett <br><br> **DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Filed concurrently with Declaration of Grant B. Gelberg and [Proposed] Order]* <br><br> DATE:   March 11, 2026* <br> TIME:    1:30 p.m. <br> PLACE:   5C <br><br> *[Hearing date set per Order at ECF No. 57] <br><br> Action Filed:    July 21, 2025 <br> Trial Date:      None |

1    <u>**NOTICE OF MOTION**</u>

2    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3    PLEASE TAKE NOTICE that on March 11, 2026, at 1:30 p.m. or as soon

4 thereafter as the matter can be heard in Courtroom 5C of the United States District

5 Court for the Central District of California, located on the 5th Floor of the First

6 Street U.S. Courthouse, 350 W 1st Street, Los Angeles, California 90012-4565,

7 Defendant Radiance Surgery Center ("Radiance") will, and hereby does, move this

8 Court for an order striking the following allegations from the Complaint

9 ("Complaint") of Plaintiff Uber Technologies, Inc. ("Uber"):

10    1.    The Sixth Cause of Action (Paragraphs 199-203) (premised entirely

11        on protected activities) as against Radiance, or, in the alternative, the

12        claim against Radiance in the Sixth Cause of Action based on the

13        stricken allegations (set forth below);

14    2.    The Seventh Cause of Action (Paragraphs 204-209) (premised entirely

15        on protected activities) as against Radiance, or, in the alternative, the

16        claim against Radiance in the Seventh Cause of Action based on the

17        stricken allegations (set forth below);

18    3.    Paragraphs 2, 4, 8, 22, 25, 27-28, 30-32, 35, 39-40, 42-44, 47, 50-53,

19        61, 75-77, 79, 125-27, 154, 201-02, 205 (allegations which allege

20        anti-SLAPP protected activities)

21    This motion is made pursuant to California Civil Procedure Code section

22 425.16 on the grounds that the allegations identified above are allegations of

23 activity that is protected by California Civil Procedure Code section 425.16, and

24 Uber cannot demonstrate a probability that it will prevail on the merits of its claims

25 as against Radiance.

26    Radiance also seeks an award of attorneys' fees against Uber pursuant to

27 California Civil Procedure Code section 425.16(c)(1), which Radiance will brief in

28 accordance with Central District of California Local Rule 54-7.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities (including all arguments incorporated by reference therein), the Declaration of Grant Gelberg and its exhibit, any reply memorandum submitted by Radiance, the complete files and records in this action, and such other argument and evidence as may be presented at or before the hearing of this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3.  The parties met and conferred via email on October 9, 2025 and via videoconference on October 10, 2025.  *See* Gelberg Declaration.

DATED: November 14, 2025        HALPERN MAY YBARRA GELBERG LLP


By:            */s/ Grant B. Gelberg*
               GRANT B. GELBERG

*Attorneys for Defendant Radiance Surgery Center*

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

# <u>TABLE OF CONTENTS</u>

**PAGE**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ..................................................................................2

III.  CAUSES OF ACTION AND ALLEGATIONS TO BE STRICKEN.......................................................................................4

IV.   ARGUMENT.......................................................................................5

    A.    Legal Framework For Anti-SLAPP Motions.....................................5

    B.    Step One: Uber's Claims Are Based On Radiance's Litigation Submissions That Are Protected Under The Anti-SLAPP Statute .............................................................6

        1.    Radiance's Litigation Communications Are Protected ...................................................................7

        2.    A Surgery Center Is Protected Under The Anti-SLAPP Statute Where Uber Targets Radiance's Litigation Communications..........................................9

        3.    Uber's Allegations Of Falsity Are Irrelevant.........................10

    C.    Step Two: Uber's Claims Cannot Succeed Because They Are Blocked By The Litigation Privilege, *Noerr-Pennington*, Or Are Legally Defective As Shown In Radiance's Motion To Dismiss ........................................12

        1.    The California Litigation Privilege Bars Uber's Claims...................................................................12

        2.    *Noerr–Pennington* Independently Bars Uber's Claims...................................................................15

        3.    Radiance's Motion To Dismiss Shows Uber Fails To Plead Its Claims............................................17

V.    CONCLUSION .................................................................................18

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

### CASES

*Action Apartment Ass'n v. City of Santa Monica*,
41 Cal. 4th 1232 (2007) ...............................................................................13, 14

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ........................................................................................6, 9

*Bonni v. St. Joseph Health Sys.*,
11 Cal. 5th 995 (2021) ......................................................................................6, 9

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999) ........................................................................................6

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972).............................................................................................15

*Club Members for an Honest Election v. Sierra Club*,
45 Cal. 4th 309 (2008) ..........................................................................................8

*Columbia Pictures Indus., Inc. v. Pro Real Estate Invs., Inc.*,
944 F.2d 1525 (1991), *aff'd on other grounds*, 508 U.S. 49 (1993)................16

*Contreras v. Dowling*,
5 Cal. App. 5th 394 (2016)..................................................................................13

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022)................................................................................5

*Dowling v. Zimmerman*,
85 Cal. App. 4th 1400 (2001).........................................................................7, 14

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961).............................................................................................15

*Feldman v. 1100 Park Lane Assocs.*,
160 Cal. App. 4th 1467 (2008)............................................................................14

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006) ..................................................................................11, 13

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (2005)...........................................................................................16

*Fremont Reorganizing Corp. v. Faigin*,
198 Cal. App. 4th 1153 (2011).............................................................................11

