GRANT B. GELBERG (SBN 229454)
Grant.Gelberg@halpernmay.com
S. ALBERT WANG (SBN 250163)
S.Albert.Wang@halpernmay.com
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071-2680
Tel: (213) 402-1900
Fax: (213) 402-1901

Attorneys for Defendant
RADIANCE SURGERY CENTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBER TECHNOLOGIES, INC., | Case No. 2:25-cv-06612 SPG (PDx) |
| Plaintiff, | Judge:   Hon. Sherilyn Peace Garnett |
| v. | **DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, GSK SPINE, GREG KHOUNGANIAN, and RADIANCE SURGERY CENTER, | *[Filed concurrently with Declaration of Grant B. Gelberg and [Proposed] Order]* |
| Defendants. | DATE:      March 11, 2026*<br>TIME:      1:30 p.m.<br>PLACE:     5C |
| | *[Hearing date set per Order at ECF No. 57] |
| | Action Filed:      July 21, 2025<br>Trial Date:        None |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on March 11, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 5C, Los Angeles, California 90012, Defendant RADIANCE SURGERY CENTER ("Defendant") will and hereby does move to dismiss the Complaint filed by Plaintiff UBER TECHNOLOGIES, INC. ("Plaintiff") for failure to state claims upon which relief can be granted ("Motion").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on the grounds set forth in the accompanying Memorandum of Points and Authorities in support, including the grounds incorporated by reference therein.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities (including all arguments incorporated by reference therein), the Declaration of Grant Gelberg and its exhibit, any reply memorandum submitted by Radiance, the complete files and records in this action, and such other argument and evidence as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3. The parties met and conferred via email on October 9, 2025 and via videoconference on October 10, 2025. *See* Gelberg Declaration.

DATED: November 14, 2025    HALPERN MAY YBARRA GELBERG LLP

By:    */s/ Grant B. Gelberg*
GRANT B. GELBERG
*Attorneys for Defendant Radiance Surgery Center*

1

## <u>TABLE OF CONTENTS</u>

2

PAGE

I.    INTRODUCTION ............................................................................1

II.   BACKGROUND .............................................................................2

III.  LEGAL STANDARD .....................................................................4

IV.   ARGUMENT....................................................................................5

    A.    Rule 9(b) Applies To Uber's State Law Claims ....................5

    B.    Uber Fails To Plead Unjust Enrichment................................7

        1.    Unjust enrichment is not a cause of action, but
              rather restitution for a quasi-contract that does not
              exist here.................................................................7

        2.    Uber does not allege any "unjust" action by
              Radiance .................................................................8

              (a)    Uber's inflated bills theory fails....................8

              (b)    Uber's medically unnecessary theory fails ...................13

              (c)    Uber's lien theory fails.................................14

        3.    Uber cannot end-run the California Supreme
              Court's bar against follow-on torts for alleged
               litigation misconduct.............................................15

        4.    Uber's failure to plead materiality with
              particularity means that the voluntary payment
              doctrine bars Uber's claim .....................................17

        5.    Uber fails to allege that Radiance received benefits
              from Uber .................................................................18

    C.    Uber's UCL Claim Fails .....................................................19

        1.    Uber's failure to plead that Radiance has Uber's
              money means Uber has no UCL standing ...............19

        2.    Uber's "unlawful," "fraudulent," and "unfair"
              theories fail ...........................................................20

               (a)    Unlawful: Uber fails to plead any statutory
                   violations. ....................................................20

                   (1)    Uber has not alleged mail or wire
                        fraud .................................................20

                   (2)    No Bus. & Prof. Code § 650 violation
                        is alleged...........................................20

i

1
    (b)    Fraudulent: Uber fails to plead falsity,
    materiality, reliance, or causation...................................22

2
    (c)    Unfair: Uber cannot tether to any state
    policy...........................................................................23

3

    3.    Uber's requested UCL remedies are not available.................23

4
    (a)    Uber fails to allege any basis for restitution .................23

5
    (b)    Uber's injunctive relief is legally
6    unavailable, impossibly vague,
    unmanageable, and against public policy ....................23

7

8    D.    Uber's Claims Are Blocked By California's Litigation
    Privilege And The *Noerr-Pennington* Doctrine...............................25

9 V.    CONCLUSION .........................................................................25

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS COMPLAINT**

# TABLE OF AUTHORITIES

PAGE

## CASES

*Agnew v. Parks,*
172 Cal. App. 2d 756 (1959)..................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................5

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015).................................................................7

*Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs,*
398 U.S. 281 (1970)............................................................................24

*Bank of the West v. Sup. Ct.,*
2 Cal. 4th 1254 (1992).........................................................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................5

*Bermudez v. Ciolek,*
237 Cal. App. 4th 1311 (2015)...............................................................9

*Bly-Magee v. Cal.,*
236 F.3d 1014 (9th Cir. 2001)..............................................................12

*Buckland v. Threshold Enters., Inc.,*
155 Cal. App. 4th 798 (2007)...............................................................19

*Cal. v. IntelliGender, LLC,*
771 F.3d 1169 (9th Cir. 2014)..............................................................17

*Californians for Disability Rights v. Mervyn's, LLC,*
39 Cal. 4th 223 (2006).........................................................................19

*Canyon Cnty. v. Syngenta Seeds, Inc.,*
519 F.3d 969 (9th Cir. 2008)................................................................12

*Cedars-Sinai Med. Ctr. v. Sup. Ct.,*
18 Cal. 4th 1 (1998)......................................................................16, 17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal. 4th 163 (1999)....................................................................20, 23

*Children's Hosp. Cent. Cal. v. Blue Cross of Cal.,*
226 Cal. App. 4th 1260 (2014)...............................................................9

*Day v. AT&T Corp.,*
63 Cal. App. 4th 325 (1998).................................................................20

*Ebeid v. Lungwitz,*
616 F.3d 993 (9th Cir. 2010).................................................................22

**MOTION TO DISMISS COMPLAINT**

*Gilman v. Dalby*,
  176 Cal. App. 4th 606 (2009)..........................................15, 22

*Griffin v. Green Tree Servicing, LLC*,
  166 F.Supp. 3d 1030 (C.D. Cal. 2015)...........................11

*Hanlester Network v. Shalala*,
  51 F.3d 1390 (9th Cir. 1995)..........................................6

*Hoffman v. 162 North Wolfe LLC*,
  228 Cal.App.4th 1178 (2014)..........................................8

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008)..........................................5

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)..........................................23

*Jaffe v. Cranford Ins. Co.*,
  168 Cal. App. 3d 930 (1985)..........................................18

*Johnson v. Riverside Healthcare Sys.*,
  534 F.3d 1116 (9th Cir. 2008)..........................................4

*Kachig v. Boothe*,
  22 Cal. App. 3d 626 (1971)..........................................17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..........................................7, 11, 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..........................................19

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000)..........................................8

*Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*,
  71 Cal. App. 5th 323 (2021), *as modified* (Nov. 24, 2021)...................9, 10, 24

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003)..........................................7

*Mercury Cas. Co. v. Sup. Ct.*,
  179 Cal. App. 3d 1027 (1986)..........................................17

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993) ..........................................12

*Moore v. Mercer*,
  4 Cal. App. 5th 424 (2016)..........................................9

*Neder v. U.S.*,
  527 U.S. 1 (1999)..........................................8

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)..........................................24

iv

*Pebley v. Santa Clara Organics, LLC*,
  22 Cal. App. 5th 1266 (2018)........................................................9, 15, 21

*Perez v. Indian Harbor Ins. Co.*,
  613 F.Supp.3d 1171 (N.D. Cal. 2020)..........................................13

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008)......................................................8, 19

*Qaadir v. Figueroa*,
  67 Cal. App. 5th 790 (2021)..........................................................15