*GeneThera, Inc. v. Troy & Gould Pro. Corp.*,
171 Cal. App. 4th 901 (2009)..............................................................................14

*Gilman v. Dalby*,
176 Cal. App. 4th 606 (2009)................................................................................8

*Gootee v. Lightner,*
224 Cal. App. 3d 587 (1990) ....................................................15

*Greka Integrated, Inc. v. Lowrey,*
133 Cal. App. 4th 1572 (2005) ................................................15

*Gunn v. Drage,*
65 F.4th 1109 (9th Cir. 2023) ....................................................8

*Hagberg v. Cal. Fed. Bank FSB,*
32 Cal. 4th 350 (2004) ............................................................13

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,*
184 Cal. App. 4th 1539 (2010) ...........................................7, 11

*Hecimovich v. Encinal Sch. Parent Teacher Org.,*
203 Cal. App. 4th 450 (2012) ....................................................5

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010) ......................................................1

*Home Ins. Co. v. Zurich Ins. Co.,*
96 Cal. App. 4th 17 (2002) ......................................................13

*Jarrow Formulas, Inc. v. LaMarche,*
31 Cal. 4th 728 (2003) ............................................................13

*Kashian v. Harriman,*
98 Cal. App. 4th 892 (2002) ............................................passim

*Ludwig v. Super. Ct.,*
37 Cal. App. 4th 8 (1995) ........................................................16

*Malin v. Singer,*
217 Cal. App. 4th 1283 (2013) ................................................12

*Medallion Film LLC v. Loeb & Loeb LLP,*
100 Cal. App. 5th 1272 (2024) ................................................12

*Mission Beverage Co. v. Pabst Brewing Co., LLC,*
15 Cal. App. 5th 686 (2017) ......................................................5

*Navellier v. Sletten,*
29 Cal. 4th 82 (2002) ................................................................6

*Neville v. Chudacoff,*
160 Cal. App. 4th 1255 (2008) ..........................................11, 12

*Obos v. Scripps Psych. Assocs.,*
59 Cal. App. 4th 103 (1997) ....................................................14

*Omni Res. Dev. Corp. v. Conoco, Inc.,*
739 F.2d 1412 (1984) ..............................................................17

*Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP,*
18 Cal. App. 5th 95 (2017) ........................................................5

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

*Oregon Nat. Res. Council v. Mohla*,
   944 F.2d 531 (1991)................................................................17

*Park v. Bd. of Trs. of Cal. State Univ.*,
   2 Cal. 5th 1057 (2017) ...........................................................6, 9

*People ex rel. Allstate Insurance Co. v. Rubin*,
   66 Cal. App. 5th 493 (2021).....................................................9, 10

*People ex rel. Gallegos v. Pac. Lumber Co.*,
   158 Cal. App. 4th 950 (2008)...................................................16

*People ex rel. Lockyer v. Brar*,
   115 Cal. App. 4th 1315 (2004)..................................................1

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
   133 Cal. App. 4th 658 (2005).............................................7, 8, 10

*Pettitt v. Levy*,
   28 Cal. App. 3d 484 (1972) .....................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018)...................................................6, 12

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
   136 Cal. App. 4th 464 (2006)...................................................17

*Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)...............................................................16

*Relevant Grp., LLC v. Nourmand*,
   116 F.4th 917 (9th Cir. 2024)..................................................17

*Rusheen v. Cohen*,
   37 Cal. 4th 1048 (2006) ...............................................5, 8, 14, 15

*Seltzer v. Barnes*,
   182 Cal. App. 4th 953 (2010)...........................................passim

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ..............................................13, 14, 15

*Simpson Strong-Tie Co. v. Gore*,
   49 Cal. 4th 12 (2010) ...........................................................10

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (2006)..............................................................16

*Suarez v. Trigg Lab'ys, Inc.*,
   3 Cal. App. 5th 118 (2016)......................................................14

*Thomas v. Fry's Elecs., Inc.*,
   400 F.3d 1206 (9th Cir. 2005)..................................................5

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965)..............................................................15

iv

*Wang v. Heck,*
  203 Cal. App. 4th 677 (2012)............................................................14

**STATUTES**

Bus. & Prof. Code § 17200, *et seq.* ....................................................1

Civil Code § 47(b) ....................................................................2, 12, 17

Code of Civ. Procedure §§ 425.16(b)-(c) ............................................5

Code of Civil Procedure § 425.16 .............................................passim

Code of Civil Procedure § 425.16(a)..........................................1, 5, 6

Code of Civil Procedure § 425.16(b)....................................................4

Code of Civil Procedure § 425.16(b)(1) .........................................6, 12

Code of Civil Procedure § 425.16(c)(1) ...............................................2

Code of Civil Procedure § 425.16(e)(2) ...............................................7

Code of Civil Procedure § 425.17(b)....................................................8

Code of Civil Procedure § 425.17(c)..................................................10

Code of Civil Procedure §§ 425.16(e)(1)-(2) ...............................passim

**RULES**

Fed. R. Civ. Procedure 12(b)(6) .....................................................6, 17

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

1

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiff Uber Technologies, Inc. ("Uber") sued Radiance Surgery Center ("Radiance") based solely on Radiance's actions relating to personal injury litigation brought against Uber.  The allegations center on Radiance's alleged coordination with law firms representing personal injury claimants against Uber and Radiance's preparation of medical bills those firms allegedly used to drive "false and artificially inflated damages claim[s]."  Compl. ¶ 2.  Uber's purported injury from this alleged conduct, which it asserts gives rise to state law claims for unjust enrichment and a violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*, referred to below as "UCL"), is increased defense costs and settlement payments in personal injury litigation.