*Rios v. Allstate Ins. Co.*,
  68 Cal. App. 3d 811 (1977)............................................................17

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014)........................................................7

*Sierra Invest. Corp. v. Cnty. of Sacramento*,
  252 Cal. App. 2d 339 (1967)..........................................................17

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011)........................................................................24

*Taylor v. Bidwell*,
  65 Cal. 489 (1884)..........................................................................16

*Temple Cmty. Hosp. v. Sup. Ct.*,
  20 Cal. 4th 464 (1999)....................................................................16

*U.S. ex rel. Chao v. Medtronic PLC*,
  No. 2:17-cv-01903-MCS-SS, 2021 WL 4816647, (C.D. Cal. Apr.
  12, 2021)..........................................................................................22

*U.S. ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*,
  142 F.4th 25 (1st Cir. 2025)............................................................22

*U.S. v. DaVita Inc.*,
  No. 818CV01250JLSDFM, 2020 WL 3064771, (C.D. Cal. Apr.
  10, 2020)..........................................................................................13

*U.S. v. Manion*,
  339 F.3d 1153 (9th Cir. 2003)........................................................8

*U.S. v. Schena*,
  142 F.4th 1217 (9th Cir. 2025)......................................................6

*U.S. v. Woods*,
  335 F.3d 993 (9th Cir. 2003)..........................................................8

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)........................................................5, 20

**MOTION TO DISMISS COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

18 U.S.C. § 1341.............................................................................................8, 20

18 U.S.C. § 1343.............................................................................................8, 20

Cal. Bus. & Prof. Code § 17200....................................................................1, 4, 20

Cal. Bus. & Prof. Code § 17204...........................................................................19

Cal. Bus. & Prof. Code § 650(a) ....................................................................15, 21

Cal. Bus. & Prof. Code § 657...............................................................................21

Cal. Bus. & Prof. Code § 657(a) ..........................................................................25

Cal. Bus. & Prof. Code § 650...................................................................6, 20, 21

Cal. Evid. Code § 1119 .......................................................................................13

Cal. Health & Safety Code § 1248 .......................................................................21

Cal. Health & Safety Code § 1248.1 ....................................................................21

Cal. Health & Safety Code §§ 1200–1245 ...........................................................21

## RULES

Fed. R. Civ. Procedure 12(b)(6) .......................................................................2, 4

Fed. R. Civ. Procedure 9(b) ......................................................................passim

**MOTION TO DISMISS COMPLAINT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Uber's Complaint purports to attack a vast "fraud scheme" among lawyers and medical providers, but as to Radiance Surgery Center ("Radiance")—the surgery facility at the fringe of this narrative—the pleading does not come close to stating a viable claim.  Although Uber leaves Radiance out of its RICO claims, Uber asserts two state-law causes of action against Radiance: unjust enrichment and violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Both are premised on notions of fraud or concealed kickbacks relating to Radiance's bills, which made it to Uber when patients who received treatment at Radiance sued Uber for personal injury claims.

Despite the essence of both claims being fraud, Uber fails to plead any facts showing any actionable misrepresentation, materiality, reliance, or causation, to say nothing of providing the particularity that Rule 9(b) requires.  Not only does Uber fail to plead any fraudulent activity by Radiance that could be the "unjust" acts supporting Uber's unjust enrichment claim, but it also fails to plead any enrichment: Uber's defense costs enrich its defense lawyers, not Radiance, and Uber fails to plead that any piece of any settlement paid by Uber made it to Radiance.  These same failures to plead fraudulent activity mean that Uber has no unlawful, fraudulent, or unfair acts for its UCL claim; furthermore, its failure to plead any claim to restitution also means that Uber has suffered no injury that could give it standing for its UCL claim either.

At bottom, Uber is attempting to control separate personal injury cases by recasting its dissatisfaction with the outcome of those lawsuits as new equitable claims here.  Uber's attempted "do-over" of prior personal injury lawsuits is foreclosed by California law barring follow-on torts for alleged litigation misconduct and the equitable doctrines Uber invokes cannot be used to end-run those precedents.  Nor can Uber obtain, for future personal injury cases being

1  heard by other courts, the injunctive relief Uber seeks, wherein this Court would
2  control what evidence Radiance can submit in future cases to other courts.

3      Uber's Complaint fails to plead any cognizable legal theories or to
4  adequately allege the facts required even were Uber's theories viable.  It should
5  therefore be dismissed in its entirety under Rules 12(b)(6) and 9(b).[1]

6  **II.    <u>BACKGROUND</u>**

7      Uber alleges that certain lawyers and medical providers "are engaged in [a]
8  fraud scheme," in which lawyers "direct claimants to pre-selected medical
9  providers" who provide medically unnecessary care and generate "artificially
10  inflated bills" for use in litigation against Uber.  Compl. ¶¶ 1-2.  Uber further
11  alleges that these bills are not paid by the patients upon treatment, but rather are
12  covered by medical liens.  *Id*. at ¶ 2.  Uber suggests that patients' use of liens
13  rather than their health insurance is evidence of fraud, but that practice is common
14  in personal injury cases and perfectly legal in California.  *Id*. at ¶¶ 2, 25; *see* Sec.
15  IV.B.2.c.  Uber also contends that the liens are subject to purportedly concealed
16  "side agreements" between the lawyers and the medical providers, whereby the
17  providers agree to reduce their bills if litigation recoveries are too small so that the
18  lawyers look good—something Uber labels a "kickback" in exchange for future
19  referrals from the lawyers.  *Id*. at ¶¶ 2-3.  While setting forth a wide-ranging
20  allegedly fraudulent scheme in broad brush strokes, Uber does not plead details of
21  the actual supposed misrepresentations, why they are false, or how any of them
22  influenced Uber's decisions, including lacking any detail about the litigations in
23  which these bills arose (such as what Uber uncovered in discovery or the opinions
24  of its own retained experts).  Nor does Uber plead even one specific referral made

---

[1] Radiance's accompanying anti-SLAPP motion gives further grounds and another
avenue for terminating Uber's case.  For efficiency, Radiance incorporates the
California Litigation Privilege and *Noerr-Pennington* arguments of Sections
IV.C.1-2 of that motion.  Radiance also incorporates the applicable arguments
made by the other Defendants in their Motions to Dismiss and the parts of their
anti-SLAPP motions addressing Uber's claims' merits.

**MOTION TO DISMISS COMPLAINT**

1    under its alleged "kickback" scheme.

2        As to Radiance, Uber concedes that it is only a surgery center—that is, a

3    facility where independent medical doctors can perform surgeries—which may

4    assist with administration and scheduling but does not exercise any medical

5    judgment. *Id*. at ¶¶ 8, 31-32.  As to Radiance's role in the supposed scheme, Uber

6    alleges that Radiance provided inflated bills, for medically unnecessary

7    procedures, to lawyers for use in litigation against Uber, and that these bills were

8    subject to liens covered by the supposedly "conceal[ed]" side agreements. *Id*. at ¶¶

9    22, 35, 39, 47, 51, 75, 77.  For these reasons, Uber asserts that Radiance's bills

10   were "false and misleading" and that the side agreements were "kickbacks" to the

11   lawyers in exchange for future referrals—although the Complaint does not identify

12   a single such referral to Radiance.  *Id*. at ¶¶ 35, 39, 51, 53, 77, 138.

13       As for actual, specific personal injury claimants where Radiance was

14   allegedly involved, Uber pleads only three (Claimants A, B, and E):

15   •    Claimant A: Uber alleges Radiance took direction from the Law Offices of

16        Jacob Emrani and Dr. Greg Khounganian for Claimant A's treatment, and

17        that two surgeries were performed (presumably at Radiance).  *Id*. at ¶¶ 39-

18        42, 44-46.  Uber tries to allege that "the $556,151.00 in total billed charges

19        for Claimant A" was inflated above "the reasonable value of care . . .