These claims are fatally flawed because the alleged acts are protected under California's anti-SLAPP statute, Code of Civil Procedure ("CCP") section 425.16.  The anti-SLAPP statute, which is available in federal court, is the frontline defense against lawsuits that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (cleaned up).  It was enacted to address a "disturbing increase in lawsuits brought primarily to chill the valid exercise" of those rights (CCP § 425.16(a)) and to provide Californians with the substantive "right ***not*** to be dragged through the courts because you exercised your constitutional rights."  *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315, 1317 (2004).

Anti-SLAPP motions follow a two-step analysis.  The first step is whether the conduct is protected petitioning activity and is easily met here because the alleged conduct—submitting bills for personal injury litigation and coordinating with law firms on ongoing or anticipated litigation—falls squarely within the statute's protection for statements "made before a … judicial proceeding" and

"made in connection with an issue under consideration or review by a … judicial body."  CCP §§ 425.16(e)(1)-(2).

In the second step, the burden shifts to Uber to show a probability of prevailing on its claims.  This is impossible, for Uber's two state law claims are blocked by California's litigation privilege, Civil Code section 47(b).  That privilege provides wide immunity from tort liability for communications made in litigation, and it covers all of Radiance's alleged acts here.  In addition, the federal *Noerr-Pennington* doctrine further protects Radiance from Uber's attacks on Radiance's First Amendment-protected court petitioning activities.  Finally, as covered in Radiance's incorporated Motion to Dismiss, Uber has failed to plead unjust enrichment or a UCL violation, further illustrating that Uber's claims are meritless.[1]

At their core, Uber's claims target Radiance's litigation submissions and communications with lawyers, quintessential petitioning activity that the anti-SLAPP statute was designed to protect.  Because Uber targets petitioning activity yet cannot, as a matter of law, demonstrate a probability of prevailing, the Court should strike Uber's Unjust Enrichment and UCL claims and award Radiance its fees and costs.  *See* CCP § 425.16(c)(1).

## II.   **BACKGROUND**

Radiance Surgery Center is an outpatient surgical facility.  It is not a medical practice but, rather, offers a facility where independent physicians may conduct surgeries.  Radiance has no commercial relationship with Uber and Uber alleges none.  Instead, Uber's alleges only litigation-related interactions:

---

[1] Radiance also incorporates the applicable arguments made by the other Defendants in their anti-SLAPP motions, as well as (for Step Two of the anti-SLAPP analysis) the applicable arguments made in the other Defendants' Motions to Dismiss.

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

- Radiance's communications with personal injury law firms (never directly with Uber) about scheduling or pre-operative steps for those law firms' clients (who are patients receiving services at Radiance's facility) as the clients prepare to make claims against Uber;

- Radiance's preparation of bills submitted to Uber by personal injury attorneys in demand packages or lawsuits; and

- Radiance's execution of liens with its patients (individuals suing Uber) that cover Radiance's bills—liens that Uber alleges support the patients' damages in litigation and are allegedly subject to a secret side agreement that Radiance will discount the liens depending on the outcome of litigation. That is, the entire alleged side agreement is one anticipating and addressing litigation outcomes, which cannot exist unless litigation is already concretely planned.

Compl. ¶¶ 3-4, 26-28, 40, 42-43, 47, 50-51, 55, 75-77, 138, 140-41; *see also id.* ¶¶ 8, 22, 25, 30-32, 35, 39, 61.

To be clear, Uber does not contract with Radiance, nor does Uber send patients to Radiance.  Rather than allege any sort of commercial relationship or any direct communication with Uber, the entire thrust of Uber's Complaint is that all of these activities are done in concert by law firms and medical providers together in a scheme that—Uber affirmatively asserts—is designed to impact Uber only through lawsuits; according to the Complaint, nothing Radiance does can impact Uber unless it is used by attorneys in pre- or active litigation against Uber.  Indeed, Uber's asserted damages are limited to legal defense costs and settlement payments.  *Id*. at ¶¶ 125-27, 201-02, 208-09.

Uber makes Radiance-specific allegations for only three specific Claimants (A, B, and E), which all illustrate this same point.  For Claimant A, Uber alleges attorney-directed scheduling and pre-operative coordination, communications with a law firm that exist only because a legal claim was anticipated and then pursued.

1    *Id*. at  ¶¶ 40, 42, 44, 53.  Uber further alleges that Radiance prepared inflated bills

2    that did not disclose the alleged side agreement with the law firm (to discount

3    Radiance's lien depending on the planned litigation's recovery), which were

4    presented by the law firm to Uber and allegedly caused Uber to "incur[]

5    significant" legal defense costs.  *Id*. at ¶¶ 50-53.  The allegations as to Claimant B

6    are similar, except Uber further affirmatively alleges that Claimant B was already

7    in active litigation with Uber by the time Claimant B had surgery at Radiance.  *Id*.

8    at ¶¶ 59 (filed on March 9, 2021), 66 (surgery on July 16, 2021).  During litigation,

9    Radiance prepared a bill that allegedly played a role in Uber incurring legal

10    defense costs and paying a settlement. *Id*. at  ¶¶ 76, 77, 79.  Finally, as to Claimant

11    E, Uber pleads only that Radiance's bill arose "with respect to [a] case[] against

12    Uber" where the patient was represented by Downtown LA Law Group.  *Id* at ¶

13    154.