20        received," but the origins of that $556,151 number are unknown, as it

21        matches neither the total Radiance bills alleged ($290,545), the total Dr.

22        Khounganian bills alleged ($456,400), nor the sum of those ($746,945).  *Id*.

23        at ¶¶ 48, 50, 52.  Uber also alleges "[u]pon information and belief" (since

24        Uber apparently never saw it) that Radiance's lien had false language saying

25        its bills were unconditional, despite the side agreement.  *Id.* at ¶ 47.  Uber

26        alleges that it received Radiance's bills from the Emrani law firm and—

27        without providing any further detail—that "[a]s a result, Uber incurred

28        significant defense costs investigating and defending the claim."  *Id.* at ¶ 53.

3

**MOTION TO DISMISS COMPLAINT**

1    Uber never alleges that it paid Radiance anything for Claimant A, nor that

2    Radiance received any referrals from the "side agreement" on these bills.

3    • <u>Claimant B</u>: Uber alleges that Claimant B had surgery at Radiance only after

4    a lawsuit was filed, and that Radiance billed $100,300—but there are no

5    allegations comparing this bill to purported "market rates."  Compl. ¶¶ 59,

6    61, 66, 76, 78.  Rather, Uber's only theory is that Radiance's lien was "false

7    and misleading" due to stating that Claimant B was unconditionally

8    responsible for Radiance's bill—statements Uber alleges only "[u]pon

9    information and belief" because Uber did not see (yet claims it was still

10    deceived by) them.  *Id.* at ¶¶ 75, 77.  Uber provides no other details, only

11    that "[t]he matter was ultimately settled" and Uber incurred settlement and

12    "significant defense costs." *Id.* at ¶ 79.  Uber never alleges that Radiance

13    received any portion of the settlement, or even what that payment was and if

14    there was enough to cover any of Radiance's bill.  Uber also never alleges

15    any referrals under the alleged "side agreement" as to Claimant B.

16    • <u>Claimant E</u>:  Uber's allegations are all in one row of a table, merely alleging

17    Radiance billed $95,500.  Compl. ¶ 154.  Nothing is pled as to: Claimant E's

18    circumstances; Radiance's actions; the market context for Radiance's bills;

19    any costs or payments to anyone; or anything about liens, "side agreements,"

20    or referrals.

21    Uber brings against Radiance only two state law claims: unjust enrichment

22    (Compl. ¶¶ 199-203) and a UCL (Cal. Bus. & Prof. Code § 17200) violation

23    (Compl. ¶¶ 204-209).  Radiance is not named in Uber's RICO causes of action.

## III.  **LEGAL STANDARD**

25    Dismissal under Rule 12(b)(6) is appropriate if there is either "a lack of a

26    cognizable legal theory or the absence of sufficient facts alleged under a

27    cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116,

28    1121 (9th Cir. 2008) (internal quotation omitted).  A plaintiff must plead "enough

4

**MOTION TO DISMISS COMPLAINT**

1   facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v.*
2   *Twombly*, 550 U.S. 544, 570 (2007), meaning factual content that allows a
3   reasonable inference of liability, which is "more than a sheer possibility." *Ashcroft*
4   *v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and unwarranted
5   inferences are insufficient. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-57
6   (9th Cir. 2008). Furthermore, because Uber asserts claims that sound in fraud,
7   Rule 9(b) applies and Uber "must state with particularity the circumstances
8   constituting fraud or mistake." Fed. R. Civ. P. 9(b); *e.g.*, *Vess v. Ciba–Geigy*
9   *Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

## IV.   ARGUMENT

### A.   Rule 9(b) Applies To Uber's State Law Claims

12          Both of Uber's state law claims sound in fraud, and thus they must be pled
13  with particularity under Federal Rule of Civil Procedure 9(b)—which Uber fails to
14  do. *Vess*, 317 F.3d at 1103 ("It is established law, in this circuit and elsewhere,
15  that Rule 9(b)'s particularity requirement applies to state-law causes of action.").
16  As Uber has "allege[d] a unified course of fraudulent conduct and rel[ies] entirely
17  on that course of conduct as the basis of [its] claim[s]," those "claim[s are] said to
18  be 'grounded in fraud' or to 'sound in fraud,' and the pleading of th[ose] claim[s]
19  as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d
20  at 1103-04 (citations omitted).

21          The thrust of both claims is that Radiance allegedly made false statements or
22  concealed relevant information, by billing rates that are supposedly inflated above
23  unspecified market rates, billing for unnecessary medical procedures, or concealing
24  "secret side agreement[s]" to discount Radiance's liens for lower recoveries on
25  patients' personal injury litigation. *E.g.*, Compl. ¶¶ 35, 47, 51, 77. Because of
26  these supposedly false statements or misleading omissions, Uber asserts, Radiance
27  has committed acts making it "unjust" for Radiance to retain any benefits
28  conferred upon it by Uber (for Uber's unjust enrichment claim), or else were

5

1    unlawful, fraudulent or unfair (for Uber's UCL claim).  Indeed, Uber's allegations
2    expressly accuse Radiance of falsehoods, eliminating any doubt that all of Uber's
3    claims sound in fraud.  *See, e.g.*, *id.* at ¶¶ 47, 75 (alleging Radiance "executed
4    sham lien agreements" falsely stating patients were "directly and unconditionally
5    responsible" for fees, despite alleged "concealed side agreements" to discount
6    those fees); ¶¶ 50-51, 76-77 (alleging Radiance "prepared bills" that were
7    "materially false and misleading" by failing to disclose secret side agreements); ¶¶
8    52-53 (alleging Radiance's "false and misleading bills" were presented to Uber to
9    support "a false and misleading artificially inflated claim" against it).

10          Rule 9(b) also applies to Uber's allegations of kickbacks violating Cal. Bus.
11   & Prof. Code § 650.  Kickback theories are fundamentally fraud theories, as the
12   problem targeted is that of a secret improper motive: that monetary incentives—
13   rather than solely medical merits—have influenced a healthcare decision.  *See U.S.*
14   *v. Schena*, 142 F.4th 1217, 1221, 1224-26 (9th Cir. 2025) (explaining that a federal
15   statute prohibiting healthcare kickbacks "curb[s] fraud and abuse" by targeting
16   wrongful inducements that unduly influence medical judgment); *Hanlester*
17   *Network v. Shalala*, 51 F.3d 1390, 1398-99 (9th Cir. 1995) ("to induce" under the
18   federal Anti-Kickback Statute means an "intent to exercise influence over the
19   reason or judgment of another" to cause referrals).

20          Moreover, Uber's specific kickback theory depends on concealment: the
21   only value Uber alleges Radiance gives the referring law firms stems from
22   Radiance hiding the supposed *ex-ante* agreement to reduce bills from patients; this
23   helps the lawyers reputationally because then "the lawyers can (i) falsely claim
24   credit for obtaining a discount on their bill and (ii) deliver a minimal recovery to
25   clients to preserve their ability to attract more clients in the future."  Compl. ¶ 28.
26   As Uber admits, its purported kickback scheme is premised on "secrecy":

27
28

In exchange for ***secretly*** agreeing to discount their bills,

the medical providers receive a steady stream of referrals

from the lawyers. The arrangement is a kickback scheme.

*Id*. at ¶ 29 (emphasis added); *see also id.* at ¶¶ 51, 77.  Uber's theory depends on secrecy and concealment, and thus must meet Rule 9(b)'s requirements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

**B.    Uber Fails To Plead Unjust Enrichment**

**1.    Unjust enrichment is not a cause of action, but rather restitution for a quasi-contract that does not exist here**

California courts have repeatedly confirmed that "[t]here is no cause of action [] for unjust enrichment[;]" rather, it is a restitutionary theory sounding in quasi-contract.  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *see also Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231-32 (2014).  Thus, the Ninth Circuit will construe a count labeled "unjust enrichment" as a quasi-contract claim if the allegations state the elements of restitution.  *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015).