14        Beyond the Radiance-specific passages, Uber's generalized allegations

15    further underscore that its entire case is about a litigation-dependent scheme.  *See,*

16    *e.g.*, *id*., at ¶ 2 (summarizing supposed scheme where personal injury attorneys

17    "direct claimants to pre-selected medical providers" who allegedly perform

18    "unnecessary and/or causally unrelated treatment" and "generate and submit

19    artificially inflated bills" to use "as the basis for a false and artificially inflated

20    damages claim"); *see also id*. ¶¶ 4, 49, 53, 74-75.  Looking at Uber's general group

21    pleadings about all, unspecified "medical providers" does nothing but solidify the

22    obvious conclusion that all of Uber's Complaint relates to how these providers,

23    apparently including Radiance, provided materials for litigation.

24    **III.    CAUSES OF ACTION AND ALLEGATIONS TO BE STRICKEN**

25        Pursuant to CCP section 425.16(b), Radiance seeks to strike, in their

26    entirety, Uber's second (unjust enrichment) and third (UCL) causes of action

27    against Radiance.  Compl. ¶¶ 199-203, 204-09; *id*. at Prayer ¶¶ 1, 6.  These claims

28    are predicated entirely on Radiance's protected activity relating to billing, use of

4

medical liens, and coordination with personal injury law firms in anticipation of or in connection with judicial proceedings.  CCP §§ 425.16(e)(1)-(2); *Mission Beverage Co. v. Pabst Brewing Co., LLC,* 15 Cal. App. 5th 686, 697-98 (2017) (where the "core injury-producing conduct" is protected, the entire claim is stricken) (cleaned up); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (litigation-related communications are protected acts).

Radiance also moves to strike all related allegations and all derivative references, which similarly allege acts protected under CCP sections 425.16(e)(1)-(2).  These are described in the above Background section and consist of the following paragraphs: *id*. at ¶¶ 2, 4, 8, 22, 25, 27-28, 30-32, 35, 39-40, 42-44, 47, 50-53, 61, 75-77, 79, 125-27, 154, 201-02, 205.  *See Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 110-11 (2017) (anti-SLAPP motion to strike may be used to attack an entire pleading, causes of action, and component paragraphs, words or phrases.)

## IV.  ARGUMENT

### A.    Legal Framework For Anti-SLAPP Motions

California's anti-SLAPP statute substantively protects rights to petition by "prevent[ing] and deter[ing]" lawsuits that chill participation in judicial proceedings.  *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 463 (2012) (cleaned up); CCP § 425.16(a).  It does so by allowing defendants to strike meritless claims that target constitutionally protected petitioning at an early stage, while also permitting defendants to recover their legal fees. CCP §§ 425.16(b)-(c).  The anti-SLAPP statute, including its fee-shifting provision, applies to state-law claims asserted in federal proceedings.  *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141-43 (9th Cir. 2022); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005).

Both California and federal courts follow the same two-step framework.  At the first step, the defendant must show that the plaintiff's cause of action arises

from protected petitioning or speech activity.  CCP § 425.16(b)(1).  The focus in this first step is on the injury-producing acts, not the plaintiff's motives.  *Baral v. Schnitt*, 1 Cal. 5th 376, 394-95 (2016); *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1067-68 (2017).  Acts that are statutorily defined as being in furtherance of the right of petition—and thus protected—include "any written or oral statement or writing made before a … judicial proceeding," and "any written or oral statement or writing made in connection with an issue under consideration or review by a … judicial body."  CCP §§ 425.16(e)(1)-(2).  The statute must be "construed broadly," (CCP § 425.16(a)), and courts have held that these categories broadly cover communications preparatory to or in anticipation of litigation, as well as statements during settlement discussions or other petitioning activity.  *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115-19 (1999); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908-09 (2002); *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962-64 (2010).

If a defendant succeeds in the first step in showing that the plaintiff's claim arises from protected acts, the burden shifts in the second step to the plaintiff to demonstrate a probability of prevailing on its claim.  *Navellier v. Sletten*, 29 Cal. 4th 82, 88-95 (2002); *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009-12 (2021).  In federal court, the procedural standard for this second step depends on the nature of the motion.  As this motion challenges the sufficiency of the Uber's Complaint, the Rule 12(b)(6) standard applies.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018).

**B.    Step One: Uber's Claims Are Based On Radiance's Litigation Submissions That Are Protected Under The Anti-SLAPP Statute**

The gravamen of Uber's unjust enrichment and UCL claims is Radiance's supply of medical bills for use in personal-injury litigation, along with the facilitation of such litigation-usage via the alleged side agreement (that the liens for those bills will be contingent on litigation outcomes) and via communications

6

with the law firms.  That conduct lies at the core of protected petitioning covered by CCP sections 425.16(e)(1) and (2): preparing, transmitting, and using evidentiary materials during litigation or in anticipation thereof, including in settlement negotiations.  *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 671-73 (2005) (litigation filings and related advocacy—including evidentiary submissions supporting claims—are protected under CCP §§ 425.16(e)(1)-(2)); *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1548-49 (2010) (recognizing pre-litigations and settlement communications reasonably connected to contemplated litigation fall within CCP § 425.16(e)(2)).