Uber alleges nothing to suggest that its relationship, if any, with Radiance has any semblance to a contractual one.  Here, Uber never alleges: that it had any agreements and or plans to work with Radiance; that Uber or Radiance ever performed any work on behalf of the other; or that the two entities ever had any direct commercial dealings at all.  That Uber's unjust enrichment claim has none of the hallmarks of a traditional quasi-contract claim illustrates that what Uber is doing here is using the label of a non-existent cause of action, "unjust enrichment," to cover up that it is either pursuing torts for litigation misconduct that the California Supreme Court has already pronounced do not exist, or else pursuing a fraud claim despite being unable to satisfy all of fraud's elements.

No matter how labeled, Uber's "unjust enrichment" claim fails.  Any quasi-contract or restitution theory requires that a benefit was conferred upon the

**MOTION TO DISMISS COMPLAINT**

1   defendant at the plaintiff's expense, which would be unjust to retain.  *See, e.g.*,

2   *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting

3   *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).  Uber does not plead

4   facts showing that Radiance received a benefit from Uber, let alone that any such

5   benefit was unjustly retained.

6            **2.    Uber does not allege any "unjust" action by Radiance**

7            Uber's theories of "unjustness" all sound in fraud, yet it fails to adequately

8   plead fraud's required elements, much less with the particularity required by Rule

9   9(b).  Common law fraud requires (1) a misrepresentation by Radiance that (2) was

10  made with knowledge of the falsity and (3) an intent to defraud, on upon which (4)

11  reliance would be justified, and (5) resulting harm to Uber.  *See Hoffman v. 162*

12  *North Wolfe LLC*, 228 Cal.App.4th 1178, 1185-1186 (2014).  Falsity, reliance and

13  harm must be alleged with particularity under Rule 9(b), and knowledge and intent

14  must be adequately pled.  *Vess*, 317 F.3d at 1103-04 (9th Cir. 2003) (where, as

15  here, a "claim is said to be 'grounded in fraud' or to 'sound in fraud,' [] [the] claim

16  as a whole must satisfy . . . Rule 9(b).")  Every one of Uber's theories is fatally

17  deficient on multiple elements.[2]

18            (a)    Uber's inflated bills theory fails

19           Uber does not allege that Radiance billed for services it did not perform.  To

20  the contrary, the Complaint affirmatively alleges that Radiance did the work for

21  which it billed.  Compl. ¶¶ 50 (Claimant A's two surgeries occurred on December

22  23, 2020 and February 19, 2021), 66 (Claimant B's surgery happened on July 16,

23

---

24  [2] Uber does not assert federal statutory wire or mail fraud as Radiance's "unjust"
    conduct, and never pleads the essential requirement that Radiance used any wires
25  or the mail.  18 U.S.C. §§ 1341, 1343; Compl. ¶¶ 148-149, 154.  And, to the extent
    Uber tries to make a case of "unjust" behavior consisting of "almost" wire or mail
26  fraud (just without wires or mail), that still fails, for these statutes have key
    overlaps with common law fraud.  Each still requires a false statement or
27  misleading omission, that is material, and made with knowledge and intent. *See
    Neder v. U.S.*, 527 U.S. 1, 25 (1999); *U.S. v. Woods*, 335 F.3d 993, 998 (9th Cir.
28  2003); *U.S. v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003). As this discussion of
    common law fraud shows, Uber fails on these essential elements.

8

**MOTION TO DISMISS COMPLAINT**

2021). The purported "fraud" in Radiance's bills thus does not lie in any false statement about what services were rendered; rather, Uber alleges the bills became fraudulent because the prices charged were simply too high.  Uber cannot make its pricing disagreements into a fraud claim, for multiple reasons.

First, prices are not actionable representations as a matter of law, because California courts have made clear that the "reasonable value" of medical services in personal injury litigation is inherently a matter of (disputed) expert opinion.  *See Pebley v. Santa Clara Organics, LLC*, 22 Cal. App. 5th 1266, 1275-76, 1278-81 (2018) (reasonableness of uninsured medical charges, for personal injury damages, must be established by expert testimony and cannot be supported by medical bills alone); *Bermudez v. Ciolek*, 237 Cal. App. 4th 1311, 1338-39 (2015) ("reasonable value" of medical services is based on expert evidence and billed amounts are not substantial evidence of such value); *Moore v. Mercer*, 4 Cal. App. 5th 424, 434-36, 441-45 (2016) ("reasonable value" depends on expert testimony and is not determined by billed or discounted amounts alone). The fair market value of medical services is at best a non-actionable opinion.

Indeed, in analogous contexts, California courts have refused to impose tort liability premised on the fiction that there is a readily knowable, indisputable fair market price for complex medical procedures.  When a hospital provides emergency care to a health care service plan's member, with no contract between the hospital and the plan, the plan must pay the "fair market value" or "the 'going rate' for the services." *Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260, 1274 (2014).  And, when hospitals asked state courts to create a tort for intentional failure to accurately assess and pay such market value, they were flatly rejected because "[t]he social costs of recognizing [such] a new tort duty . . . are staggering." *Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 71 Cal. App. 5th 323, 337 (2021), *as modified* (Nov. 24, 2021). *Long Beach* explained that any duty to always accurately assess and pay fair value would be

**MOTION TO DISMISS COMPLAINT**

"impossible to comply with" given the uncertainties of how a jury might weigh market factors later, and that such lawsuits "would be subject to abuse": "[E]ven if it is desirable to try to draw a line between an ordinary, 'healthy' profit motive that does not warrant punitive damages and a truly venal profit motive that does, that line is far too illusory . . . ." *See Long Beach*, 71 Cal. App. 5th at 340. Under the guise of correcting "false" statements about market value (as if that were objectively possible), Uber asks this federal court to do—as function of state law on unjust enrichment—exactly what the state appellate court in *Long Beach* refused to do.

Moreover, Uber has failed to allege falsity with particularity; even if there were some sort of comparison that could show objectively ascertainable fraud from high charges, Uber has fallen far short by failing to plead any comparison for Radiance's bills. Of the three Radiance bills in the Complaint, Uber never pleads any benchmark for two of them: for Claimant B, Radiance's bills are discussed in only two paragraphs, neither of which provides any comparators (Compl. ¶¶ 76, 77); for Claimant E, Radiance's bill is one table entry with no detail (*id.* at ¶ 154).

Finally, for the one Claimant (A) where Uber makes any non-conclusory effort to plead falsity, its allegations as to its own expert's view fall far short. Compl. ¶ 52. For Uber offers only impermissible group pleading lumping together Dr. Khounganian's charges and Radiance's charges in some unspecified way. Uber creates the illusion of particularity by alleging its expert's negative opinion on "the $556,151.00 in total billed charges for Claimant A", but that total is *greater* than the individual totals Uber plead for Dr. Khounganian and for Radiance separately, yet *less* than the total of both defendants' bills together— meaning that Uber mixed and matched unknown items from two separate defendants' bills in some unknown way to impermissibly challenge unpled, unknown specific line items as fraudulent. Such aggregation violates Rule 9(b). *See, e.g.*, *Griffin v. Green Tree Servicing, LLC*, 166 F.Supp. 3d 1030, 1058 (C.D.

1   Cal. 2015) (dismissing fraud claim where plaintiff improperly conflated two

2   defendants' conduct, because Rule 9(b) "does not allow a complaint to merely

3   lump multiple defendants together but requires plaintiffs to differentiate their

4   allegations" and "inform each defendant separately of the allegations" as to it)

5   (internal quotations, alterations, and citation omitted).