### 1.    Radiance's Litigation Communications Are Protected

California courts take a broad view of what qualifies as litigation-related conduct under CCP section 425.16.  The statute's protection extends not only to actual court filings but also the full range of communications (such as drafting and transmitting evidentiary materials) prepared for, directed to, or used within the litigation process.  Even pre-suit, settlement-stage advocacy is deemed "in connection with" contemplated proceedings and thus protected conduct.  *See, e.g., Seltzer*, 182 Cal. App. 4th at 962-64 (attorney-to-attorney settlement negotiations and related correspondence protected under CCP § 425.16(e)(2) even when alleged to be misleading); *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1419-21 (2001) (letters and settlement communications exchanged during litigation constitute protected petitioning); *Kashian*, 98 Cal. App. 4th at 908-13 (communications reasonably connected to litigation are covered; focus is on communicative conduct).

Here, Uber alleges that the Emrani law firm worked with Radiance to direct its legal clients to medical providers, as well as coordinate treatment, scheduling and payment, all as part of preparing a lawsuit against Uber.  Compl. ¶¶ 31-32, 39-44, 61.  Uber then pleads that the next step in this supposed legal counsel-

coordinated scheme was for Radiance to prepare and transmit its facility bills (*e.g.*, *id.* at ¶¶ 50-51, 76-77, 154) while executing supposedly misleading supporting lien agreements (*id.* at ¶¶ 47, 75). And Uber further pleads that those Radiance-generated communications were then used, as the final step of the supposed scheme, by legal counsel in their advocacy against Uber in the anticipated or ongoing personal injury litigation as evidence, resulting in Uber having increased defense costs and settlement spend (*id.* at ¶¶ 53, 125-27, 201-05).[2]

These are paradigmatic protected acts: communications made as evidence in a lawsuit to forward a litigant's position. *See Rusheen,* 37 Cal. 4th at 1062, 1065 (allegedly false declarations to enforce judgment are protected petitioning activity and anti-SLAPP was correctly granted); *Kashian*, 98 Cal. App. 4th at 908 (treating litigation-connected attorney letters and advocacy as protected petitioning under CCP § 425.16(e)(2)); *Peregrine,* 133 Cal. App. 4th at 672-73 (positions the law firm took in court, or in anticipation of litigation with the SEC were "classic petitioning" under CCP § 425.16); *Seltzer*, 182 Cal. App. 4th at 962–64 (attorney-to-attorney settlement negotiations and related correspondence are protected); *Gunn v. Drage*, 65 F.4th 1109, 1121 (9th Cir. 2023) (reaffirming protection for litigation-related communications under California's anti-SLAPP in federal court). Indeed, California courts have recognized that "in a personal injury action, medical . . . bills from healthcare providers are typically essential to establish . . . damages" and such providers "directly contribute to the success of the litigation." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 617 (2009).

---

[2] That Uber seeks to recover its own costs forecloses the CCP section 425.17(b)'s "public interest" exemption to anti-SLAPP protection, which applies only to actions brought solely on behalf of the general public and seeking no individualized relief. *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316-20 (2008).

MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16

1
2
3

**2.    A Surgery Center Is Protected Under The Anti-SLAPP Statute Where Uber Targets Radiance's Litigation Communications**

4    The anti-SLAPP statute protects Radiance even though it is a surgery center, not a law firm, because the anti-SLAPP inquiry turns on the specific injury-producing acts alleged.  *Baral*, 1 Cal. 5th at 395; *Bonni,* 11 Cal. 5th at 1009-12; *Park*, 2 Cal. 5th at 1067-68.  Here, Uber is not taking issue with the quality of the medical facility or services that Radiance provided.  Uber is not a patient who might possibly complain of being subjected to a medically unnecessary procedure or being over-charged.

11    Rather, the only thing that Uber complains about is the evidence (bills) that Radiance provided for personal injury litigations.  For there is ***no connection*** alleged between Radiance and Uber ***other than litigation***.  The two parties have no commercial dealings or relationship—as set forth in the Complaint, nothing that Radiance does could impact Uber at all, other than by influencing litigation against Uber.  Thus, Uber has no way to characterize its case as being about medical care or anything besides Radiance's communications in litigation against Uber (communications that allegedly drive-up defense costs and settlement payments).

19    That Radiance and Uber can have no connection other than through litigation distinguishes this case from *People ex rel. Allstate Insurance Co. v. Rubin*, 66 Cal. App. 5th 493 (2021), where medical bills submitted to an insurer were not deemed to be anti-SLAPP protected litigation activity.  The key to *Allstate* was that for an insurer, medical bill submission in an insurance claim is normal business activity and not indicative of anticipated litigation, ***because an insurer's regular business activity is to pay the bills of those injured by its insured.***  *See id.* at 499-500 ("damage reports were sent to [insurer] to demand performance on the insurance contract" and raising concerns about when an insurance claim is "transformed from a simple claim for payment submitted in the

9

usual course of business into protected prelitigation conduct") (cleaned up).  In contrast, ***Uber's regular business does not consist of paying injured individuals' medical bills***, and it certainly does not allege that it is.  In *Allstate*, there was a non-litigation purpose for the bill generation and submission, ***but Uber affirmatively alleges the opposite: that Radiance undertook this activity to target Uber through litigation.***  *Compare Allstate*, 66 Cal. App. 5th at 501 (faulting defendant for not showing the "inten[t for] the bills to be evidence of damages in litigation") *with* Compl. ¶ 27 ("These medical providers then generate bills ... that they send to [the law firms] ... for use in the litigation against Uber ….").