6        Second, materiality, reliance, and causation are all likewise absent.  These

7   are aspects of Uber's fraud theory that are particularly within its knowledge—yet

8   Uber fails to plead the who, what, where, when, why and how for any of the

9   Claimants that allegedly received surgeries at Reliance.  Compl. ¶ 53 (Claimant

10  A's bills were presented by the Emrani law firm, and "as a result" Uber incurred

11  defense costs); ¶ 79 (alleging only that Claimant B's case settled, without even

12  conclusory allegations about bills being presented or reliance); ¶ 154 (nothing in

13  Claimant E's row on Uber ever seeing the bills, or any settlements or costs).  Uber

14  does not plead when Radiance's bills were presented to Uber, who at Uber

15  reviewed them, what aspects were material to Uber's decision-making, or how

16  Uber's reliance on such a bill proximately caused Uber to pay more. *See Kearns*,

17  567 F.3d at 1126 (particularity requires that plaintiff specify what

18  misrepresentations were made, when they were made, who made them, and what

19  plaintiff obtained as a result).

20       Not only are Uber's reliance allegations absent, but what Uber does plead

21  cuts against any plausible, let alone justifiable, reliance.  Uber says Radiance's

22  materials surfaced only in adversarial personal injury matters that Uber was

23  actively litigating with its own experts and counsel.  *See, e.g.,* Compl. ¶ 8 (records

24  "transmit[ted] to the lawyers" to inflate claims); ¶ 53 (Uber incurred defense costs

25  investigating and contesting the claim).  Uber's narrative is that it did not trust or

26  rely on Radiance's submissions, and part of its damages are investigative costs

27  incurred because it did ***not*** rely on the personal injury plaintiffs' submissions.

28       These same defects show that Uber's unjust enrichment claim also fails for

11

**MOTION TO DISMISS COMPLAINT**

1    lack of proximate causation.  Uber fails to plead facts on causation, to say nothing
2    of pleading with particularity.  And what it leaves to be inferred from the
3    Complaint only shows that intervening discretionary decisions by Uber and its
4    insurer, made in response to multiple independent inputs (such as Uber's own
5    experts' evaluations, emerging case facts, litigation strategy, its insurer's risk
6    tolerance, and settlement negotiation dynamics, to name a few) all break any
7    proximate causal chain to Radiance, a surgery facility that never litigated or
8    negotiated with Uber.  Where the alleged injuries "flow" from independent third-
9    party decisions, a defendant's acts are too remote for liability.  *See Canyon Cnty. v.*
10   *Syngenta Seeds, Inc*., 519 F.3d 969, 981-84 (9th Cir. 2008); *see also Mirkin v.*
11   *Wasserman*, 5 Cal. 4th 1082, 1088-92 (1993) (requiring causal connection between
12   the alleged fraudulent conduct and the loss, not merely that it was present
13   somewhere in the background of a later payment decision).
14          The absence of particular allegations as to materiality, reliance, and
15   causation in this case also highlights why Rule 9(b) exists and must be enforced.
16   Rule 9(b) safeguards defendants from having their reputations savaged by spurious
17   fraud charges that can never succeed.  *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th
18   Cir. 2001) (Rule 9(b) "safeguards a defendant's reputation and goodwill from
19   improvident charges of wrongdoing," exists to "prevent false or unsubstantiated
20   charges," and "to prohibit plaintiffs from unilaterally imposing upon the court, the
21   parties and society enormous social and economic costs absent some factual
22   basis") (citations and internal quotations omitted).  Enforcing Rule 9(b) here
23   would, for example, force Uber to plead why any reliance was justifiable despite
24   the expert critiques it received of the allegedly false bills.  It would also require
25   Uber to plead specifically how it was impacted by the supposed falsehoods—
26   including, if Uber is truly trying to proceed under this theory, how they impacted
27   Uber's internal, strategic legal and settlement considerations and why Uber thinks
28   it can still show proximate cause despite these additional steps.  Furthermore, if

**MOTION TO DISMISS COMPLAINT**

Uber needs to waive privilege to make these allegations, or if it cannot because those allegations would violate California's strict mediation privilege, that too must be fleshed out now, at the pleading stage. *See* Cal. Evid. Code § 1119; *see also Perez v. Indian Harbor Ins. Co.*, 613 F.Supp.3d 1171, 1181 (N.D. Cal. 2020). Uber cannot violate well-established pleading rules to stretch out its very public attack on defendants, with its attendant chilling and reputational harms, just to stall the day of reckoning when it must drop the case due to legal privileges. Rule 9(b) prevents such harmful gamesmanship.

(b)    <u>Uber's medically unnecessary theory fails</u>

Uber's theory that Radiance billed for supposedly unnecessary procedures also fails for the same reasons. At best, Uber has stated only a reasonable disagreement between two medical professionals' opinions, which is not actionable as fraud. *See U.S. v. DaVita Inc.*, No. 818CV01250JLSDFM, 2020 WL 3064771, at *8 (C.D. Cal. Apr. 10, 2020); Compl. ¶¶ 52 (only medical opinion allegation for Claimant A is conclusory), ¶¶ 54-79, 154 (no medical opinion allegations at all for Claimants B or E). Nor has Uber plead with any particularity as to materiality, reliance, or causation. *Id*. at ¶¶ 53, 79, 154.

But Uber's medical necessity theory fails as to Radiance for an additional reason: nowhere does Uber ever allege that Radiance exercises any medical judgment. To the contrary, Uber admits Radiance is merely a surgery center, it is only "the facility" that provides operating space and administrative support. Compl. ¶¶ 8, 61. Uber never alleges that Radiance determines what procedures to perform or opines on their necessity. This omission is fatal to Uber's theory:

- Falsity: Radiance's bills cannot be false representations as to whether the procedures were necessary when Radiance offers no medical opinions.
- Reliance: Uber cannot have relied on Radiance for medical opinions that Uber admits Radiance is not qualified to offer and does not offer.

13

- Causation: Radiance's failure to offer a medical judgment on necessity cannot have caused any Uber payment based on a belief as to necessity.

- Intent: Fraudulent intent need only be alleged generally, but Uber has alleged the opposite of intent.  By acknowledging that Radiance does not make medical judgments and thus ***could not know if a procedure was medically necessary at all***, Uber has affirmatively alleged that Radiance could ***not*** have ***knowingly*** misrepresented medical necessity.

(c)   Uber's lien theory fails

Nor can Uber state a claim by attacking Radiance's lien agreements as false for not disclosing alleged side agreements to discount for lower litigation outcomes.  *See* Compl. ¶ 26.  Here again, Uber fails Rule 9(b), particularly as to the nature of the misrepresentation, materiality, reliance, and causation.

***Critically, Uber never alleges that it ever saw the purportedly false lien language at all.***  Only Claimants A, B, and E are alleged to have any connection to Radiance.  Uber never mentions any lien for Claimant E (Compl. ¶ 154), and for Claimants A and B, it alleges the supposedly false lien terms ***only "[u]pon information and belief."***  *Id.* at ¶¶ 47, 75. (emphasis added).  Moreover, Uber admits that these liens are contracts solely between those Claimants and Radiance. *Id.* at ¶¶ 47 ("lien agreements with Claimant A"); 75 ("Claimant B executed an agreement with Radiance Surgery Center").  In sum, Uber brings a fraud claim ***on language it never identifies, in agreements it never saw and to which Uber is not a party***.

Even if Uber could be defrauded by a statement it admits it never read, Uber still fails Rule 9(b)'s standards because it never alleges what the supposedly false language actually said, who read it, when, or how it could have misled anyone or caused Uber any harm.  Uber never pleads, even in a conclusory fashion, what it understood those liens to mean or how they could have influenced Uber's litigation conduct.  Rather, Uber stays silent and hopes the Court will make its own

14

1    assumptions.  But Rule 9(b) demands more, and, as explained above, plays a vital

2    role here to prevent Uber from prolonging this meritless case just to harm

3    defendants' reputations.