What matters for anti-SLAPP protection is that Uber's complaint targets communicative conduct (bills, liens, coordination) that is affirmatively alleged to be undertaken in anticipation of litigation.  And that means Radiance's alleged acts are squarely protected under CCP section 425.16.[3]  *See Peregrine*, 133 Cal. App. 4th at 672-73.

### 3.    Uber's Allegations Of Falsity Are Irrelevant

That Uber alleges Radiance's communicative acts were false is of no moment.  Courts have repeatedly held that alleged falsity in litigation communications does not strip anti-SLAPP protection at Step One.  Even accepting Uber's insufficiently plead assertion that Radiance's facility bills were "false or misleading" (Compl. ¶¶ 50-51, 76-77, 154), or that its lien terms were inconsistent with alleged side agreements (*id*., at ¶¶ 47, 75), those assertions

---

[3] Uber does not assert that Radiance's speech falls under CCP section 425.17(c)'s commercial-speech exemption, nor could it.  That carve-out is confined to representations of fact about a speaker's or competitor's goods or services made to actual or potential customers for the purpose of securing sales or approvals—that is, for advertising.  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010).  Radiance's challenged statements (bills, liens, and scheduling communications with law firms, Compl. ¶¶ 31-32, 39-44, 47, 50-53, 61, 75-77, 154) concerned individuals who were already patients and often (for bills) whose care was already complete—these were not solicitations or advertising.

merely challenge the content of litigation materials that Uber says counsel used in advocacy (*id.* at ¶ 53; *see also id.* ¶¶ 125-27, 201-05 (linking to increased defense and settlement costs). And California courts have consistently held that such allegations have no impact on anti-SLAPP protection. *Haight Ashbury Free Clinics*, 184 Cal. App. 4th at 1548-49 (deposition- and testimony-adjacent litigation statements fall within CCP § 425.16 despite asserted falsity); *Seltzer*, 182 Cal. App. 4th at 964-67 (alleged misrepresentations in settlement discussions are protected); *Kashian*, 98 Cal. App. 4th at 910, 913 (communications reasonably connected to contemplated litigation remain protected notwithstanding alleged defamatory or fraudulent content).

Nor can Uber claim that its allegations of falsity somehow place this case into the narrow "illegality" exception recognized in *Flatley v. Mauro*, 39 Cal. 4th 299 (2006). The *Flatley* exception only removes anti-SLAPP protection where ***the criminality of defendant's conduct is conceded or conclusively established***. *Id.* at 316, 320. The doctrine does not apply to disputed civil allegations such as those here. *Fremont Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 1168-69 (2011) (alleged fiduciary breaches and misuse of confidential information did not trigger *Flatley*, as the conduct was disputed and *Flatley* applies only to conceded or conclusively proven crimes).

Finally, Uber cannot springboard its falsity allegations into a claim that Radiance's communications are not protected because the anti-SLAPP statute only covers pre-litigation communications where, as alleged here, such communications are made in good-faith contemplation of a suit under serious consideration. *See Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268 (2008) (explaining "good faith" contemplation requirement). This "good-faith" requirement has nothing to do with falsity or whether the contemplated litigation has merit. At Step One of the anti-SLAPP analysis, the only issue is if the act is sufficiently connected to litigation (not whether the litigation was so illegitimate that plaintiff's claim could

succeed—an issue reserved for Step Two), and thus "good faith" as used at Step One is "not a test for malice" but "[i]nstead, it focuses on whether the litigation was genuinely contemplated," to distinguish actual preparation for litigation from regular, non-litigation business activity. *Medallion Film LLC v. Loeb & Loeb LLP*, 100 Cal. App. 5th 1272, 1285 (2024) (addressing critiques of the Step One "good faith" requirement by emphasizing that this requirement does not "import into prong 1" any need for "showing that the defendant's acts were ultimately lawful or constitutionally protected") (cleaned up).

Uber alleges the Radiance's conduct concerning Claimant B occurred *after* litigation began, and it fails to plead when suit was filed for Claimants A and E. The specifics of the pre- or post-litigation timing, however, are irrelevant because Uber alleges that Radiance's conduct was part of a scheme to create "fraudulent bills ... to artificially inflate the damages in lawsuits against Uber," conceding that litigation was not merely speculative, but rather the entire goal all along—and thus Radiance's pre-suit communications are protected. Compl. ¶ 22; *see Neville,* 160 Cal. App. 4th at 1268; *Malin v. Singer*, 217 Cal. App. 4th 1283, 1302 (2013) (rejecting argument that disputed motives or weak claims defeat protection for prelitigation communications connected to seriously contemplated litigation).

**C.    <u>Step Two: Uber's Claims Cannot Succeed Because They Are Blocked By The Litigation Privilege, *Noerr-Pennington*, Or Are Legally Defective As Shown In Radiance's Motion To Dismiss</u>**

At Step Two of the anti-SLAPP analysis, Uber bears the burden of showing that its state law unjust enrichment and UCL claims are legally viable and factually substantiated, under Rule 12(b)(6) standards. *See* CCP § 425.16(b)(1); *Planned Parenthood*, 890 F.3d at 834. It cannot.

**1.    The California Litigation Privilege Bars Uber's Claims**

California Civil Code § 47(b) creates a litigation privilege that protects statements made in connection with litigation from becoming the basis for later tort

suits.  The privilege serves the important public policies of "ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation."  *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990).