4           Moreover, Uber's suggestion that the use of liens, rather than health

5    insurance, is somehow evidence of fraud also falls flat.  Compl. ¶¶ 2, 31, 39.

6    California patients have the right to seek medical treatment from doctors on a lien

7    basis instead of through their insurance, and the practice is common in personal

8    injury cases.  *Pebley,* 22 Cal. App. at 1276-78.  "A tortfeasor cannot force a

9    plaintiff to use his or her insurance to obtain medical treatment for injuries caused

10   by the tortfeasor."  *Id.*  That remains true even if "treating on a lien basis increases

11   the 'settlement value' of personal injury cases."  *Id.* at 1270; *see also Qaadir v.*

12   *Figueroa*, 67 Cal. App. 5th 790, 810 (2021) (plaintiff "had a right to seek treatment

13   outside of his insurance plan").  As *Pebley* explained, there are good reasons for

14   patients with insurance to seek treatment from doctors on a lien basis because,

15   among other reasons, "health care providers that bill through insurance, rather than

16   on a lien basis, may be less willing to participate in the litigation process."  *Id.*; *see*

17   *Gilman v. Dalby*, 176 Cal. App. 4th 606, 617-18 (2009) (public policy favors liens

18   so that injured plaintiffs can get needed, yet otherwise unaffordable, medical care).

19          Finally, as detailed below in discussing the "unlawful" prong of Uber's UCL

20   claim (Sec. IV.C.2.a.(2)), Uber's theory that the liens are "unjust" acts because

21   they are kickbacks violating Cal. Bus. & Prof. Code § 650(a) also fails.

22                  **3.      Uber cannot end-run the California Supreme Court's bar**

23                          **against follow-on torts for alleged litigation misconduct**

24          Uber's case is undeniably a subsequent litigation seeking a tort remedy for

25   alleged falsification of evidence in prior lawsuits.  Yet, Uber pleads an amorphous

26   "unjust enrichment" count, rather than a more specific tort expressly complaining

27   about evidentiary malfeasance in prior litigation.  Uber refuses to say what it really

28   means because the ***California Supreme Court has rejected the tort remedy Uber***

                                            15

1    ***seeks.  California law does not recognize follow-on tort claims for perjury,***

2    ***falsification or concealment of evidence in prior litigation,*** foreclosing such

3    attacks from every angle.  *See Taylor v. Bidwell*, 65 Cal. 489, 490 (1884) (no civil

4    action for perjury); *Agnew v. Parks*, 172 Cal. App. 2d 756, 765–66 (1959) (no tort

5    for concealment or withholding of evidence); *see also Cedars-Sinai Med. Ctr. v.*

6    *Sup. Ct.*, 18 Cal. 4th 1, 8-18 (1998) (no tort for litigant's intentional spoliation);

7    *Temple Cmty. Hosp. v. Sup. Ct.*, 20 Cal. 4th 464, 473–76 (1999) (extending *Cedars*

8    to block tort claims for nonparty intentional spoilation).

9    As the California Supreme Court explained in *Cedars,* when reviewing this

10    long line of cases, state law forecloses torts seeking to unravel prior litigation for

11    alleged evidentiary improprieties for multiple sound reasons:

12    (1) "These cases denying a tort remedy for the presentation of false evidence . . .

13    rest on a concern for the finality of adjudication" and the need to avoid

14    "[e]ndless litigation, in which nothing was ever finally determined . . . ." 18

15    Cal. 4th at 10, 11 (internal citations and quotation omitted).

16    (2) "[B]oth the strong policy favoring use of nontort remedies rather than

17    derivative tort causes of action to . . . correct litigation misconduct and the

18    prohibition against attacking adjudications on the ground that evidence was

19    falsified or destroyed" counsel against allowing such torts.  *Id.* at 11.

20    (3) Attacking prior evidentiary issues in "a proceeding separate from the

21    underlying action would result in duplicative proceedings[.]" *See id.* at 16.

22    (4) A later attack also fails to "avoid[] the potential for inconsistent results."

23    *See id.* at 16.

24    (5) "[T]he uncertainty of determining hypothetically" what the impact of

25    different evidence would be is also "sufficient reason for refusing to

26    recognize a tort remedy . . . ." *See id.* at 14.

27    The current case brings every one of the California Supreme Court's fears to life,

28    for Uber: (1) creates endless litigation by trying to undo resolved cases from years

16

1    ago, and (2) ignores its earlier failure to utilize preferred, available tools within

2    those prior cases to air its evidentiary grievances, so that (3) Uber can start a

3    duplicative proceeding for relitigating complex medical evidence issues in hopes

4    of (4) getting new results inconsistent with prior outcomes (including conflicting

5    with settlements to which Uber itself agreed), all (5) based on speculation on how

6    prior cases would have come out.  *See also Cal. v. IntelliGender, LLC*, 771 F.3d

7    1169, 1182 (9th Cir. 2014) (enjoining state restitution claims as post-negotiation

8    collateral attacks on settlement that are inconsistent with finality).

9         Uber cannot ask this federal court to expand the reach of state common law

10   unjust enrichment to conflict with controlling state authority.  Rather, this Court

11   should follow California state courts in rejecting forbidden follow-on torts for

12   falsified evidence, regardless of the label.  *Mercury Cas. Co. v. Sup. Ct.*, 179 Cal.

13   App. 3d 1027, 1034-35 (1986) (rejecting claims plead as fraud and bad faith that

14   were premised on allegedly false expert medical testimony); *Rios v. Allstate Ins.*

15   *Co.*, 68 Cal. App. 3d 811, 817-819 (1977) (rejecting bad faith claim premised on

16   false evidence and testimony); *Kachig v. Boothe*, 22 Cal. App. 3d 626, 636, 640-

17   641 (1971) (rejecting fraud and intentional infliction of emotional distress claims

18   based on false testimony and documents); *see also Cedars*, 18 Cal. 4th at 10 (citing

19   above approvingly as "Court of Appeal decisions [that] have rejected other

20   attempts, put forward under a variety of legal theories, to seek damages for the

21   presentation of false evidence").  Uber's case and theory are fundamentally at odds

22   with California law, making this a fatal flaw that Uber cannot cure by amendment

23   and that requires that Uber's claim be dismissed with prejudice.

24        **4.**    **Uber's failure to plead materiality with particularity means**

25             **that the voluntary payment doctrine bars Uber's claim**

26        California law precludes actions to recover monies that were voluntarily

27   paid with knowledge of the material facts.  *Sierra Invest. Corp. v. Cnty. of*

28   *Sacramento*, 252 Cal. App. 2d 339, 342 (1967) (recognizing that the "well-settled"

1   voluntary payment doctrine is "followed in this and other states."). Uber's only

2   possible rejoinder is that it lacked material facts, but Uber cannot simply argue

3   this—it must plead it, with the particularity required by Rule 9(b). Its failure to do

4   so means that the voluntary payment doctrine also bars its claims.

### 5.   Uber fails to allege that Radiance received benefits from Uber

7   Not only does Uber fail to allege that Radiance acted unjustly, but it also

8   fails to adequately allege that Uber enriched Radiance at all—which is fatal to

9   Uber's "unjust enrichment" claim. Uber does not allege that it paid Radiance a

10   single dollar. Instead, Uber stresses that it "incurred significant defense costs

11   investigating and defending" the claims. Complt. ¶¶ 53, 79. But defense costs

12   paid to Uber's investigators and legal counsel do not *enrich Radiance*, they *enrich*

13   *Uber's investigators and lawyers*. Even if Uber could allege that these costs were

14   somehow caused by Radiance (it cannot), they would at best be damages—not

15   restitution. *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985)

16   (distinguishing restitution from damages: "'damages' describes 'a payment made

17   to compensate a party for injuries suffered,' whereas 'restitution' takes place when

18   '[t]he defendant is asked to return something *he* wrongfully *received*; he is *not*

19   *asked to compensate the plaintiff for injury suffered as a result of his conduct.*'")

20   (emphasis added; internal citation omitted). But restitution is all that is available

21   under Uber's "unjust enrichment" claim (as "unjust enrichment" is merely the

22   incorrect label for a restitution claim).