Thus, "any communication (1) made in judicial ... proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action" are privileged and no tort (other than malicious prosecution) may be brought on a privileged statement.  *Silberg*, 50 Cal. 3d at 212, 215; *see also Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 375 (2004); *Contreras v. Dowling*, 5 Cal. App. 5th 394, 415 (2016).  The privilege applies even if the communication "is made outside the courtroom and no function of the court or its officers is involved," *Silberg*, 50 Cal. 3d at 212, and extends to good-faith prelitigation statements when litigation is seriously contemplated.  *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007).  It applies without regard to "motives, morals, ethics or intent," *Silberg*, 50 Cal. 3d at 212, 220, and regardless of alleged falsity or malice, *Kashian*, 98 Cal. App. 4th at 910-913.  Given the important policies the privilege protects, "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it."  *See Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 23 (2002) (cleaned up).

Courts frequently invoke California's statutory litigation privilege at Step Two of anti-SLAPP analysis because it provides a substantive immunity that bars recovery for the same category of litigation-related communications identified as protected activity under CCP sections 425.16(e)(1)-(2).  *See Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 737 (2003); *Flatley*, 39 Cal. 4th at 322-23.  Once the challenged conduct is recognized as petitioning activity at Step One, the litigation privilege at Step Two independently forecloses any chance of succeeding on

1    claims premised on that same conduct.  *See Rusheen*, 37 Cal. 4th at 1056-57;

2    *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1485 (2008).

3    **"(1) made in judicial ... proceedings."**  As covered above, the litigation

4    privilege applies regardless of whether the communication "is made outside the

5    courtroom," *Silberg*, 50 Cal. 3d at 212, and regardless of whether litigation has

6    already been filed, *Action Apartment*, 41 Cal. 4th at 1251; settlement-related

7    communications are fully protected.  *Seltzer*, 182 Cal. App. 4th at 962-64, 971-72;

8    *Suarez v. Trigg Lab'ys, Inc.*, 3 Cal. App. 5th 118, 125-26 (2016); *Dowling,* 85 Cal.

9    App. 4th at 1419-23.  And, the privilege turns on the class of communication, not

10   its accuracy, so that Uber's accusations of falsity or fraud (even were they

11   adequately alleged) are irrelevant. *GeneThera, Inc. v. Troy & Gould Pro. Corp.*,

12   171 Cal. App. 4th 901, 909 (2009).  Thus, despite the vagaries of Uber's pleading,

13   the one thing Uber drives home—that Radiance's bills, liens, or coordination with

14   the law firms were in connection with litigation—is enough to satisfy this

15   requirement.  *See*, *e.g.*, Compl. ¶ 27 ("medical providers then generate bills ... that

16   they send to [the law firms] ... for use in the litigation against Uber").

17   **"(2) by litigants or other participants authorized by law."**  Critically, the

18   privilege covers not just lawyers, but participants and witnesses such as physicians

19   and experts, and also covers their necessary, preparatory communicative acts—

20   such as conferring with counsel, compiling reports, and preparing bills.  *Obos v.*

21   *Scripps Psych. Assocs.*, 59 Cal. App. 4th 103, 108 (1997) (court-appointed

22   psychologist's litigation communications privileged to ensure unfettered

23   participation even when the plaintiff was not a party); *Wang v. Heck*, 203 Cal.

24   App. 4th 677, 686-87 (2012) (physician's investigation and report prepared in

25   anticipation of litigation are privileged); *Pettitt v. Levy*, 28 Cal. App. 3d 484, 490-

26   91 (1972) (communications and documents submitted to decisionmakers privileged

27   where reasonably related to the proceeding and made to achieve its objects,

28   notwithstanding allegations of falsity); *Gootee v. Lightner*, 224 Cal. App. 3d 587,

592 (1990) (expert's investigative report prepared for litigation is a privileged communicative act supporting testimony).  Radiance acted in these personal injury cases as a witness providing evidence on the claimants' medical costs and thus was a "participant authorized by law."

**"(3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."**  Uber's theory—that Radiance's bills, lien terms, and coordination of care are all part of a "scheme ... to artificially inflate the damages in lawsuits against Uber," (Compl. ¶ 22)—concedes these final requirements of the litigation privilege.  Damages are indisputably an "object[] of the [personal injury] litigation," and evidentiary support for a required element of a personal injury claim unquestionably has "some connection or logical relation to the [personal injury] action."  *See Silberg*, 50 Cal. 3d at 212; *see also* Compl. ¶¶ 35, 53.  That Uber impugns Radiance's motives within the litigation is irrelevant to whether the privilege applies and blocks Uber's claims.  *E.g.*, *Silberg*, 50 Cal. 3d at 220; *see Seltzer*, 182 Cal. App. 4th at 971-72.

Because all of the alleged Radiance communications meet all four requirements for the litigation privilege, the privilege bars Uber's state law unjust enrichment and UCL claims as a matter of law.  Thus, Uber cannot show any probability of success under Step Two of the anti-SLAPP statute and its claims must be struck.  *Rusheen*, 37 Cal. 4th at 1056-57; *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1580-82 (2005).

### 2.    *Noerr–Pennington* Independently Bars Uber's Claims

Separately, the *Noerr–Pennington* doctrine—grounded in the First Amendment—immunizes petitioning of the government (including litigation) from civil liability.  *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-38 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-12 (1972).  Courts apply the doctrine to state-law claims, including UCL and tort

15

1    theories, when liability would burden petitioning activity.  *See People ex rel.*

2    *Gallegos v. Pac. Lumber Co*., 158 Cal. App. 4th 950, 964-68 (2008); *Ludwig v.*

3    *Super. Ct.*, 37 Cal. App. 4th 8, 21-22 (1995).