23   For two Claimants, Uber alleges only litigation costs (Claimant A, Compl.

24   ¶ 53) or no costs at all (Claimant E, *id*. at ¶ 154). And even as to the one person

25   where Uber pleads "the matter was ultimately settled" (Claimant B), Uber never

26   alleges what portion of that settlement, if any, was disbursed to Radiance, when it

27   was paid, by whom, or under what terms. *Id*. at ¶ 79. Uber alleges that Radiance

28   billed Claimant B $100,300 (*id*. at ¶ 76) but never alleges that any of this bill was

18

1    paid through Uber's settlement—which is a critical omission given that a main

2    pillar of Uber's Complaint is that Radiance has a "secret side agreement" to

3    discount and ***not collect*** its billed charges, or possibly anything if the settlement

4    (about which Uber provides no details) was too low.  *See*, *e.g. id.* at ¶¶ 51, 77.  By

5    failing to allege any particulars at all about Claimant B's settlement, Uber has not

6    pleaded the bare minimum to state that Radiance was enriched, much less with the

7    specificity required by Rule 9(b).

8        Because unjust enrichment requires a benefit received by the defendant from

9    the plaintiff, this is another fatal defect. *Peterson*, 164 Cal. App. 4th at 1593.

10        **C.**    <u>**Uber's UCL Claim Fails**</u>

11            **1.**    **Uber's failure to plead that Radiance has Uber's money**

12                **means Uber has no UCL standing**

13        A private UCL plaintiff only has standing if it alleges that it "suffered injury

14    in fact and has lost money or property as a result of such unfair competition." Cal.

15    Bus. & Prof. Code § 17204; *Californians for Disability Rights v. Mervyn's, LLC*,

16    39 Cal. 4th 223, 227 (2006).  "Because remedies for individuals under the UCL are

17    restricted to injunctive relief and restitution, the import of [this] requirement is to

18    limit standing to individuals who suffer losses of money or property that are

19    eligible for restitution." *Buckland v. Threshold Enters., Inc.*, 155 Cal. App. 4th

20    798, 817 (2007).  And, restitution under the UCL is "the return of money or

21    property that was once in [the plaintiffs] possession" or money in defendant's

22    possession in which the plaintiff has a present "ownership interest." *Korea Supply*

23    *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).  Restitution under

24    the UCL is not the same as damages. *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254,

25    1266 (1992) ("[D]amages are not available under section 17203.").

26        As shown above, Uber has not adequately pled that it paid Radiance

27    anything at all—and thus has not pled a claim for restitution. Sec. IV.B.5.  Having

28    failed to allege any transfer of value from Uber to Radiance that could be

19

**MOTION TO DISMISS COMPLAINT**

1  "restored" as restitution, Uber lacks standing under the UCL. *See Day v. AT&T*

2  *Corp.*, 63 Cal. App. 4th 325, 340 (1998) ("restore" under the UCL means "to give

3  back, to make return or restitution of anything previously taken away or lost")

4  (internal parentheticals omitted).

5          **2.      Uber's "unlawful," "fraudulent," and "unfair" theories fail**

6          A UCL plaintiff must plead a claim under at least one of the UCL's three

7  disjunctive prongs: "unlawful, unfair, or fraudulent." *See* Bus. & Prof. Code

8  §17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,

9  20 Cal. 4th 163, 181 (1999).  Uber falls short on every prong.

10                 (a)    Unlawful: Uber fails to plead any statutory violations.

11          The "unlawful" prong borrows other laws, but Uber fails to plead any

12  predicate violation, and certainly does not do so with the particularity required by

13  Rule 9(b) of UCL claims grounded in fraud.  *Kearns,* 567 F.3d at 1125-27; *Vess,*

14  317 F.3d at 1105-06.

15                 *(1)     Uber has not alleged mail or wire fraud*

16          Uber cannot rely on federal mail and wire fraud statutes (18 U.S.C. §§ 1341,

17  1343) because Uber never pleads that Radiance violated them.[3]  As explained

18  above, Uber's fraud allegations are fatally deficient as to whether Radiance made

19  any misrepresentations at all, and completely lacking as to why any alleged

20  representations in bills or the status of medical liens was material.  Sec. IV.B.2.

21  Moreover, Uber fails to identify a single mailing or wire transmission attributable

22  to Radiance, offering none of the required who, what, when, where, or how of any

23  purported use of mail or wires.  Compl. ¶¶ 148-149 (wire and mail allegations for

24  Claimants A and B do not mention Radiance), 154 (no mail or wire allegations for

25  Claimant E).  Neither mail nor wire fraud can support Uber's UCL claim.

26                 *(2)     No Bus. & Prof. Code § 650 violation is alleged*

27

28  ───────────────────────

[3] Nor can Uber rely on RICO, for it does not assert RICO claims against Radiance.

**MOTION TO DISMISS COMPLAINT**

Uber's reliance on California's healthcare anti-kickback statute, Cal. Bus. & Prof. Code § 650[4] (Complt. ¶ 206), fares no better.

First, Section 650 only regulates "any person licensed under [Division 2]" of the Business & Professions Code (Cal. Bus. & Prof. Code § 650(a))—but Uber never alleges Radiance is such a licensee. Rather, surgery centers/clinics are generally licensed or accredited under the Health & Safety Code, not Business & Professions Code Division 2. *See* Cal. Health & Safety Code §§ 1200–1245 (clinic licensing); § 1248 & § 1248.1 (outpatient setting accreditation/operation). Uber cannot base its UCL claim on a statute that it fails to plead even applies to Radiance.

Second, Uber runs headlong into the safe harbor created by Section 650's companion provision, Cal. Bus. & Prof. Code § 657, which provides that "health care providers are hereby expressly authorized to grant discounts for health or medical care provided to any patient . . . [that] provider has reasonable cause to believe is not eligible for, or is not entitled to" health insurance coverage for the services at issue. *Id.* at (a)(4), (c). Uber's allegations do not show that Section 650, rather than Section 657, applies such that a Radiance discount (if any) to either Claimant A or B[5] could be an illegal kickback. Uber never pleads the insurance coverage details for either Claimant, much less that Radiance lacked "reasonable cause to believe" coverage was available for its services. Compl. ¶¶ 38-39, 54-79, 154; *see Pebley*, 22 Cal. App. 5th at 1276-77 (lien patients are treated as uninsured under California personal injury law).

Third, even if Section 650 could apply, Uber fails to allege the "secret" kickbacks with the who, what, when, where, and how Rule 9(b) demands. For

---

[4] Section § 650 makes it unlawful for anyone licensed under Division 2, or under the Chiropractic Initiative Act, to pay or receive any consideration as compensation for referring patients.

[5] Uber does not allege that the last Claimant (E) connected to Radiance was part of the supposed kickback scheme; Uber says nothing about liens, if E was covered by a side agreement, or future referrals from E's case. Compl. ¶ 154.