4    Protection extends beyond filing to "incidental" litigation conduct such as

5    discovery and settlement activity.  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d

6    1180, 1185-86 (2005) (discovery and settlement negotiations are protected

7    "incidental" petitioning conduct); *Columbia Pictures Indus., Inc. v. Pro. Real*

8    *Estate Invs., Inc*., 944 F.2d 1525, 1528-29 (1991) (the decision to accept or reject

9    settlement is "conduct incidental to the prosecution of the suit"), *aff'd on other*

10   *grounds*, 508 U.S. 49 (1993).  Pre-suit communications related to anticipated

11   litigation are likewise protected.  *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 934-37

12   (2006) (prelitigation demand letters and analogous communications fall within

13   *Noerr-Pennington*).  Protection also extends beyond just the parties to the case and

14   their lawyers, covering others involved in prosecuting litigations as well.  *See*

15   *Freeman*, 410 F.3d at 1186.

16   As detailed above, Uber's allegations identify only litigation-related activity

17   undertaken with and through personal injury claimants' counsel, with the conceded

18   goal of use in litigations.  Compl. ¶¶ 47, 50-53, 76-77, 75, 79, 125-27, 154, 201-05.

19   Those are classic petitioning or incidental acts within *Freeman*

20   (discovery/settlement conduct), *Columbia Pictures* (settlement decisions), and

21   *Sosa* (pre-suit communications tied to contemplated litigation).  The alleged harms

22   (defense spend and settlement outlays) arise entirely from Radiance's First

23   Amendment-protected petitioning conduct.

24   Nor does the narrow "sham" exception to *Noerr-Penington* apply.

25   Petitioning loses immunity only if it is objectively baseless such that no reasonable

26   litigant could expect success.  *Pro. Real Estate Invs., Inc. v. Columbia Pictures*

27   *Indus., Inc.*, 508 U.S. 49, 60-61 (1993).  Uber neither pleads nor attempts to plead

28   a sham theory.  There are no allegations as to how the courts adjudicated these

16

1   cases or any details pled about their outcomes.  And, what can be found in the

2   Complaint works against Uber; it affirmatively alleges that the car accidents did

3   take place and even that Uber settled Claimant B's case—an allegation meaning

4   that Uber assessed Claimant B's case has having at least some arguable merit and

5   which serves as a concession that it was not a sham.  Compl. ¶¶ 37, 54, 79;

6   *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 932 (9th Cir. 2024) ("settlement

7   indicates a lawsuit is not objectively baseless").  Uber's aspersions, *e.g.*, allegedly

8   "inflated" or "misleading" bills, are not to enough to plead the lawsuits were

9   objectively baseless.  *See Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533

10  (1991) (a plaintiff cannot evade immunity by "recast[ing] disputed issues from the

11  underlying litigation as misrepresentations") (cleaned up); *Omni Res. Dev. Corp. v.*

12  *Conoco, Inc.*, 739 F.2d 1412, 1414 (1984) (allegedly false affidavits do not remove

13  petitioning from *Noerr-Pennington*).

14      Finally, courts recognize that *Noerr-Pennington* and the litigation privilege

15  often travel together because both immunize litigation-connected conduct from

16  derivative civil liability.  *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee*

17  *Ass'n*, 136 Cal. App. 4th 464, 480 (2006) (both doctrines protect the same

18  petitioning conduct and preclude liability for litigation-related submissions).  Thus,

19  although it is an independent ground, the state law analysis under California Civil

20  Code section 47(b) further reinforces the conclusion under federal law that *Noerr–*

21  *Pennington* bars Uber's UCL and unjust enrichment claims.  *Noerr-Penington* is

22  another reason that Uber fails at Step Two and thus loses its state law claims under

23  CCP section 425.16.

### 3.    Radiance's Motion To Dismiss Shows Uber Fails To Plead Its Claims

26      Because the Step Two analysis for an anti-SLAPP motion in federal court

27  applies the same standard as Rule 12(b)(6), each of the arguments in Radiance's

28  accompanying Motion to Dismiss also apply here.  Rather than repeat them,

17

Radiance incorporates those arguments, Sec. IV.A-C, herein.  They further remove any doubt that Uber cannot show a probability of success on its state law claims, requiring they be struck along with their accompanying allegations.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should grant this Anti-SLAPP motion.

DATED: November 14, 2025    HALPERN MAY YBARRA GELBERG LLP

By:            */s/ Grant B. Gelberg*
                    GRANT B. GELBERG

*Attorneys for Defendant Radiance Surgery Center*

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**

1

## **CERTIFICATE OF COMPLIANCE**

2        The undersigned, counsel of record for Defendant RADIANCE SURGERY

3  CENTER, certifies that this brief is not based on word count under Local Rule 11-

4  6.1 because this action is governed by the Standing Order (Dkt. 14 at G.4)

5  providing that "[m]emoranda of points and authorities in support of or in

6  opposition to motions shall not exceed twenty-five (25) pages."

7

8  DATED: November 14, 2025    HALPERN MAY YBARRA GELBERG LLP

9

10                    By:        */s/ Grant B. Gelberg*

11                          GRANT B. GELBERG

12                    *Attorneys for Defendant Radiance Surgery Center*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16**