**MOTION TO DISMISS COMPLAINT**

1  starters, Uber never alleges that Radiance gave any discounts for Claimant A or B,

2  thus failing to allege that Radiance gave any consideration that could be a kickback

3  at all—further providing no specifics such as how much was forgiven, who gave

4  that discount, and when.  And even if Uber had pled that Radiance was not paid in

5  full, that still would not indicate any side agreement or kickback, only normal

6  market realities.  *See Gilman*, 176 Cal. App. 4th at 618 ("[U]nless the patient gets a

7  monetary recovery in a lawsuit, the medical liens will usually remain unpaid, and

8  the provider will never obtain payment for the services rendered.").  The other end

9  of Uber's alleged *quid pro quo* also fails: Uber never alleges with particularity

10  what Radiance received in return—Uber never provides the specifics of even one

11  referral to Radiance.  *Compare* Compl. ¶ 29 ("a steady stream of referrals" with no

12  details).  Uber's failure to specify either the kickback or what it bought dooms

13  Uber's theory.  *U.S. ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*, 142

14  F.4th 25, 35–37 (1st Cir. 2025) (affirming Rule 9(b) dismissal where relator failed

15  to plead the who, when, and how linking remuneration to specific referrals); *see*

16  *U.S. ex rel. Chao v. Medtronic PLC*, No. 2:17-cv-01903-MCS-SS, 2021 WL

17  4816647, at *7-9 (C.D. Cal. Apr. 12, 2021) (allegations of "unnecessary and

18  excessive" payments failed to sufficiently allege kickbacks and constituted

19  "generality in pleading fraud [that] is precisely what Rule 9(b) aims to preclude.")

20  (cleaned up); *see also Ebeid v. Lungwitz*, 616 F.3d 993, 998-1000 (9th Cir. 2010)

21  (affirming dismissal of false claims complaint for failing to plead the unlawful

22  referral scheme with particularity).

23  Section 650 cannot support Uber's UCL violation under the "unlawful"

24  prong (nor can it support a theory of "unjust" action for Uber's unjust enrichment

25  claim).

26  (b)    Fraudulent: Uber fails to plead falsity, materiality,

27  reliance, or causation

28

**MOTION TO DISMISS COMPLAINT**

Uber's attempt to proceed under the UCL's "fraudulent" prong fails for the same reasons that doom its unjust enrichment theory premised on alleged fraud. Sec. IV.B.2.  Those defects are equally fatal here—not only Uber's failure to plead falsity, but also its failure to allege materiality, reliance, and causation.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326–28 (2009) (private UCL plaintiff must plead actual reliance and economic injury "as a result of" the fraudulent conduct).

(c)    <u>Unfair: Uber cannot tether to any state policy</u>

Uber's final hope, the "unfair" prong, cannot save it.  This prong is not a catch-all for disappointed litigants, and the California Supreme Court has cautioned against "amorphous" unfairness theories.  Rather, unfairness theories must have a principled tether to a legislatively declared policy or similarly well-defined benchmark. *Cel-Tech*, 20 Cal. 4th at 63, 187-88.  Uber does not identify a single such policy, offering only conclusory labels that this Court should disregard. *See* Compl. ¶ 207 ("Defendants' actions are also unfair, insofar as they are immoral, unethical, and/or oppressive.").

Indeed, the only policy implicated by Uber's complaints about supposed misdeeds in prior litigation is California's strong common law doctrine favoring resolving such disputes within the same case and refusing to permit separate follow-on lawsuits.  *See* Sec. IV.B.3.  To the extent Uber's Complaint and theories connect to any state policy, it is one that kills them.

**3.    Uber's requested UCL remedies are not available**

(a)    <u>Uber fails to allege any basis for restitution</u>

Just as Uber failed to plead any available restitution for its unjust enrichment claim, Uber also has no recoverable restitution under the UCL.  Secs. IV.B.5, IV.C.1.

(b)    <u>Uber's injunctive relief is legally unavailable, impossibly vague, unmanageable, and against public policy</u>

23

1    Nor is injunctive relief available.  For Uber seeks to cure the harms *to Uber*,

2    which ***only occur when Radiance's bills are used in litigation***.  Thus, Uber's

3    injunction requires this Court to inappropriately ***control evidence and testimony***

4    ***Radiance provides to state courts hearing future personal injury lawsuits***.  *See*

5    *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286–87 (1970)

6    (federal courts may not enjoin state-court proceedings; "[a]ny doubts … should be

7    resolved in favor of permitting the state courts to proceed."); *Smith v. Bayer Corp*.,

8    564 U.S. 299, 306–08 (2011) (rejecting efforts to dictate to state courts through

9    federal injunctions; comity requires restraint). *Compare* Compl. Prayer for Relief ¶

10    6 (Uber seeks "appointment of a monitor and/or receiver" to evaluate Radiance's

11    bills before they are critiqued by opposing experts in separate personal injury

12    cases).  Not only would Uber's injunction impermissibly require continual judicial

13    management, but it would require such management of matters already being

14    managed by other courts, in the name of protecting those courts.  *See O'Shea v.*

15    *Littleton*, 414 U.S. 488, 500-02 (1974) (courts should not embark on "an ongoing

16    federal audit" of other tribunals' proceedings).

17    Such an injunction would also be impermissibly vague and contradict

18    California precedent that injunctions mandating transactions only at fair market

19    value are "legally unavailable" under the UCL.  *See Long Beach*, 71 Cal. App. 5th

20    at 343.  As covered above, health plans owe hospitals fair market value for

21    emergency care rendered without a contract, and *Long Beach* rejected the

22    hospitals' plea for a UCL injunction forcing plans to always pay market value

23    because the complexity of the medical services market meant that "such an

24    injunction would be so vague that persons of common intelligence must

25    necessarily guess at its meaning and differ as to its application; as such, it would be

26    invalid and could not form the basis for the potent weapon of contempt."  *Id.*

27    (internal quotations, alterations, and citations omitted).  Uber seeks the same

28    "legally unavailable" relief.

**MOTION TO DISMISS COMPLAINT**

Nor would focusing on the supposed side agreements work. This still impermissibly orders Radiance to always initially bill at market value, while improperly entangling the Court in individual patients' finances. And it thwarts the state's public policy of authorizing discounts because "[h]ealth care should be affordable and accessible" (*see* Cal. Bus. & Prof. Code § 657(a)): Uber seeks an order making it ***illegal to discount medical bills for injured individuals unable to pay***.

Ultimately, Uber's core issues—what, in specific personal injury cases, medical procedures should be performed, at what cost, and how those costs should be paid—are not amenable to injunctive relief from this Court. Nor is this lack of a remedy concerning, given the clear, superior alternative: having the other courts hearing those personal injury cases decide their own issues within their own cases. Uber's desired UCL injunction is unavailable as a matter of law.

### D.    Uber's Claims Are Blocked By California's Litigation Privilege And The *Noerr-Pennington* Doctrine

Radiance incorporates Sections IV.C.1-2 of its anti-SLAPP Motion. These arguments show that the fundamental theory of Uber's case is legally barred, and thus amendment would be futile and all claims against Radiance should be dismissed with prejudice.

### V.    CONCLUSION

Radiance requests that the Court dismiss Uber's Complaint against it with prejudice.

DATED: November 14, 2025    HALPERN MAY YBARRA GELBERG LLP

By:             */s/ Grant B. Gelberg*
                GRANT B. GELBERG
        *Attorneys for Defendant Radiance Surgery Center*

**MOTION TO DISMISS COMPLAINT**

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendant RADIANCE SURGERY

3  CENTER, certifies that this brief is not based on word count under Local Rule 11-

4  6.1 because this action is governed by the Standing Order (Dkt. 14 at G.4)

5  providing that "[m]emoranda of points and authorities in support of or in

6  opposition to motions shall not exceed twenty-five (25) pages."

7

8  DATED: November 14, 2025      HALPERN MAY YBARRA GELBERG LLP

9

10

11      By:      */s/ Grant B. Gelberg*
            GRANT B. GELBERG

12

13      *Attorneys for Defendant Radiance Surgery*
       *Center*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS COMPLAINT**