Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
John S. Lee (SBN 272229)
*jlee@larsonllp.com*
Amelia L.B. Sargent (SBN 280243)
*asargent@larsonllp.com*
Benjamin Falstein (SBN 342867)
*bfalstein@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant GREG KHOUNGANIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UBER TECHNOLOGIES, INC.,<br><br>            Plaintiff,<br><br>    vs.<br><br>DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, GSK SPINE, GREG KHOUNGANIAN, and RADIANCE SURGERY CENTER,<br><br>            Defendants. | Case No. 2:25-CV-06612<br><br>**DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF UBER TECHNOLOGY, INC.'S STATE-LAW CLAIMS UNDER CAL. CODE CIV. PROC. § 425.16, AND TO DISMISS ALL CLAIMS ASSERTED AGAINST DR. KHOUNGANIAN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declaration of Amelia L.B. Sargent; [Proposed] Order*]<br><br>Date:    March 11, 2026<br>Time:    1:30 p.m.<br>Crtrm.:  5C<br><br>Judge:  Hon. Sherilyn Peace Garnett |

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 11, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Sherilyn Peace Garnett in Courtroom 5C of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California 90012, Defendant GREG KHOUNGANIAN ("Dr. Khounganian") will and hereby does move the Court to strike Plaintiff UBER TECHNOLOGIES, INC.'s ("Plaintiff") state-law claims under California Code of Civil Procedure section 425.16, and to dismiss with prejudice all claims asserted by Plaintiff against Dr. Khounganian pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the concurrently filed motions of Defendants Downtown LA Law Group, Igor Fradkin, The Law Offices of Jacob Emrani, Jacob Emrani, and Radiance Surgery Center (the "Co-Defendants' Motions"); the concurrently filed Declaration of Amelia L.B. Sargent; and such further evidence and argument presented to the Court at or before the hearing.

PLEASE TAKE FURTHER NOTICE that Dr. Khounganian hereby joins in the Co-Defendants' Motions because the arguments raised therein apply with equal force to Dr. Khounganian.

PLEASE TAKE FURTHER NOTICE that Dr. Khounganian intends to seek attorney's fees and costs pursuant to California Code of Civil section 425.16(c)(1) in the event that he prevails on his motion to strike Plaintiff's state-law claims.

This motion is made following the conference of counsel on October 10, 2025 in accordance with Local Rule 7-3, during which the parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference. *See* Decl. of Amelia L.B. Sargent.

LARSON
LOS ANGELES

2

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1   Dated:  November 14, 2025          LARSON LLP

2

3

4                                     By: _____/s/ *Stephen G. Larson*_____

5                                          Stephen G. Larson
                                           John S. Lee
6                                          Amelia L.B. Sargent
                                           Benjamin Falstein
7                                     Attorneys for Defendant GREG
8                                     KHOUNGANIAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON
LOS ANGELES

3
DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................................12

II.  STATEMENT OF FACTS .......................................................................15

   A.   Dr. Khounganian Is a Respected Spinal Surgeon Who Treats Patients with Personal Injury Claims Against Uber Drivers .................................................15

   B.   The Complaint Alleges Dr. Khounganian Is Part of a "Fraud Scheme" for Treating Patients Injured in Uber Car Crashes and Testifying on their Behalf ....................................................................................16

   C.   Uber Claims Injury in the Form of Litigation Costs and Settlements to Injured Victims ...............................................................................20

   D.   "GSK Spine" Does Not Exist ......................................................20

III. Uber's State Law Claims Should Be Stricken Under California's Anti-SLAPP Statute .......................................................................................21

   A.   The State Law Claims Arise from Protected Activity ....................................22

   B.   The State Law Claims Have No Probability of Prevailing ..........................26

     1.   Unjust Enrichment Is Not a Recognized Cause of Action ..........................26

     2.   The State Law Claims Are Barred By the Litigation Privilege....................27

     3.   The State Law Claims Fail to Sufficiently or Plausibly Allege Fraudulent Conduct ....................................................................................30

     4.   The State Law Claims Are Unavailable Because Uber Does Not Plead an Inadequate Remedy at Law .............................................................33

     5.   Uber Lacks Standing to Assert the State Law Claims...............................34

IV.  Uber Fails to State Any Cognizable Cause of Action.........................................38

   A.   The Complaint States No Claim for Relief Under RICO ...............................38

     1.   Uber Fails to Allege an Enterprise.......................................................39

     2.   Uber Fails to Allege a Plausible Fraudulent Scheme ..............................42

     3.   Uber Fails to Allege a Cognizable RICO Injury .....................................50

   B.   The Complaint States No State Law Claim for Relief....................................51

   C.   The *Noerr-Pennington* Doctrine Bars This Entire Action ..............................51

     1.   Uber's Complaint Burdens Petitioning Rights ........................................52

     2.   Dr. Khounganian's Conduct Is Protected Petitioning Activity ..................53

     3.   The Statutes Can Be Construed to Avoid Burdening Dr. Khounganian's Petitioning Activity ....................................................................54

     4.   The Sham Litigation Exception Does Not Apply.....................................55

V.   Dr. Khounganian Joins Defendants' Arguments .............................................58

VI.  CONCLUSION ......................................................................................58

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4
5
*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,*
     121 F. Supp. 3d 950 (C.D. Cal. 2015)..................................................33

6
7
*In re Ambry Genetics Data Breach Litig.,*
     567 F. Supp. 3d 1130 (C.D. Cal. 2021)..............................................33

8
9
*Ardolino v. Mannkind Corp.,*
     2016 WL 4505172 (C.D. Cal. Aug. 23, 2016) ....................................21

10
*B&G Foods N.A., Inc. v. Embry,*
     29 F.4th 527 (9th Cir. 2022).......................................................*passim*

11
12
*Baiul-Farina v. Lemire,*
     804 F. App'x 533 (9th Cir. 2020).......................................................26

13
14
*Bell Atl. Corp. v. Twombly,*
     550 U.S. 544 (2007) ..............................................38, 43, 45, 50

15
16
*Boone v. Redevelopment Agency of City of San Jose,*
     841 F.2d 886 (9th Cir. 1988).......................................................55, 57

17
18
*Canyon County v. Syngenta Seeds, Inc.,*
     519 F.3d 969 (9th Cir. 2008) ...............................................................50

19
20
*Cedric Kushner Promotions, Ltd. v. King,*
     533 U.S. 158 (2001) ............................................................................39

21
*Cho v. Hyundai Motor Co., Ltd.,*
     636 F. Supp. 3d 1149 (C.D. Cal. 2022)..............................................34

22
23
*City of Columbia v. Omni Outdoor Advert., Inc.,*
     499 U.S. 365 (1991) ............................................................................56

24
25
*Dean v. Kaiser Found. Health Plan, Inc.,*
     562 F. Supp. 3d 928 (C.D. Cal. 2022)................................................22

26
27
*Eclectic Props. v. Marcus & Millichap Co.,*
     751 F.3d 990 (9th Cir. 2014).......................................................*passim*

28

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ............................................................ 38

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................ 36, 37

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ............................................................ 45

*Evans Hotels, LLC v. Unite Here! Loc. 30*,
    2021 WL 10310815 (S.D. Cal. Aug. 26, 2021) ................................. 50

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) ............................................................ 53

*Gomez v. Guthy-Renker*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................... 41, 42

*Gopher Media LLC v. Melone*,
    154 F.4th 696 (9th Cir. 2025) ............................................................ 22

*United States ex rel. Gough v. Eastwestproto, Inc.*,
    2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) ............................... 32, 33

*Holloway v. Clackamas River Water*,
    2014 WL 6998069 (D. Or. Sept. 9, 2014) ......................................... 50

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................ 38, 39, 47

*Itzhaki v. United States Liab. Ins. Co.*,
    536 F. Supp. 3d 651 (C.D. Cal. 2021) ................................................ 21

*In re Jamster Marketing Litigation*,
    2009 WL 1456632 (S.D. Cal. 2009) ................................................... 40

*In re JUUL Labs, Inc., Marketing, Sales Practices, and Products
    Liability Litigation*,
    497 F.Supp.3d 552 (N.D. Cal. 2020) ................................................. 40

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009) ............. 52, 53, 58

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir.2009) ............................................................ 31

LARSON
LOS ANGELES

*Key v. Qualcomm Inc.*,
    129 F.4th 1129 (9th Cir. 2025)..................................................................37, 38

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002)...........................................................................51

*In re NCAA Student–Athlete Name & Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013)...........................................................................22

*Ogden v. Wells Fargo Bank, N.A.*,
    2015 WL 13413390 (C.D. Cal Feb. 20, 2015)..................................................50

*In re Outlaw Lab'ys, LP Litig.*,
    352 F. Supp. 3d 992 (S.D. Cal. 2018) .............................................................57

*Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*,
    2021 WL 5326529 (S.D. Cal. Nov. 16, 2021)...................................................50

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018).......................................................................22, 51

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...........................................................................................56

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017).................................................................31, 38

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    732 F. Supp. 3d 1101 (N.D. Cal. 2024)............................................................57

*Reed v. E. End Props., Inc.*,
    2018 WL 6131211 (C.D. Cal. Mar. 15, 2018) .............................................53, 54

*Relevant Grp., LLC v. Nourmand*,
    116 F.4th 917 (9th Cir. 2024)..............................................................52, 56, 57

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................40, 41, 42

*Rosado v. eBay Inc.*,
    53 F. Supp. 3d 1256 (N.D. Cal. 2014)..........................................................31, 38

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ..........................................................................34

7

*Schrader Cellars, LLC v. Roach*,
    129 F.4th 1115 (9th Cir. 2025)..................................................................52

*Silverton v. Dep't of Treasury*,
    644 F.2d 1341 (9th Cir.1981)...................................................................39

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020).....................................................................34

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).........................52, 53, 54, 55

*Steele v. Hosp. Corp. of Am.*,
    36 F.3d 69 (9th Cir. 1994).........................................................................51

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................21

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008).....................................................................56

*Thomas v. Baca*,
    308 Fed. App'x 87 (9th Cir. 2009)............................................................50

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,
    & Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011).................................................39, 40

*In re Turner*,
    859 F.3d 1145 (9th Cir. 2017).............................................................34, 35, 36

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
    787 F. Supp. 2d 1213 (W.D. Wash. 2011)................................................33

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...............................................................45, 47

*Vollarroel v. Recology Inc.*,
    775 F.Supp.3d 1050 (N.D. Cal. 2025).......................................................42

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008)...................................................................41

*Watkins v. MGA Ent., Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021)......................................................36

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011).................................................................41

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022)...........................................................36, 46

**California Cases**

*Action Apartment Assn., Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007)................................................................................27

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016)...............................................................................22, 26

*Bergstein v. Stroock & Stroock & Lavan LLP*,
  236 Cal. App. 4th 793 (2015)........................................................................27

*Bermudez v. Ciolek*,
  237 Cal. App. 4th 1311 (2015)......................................................................35

*Blanchard v. DIRECTV, Inc.*,
  123 Cal. App. 4th 903 (2004)........................................................................28

*Castillo v. Toll Bros.*,
  197 Cal. App. 4th 1172 (2011) .....................................................................26

*Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Assn.*,
  13 Cal. App. 5th 757 (2017)..........................................................................23

*Edwards v. Centex Real Est. Corp.*,
  53 Cal. App. 4th 15 (1997)......................................................................28, 30

*Everett v. Mountains Recreation & Conservation Auth.*,
  239 Cal. App. 4th 541 (2015)........................................................................26

*Gilman v. Dalby*,
  176 Cal. App. 4th 606 (2009)..................................................................*passim*

*Gootee v. Lightner*,
  224 Cal. App. 3d 587 (1990)...............................................................28, 29, 30

*Hagberg v. California Fed. Bank*,
  32 Cal. 4th 350 (2004)...........................................................................27, 28

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

*Hooked Media Grp., Inc. v. Apple, Inc.*,
   55 Cal. App. 5th 323 (2020) ................................................................. 26

*Howard v. Drapkin*,
   222 Cal. App. 3d 843 (1990) ................................................................. 29

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) .......................................................................... 36

*Michael K. v. Cho*,
   113 Cal. App. 5th 1 (2025) ..................................................... 22, 23, 25

*Neville v. Chudacoff*,
   160 Cal. App. 4th 1255 (2008) ............................................................. 23

*Pebley v. Santa Clara Organics, LLC*,
   22 Cal. App. 5th 1266 (2018) ......................................... 37, 43, 44, 47

*People v. Duz-Mor Diagnostic Lab'y, Inc.*,
   68 Cal. App. 4th 654 (1998) ................................................................. 32

*Rohde v. Wolf*,
   154 Cal. App. 4th 28 (2007) ................................................................. 23

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ........................................................................... 30

*Tichinin v. City of Morgan Hill*,
   177 Cal. App. 4th 1049 (2009) ..................................................... 25, 26

*Timothy W. v. Julie W.*,
   85 Cal. App. 5th 648 (2022) ................................................................. 25

*Wang v. Heck*,
   203 Cal. App. 4th 677 (2012) ............................................................... 29

**Federal Statutes**

18 U.S.C.
   § 1962(c) ....................................................................................... 20, 40

Federal Rules of Civil Procedure
   Rule 9(b) .................................................... 31, 36, 38, 40, 45, 51
   Rule 11 ................................................................................. 14, 21
   Rule 12(b)(6) ..................................................................... 13, 22, 51

LARSON
LOS ANGELES

**California Statutes**

California Business & Professions Code

§ 650 ...............................................................................................31, 32, 33

§ 17200 .........................................................................................13, 34, 36

California Code of Civil Procedure

§ 425.16 ....................................................................................13, 22, 23, 58

§ 47, subd.(b) ...........................................................................................27

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

LARSON
LOS ANGELES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       Plaintiff Uber Technologies, Inc. has embarked on a dangerous and damaging

4  nationwide campaign to weaponize the RICO statute and associated state-law claims

5  as a tool to chill personal injury litigation.  Uber absurdly claims that entirely

6  unrelated groups of lawyers and doctors in jurisdictions as far-reaching as New

7  York, Pennsylvania, Florida and California each comprise distinct "racketeering"

8  enterprises directed at Uber.  Their supposed organized crime: providing medical

9  treatment to those injured by at-fault Uber drivers, and seeking related legal redress

10  for the victims' injuries.

11       Defendant Dr. Greg Khounganian is a new casualty of Uber's lawfare.  He is

12  a board-certified spinal surgeon with a flawless record at USC's medical center and

13  in his own private practice.  Dr. Khounganian performs procedures involving the

14  cervical, thoracic, and lumbar spine.  Part of his practice involves the lien-based

15  treatment of car accident victims, including those harmed by Uber drivers.  Offering

16  treatment on a lien basis expands access to premium care that would otherwise be

17  unavailable through limited, cost-contained insurance networks.

18       Uber's coordinated nationwide attack on personal injury claimants seeking

19  lien-based care is designed to eliminate this higher-end healthcare option and drive

20  claimants back to lower-cost insurance-based providers.  In fact, Uber has just

21  recently sponsored a ballot initiative toward that end.  It is immaterial to Uber

22  whether its lawsuits succeed; simply by filing, Uber ruins the reputations of

23  professionals like Dr. Khounganian and deters personal injury firms from directing

24  claims at Uber for fear of winding up in the crosshairs of this deep-pocketed

25  aggressor.  Indeed, Uber's actions upon filing this lawsuit are telling.  The very next

26  day after filing, Uber's lawsuit was splashed across the major media outlets.  Uber

27  then sat on its hands for 48 days before initiating service on Dr. Khounganian.

28       Uber's improper purpose underlying this action (and its similar lawsuits

LARSON
LOS ANGELES

12

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

against others) is obvious from the fact that the asserted claims are barred on their face as a matter of law.  All of the conduct at issue arises from protected litigation and prelitigation activity—*i.e.*, lawsuits against Uber for its drivers' injury-causing accidents.  In other words, Uber has filed this lawsuit in retaliation for being sued.  Notably, in the underlying actions, Uber *settled* the claims.  Instead of defending the claims on their merits at the time, Uber now wages litigation against those who treated the victims' injuries and obtained legal redress on their behalf.  The *Noerr-Pennington* doctrine and California's anti-SLAPP statute exist precisely to prevent such perversion of the legal system.

Uber's lawsuit is a quintessential "SLAPP" action designed to chill protected litigation activity.  Uber's own Complaint repeatedly states in express terms that its claims against Dr. Khounganian arise out of this protected activity.  Moreover, Uber's purported California state-law claims—for unjust enrichment and violation of Business and Professions Code section 17200—fail on their face as a matter of law.  Unjust enrichment is not even a cause of action under settled authority.  And the section 17200 claim is barred by the litigation privilege and fails to state the elements of such a claim.  Accordingly, because there is no reasonable possibility of success on the merits, these state-law claims must be stricken under California Code of Civil Procedure section 425.16 as impermissible "SLAPP" litigation.

More broadly, *all* of Uber's claims—state and federal—should be dismissed under Rule 12(b)(6) for failure to state a claim.  None of the conduct alleged is illegal, under any theory of fraud.  The so-called RICO allegations rest on a house of cards: Uber hypothesizes purported "side agreements" between Dr. Khounganian and personal injury attorneys to discount medical bills as the sole hook for a "concealment" theory of fraud.  Setting aside that no such agreements exist, no duty exists in law to disclose such "side agreements," and certainly not to a third party like Uber with whom Dr. Khounganian never interacted.  Without a duty of disclosure, there can be no actionable concealment—and thus no fraud.  Indeed, the

LARSON
LOS ANGELES

13

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

California Court of Appeal has expressly held that personal injury victims may lawfully elect and seek as damages from tortfeasors like Uber the cost of lien-based care rather than being forced to rely on their medical insurance.  And caselaw expressly acknowledges the financial reality that if a treated patient does not obtain a monetary recovery in a lawsuit, such medical liens will likely remain unpaid.  That is not fraud; it is life.  Uber thus fails to plausibly establish the RICO elements— much less to the heightened degree of particularly that the law requires.

The remainder of Uber's Complaint devolves into a mishmash of contradictory and facially implausible allegations.  Uber contends Dr. Khounganian issued faulty medical opinions, despite admitting other non-defendants arrived at the same medical conclusions and the patients likewise received related treatment from non-defendant facilities.  Uber cannot mount a belated, collateral challenge to medical necessity of care in the underlying actions here, after having failed to prevail on that point in those cases.  Just as fatally, Uber cannot even establish baseline standing due to the absence of any allegation establishing proximation cause between any action by Dr. Khounganian and any injury suffered by Uber.  And the only purported injury Uber identifies—litigation expenses—cannot be recovered through RICO.  Uber's claims fail at every level.

Uber's indifference to the actual merits of this case is aptly captured by its inclusion of "GSK Spine" as a supposed hub of the RICO enterprise.  No such entity exists.  Indeed, Uber's allegation that "GSK Spine" is "a limited liability company duly organized and existing under the laws of the State of California" cannot withstand Rule 11 scrutiny.  Uber did not conduct the most basic diligence of confirming the existence of this entity on the website of the Secretary of State, on which "GSK Spine" nowhere appears.  It is a fictional entity that is part of a fictional RICO enterprise.

At bottom, this is a lawsuit designed purely for tabloid effect with no meaningful effort at substance.  To characterize it is as merely frivolous, however,

LARSON
LOS ANGELES

14

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

does not do justice to the severely damaging impact its filing has on professionals like Dr. Khounganian, who rely on their reputation to earn a livelihood.  In recognition of the particularly "stigmatizing effect" that unfounded RICO claims pose to defendants, the Ninth Circuit has emphasized the need to "flush out" such pernicious claims at the earliest possible opportunity.  This is precisely such a case that warrants swift and permanent relief at the pleading stage.  This motion should be granted, and Uber's case should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

### A.   Dr. Khounganian Is a Respected Spinal Surgeon Who Treats Patients with Personal Injury Claims Against Uber Drivers

Dr. Khounganian is a licensed orthopedic surgeon specializing in spine surgery.  Compl. ¶ 12.  Certain of his patients were injured in car crashes involving Uber drivers.  *Id.* ¶ 8.  These patients are referred to Dr. Khounganian by personal injury lawyers in specific connection with "lawsuits and/or claims."  *Id.*  Prior to recommending any course of treatment, each patient attends an initial orthopedic spine evaluation conducted by Dr. Khounganian, during which he assesses the nature and extent of their injuries.  *Id.* ¶¶ 40-41, 60, 66, 87, 108.  Following the initial evaluation, Dr. Khounganian would document his diagnoses and opinions regarding causation, and he would sometimes recommend and perform surgeries or other procedures on the injured patients.  *Id.* ¶¶ 44-46, 60, 66, 87, 90, 108.

As a medical expert who has performed numerous successful spinal surgeries, and given his particular experience treating patients with pending personal injury claims, Dr. Khounganian is a preferred choice for many patients involved in personal injury actions.  *Id.* ¶ 8.  As a patient-favorable alternative to billing through health insurance companies—which typically dictate the patients' choice of medical provider, require expensive copays and other charges, deny needed care, and artificially cap the standard reimbursement for particular procedures—Dr. Khounganian instead enters into medical lien agreements with his patients by which

he is to be compensated on a deferred basis through the patients' eventual recovery in the personal injury actions. *Id.* Due to the lien arrangements, the resulting charges for Dr. Khounganian's services are not subject to the artificially-capped amounts dictated by insurers, *i.e.* the "market rate." Uber refers to these charges as "above-market" and "artificially inflated." *Id.* ¶ 22.

Dr. Khounganian carefully documents his diagnoses for each patient, his opinions regarding causation of their injuries, the treatments and procedures he performs, and the resulting medical bills for his services, which he then transmits to personal injury attorneys for use in pending litigation, including claims against Uber. *Id.* ¶ 4. As demonstrated by Uber's Complaint, the highly effective services Dr. Khounganian provides for his patients exposes Uber to future personal injury liability, such that Uber now seeks equitable relief to "prevent [his] conduct going forward." *Id.* ¶ 10.

**B.** **The Complaint Alleges Dr. Khounganian Is Part of a "Fraud Scheme" for Treating Patients Injured in Uber Car Crashes and Testifying on their Behalf**

According to the Complaint, the medical services Dr. Khounganian provides his patients are part of a "fraud scheme" against Uber in order "to artificially inflate the damages in lawsuits against Uber." *Id.* ¶¶ 2, 22. First, Uber alleges Dr. Khounganian's medical bills were "false and misleading" and/or "inflated" because he entered into "secret side agreement[s]" with referring personal injury attorneys. In these "secret side agreements," Dr. Khounganian allegedly agreed to discount his medical bills—forgiving the debt to the injured victim—if the claimant's recovery was insufficient to cover his services' full cost. *Id.* ¶¶ 2-3. Uber contends that discounting his medical bills depending on the victim's recovery renders Dr. Khounganian's bills fraudulently "inflated", because the agreements were not disclosed to Uber. *Id.* According to the Complaint, the benefit Dr. Khounganian received from the purported side agreements was the expectation of future personal

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1    injury referrals.  *Id.* ¶ 29.

2         Uber also alleges with zero factual basis that Dr. Khounganian's medical

3    treatment was itself fraudulent because despite *actually being in car crashes* and

4    *actually seeking treatment for injuries*, including from medical providers *other than*

5    *Dr. Khoungian*, the personal injury victims were, according to Uber, "not

6    injured."  Stripped of its conclusory allegations, the facts alleged are as follows:

7         **Claimant A.**  Claimant A was in a car crash while driving on December 9,

8    2019.  *Id.* ¶ 37.  Although he did not go directly to the emergency room, a week

9    later, he independently sought medical care for muscle pain.  *Id.* ¶ 38.  He then

10    consulted with the Emrani firm, who referred him to Dr. Khounganian for an

11    orthopedic spine evaluation.  *Id.* ¶ 39.  Claimant A elected not to use his medical

12    insurance (as is his right) and entered into a lien agreement with Dr. Khounganian.

13    *Id.* ¶¶ 39, 47.  On February 24, 2020, Dr. Khounganian performed a medical

14    evaluation and determined that Claimant A sustained an injury that was likely

15    "caused by and/or exacerbated by" the car crash, and recommended surgery.  *Id.* ¶

16    41.  Dr. Khounganian performed two surgeries on Claimant A, one on December 23,

17    2020, and another on February 19, 2021, *id.* ¶¶ 45-46, and generated bills for his

18    treatments pursuant to a lien agreement, *id.* ¶¶ 47-48.  The lien agreement says that

19    Claimant A bears the responsibility to pay the fees.  *Id.*

20         Uber alleges an Independent Medical Evaluation (i.e., its rebuttal expert in the

21    underlying litigation) concluded the surgery was medically unnecessary and below

22    the standard of care.  *Id.* ¶ 52.  This evaluation and a subsequent medical bill

23    analysis further allegedly concluded that the charges for the procedures were either

24    "ten times" or "five times" more than the reasonable value of the care Claimant A

25    received.  *Id.*  Uber alleges it incurred significant defense costs "legal fees and out-

26    of-pocket costs in defending "lawsuits."  *Id.* ¶¶ 53, 126.  Uber does not allege how

27    the claim was ultimately resolved, nor whether Dr. Khounganian was in fact paid or

28    did in fact discount his fees.

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

***Claimant B.***  Claimant B was in a car crash with an Uber Eats driver on March 10, 2019.  *Id.* ¶ 54.  Following the accident, Uber alleges Claimant B retained the Emrani firm and then saw *other medical providers—not Dr. Khounganian*.  *Id.* ¶ 55.  These *other medical providers* provided care to Claimant B for *two years*, during which time the Emrani firm sent a demand letter and eventually filed a lawsuit against Uber.  *Id.* ¶¶ 57-59.  The Emrani firm's demand letter allegedly stated that the *other medical providers* had determined Claimant B suffered "numerous spinal injuries and would need to undergo future cervical fusion surgery."  *Id.* ¶ 57.  After the lawsuit was filed, Claimant B was referred to Dr. Khounganian, who saw her via telehealth on May 18, 2021.  *Id.* ¶ 60.  Based on the prior two years' records of "conservative management" of Claimant B's injuries through the other medical providers, Dr. Khounganian recommended surgery, and further concluded that the injury was "caused by and/or exacerbated by" the car crash.  *Id.* ¶¶ 60, 63.  Dr. Khounganian performed surgery on July 16, 2021.  *Id.* ¶ 66.  Following surgery, Claimant B completed thirteen visits with a physical therapist.  Only in the final few visits did Claimant B report her pain as 0 out of 10.  *Id.* ¶ 68.  As is common with spinal injuries, and even when patients report no pain, Dr. Khounganian opined that Claimant B would likely require future surgical treatments.  *Id.* ¶ 69.

Dr. Khounganian's office prepared bills for the treatment, *id.* ¶ 73, and Uber alleges Dr. Khounganian had a lien agreement with Claimant B "on information and belief."  *Id.* ¶ 72.  Uber claims Dr. Khounganian's bills were "four times more than that quoted by a separate spine surgeon for a similar spinal surgery."  *Id.* ¶ 78. Uber ultimately settled the matter.  *Id.* ¶ 79.  Uber does not allege that Dr. Khounganian was in fact paid or did in fact discount his fees.

***Claimant C*.**  Claimant C was a passenger in an Uber headed to LAX when he was involved in a car crash on March 8, 2019.  *Id.* ¶ 80.  Although he chose to return home rather than seek emergency on-the-spot treatment, less than a week later (six

LARSON
LOS ANGELES

18

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

days, not eight), Uber admits Claimant C sought "treatment for his injuries" at a chiropractic clinic in St. Louis, Missouri. *Id.* ¶ 81. Within "a few weeks" of the accident, Claimant C eventually retained the DTLA Law Firm. *Id.* ¶ 84. As Uber admits only at the end of its disquisition, despite allegedly non-existent pain levels and a video clip of himself "bouncing, dancing, and singing," Claimant C did in fact have a lumber disc herniation at L5-S1 according to MRI scans. *Id.* ¶¶ 81-83, 99. He was referred to Dr. Khounganian, to whom he reported his worsening symptoms of "lumbar spine pain with radiating symptoms to his left lower extremities." *Id.* ¶ 87. Dr. Khounganian ultimately concluded that "conservative management" of Claimant C's injuries had failed and that surgery would eventually be necessary. *Id.* ¶ 91. Dr. Khounganian performed surgery on January 17, 2023. *Id.* ¶ 93.

Confusingly, Uber alleges "on information and belief" that Claimant C had a "sham lien agreement" with Dr. Khounganian, *id.* ¶¶ 85, or possibly some other "fraudulent and misleading agreement," *id.* ¶ 94, but Uber also states Dr. Khounganian's office prepared "health insurance claim forms," not bills, for Claimant C's treatment. *Id.* ¶ 95. Uber settled Claimant C's case in mediation. *Id.* ¶ 100. Uber does not allege that Dr. Khounganian was in fact paid or did in fact discount his fees, though it alleges Claimant C testified he never paid Dr. Khounganian. *Id.* ¶ 98.

***Claimant D.*** Claimant D was riding in an Uber when it was involved in a "three-car, rear-end" car crash on January 2, 2019. *Id.* ¶ 98. Similar to Claimant C, he then obtained treatment from *other medical providers* referred by DTLA Law Group. *Id.* ¶ 103. Six days after the crash and for approximately four months thereafter, Claimant D was treated by a "shock wave therapist and a chiropractor." *Id.* ¶ 105. That apparently failed to mitigate Claimant D's injuries, and in late August 2019 and "proceeding through 2020," he was treated at a "pain management clinic, where he underwent lumbar medial branch blocks." *Id.* ¶ 106. On July 16, 2020, Dr. Khounganian evaluated Claimant D and determined that his back pain

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

required surgery.  *Id.* ¶ 108.  He further opined that the diagnosis was "caused by and/or exacerbated by" the car crash Claimant D suffered.  *Id.* ¶ 110.  No surgery was performed.  Uber alleges "on information and belief" that Claimant D had a "sham lien agreement" with Dr. Khounganian, *id.* ¶¶ 104, but alleges only a $1500 bill for treatment was prepared.  *Id.* ¶ 112; *see also id.* ¶ 154 (chart).  According to Uber, Dr. Khounganian then referred Claimant D to an acupuncturist and a physical therapist.  *Id.* ¶ 114.  Uber ultimately settled the matter.  *Id.* ¶ 118.  Uber does not allege that Dr. Khounganian was in fact paid or did in fact discount his fees.

Uber further alleges five additional cases that it claims are part of the "pattern of fraudulent billing activity."  *Id.* ¶ 154.  No details are provided other than the referring law firm and purported billing amounts; it is clear in at least two of the additional five (Claimants F and I), no surgery was billed or performed.  That is, in three out of the nine examples Uber relies on to illustrate the purported scheme of allegedly inflated and unnecessary surgeries, there was in fact *no surgery*.

Critically, each of the underlying instances of supposed fraud occurred in the context of personal injury lawsuits filed against Uber.  *Id.* ¶¶ 115, 148-150.  In each case, the allegedly fraudulent documentation prepared by Dr. Khounganian containing his opinions regarding causation and recommended treatments were transmitted to the personal injury lawyers for use in legal proceedings.  *Id.* ¶ 4.

## C.  Uber Claims Injury in the Form of Litigation Costs and Settlements to Injured Victims

Although it now contends that none of the four Claimants were actually injured, Uber elected to settle the claims.  *Id.* ¶¶ 79, 100, 118.  Uber claims as damages the litigation-related expenses it incurred in defending and settling the four underlying personal injury actions.  *Id.* ¶¶ 125-127.

## D.  "GSK Spine" Does Not Exist

Uber alleges that Dr. Khounganian owns and controls "GSK Spine," which constitutes a RICO enterprise under 18 U.S.C. § 1962(c).  *Id.* ¶¶ 156-164 (First

LARSON
LOS ANGELES

20

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1   Cause of Action).  According to Uber, "GSK Spine is a limited liability company

2   duly organized and existing under the laws of the State of California," and that

3   "GSK Spine maintained its principal place of business in California and was owned

4   and controlled by Khounganian." *Id.* ¶ 13.  Further, on September 5, 2025, Uber

5   filed a Proof of Service purporting to indicate service of the Summons and

6   Complaint on GSK Spine's registered agent.  Dkt. 29.

7       Contrary to the allegations in the Complaint, however, there is no "limited

8   liability company" by the name of "GSK Spine" on record with the California

9   Secretary of State.  The entity does not exist.  Dr. Khounganian respectfully requests

10  that the Court take judicial notice of the California Secretary of State's California

11  Business Search database, which reflects no registered limited liability company

12  under the name "GSK Spine."[1]  California Business Search, Cal. Sec'y State (last

13  updated Sep. 15, 2025), https://bizfileonline.sos.ca.gov/search/business.  As its non-

14  existence would have been learned through minimal diligence, Uber's allegations

15  appear to lack the requisite reasonable inquiry required by law.  *See* Fed. R. Civ.

16  Proc. 11.

17  **III.  UBER'S STATE LAW CLAIMS SHOULD BE STRICKEN UNDER**

18  **CALIFORNIA'S ANTI-SLAPP STATUTE**

19      This is a quintessential "SLAPP" lawsuit.  Uber's own Complaint repeatedly

20  admits that its claims against Dr. Khounganian arise out of protected litigation

21

22  _____

23  [1] When ruling on a motion to dismiss, a court may look beyond the pleadings at

24  "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Under FRE 201, "[j]udicial notice is

25  appropriate for facts 'not subject to reasonable dispute' that are generally known or are capable of accurate and ready determination by resort to 'sources whose

26  accuracy cannot reasonably be questioned.'" *Ardolino v. Mannkind Corp.*, 2016 WL 4505172, at *4 (C.D. Cal. Aug. 23, 2016) (quoting FRE 201(b)).  In addition,

27  "the Court may take judicial notice of matters of public record." *Itzhaki v. United States Liab. Ins. Co.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021).

28

LARSON
LOS ANGELES

21

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

activity.  And the two purported California state-law causes of action, for unjust enrichment and UCL violation, are plainly barred as a matter of law.  California Code of Civil Procedure section 425.16 thus compels these claims to be stricken.

"California's anti-SLAPP statute is designed to discourage suits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013) (citation omitted).  "Such a motion allows courts to dismiss at an early stage unmeritorious litigation that challenges various kinds of protected speech." *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 933 (C.D. Cal. 2022). "Federal courts give full effect to the anti-SLAPP statute." *Id.*; *see also Gopher Media LLC v. Melone*, 154 F.4th 696, 699 n.2 (9th Cir. 2025) (declining to revisit prior holding that California's anti-SLAPP statute applies in federal court).

Courts evaluate anti-SLAPP motions in two steps.  "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (citation omitted).  "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." *Id.*  If an anti-SLAPP motion "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

### A.    The State Law Claims Arise From Protected Activity

"To encourage continued participation in matters of public significance and to ensure such participation is not chilled through litigation abuse, the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.'" *Michael K. v. Cho*, 113 Cal. App. 5th 1, 7-8 (2025) (citing Cal. Code Civ. Proc. § 425.16(a)).  "Section 425.16 is construed broadly, to protect the right of litigants to

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions." *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007) (citation omitted).

Accordingly, the scope of petitioning activity protected under the anti-SLAPP statute is expansive. It includes, inter alia, "any written or oral statement or writing made before a … judicial proceeding" and further protects "any written or oral statement or writing made in connection with an issue under consideration or review by a ... judicial body." Cal. Code Civ. Proc. § 425.16(e)(1)-(2). "A statement is 'in connection with' an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of … section 425.16, subdivision (e) if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding." *Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Assn.*, 13 Cal. App. 5th 757, 779 (2017).

Unsurprisingly, "courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.'" *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268 (2008) (citation omitted). "The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation." *Michael K.*, 113 Cal. App. 5th at 10.

Here, the entirety of Uber's claims against Dr. Khounganian are expressly grounded in protected litigation activity. For instance, Uber alleges:

- "Khounganian accepts referrals from lawyers who have cases against Uber with the understanding that **he will perform specific acts to increase the value of their lawsuits.**" (Compl., ¶ 8, emphasis added.)

- "The unnecessary medical treatments, fraudulent medical records, and fraudulent and misleading medical bills allowed Emrani, Fradkin, and their law firms to attempt **to induce significantly larger settlement payments out of Uber in personal injury lawsuits.**" (*Id.*, ¶ 9, emphasis added.)

LARSON
LOS ANGELES

23

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

- "The scheme creates fraudulent bills and records of medical necessity and/or causation **to artificially inflate the damages in lawsuits against Uber**." (*Id.*, ¶ 22, emphasis added.)

- "But **to maximize their eventual recovery in their fraudulent lawsuits**, Fradkin and Emrani steer these claimants away from medical providers who would bill their health insurance. Instead, these claimants are directed to specified medical providers . . . including Khounganian." (*Id.*, ¶ 25, emphasis added.)

- "Defendant Khounganian and his medical practice, Defendant GSK Spine, are important players in this fraud. While unnecessary treatments from various medical providers allow Emrani and Fradkin **to increase the value of their lawsuits materially, it is the costly, unnecessary, and/or causally unrelated surgeries recommended and performed by Khounganian that provide the most significant artificial damages enhancement** in the scheme." (*Id.*, ¶ 33, emphasis added.)

- "The lawyer and law firm Defendants use false medical records and unnecessary treatments to attempt **to fraudulently induce significantly larger settlement payments from Uber in personal injury lawsuits**." (*Id.*, ¶ 126, emphasis added.)

- "Uber has been forced to **incur legal fees and out-of-pocket costs in defending these lawsuits** and responding to fraudulent evidence and inflated damages claims in excess of what would have otherwise been required." (*Id.*, ¶ 126, emphasis added.)

- "[T]the production of fraudulent medical records and medical bills regarding those injuries and their causation that could be used to **artificially inflate damages in resulting litigation**, (iii) the use of the fraudulent medical and billing records and materially false statements **to advance such litigation**." (*Id.*, ¶ 129, emphasis added.)

Uber's description of so-called "Claimant B" provides an apt case in point. *See* Compl., ¶¶ 54-79. According to Uber, "[o]n March 9, 2021, Claimant B filed a lawsuit against Uber." *Id.*, ¶ 59. Only at this point was Claimant B then "directed [] to consult with Khounganian." *Id.* The "first appointment" with Dr. Khounganian subsequently took place on May 18, 2021. Uber then asserts that "the medical bills were artificially inflated," which supposedly damaged Uber because "[i]n addition to the settlement amount, Uber incurred significant defense costs in defending against the litigation." *Id.*, ¶¶ 78-79.

Uber's express allegations thus leave no doubt that its claims against Dr. Khounganian arise out of purported conduct performed "in connection with or in

LARSON
LOS ANGELES

24

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

preparation of litigation." *Michael K.*, 113 Cal. App. 5th at 10. It is well established that protected petitioning activity includes not only conduct by litigants and their attorneys, but also that of the attorneys' agents that assist in preparing for litigation. For instance, in *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1068 (2009), the California Court of Appeal held that the right of petition protected an attorney's hiring of a private investigator to investigate rumors of an affair between the city manager and the city attorney, the outcome of which would determine how that attorney proceeded in a matter he was retained to handle. In concluding that this investigative conduct fell "within the protected 'breathing space' of the right to petition," the court explained that, "[w]hen one suspects that another has caused harm, a preliminary investigation is usually necessary in order to know whether one has a potential legal claim, evaluate the likelihood of success, and decide whether or not to assert it. Consequently, the investigation of a potential claim is normally and reasonably part of effective litigation, if not an essential part of it." *Id.* at 1068-1069. "[T]he prelitigation investigation of a potential claim is no less incidental or related to possible litigation than prelitigation demand letters and threats to sue, which are entitled to protection." *Id.* at 1069.

Similarly, in *Timothy W. v. Julie W.*, 85 Cal. App. 5th 648, 658 (2022), where the plaintiff brought claims against a private investigator for revealing sensitive information to third parties during an underlying divorce proceeding, the appellate court rejected plaintiff's argument that the investigator's conduct fell outside of the anti-SLAPP statute, explaining that the plaintiff "vastly overstates the connection that must exist between the alleged conduct and judicial proceedings." The investigator "was hired in furtherance of the ongoing dissolution proceedings to conduct a financial investigation, which included [plaintiff's] ... alleged financial wrongdoing relating to the sensitive information," and thus "disclosing it was necessary for [the investigator] to do his job." *Id.* at 658-659.

As Uber alleges here, each of the personal injury claimants identified in the

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

LARSON
LOS ANGELES

1  Complaint were referred to Dr. Khounganian by "lawyers who have cases against

2  Uber," and Dr. Khounganian specifically generated "medical records and medical

3  bills" for these claimants for use "in resulting litigation." Compl. ¶¶ 8, 129. In the

4  context of personal injury lawsuits, such conduct "is normally and reasonably part

5  of effective litigation, if not an essential part of it," and is therefore protected.

6  *Tichinin*, 177 Cal. App. 4th at 1069. Consequently, the first step of the anti-SLAPP

7  inquiry is easily established by Uber's own pleaded admissions, which state in

8  unqualified terms that the claims here arise out of litigation activity.

9       **B.    The State Law Claims Have No Probability of Prevailing**

10       Because Dr. Khounganian's alleged conduct is protected activity, "the burden

11  shifts to [Uber] to demonstrate that each challenged claim based on protected

12  activity is legally sufficient and factually substantiated" such that Uber has "a

13  probability of prevailing" on the merits. *Baral*, 1 Cal.5th at 396.

14       Uber cannot satisfy its burden under this second step of the anti-SLAPP

15  inquiry because its two state-law claims fail on their face as a matter of law, for the

16  multiple independent reasons explained below.

17            1.    Unjust Enrichment Is Not a Recognized Cause of Action

18       Uber's purported claim for unjust enrichment fails at the threshold because it

19  is well established that "California does not recognize a cause of action for unjust

20  enrichment." *Hooked Media Grp., Inc. v. Apple, Inc.*, 55 Cal. App. 5th 323, 336

21  (2020); *see also Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020)

22  ("The complaint alleged an unjust enrichment claim against Ukraine, but '[u]njust

23  enrichment is not a cause of action' under California law."); *Everett v. Mountains*

24  *Recreation & Conservation Auth.*, 239 Cal. App. 4th 541, 553 (2015) ("We find

25  there is no cause of action in California for unjust enrichment."]; *Castillo v. Toll*

26  *Bros.*, 197 Cal. App. 4th 1172, 1209-10 (2011) ("The trial court granted summary

27  adjudication of the claims for unjust enrichment on the ground California does not

28  recognize unjust enrichment as a separate cause of action.").

LARSON
LOS ANGELES

26

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

Uber accordingly has no probability of prevailing on its unjust enrichment claim for the simple reason that it is not a cognizable cause of action.

2.    The State Law Claims Are Barred By the Litigation Privilege

Both of Uber's state-law claims are also precluded by the stringent protection of California's litigation privilege, which is designed precisely to foreclose this type of retaliatory litigation premised on underlying litigation activity.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Id.* (citation omitted).  "The principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.* (alteration in original) (citation omitted).  For the purposes of an anti-SLAPP motion, "[a] plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 814 (2015) (citation omitted).

"Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 361 (2004).  As the California Supreme Court has further elaborated:

> We have noted the application of the privilege to communications with "some relation to a proceeding that is ... under serious consideration;" to "potential court actions;" and to "preliminary conversations and interviews related to contemplated action," and we also have

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

> determined that the privilege applies to communications made, prior to the filing of a complaint, by a person "meeting and discussing" with potential parties the "merits of the proposed ... lawsuit."

*Id.* (citing *Rubin v. Green*, 4 Cal. 4th 1187, 1194-1195 (1993)). "Thus, it is now assumed that communications with 'some relation' to an *anticipated* lawsuit are protected by the privilege from any kind of derivative tort action, including one for fraud." *Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 32 (1997) (emphasis in original) (citation omitted); *see also Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 921 (2004) ("[C]ommunications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal assuming they are logically related to litigation.").

The litigation privilege thus bars Uber's state-law claims because, as detailed above, they are expressly predicated on alleged conduct by Dr. Khounganian that was performed in order to advance litigation. *See*, *e.g.*, Compl. ¶ 129 ("[T]he fraudulent medical and billing records and materially false statements [were used] to advance such litigation."); *see also Gilman v. Dalby*, 176 Cal. App. 4th 606, 617 (2009) ("[I]n a personal injury action, medical reports and bills from healthcare providers *are typically essential* to establish the extent of the plaintiff's injuries and damages" and thus " *directly contribute* to the success of the litigation.") (emphasis added).

Indeed, courts have routinely held that the litigation privilege bars tort actions against third-party medical providers that provided services in connection with anticipated or actual litigation. In *Gootee v. Lightner*, 224 Cal. App. 3d 587, 593 (1990), the appellate court held that the litigation privilege barred a father's lawsuit against a psychologist who submitted an evaluation report in an underlying child custody proceeding recommending that custody be given to the mother. As the court explained, "[f]reedom of access to the courts and encouragement of witnesses

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

to testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose disagreement with an expert's opinions perforce convinces them the expert must have been negligent in forming such opinions." *Id.* Similarly, in *Howard v. Drapkin*, 222 Cal. App. 3d 843, 848 (1990), the court held that the litigation privilege protected a psychologist who provided a family evaluation report in a marital dissolution action and was subsequently sued by the wife.

Of particular significance is the appellate court's holding in *Wang v. Heck*, 203 Cal. App. 4th 677, 685 (2012), where the plaintiff was critically injured by a driver who lost control of his vehicle after suffering a seizure. The plaintiff brought claims against the neurologist who had previously submitted an evaluation form to the DMV on the driver's behalf opining that the driver's epilepsy did not affect his ability to safely operate a vehicle. *Id.* at 679-681. The court held that the neurologist's submission of the evaluation form was protected by the litigation privilege, explaining that "[a]lthough [the neurologist] did not complete the DMV evaluation form for purposes of testifying in judicial proceedings, the form was used in the DMV hearing in order for the DMV hearing officer to determine whether to reinstate [the driver's] license." *Id.* at 685. The court also went on to hold that the neurologist's noncommunicative conduct in treating the driver and failing to warn him not to drive was equally privileged. *Id.* (explaining that "the protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony.") (citation omitted).

Not only do Uber's allegations against Dr. Khounganian demonstrate that his alleged actions are entitled to protection under the litigation privilege, they also demonstrate that entire basis of Uber's Complaint is inimical to the purpose that the privilege is designed to achieve. As the California Supreme Court has explained: "[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

exposing *during trial* the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990) (emphasis added).  In light of this purpose, the court held that the privilege barred a lawsuit that was based on a psychologist's evaluation report for use in a marital dissolution proceeding.  "During the dissolution proceedings, the husband had every opportunity to challenge the validity of Dr. Adler's psychological evaluation and recommendations.… For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause *during* the proceedings." *Id.* (emphasis added); *see also Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 30, 33-34 (1997) ("During litigation, a panoply of procedural devices is available to all parties for the discovery of the truth" and thus "the privilege is intended to force litigants to utilize the available discovery apparatus to uncover the truth prior to final judgment.")

Uber similarly had the ability to use existing discovery mechanisms to uncover what it now claims is fraud.  In fact, the Complaint makes clear that Uber did in fact utilize these discovery mechanisms and retained multiple experts to determine the medical necessity and reasonable value of the procedures Dr. Khounganian performed.  Compl. ¶¶ 52, 97.  Uber cannot now collaterally attack Dr. Khounganian's opinions after the fact by claiming fraud.  *See Gootee*, 224 Cal. App. 3d at 593 ("Appellant had and exercised his opportunity to challenge [the psychologist's] methods and conclusions, and, having lost the original contest, should not now be permitted to institute new litigation over those same conclusions.").  Dr. Khounganian's conduct in treating the personal injury claimants was directly related, and critical to, the litigation of their claims.  Consequently, the litigation privilege bars Uber from bringing the instant action, after thoroughly investigating, and ultimately settling, those very lawsuits.

        3.     <u>The State Law Claims Fail to Sufficiently or Plausibly Allege</u>

1

<u>Fraudulent Conduct</u>

2      Uber's unjust enrichment and UCL claims are entirely premised on the

3  Defendants' alleged fraud scheme in connection with the underlying personal injury

4  litigation.  Because both claims sound in fraud, they are subject to Rule 9(b)'s

5  heightened pleading requirements.  *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1265

6  (N.D. Cal. 2014) ("Rule 9(b)'s particularity requirement applies to each of the three

7  prongs of the UCL ('unlawful,' 'unfair,' and 'fraudulent') where, as here, the claims

8  are based on a 'unified course of fraudulent conduct.'") (citing *Kearns v. Ford*

9  *Motor Co.,* 567 F.3d 1120, 1126–27 (9th Cir.2009)); *Puri v. Khalsa*, 674 F. App'x

10  679, 690 (9th Cir. 2017) (holding that where an "unjust enrichment claim is based

11  on fraud, it too is subject to Rule 9(b).") (citing *Vess v. Ciba-Geigy Corp. USA*, 317

12  F.3d 1097, 1103 (9th Cir. 2003)).

13      As such, Uber can only maintain its unjust enrichment and UCL claims to the

14  extent that it is able to plausibly and specifically allege fraudulent conduct.

15  However, as discussed below in Section IV.A.2. and incorporated here, Uber has

16  failed to establish that Dr. Khounganian's actions—the submission of medical and

17  billing records—are in any way fraudulent.  Because Uber fails to allege underlying

18  unlawful conduct with the requisite particularity, the unjust enrichment and UCL

19  claims must be dismissed in their entirety.  *Kearns*, 567 F.3d at 1122 ("Because we

20  find that Kearns's claims were all grounded in fraud, his failure to plead [] with

21  particularity merited [] dismissal.").

22      Additionally, Uber's glib reliance on Business and Professions Code section

23  650 fails under that statute.  According to Uber, Dr. Khounganian and other

24  providers are engaging in a kickback scheme because, "[i]n exchange for secretly

25  agreeing to discount their bills, the medical providers receive a steady stream of

26  referrals from the lawyers."  Compl. ¶ 29.  While this allegation is false, even were

27  it to be true, it certainly does not fun afoul of Section 650.  That statute provides, in

28  pertinent part that "the offer, delivery, receipt, or acceptance by any person licensed

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1  under this division … of any rebate, refund, commission, preference, patronage

2  dividend, discount, or other consideration, whether in the form of money or

3  otherwise, as compensation or inducement for referring patients … is unlawful."

4  Cal. Bus. & Prof. Code § 650(a).

5      The flaw in Uber's theory is that the specific consideration underlying the

6  scheme—discounted medical bills—is given to Dr. Khounganian's *patients*, not the

7  referring personal injury lawyers.  Thus, Dr. Khounganian is not offering any

8  consideration to the personal injury lawyers themselves in exchange for patient

9  referrals.  A similar situation was addressed by the California Court of Appeal in

10  *People v. Duz-Mor Diagnostic Lab'y, Inc.*, 68 Cal. App. 4th 654, 664 (1998).

11  There, a laboratory that performed diagnostic testing was charged with a violation of

12  Section 650 based on discounts it gave to certain patients that were referred by their

13  treating physicians.  The court found that this arrangement was not unlawful under

14  Section 650.  *Id.*  As the court explained: "Here, patients, not doctors, received the

15  discount.  There was no evidence that [the laboratory] offered any discount,

16  remuneration, or any other benefit to a doctor as compensation or an inducement for

17  referring patients."  *Id.*  The same is true with respect to Dr. Khounganian.  There is

18  no exchange of money or anything else of value between Dr. Khounganian and the

19  lawyers in exchange for future referrals.  Instead, the discounted medical bills inure

20  to the benefit of his patients.  There is nothing unlawful about this under Section

21  650.

22      Furthermore, because Uber's kickback theory is premised on Dr.

23  Khounganian's discounted medical bills, Uber must allege what the discounted rate

24  was relative to the actual rate of the services performed.  In *United States ex rel.*

25  *Gough v. Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018),

26  the Central District addressed a similar issue in which an ambulance provider was

27  alleged to have provided unlawful kickbacks by offering discounted ambulance

28  transports to a hospital operator in exchange for future ambulance calls.  As the

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

court reasoned, "[o]ne significant deficiency in the FAC is the absence of facts to support that [ambulance provider] actually offered [hospital operator] discounted transport services because no comparative ambulance rates are alleged." *Id.* (citing *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1223 (W.D. Wash. 2011) (plaintiffs failed to allege that discounted services qualified as remuneration where they did not allege the fair market value of those services)). Thus, "allegations as to the 'below-cost' rates, without more, do not sufficiently demonstrate that [hospital operator] received any remuneration." *Id.* Similarly here, Uber does not provide any comparative rate against which the alleged discounts can be assessed. Indeed, a lien provider's decision to discount medical bills in the event of a shortfall is standard practice in the industry and thus cannot be characterized as a discount unique to Dr. Khounganian and the lawyer Defendants. *See Gilman*, 176 Cal. App. 4th at 618 ("[U]nless the patient gets a monetary recovery in a lawsuit, the medical liens will usually remain unpaid, and the provider will never obtain payment for the services rendered."). Uber therefore fails to establish that Dr. Khounganian engaged in any kickback under Section 650.[2]

> ### 4. The State Law Claims Are Unavailable Because Uber Does Not Plead an Inadequate Remedy at Law

"Restitution and injunctive relief are equitable remedies, and thus are not available unless the plaintiff lacks an adequate remedy at law." *In re Ambry*

---

[2] In addition, Uber also fails to satisfy the threshold requirement that Dr. Khounganian even falls within the scope of the statute. *See* Cal. Bus. & Prof. Code § 650(a) (limiting liability to those "licensed under this division."). The Complaint does not contain any such allegation and therefore establish a violation of Section 650. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 978 (C.D. Cal. 2015) ("Neither party discusses the licensure requirement of California Business & Professions Code section 650(a). However, for purposes of adjudicating this Motion, the Court will assume that licensure is not an issue.").

*Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021). As such, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)); *see Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1172 (C.D. Cal. 2022) ("[U]njust enrichment applies only in the absence of an adequate remedy at law."). Moreover, "even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law." *Sonner*, 971 F.3d at 841.

Uber's state law claims therefore fail at the outset because there is simply no allegation in the Complaint that Uber lacks an adequate remedy at law. This alone justifies dismissal of these claims. *Cho*, 636 F. Supp. 3d at 1173 (C.D. Cal. 2022) ("Plaintiffs do not allege that any remedy available at law would be inadequate to make them whole. Courts in this district routinely grant motions to dismiss claims for equitable relief under similar circumstances.").

### 5. Uber Lacks Standing to Assert the State Law Claims

"To have standing to assert a Section 17200 claim, the plaintiff must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)). Thus, "[t]o assert a UCL claim, a plaintiff must show a causal connection between [the defendant's] alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). "A plaintiff fails to satisfy this causation requirement if he or she would have suffered the same harm whether or not a defendant complied with the law." *Turner*, 859 F.3d at 1151 (citation omitted).

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

a.    Uber Cannot Plead the Requisite Causal Connection

The allegations in the Complaint fail to establish the requisite causal connection between Dr. Khoungian's misrepresentations and Uber's claimed injuries. Uber cannot plausibly contend that the primary injury it purportedly sustained—the expenditure of legal fees—was caused by Dr. Khoungian's false medical documentation and inflated medical bills. When faced with a personal injury claim, a defendant does not simply take a plaintiff's word as to the extent of his or her injuries but is instead entitled to conduct "a wide-ranging inquiry into the reasonable value of medical services provided." *Bermudez v. Ciolek*, 237 Cal. App. 4th 1311, 1331 (2015). A personal injury defendant, such as Uber, is going to investigate a treating physician's representations concerning a claimant's injuries *regardless of whether such representations are false*—and the defendant will necessarily incur legal fees in doing so. In other words, Uber "would have suffered the same harm whether or not a defendant complied with the law." *Turner*, 859 F.3d at 1151. Uber simply does not explain how any specific misrepresentation made by Dr. Khoungian caused it to incur greater legal fees than it otherwise would have in the absence of the supposed fraud. Because Uber fails to connect its litigation costs to Dr. Khoungian's alleged misrepresentations, Uber is unable to establish that its payment of legal fees was caused by any violation of the UCL.

Nor can Uber demonstrate causation with respect to the payments it made to settle the underlying personal injury suits. Uber cannot assert that these payments constitute harm under the UCL because such harm was caused by Uber's own voluntary decision to settle the claims and simply had nothing to do with any conduct of Dr. Khoungian. Uber's purported loss in connection with these settlement payments is directly undermined by Uber's allegation that it suffered a separate harm in the form of legal fees it incurred "to investigate . . . and respond[] to fraudulent evidence and inflated damages claims." Compl. ¶ 126. If Uber was able to investigate and discover the fraudulent evidence during the course of the

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

underlying litigation, as the Complaint indicates, then this conclusively establishes that Uber did not pay any increased settlement amount as a result of the fraud. Uber had already uncovered the fraud prior to settling. Indeed, Uber never specifically alleges that it agreed to settlement amounts greater than it otherwise would have in the absence of fraud. Uber instead repeatedly alleges that Defendants merely "*attempt[ed]* to induce significantly larger settlement payments" without ever alleging that Uber assented to their demands. *Id.* ¶¶ 9, 126, 153. Uber is thus unable to establish that its voluntary decision to settle the underlying lawsuits "was the result of, i.e., *caused by*, the unfair business practice." *In re Turner*, 859 F.3d at 1151.

b.   <u>Uber Cannot Plead the Requisite Actual Reliance</u>

Because Uber's UCL claim is premised on fraudulent conduct, Uber is subject to the additional standing requirement of establishing actual reliance. "[A] plaintiff proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset*, 51 Cal. 4th at 326-27 (citation omitted). "Actual reliance is a required element of standing whether the claims are premised on a fraudulent misrepresentation or omission theory." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal. 2022). Moreover, "[t]he reliance requirement applies not only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted under the 'unlawful' and 'unfair' prongs where those claims are predicated on misrepresentation and deception." *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal. 2021).

"Additionally, to adequately plead reliance for alleged misrepresentations, Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard and allege facts with particularity." *In re ZF-TRW*, 601 F. Supp. 3d at 767; *see also Elias v.*

36

LARSON
LOS ANGELES

1  *Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855, n.3 (N.D. Cal. 2012) ("[The] only

2  statement of reliance on Defendants' conduct is entirely conclusory in nature—it

3  does not allege with any particularity *how* Plaintiff relied on Defendants'

4  representations, nor does it allege *why* Plaintiff would have acted differently without

5  those representations.") (emphasis in original).

6      Nowhere in the Complaint does Uber specifically allege that it relied on any

7  misrepresentation made by Dr. Khounganian. "'Reliance,' in this context, means

8  reliance on a statement for its truth and accuracy. In other words, a UCL fraud

9  plaintiff must allege he or she was motivated to act or refrain from action based on

10  the truth or falsity of a defendant's statement, not merely on the fact it was made."

11  *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025). There are certainly no

12  particularized allegations explaining "*how* [Uber] relied on [Dr. Khounganian's]

13  representations, [or] *why* [Uber] would have acted differently without those

14  representations." *Elias*, 903 F. Supp. 2d at 855, n.3. Again, Uber did not simply

15  take at face value any representation by Dr. Khounganian regarding the extent of the

16  personal injury claimants' injuries, the medical necessity of the care they received,

17  or the cost of the services that were provided to them. *Pebley v. Santa Clara*

18  *Organics, LLC*, 22 Cal. App. 5th 1266, 1281 (2018) ("This was not, as defendants

19  assert, a situation in which the only measure of cost or value … was the medical

20  professionals' full bills."). Instead, much like any personal injury defendant, Uber

21  utilized the normal tools of discovery to test the veracity of Dr. Khounganian's

22  statements. Uber had the claimants sit for depositions. Compl. ¶¶ 78, 98. It

23  retained "[a]n independent expert" to determine "the reasonable value of

24  [Defendants'] services." *Id.* ¶ 97. It conducted Independent Medical Evaluations to

25  assess the medical necessity of the surgeries Dr. Khounganian performed. *Id.* ¶ 52.

26  And Uber further "investigat[ed]" each claim. *Id.* ¶¶ 53, 126. In short, there was no

27  actual reliance on any false statement.

28      It is entirely insufficient for Uber to merely allege that Dr. Khounganian made

LARSON
LOS ANGELES

37

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

false representations in his medical and billing records.  Uber must allege that it "was motivated to act or refrain from action based on the truth or falsity of [Dr. Khounganian's] statement[s]." *Key*, 129 F.4th at 1141.  As the Complaint makes clear, Uber did not do so here.  There is accordingly no support for the notion that Uber had actually relied on any alleged misrepresentation made by Dr. Khounganian, without which its UCL claim cannot proceed.

## IV.    UBER FAILS TO STATE ANY COGNIZABLE CAUSE OF ACTION

Dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To determine plausibility, a court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props. v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (citing *Iqbal*, 556 U.S. at 679).  Then, a court "should assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to entitlement to relief." *Id.*  Facts that are "merely consistent" with liability "stop[] short" of plausibility. *Id.*  The court "must also consider an 'obvious alternative explanation' for defendant's behavior." *Id.*; *Twombly*, 550 U.S. at 567 (same).  When a defendant is engaging in activity that is facially legitimate, "a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 998.

Uber faces another steep barrier because *all* its claims sound in fraud, and therefore it must "state with particularity the circumstances constituting fraud" under Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (RICO); *Rosado*, 53 F. Supp. 3d at 1265 (UCL); *Puri*, 674 F. App'x at 690 (unjust enrichment).

### A.    The Complaint States No Claim for Relief Under RICO

To state a claim under RICO, Uber must allege "(1) conduct (2) of an

1    enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

2    acts') (5) causing injury to plaintiff's 'business or property.'" *In re Toyota Motor*

3    *Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F.

4    Supp. 2d 1180, 1201 (C.D. Cal. 2011).  Uber's purported RICO claims fail at

5    multiple levels for the reasons stated below.

6             1.    <u>Uber Fails to Allege an Enterprise</u>

7             To establish RICO liability, "one must allege and prove the existence of two

8    distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same

9    'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*,

10   533 U.S. 158, 161 (2001).  Uber alleges two types of "enterprises" with respect to

11   Dr. Khounganian:  an entity called "GSK Spine," and an association-in-fact

12   enterprise among the various defendants.  Both of these allegations fail to meet the

13   plausibility standard under *Iqbal*.

14           As noted above, GSK Spine does not exist.  This defect is fatal to Uber's First

15   Cause of Action, which is premised on GSK Spine as the RICO enterprise.[3]  On this

16   ground alone, the First Cause of Action may be dismissed.  *In re Toyota Motor*

17   *Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F.

18   Supp. 2d 1180, 1202 (C.D. Cal. 2011) ("Plaintiffs allege that the RICO person and

19   the tool are the same entities and, therefore, Plaintiffs have not met the distinctness

20   requirement.").

21

22   ────────────────

   [3] While GSK Spine has not appeared in this action on account of its nonexistence,

23   the Court nevertheless should exercise its inherent authority to dismiss this non-
   existent entity.  *See Silverton v. Dep't of Treasury,* 644 F.2d 1341, 1345 (9th

24   Cir.1981) ("A District Court may properly on its own motion dismiss an action as to

25   defendants who have not moved to dismiss where such defendants are in a position
   similar to that of moving defendants or where claims against such defendants are

26   integrally related.") (upholding dismissal with prejudice in favor of a party that has

27   not yet appeared on the basis of facts presented by other defendants that have

28   appeared).

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1      Uber further fails to allege an "association-in-fact" enterprise between the

2  Defendants because the Complaint does not allege "conduct of an enterprise"

3  distinct from the Defendants' ordinary business practices.  "[W]here the individual

4  constituents of an asserted enterprise are alleged only to have conducted the[ir]

5  'regular business' . . . in their own interests, those allegations are insufficient to

6  support a RICO enterprise."  *In re JUUL Labs, Inc., Marketing, Sales Practices, and*

7  *Products Liability Litigation*, 497 F.Supp.3d 552, 599 (N.D. Cal. 2020).  Here, the

8  Complaint simply describes "routine commercial relationships" between Dr.

9  Khounganian, Radiance Surgery Center, and the various referring attorneys.  All the

10  allegations involving Dr. Khounganian relate to him evaluating and treating injured

11  patients, issuing bills, and opining on causation as either a treating or expert

12  physician in litigation.  Even if this were done fraudulently—which Dr.

13  Khounganian vehemently disputes—"that does not transform it into distinct

14  'enterprise' conduct actionable under RICO."  *Id.*; *see also In re Toyota*, 826

15  F.Supp.2d at 1202-03 (where "plaintiffs merely allege that the Defendants are

16  associated in a manner directly related to their own primary business activities" and

17  alleged "no more than that Defendants' primary business activity ... was conducted

18  fraudulently," that was "insufficient to state a claim under § 1962(c).)  Baselessly

19  calling Dr. Khounganian's alleged conduct "fraudulent" is insufficient:  "Without

20  the adjectives, the allegations allege conduct consistent with ordinary business

21  conduct and an ordinary business purpose. . .  Pleading by adjective does not

22  comply with Rule 9(b)."  *In re Jamster Marketing Litigation*, 2009 WL 1456632, *5

23  (S.D. Cal. 2009).

24      The association-in-fact enterprise further fails because RICO enterprise

25  conduct "requires some participation in the operation or management of the

26  enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 176 (1993) (cleaned up).

27  To satisfy this element, Uber must allege that each Defendant (i) had "*some* part in

28  directing the enterprise's affairs," and (ii) "conducted or participated in the conduct

40

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

of the enterprise's affairs,' not just their own affairs." *Id.* at 179, 185; *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Further, "one is not liable under [RICO] unless one has participated in the operation or management of the enterprise itself," which is separate and apart from the racketeering acts. *Reves*, 507 U.S. at 183; *see also Gomez v. Guthy-Renker*, 2015 WL 4270042, at *7-8 (C.D. Cal. July 13, 2015) ("RICO liability requires more than a pattern of . . . predicate crimes."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034 (C.D. Cal. 2011) ("[Defendant's] submission of its own [false] data does not plausibly show that [it] controlled the other members in the associated-in-fact enterprise. In fact, all it really establishes is that [Defendant] was acting on its own.").

Fatally as to Dr. Khounganian, the Complaint alleges that the operational and managerial aspects of any enterprise were performed by others. *See, e.g.*, Compl. ¶ 31 (alleging "[law firms] direct their clients to [] lien providers" and "work with a personal injury coordinator … to direct their clients to lien providers."); *id.* ¶ 32 ("Staff from the law firms and Radiance Surgery Center subsequently schedule appointments and otherwise *coordinate medical treatment* for the claimants. The law firms authorize and direct diagnostic tests and treatments to be performed."); *id.* ¶ 140 ("law firms each also shared longstanding relationships with Radiance Surgery Center through the *management and direction of medical care*.") (emphasis added).

In contrast, Dr. Khounganian merely "accepts referrals from lawyers who have cases against Uber with the understanding that he will perform specific acts to increase the value of their lawsuits." *Id.* ¶ 8. And Dr. Khounganian was only one of "various medical providers involved" in the alleged scheme. *Id.* ¶ 8. Critically, the mere provision of services in the form of medical procedures and related documentation on behalf of an enterprise cannot constitute RICO conduct. *Walter*, 538 F.3d at 1249 ("Simply performing services for the enterprise does not rise to the

1  level of direction . . . .").

2     Finally, there are no allegations that Dr. Khounganian uses a pattern of

3  racketeering activity to "obtain or operate an interest *in an interstate business*."

4  *Reves*, 507 U.S. at 183.  All of the "conduct" alleged in the Complaint takes place in

5  the greater Los Angeles area.  Uber's allegations that Defendants used email or

6  cloud-based services are not sufficient to allege the effect on interstate commerce

7  that RICO requires.  *Vollarroel v. Recology Inc.*, 775 F.Supp.3d 1050, 1071 (N.D.

8  Cal. 2025) (emails and wire transfers not sufficient to establish alleged RICO

9  enterprise affected interstate commerce).

10     The Complaint engages in exactly the kind of artful pleading courts must

11  reject to avoid turning RICO into an all-purpose fraud statute.  *Gomez*, 2015 WL

12  4270042, *11 ("The substantive requirements for RICO liability cannot be

13  circumvented through sophistic pleading practices.").  Accordingly, because GSK

14  Spine is not a RICO enterprise, because the Complaint merely alleges Dr.

15  Khounganian engaged in his ordinary business practices, because Dr. Khounganian

16  otherwise had no participation in the operation and management of any other alleged

17  enterprise, and because Uber fails to allege an effect on interstate commerce, Uber's

18  RICO claims fail in their entirety.

19            2.    Uber Fails To Allege A Plausible Fraudulent Scheme

20     "Racketeering activity" under RICO requires predicate acts.  Here, the alleged

21  predicate acts are mail and wire fraud, which require: (A) the formation of a scheme

22  to defraud; (B) the use of the mails or wires in furtherance of that scheme; and (C)

23  the specific intent to defraud.  *Eclectic Prop.*, 751 F.3d at 997.  Plaintiffs can

24  establish a specific intent to defraud "by showing the existence of a plausible

25  fraudulent scheme."  *Id.*  When, as here, a defendant engages in conduct that is

26  facially legitimate, "a significant level of factual specificity is required to allow a

27  court to infer reasonably that such conduct is plausibly part of a fraudulent scheme."

28  *Id.*

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

Uber alleges two types of supposedly fraudulent conduct: (1) false and misleading medical bills due to an allegedly concealed side agreement between Dr. Khounganian and the personal injury lawyers to forgive his fees for victims who do not obtain monetary recovery, Compl. ¶¶ 49, 74, 96, 113, and (2) false statements regarding causation of the claimants' injuries and the medical necessity of the procedures recommended to them on account of Uber's allegation that the claimants did not actually sustain any injuries. *Id.* ¶¶ 41, 62, 88, 109. Uber has failed, however, to make the kind of factual allegations that "nudg[e] [its] claims" of a fraudulent scheme "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

a.   Lien-Based Medical Care is Not Fraud

Uber first alleges that Dr. Khounganian secretly agreed to discount claimants' medical bills in the event of a shortfall in recovery. According to Uber, "[b]ecause the side agreements are concealed, the medical bills are false and misleading." Compl. ¶ 2; see also *id.* ¶ 49 ("The bills together with their stated amounts were materially false and misleading, given that the side agreement with the [personal injury lawyers] was fraudulently concealed."). Setting aside the failure to allege any such "secret side agreements" (which do not exist) with specificity or plausibility, Uber's allegations simply do not amount to fraud.

There is nothing fraudulent about using medical liens in personal injury cases. Indeed, public policy strongly favors the use of medical liens where "the injured party's need for medical attention may be immediate while the ability to pay for that attention before it is provided may be absent." *Gilman*, 176 Cal. App. 4th at 617 (citing *Wujcik v. Wujcik*, 21 Cal. App. 4th 1790, 1795 (1994)).

This is not only the case for victims who lack health insurance. California strongly protects a personal injury victim's right to choose lien-based care with a specialist (who may charge higher rates), even if they do have medical insurance. In *Pebley*, 22 Cal. App. 5th at 1277, the California Court of Appeal (Second District)

held that an insured plaintiff who elects to receive treatment from outside his insurance plan on a lien basis is entitled to recover the full amount of his medical bills and is not limited to the amount insurance carriers typically pay—*i.e.*, the "market rate."  The Court explained that a plaintiff's rationale for choosing health insurance such as an HMO "may appear much different after a serious accident, when the plaintiff suddenly needs complex, extensive care that an HMO is not structured to provide."  *Id.*  Further, as the Court aptly noted:

> The plaintiff may also wish to choose a physician or surgeon who specializes in treating the specific type of injury involved, but who does not accept the plaintiff's insurance or any other type of insurance.  In addition, health care providers that bill through insurance, rather than on a lien basis, may be less willing to participate in the litigation process.

*Id.*  In allowing the plaintiff to recover the full cost of his medical care and excluding evidence of the victim's insured status, the Court explained:  "A tortfeasor cannot force a plaintiff to use his or her insurance to obtain medical treatment for injuries caused by the tortfeasor," and "Defendants cite no authority suggesting that Pebley's tort recovery should be limited to what Kaiser (and possibly Medicare) would have paid had he chosen to treat with providers who accept that insurance."  *Id.* at 1277-78.  The law thus expressly permits the so-called "scheme" that allows Dr. Khounganian to use liens to provide care to his patients, and the commensurate setting of rates for his services that are not constrained by insurance caps.

Inherent in the use of medical liens, of course, is the chance that recovery in litigation may not be sufficient to fully reimburse the medical provider.  As the panel of the Third District of the California Court of Appeal explained in *Gilman*:

> As a practical matter, medical liens have value only if the treated patient obtains a judgment from which the liens can be paid.  Although the patient is personally liable for the cost of services, a collection action against a patient with limited resources is economically

LARSON
LOS ANGELES

44
DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

> unfeasible.  Thus, unless the patient gets a monetary recovery in a lawsuit, the medical liens will usually remain unpaid, and the provider will never obtain payment for the services rendered.

176 Cal. App. 4th at 618.  This, again, is not fraud; it is simply how medical liens operate, as multiple California Courts of Appeals recognize.

Given this background, Uber's hyperbolic allegations fail to meet the plausibility standard under *Twombly* or Rule 9(b)'s heightened pleading standard. First, Uber fails to allege any reliable indicia that any "secret side-agreement" to discount medical bills in exchange for referrals actually exists (when it was formed, what it says, who agreed to it, why it was executed).  And second, even if such an agreement did exist (it does not)—what about this agreement, which operates precisely the way every medical lien in a personal injury case, ever, operates— renders Dr. Khounganian's medical bills fraudulent?  *See Vess*, 317 F.3d at 1106 (complaint "must set forth what is false or misleading about a statement, and why it is false").  A lien-based medical provider may be higher cost for a host of non-fraudulent reasons, either because they have more experience, specialize in complex care and procedures, understand the demands for participating in the litigation process, or build the risk of loss into his or her pricing.  Uber utterly fails to allege facts that indicate this structure is anything but "typical, appropriate, or the product of legitimate market forces."  *See Eclectic Prop.*, 751 F.3d at 998 (high increase in price of real estate did not "tend to exclude a plausible and innocuous alternative explanation" where "[p]laintiffs plead no facts that would tend to show this increase was not typical, appropriate, or the product of legitimate market forces") (affirming dismissal of RICO claim).

Further, the nondisclosure of the purported side agreements is the *only* basis upon which Uber alleges that the medical bills in the four underlying lawsuits were fraudulent.  *Id.* ¶¶ 49, 74, 96, 113.  Allegations based on "[a] non-disclosure [] can support a fraud charge only when there exists an independent duty that has been

LARSON
LOS ANGELES

breached by the person so charged." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (citation omitted). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Id.* (alteration in original) (citation omitted). And critically, "[a] fraudulent concealment claim must rest upon an independent fiduciary or statutory duty to disclose *owed to the party seeking relief*." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 743 (C.D. Cal. 2022) (emphasis added) (citation omitted). No such duty exists here, and as such, Uber's fraudulent concealment theory falls short on this ground as well.

> b.   Dr. Khounganian's Treatments and Medical Opinions Are Not Fraudulent

Uber then outrageously asserts that Dr. Khounganian performed unnecessary surgeries that were not causally related to the car crashes it admits occurred. *See, e.g.,* Compl. ¶¶ 41, 62, 88, 109. Uber contends Dr. Khounganian's treatments and medical opinions were fraudulent because, purely on Uber's say-so, the claimants "suffered no injury" in the accidents. *Id.* ¶¶ 41, 62, 149-151. Setting aside how wildly offensive this allegation is to the victims themselves, and how damaging it has been to Dr. Khounganian's practice, it is also completely belied by the actual facts alleged. Without belaboring the facts already recited in Part II.B, *supra*, Uber admits the following:

**Claimant A**. Uber admits Claimant A was in fact in a car accident involving Uber. Compl. ¶ 37. Before hiring an attorney, and well before seeing Dr. Khounganian, Claimant A sought medical care—indicating that he was in fact injured. *Id.* ¶ 38. Claimant A was diagnosed with myalgia (muscle pain) by a medical provider with no connection to Uber's concocted RICO enterprise. *Id.* Despite *admitting* Claimant A independently sought medical care, Uber makes the entirely conclusory and, frankly, fanciful allegation that Claimant A "suffered no injury in the accident." *Id.* ¶ 41. This conclusory statement is the only basis Uber

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1  provides for its contention that Dr. Khounganian's medical treatment and opinions

2  were fraudulent. As it is clearly contradicted by the pled facts, it is "not entitled to

3  the assumption of truth" and should be disregarded. *Eclectic Props.*, 751 F.3d at

4  998 (citing *Iqbal*, 556 U.S. at 679). As such, Uber fails to particularly allege "what

5  is false or misleading about [Dr. Khounganian's] statement[s], and why [they are]

6  false." *Vess*, 317 F.3d at 1106.

7      Uber's reference to an "Independent Medical Evaluation" ("IME") conducted

8  on Claimant A cannot rescue its fraud claims. *Id.* ¶ 52. In any personal injury

9  action, a defendant is certain to offer differing opinions of the medical necessity and

10  reasonable cost of the treatments the plaintiff received. *See Pebley*, 22 Cal. App. 5th

11  at 1275-76 ("The defendant may then test the expert's opinion through cross-

12  examination and present his or her own expert opinion testimony that the reasonable

13  value of the service is lower."). Uber may not now take its own expert's opinion

14  regarding the medical necessity and cost of the services Dr. Khounganian provided

15  to suggest evidence of a fraudulent scheme to deceive Uber.[4]

16      **Claimant B.** Claimant B was also in fact in a car accident. Compl. ¶ 54.

17  Claimant B was then treated by *other medical providers – not Dr. Khounganian –*

18  who treated Claimant B for *two years*. *Id.* ¶¶ 55-59. These medical providers,

19  through Claimant B's counsel, apparently represented to Uber that Claimant B had

20  suffered "numerous spinal injuries and would need to undergo future cervical fusion

21  surgery." *Id.* ¶ 57. After seeing Dr. Khounganian, Claimant B followed up with

22  thirteen physical therapy visits, only reporting her pain as a 0 out of 10 in her final

23  few visits. *Id.* ¶¶ 54, 68.

24

---

25  [4] Uber's futile reference to the IME solely for Claimant A further undermines its

26  allegations with respect to Claimants B, C, and D—for which it does not provide

*any* purported medical opinion to support its allegations of noninjury. The omission

27  of a similar allegation for these claimants reinforces Uber's failure to provide any

28  reliable indicia concerning the alleged falsity of Dr. Khounganian's opinions.

LARSON
LOS ANGELES

47

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

Again, Uber provides no reliable indicia to support its allegation that Claimant B was simply "not injured"—particularly since the diagnoses and management of Claimant B's injuries by at least two other medical providers not involved in the alleged RICO scheme support the conclusion she was. That Claimant B denied injuries to law enforcement on the spot says nothing about a trained spinal surgeon's professional assessment that she would require surgery as a result of the vehicle collision. Uber does not offer any countervailing medical opinion supporting its assertion of noninjury. Indeed, the allegation that Claimant B denied feeling pain during four out of thirteen chiropractic visits is more notable for the fact that Claimant B *did* report pain in nine of the visits. Uber's scarce and contradictory allegations thus fail to establish any modicum of fraud.

**Claimant C**. Claimant C also was in fact in a car accident. Compl. ¶ 80. As pled, Claimant C also sought medical treatment completely independently of retaining counsel—strongly indicating he was, in fact, injured. *Id.* ¶ 81. For all its hyperbole, Uber admits that MRI scans indicated Claimant C in fact had a lumbar disc herniation. *Id.* ¶ 99. How can Uber then credibly allege that Claimant C "suffered no injury in the accident"? *Id.* ¶ 150(a). Uber's contradictory allegations are insufficient to demonstrate the falsity of Dr. Khounganian's statements. Prior to seeing Dr. Khounganian, and prior to retaining legal counsel, Claimant C initially attended *sixteen* chiropractic sessions with a medical provider unrelated to Defendants' alleged fraud scheme—which is entirely inconsistent with Uber's assertion of noninjury. *Id.* ¶ 81. When Claimant C was later evaluated by Dr. Khounganian, "Claimant C reported lumbar spine pain with radiating symptoms to his left lower extremities." *Id.* ¶ 87. Thus, either Claimant C was implausibly lying to Dr. Khounganian and willing to undergo unnecessary spinal surgeries with the hope of increasing the value of his personal injury claim, or, more plausibly, Claimant C *was* in fact injured, as supported by the fact that he had previously attended sixteen separate chiropractic sessions.

LARSON
LOS ANGELES

48

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1      **Claimant D.**  Like Claimants A-C, Claimant D was also actually in a car

2  accident, *id.* ¶ 101, and Uber's contention that Claimant D did not sustain any injury

3  is contradicted by the fact that, prior to seeing Dr. Khounganian, Claimant D

4  "sought treatment" from (i) a shock wave therapist, (ii) a chiropractor, *and* (iii) a

5  pain management clinic, "where he underwent lumbar medial branch blocks."

6  Compl. ¶¶ 105-06.  None of these medical providers are alleged to have been

7  involved in any fraudulent scheme; nor are they alleged to have had any relationship

8  to Defendants at all.  *See id.*  That Claimant D sought and received treatment from

9  these providers undermines any notion that he was uninjured.

10      More notably, Dr. Khounganian did not perform surgery on Claimant D.

11  Uber alleges that, with respect to Claimant D, Dr. Khounganian simply issued a bill

12  for the medical evaluation alone, not any treatment.  *Id.* ¶ 154.  If the RICO

13  enterprise involves performing unnecessary surgeries on uninjured patients, why

14  wouldn't Dr. Khounganian have performed surgery on Claimant D?  This is not a

15  plausible example of the purportedly fraudulent scheme.

16      **Claimants E-I.**  Five other claimants are alleged as being part of this scheme

17  without any detail as to their claims.  But two of them, like Claimant D, were also

18  simply evaluated by Dr. Khounganian and did not have surgery.  *Id.* ¶ 154.  This

19  strongly suggests Dr. Khounganian *does not* perform indiscriminate surgeries on

20  every claimant referred to him by personal injury attorneys, contrary to Uber's

21  allegations.

22      Presumably, Uber has picked the best, most persuasive examples of its

23  fraudulent scheme to include in its Complaint.  And yet, all four claimants were

24  actually in car accidents.  All four claimants were treated by medical providers

25  *before* seeing Dr. Khounganian, and two out of the four sought medical care even

26  before retaining counsel.  And in 33% of the nine total claims underlying the

27  scheme, no allegedly "unnecessary" surgery was even performed.  In assessing the

28  plausibility of Uber's complaint, the court "must also consider an 'obvious

LARSON
LOS ANGELES

49

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1  alternative explanation' for defendant's behavior." *Eclectic Props. v. Marcus &*
2  *Millichap Co.,* 751 F.3d 990, 998; *Twombly*, 550 U.S. at 567 (same).  Here, the
3  obvious explanation is this:  These were bona fide car accident victims, seeking
4  bona fide medical care.  Uber's blatant attempt to recharacterize valid medical
5  treatments as predicate acts of mail and wire fraud utterly fails.

6          3.    Uber Fails to Allege a Cognizable RICO Injury

7          Uber also falls well short of satisfying RICO's onerous standing requirements
8  because its injuries are not cognizable under RICO.  To have standing, "a civil
9  RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his
10 business or property; and (2) that his harm was by reason of the RICO violation,
11 which requires the plaintiff to establish proximate causation[.]" *Canyon County v.*
12 *Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citation omitted).

13         Here, the sole harm Uber alleges—litigation expenses incurred in defending
14 the underlying personal injury proceedings, Compl. ¶ 126—is not compensable
15 under RICO.  *Thomas v. Baca*, 308 Fed. App'x 87, 88 (9th Cir. 2009) ("This court
16 has not recognized the incurment of legal fees as an injury cognizable under RICO,
17 and we decline to do so here."); *see also Ogden v. Wells Fargo Bank, N.A.*, 2015
18 WL 13413390, at *2 (C.D. Cal Feb. 20, 2015) ("The Ninth Circuit has generally
19 refused to recognize legal fees as a valid injury to a business or property under
20 RICO."); *Evans Hotels, LLC v. Unite Here! Loc. 30*, 2021 WL 10310815, at *26
21 (S.D. Cal. Aug. 26, 2021) ("Although unpublished and therefore not precedential, []
22 the Court finds the Ninth Circuit's only guidance on the issue persuasive. Plaintiffs'
23 cases, on the other hand, apply out-of-Circuit authorities in determining that
24 attorneys' fees are compensable under RICO.… The Court therefore concludes that
25 Plaintiffs' attorneys' fees are not a compensable injury."); *Pac. Surf Designs, Inc. v.*
26 *Whitewater W. Indus., Ltd.*, 2021 WL 5326529, at *2 (S.D. Cal. Nov. 16, 2021)
27 (plaintiffs' claimed injury in the form of "additional costs of litigation from
28 defending what they allege to be sham cases by Defendants … fails to plead a

50

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1   cognizable injury under RICO that would confer standing."); *Holloway v.*
2   *Clackamas River Water*, 2014 WL 6998069, at *9 (D. Or. Sept. 9, 2014) ("The
3   caselaw in this circuit holds that legal fees expended to defend against sham
4   lawsuits are not the type of injury to business or property interest which confer
5   standing to bring a civil RICO claim.").

6        Moreover, any out-of-pocket loss would have been incurred by Uber's
7   insurer, not Uber itself.  Uber repeatedly asserts that Defendants prepared
8   "artificially inflated" medical bills that were then used in "insurance claims"
9   submitted to certain insurers.  Compl. ¶ 27.  Uber also asserts that it is a target for
10  fraud solely "because of [its] $1 million government-mandated insurance policy
11  limits." *Id.* ¶ 27.  And it repeatedly asserts that Defendants' false representations
12  were submitted to its "insurance carrier[s]" *Id.* ¶ 144-146, 148.  It is thus the third-
13  party *insurers* who are the "more direct victims" of the purported scheme.  *Mendoza*
14  *v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002).  The Ninth Circuit has held
15  specifically that an overbilling scheme that causes an insurance company to overpay
16  for services is not a RICO injury to the insured.  *Steele v. Hosp. Corp. of Am.*, 36
17  F.3d 69, 70 (9th Cir. 1994).

18       **B.    The Complaint States No State Law Claim for Relief**

19       For the avoidance of doubt, the same reasons that bar Uber's state-law claims
20  under the second prong of the anti-SLAPP statute would also require dismissal for
21  failure to state a claim under Rules 12(b)(6) and Rule 9(b).  *See Planned*
22  *Parenthood*, 890 F.3d at 834 (Rule 12(b)(6) standard applies to the anti-SLAPP
23  analysis).  It is unnecessary here because a successful anti-SLAPP motion disposes
24  of the challenged causes of action with prejudice.  However, to the extent the Court
25  does not grant the anti-SLAPP motion, the merits arguments as to the state-law
26  claims are incorporated here and compel dismissal under Rules 12(b)(6).

27       **C.    The *Noerr-Pennington* Doctrine Bars This Entire Action**

28       "The *Noerr–Pennington* doctrine derives from the Petition Clause of the First

Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'"  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). The doctrine even "overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 923 (9th Cir. 2024) (quoting *Sosa*, 437 F.3d at 934).

"To determine whether a defendant's conduct … is immunized under *Noerr-Pennington*," the Ninth Circuit applies a three-step analysis to determine:  "(1) whether the lawsuit imposes a burden on petitioning rights, (2) whether the alleged activities constitute protected petitioning activity, and (3) whether the statute[ ] at issue may be construed to [avoid] that burden." *B&G Foods N.A., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (citing *Kearney*, 590 F.3d at 644).  "If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *Id.*  The allegations in Uber's Complaint easily satisfy these factors. Moreover, the narrow "sham" litigation exception is inapplicable because Uber does not and cannot allege that the underlying personal injury actions were objectively baseless.  Uber's Complaint must therefore be dismissed in its entirety.[5]

          1.    <u>Uber's Complaint Burdens Petitioning Rights</u>

Uber's claims are expressly predicated on underlying personal injury lawsuits that were brought against it, Compl. ¶¶ 115, 148-150—*i.e.*, "petitions sent directly to the court" that are undoubtedly "protected by the *Noerr–Pennington* doctrine." *Sosa*, 437 F.3d at 934.  Moreover, Uber seeks as a remedy an order "imposing restrictions on the future activities of such Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the above

---

[5] *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1125 n. 12 (9th Cir. 2025) ("The *Noerr-Pennington* doctrine applies to state law tort claims.")

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1    enterprises engaged in[.]"  Compl., p. 51 (Prayer for Relief).  That is, by this

2    lawsuit, Uber seeks an order restraining Defendants from treating and bringing

3    personal injury lawsuits on behalf of victims injured by Uber vehicles.  This

4    expressly and unacceptably "places a burden on [their] ability to bring suit and

5    [their] ability to zealously advocate for their clients in furtherance of their interests

6    in the litigation."  *Reed v. E. End Props., Inc.*, 2018 WL 6131211, at *12 (C.D. Cal.

7    Mar. 15, 2018).  "Indeed, if successful, [Uber's] suit would completely prevent

8    Defendants from engaging in their petitioning activities"—such as representing

9    injured claimants, working with medical providers to coordinate treatment for those

10   claimants, and using the resulting medical and billing records from the providers to

11   bring legal claims on the claimants' behalf.  *B&G Foods*, 29 F.4th at 535; *see also*

12   *Gilman v. Dalby*, 176 Cal. App. 4th 606, 617 (2009) ("[T]he medical providers'

13   efforts in treating the injured plaintiff directly contribute to the success of the

14   litigation."). Therefore, this lawsuit unquestionably burdens petitioning rights, both

15   of Defendants and their future clients.

16                    2.      <u>Dr. Khounganian's Conduct Is Protected Petitioning Activity</u>

17          Because *Noerr-Pennington* is intended "to preserve the breathing space

18   essential to the fruitful exercise of the right of petition," the scope of conduct

19   entitled to immunity is broad.  *Sosa*, 437 F.3d at 939.  The *Noerr-Pennington*

20   doctrine applies to nearly all "conduct incidental to the prosecution of the suit,"

21   including pre-litigation conduct, the "discovery communications surrounding that

22   litigation and the trial advocacy of that litigation."  *Sosa*, 437 F.3d at 942; *Kearney*,

23   590 F.3d at 646.  Indeed, the Ninth Circuit has established that, in addition to

24   immunizing the attorneys and parties to the prior litigation, "their agents in that

25   litigation[] get to benefit as well."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d

26   1180, 1186 (9th Cir. 2005); *see also Reed*, 2018 WL 6131211, at *12 ("Notably, the

27   doctrine immunizes not only the parties to litigation, but also their agents and

28   representatives.").

LARSON
LOS ANGELES

53

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

Dr. Khounganian's conduct is precisely the type that the Petition Clause protects. "[I]n a personal injury action, medical reports and bills from healthcare providers *are typically essential* to establish the extent of the plaintiff's injuries and damages. Thus, the medical providers' efforts in treating the injured plaintiff *directly contribute* to the success of the litigation." *Gilman*, 176 Cal. App. 4th at 617 (emphasis added). Uber alleges that Dr. Khounganian produced diagnoses and reports of causation for personal injury claimants, recommended and performed various medical treatments, and thereafter generated bills for such treatment—*all* of which were then allegedly used "as a basis for fraudulent lawsuits and/or claims for damages." Compl. ¶ 4. In other words, the entirety of Uber's Complaint is premised on "conduct incidental to the prosecution of the [underlying personal injury] suit[s]." *Sosa*, 437 F.3d at 934. Indeed, a personal injury plaintiff *cannot recover* without proper medical documentation supporting a diagnosis of injury, causation of that injury, and the associated cost of treatment. Such conduct unquestionably constitutes protected petitioning activity that was incidental, and indeed critical, to the prosecution of those lawsuits. *See Reed*, 2018 WL 6131211, at *12 (*Noerr-Pennington* barred plaintiff's RICO claim alleging that defendants "misrepresented [their] property interests … and used the U.S. mail and e-mail to file lawsuits, serve misleading documents and send harassing correspondence" because such actions were incidental to pending litigation).

3.    The Statutes Can Be Construed to Avoid Burdening Dr. Khounganian's Petitioning Activity

The third prong is easily met. "Under the *Noerr-Pennington* rule of statutory construction, we must construe . . . statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise. Thus, we ask at step three whether the statute . . . can be construed to avoid burdening Defendants' Petition Clause rights." *B&G Foods*, 29 F.4th at 540.

LARSON
LOS ANGELES

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

1      None of the statutes pled here proscribe the petitioning conduct at issue—

2   issuing settlement demand letters, filing personal injury lawsuits, and preparing

3   medical reports and billings records for use in those lawsuits. *Sosa*, 437 F.3d at

4   940-41. Dr. Khounganian's conduct as-pled thus falls squarely within the scope of

5   *Noerr-Pennington* immunity.

6              4.    The Sham Litigation Exception Does Not Apply

7      The broad immunity that the *Noerr-Pennington* doctrine provides to litigation

8   activity is subject only to a "narrow 'sham litigation' exception." *Sosa*, 437 F.3d at

9   932 n.6. It is Uber's burden to demonstrate that the sham litigation exception

10  applies. This burden is considerable: "In order not to chill legitimate [petitioning]

11  activities, it is important that a plaintiff's complaint contain specific allegations

12  demonstrating that the *Noerr–Pennington* protections do not apply. Conclusory

13  allegations are insufficient to strip [Defendants] of their *Noerr–Pennington*

14  protection. Although we may be more generous in reviewing complaints in other

15  contexts, our responsibilities under the first amendment in a case like this one

16  require us to demand that a plaintiff's allegations be made with specificity." *Boone*

17  *v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988)

18  (citations omitted).

19     To determine whether the sham litigation exception applies, the Ninth Circuit

20  employs one of three tests depending on the conduct at issue:

21         [F]irst, where the lawsuit is objectively baseless and the defendant's motive in
           bringing it was unlawful; second, where the conduct involves a series of
22         lawsuits brought pursuant to a policy of starting legal proceedings without
           regard to the merits and for an unlawful purpose; and third, if the allegedly
23         unlawful conduct consists of making intentional misrepresentations to the
           court, litigation can be deemed a sham if a party's knowing fraud upon, or its
24         intentional misrepresentations to, the court deprive the litigation of its
           legitimacy.
25

26

27  *B&G Foods*, 29 F.4th at 537-38 (citing *Sosa*, 437 F.3d at 938). Applying any of the

28  three tests, Uber cannot prevail.

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

The first test requires Uber to specifically allege that the four underlying personal injury actions were "objectively baseless" and were brought with an "unlawful" motive. *B&G*, 29 F.4th at 537. "An action is objectively baseless when no reasonable litigant could realistically expect success on the merits." *Relevant Grp.*, 116 F.4th at 932. Uber cannot do so: There is no dispute that all four claimants were involved in vehicle collisions. Compl. ¶¶ 37, 54, 80, 101. Nor is there any dispute that each claimant sought personal injury counsel following the collisions—presumably with the belief that they had sustained at least *some* form of compensable injury. *Id.* ¶¶ 39, 55, 84, 103. That the claimants sustained injuries due to the vehicle collisions is itself sufficient to demonstrate the potential merit of the subsequent personal injury action. *See Relevant Grp.*, 116 F.4th at 932 (to show that litigation is not objectively baseless "requires no more than a 'reasonable belief' that there is '*some* chance' 'that [a] claim may be held valid upon adjudication.'") (citation omitted); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (finding that a "potentially meritorious" suit was not objectively baseless). Moreover, Uber additionally concedes that the claimants ultimately received monetary settlements in the ensuing litigation (Compl. ¶¶ 79, 100, 118), again disproving any notion that their claims were objectively baseless. *Relevant Grp.*, 116 F.4th at 932 ("[S]ettlement indicates a lawsuit is not objectively baseless."); *Theme Promotions*, 546 F.3d at 1008 ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless."). Thus, by Uber's own admission, the underlying proceedings were in no manner objectively baseless.[6]

---

[6] A defendant's motive for bringing the suit is only examined if the proceedings were "objectively meritless." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Here, the sham exception could only apply if Defendants sought to injure Uber through the "use [of] the governmental *process*— as opposed to the *outcome* of that process." *City of Columbia v. Omni Outdoor*

Uber cannot invoke the second test here because it alleges misconduct that occurred in connection with only four personal injury lawsuits, a quantity that the Ninth Circuit has determined does not amount to "a series of lawsuits." *Relevant Grp.,* 116 F.4th at 931 ("Because this case only involves four actions resembling 'lawsuits' in the traditional sense, we apply the [first] exception, rather than the [second] exception to the facts of this case."); *see also Realtek*, 732 F. Supp. 3d at 1115 (holding that four underlying proceedings did not "constitute a 'series' for purposes of the sham exception.").[7] And, at any rate, the fact that each of the lawsuits resulted in successful settlements conclusively establishes that they were not brought "without regard to the merits" and "for an unlawful purpose." *See B&G Foods*, 29 F.4th at 539 (holding that lawsuits were not brought without regard to the merits or for an unlawful purpose given that the lawsuits were "largely successful.").

Uber likewise cannot invoke the third test because it has not alleged that Defendants made any in-court misrepresentations that deprived the underlying proceedings of their legitimacy—indeed, Uber has entirely failed to allege any fraud with the particularity required at the pleading stage. *See In re Outlaw Lab'ys, LP Litig.,* 352 F. Supp. 3d 992, 1004 n.4 (S.D. Cal. 2018) (third test does not apply where the complaint did not "expressly make any assertions that [defendant] has

_____

*Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). Of course, Uber cannot show that Defendants merely desired to institute the underlying proceedings without regard to the end result, given that "[Uber's] allegations suggest [] that the defendants genuinely desired the relief sought in the four proceedings." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1115 (N.D. Cal. 2024) (holding that sham exception was inapplicable).

[7] To the extent Uber attempts to rely on its allegation that Defendants "fraudulently tainted at least nine cases against Uber and dozens more against other personal injury defendants," (Compl. ¶ 9), this would still be insufficient for the second test to apply because Uber fails to include *any* specific allegations concerning these additional actions that would satisfy the sham litigation exception's heightened pleading requirement. See *Boone*, 841 F.2d at 894.

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN

made intentional misrepresentations to the Court."); *Kearney*, 590 F.3d at 647 (third test does not apply if plaintiff asserts "insufficiently specific allegations" concerning defendants' misrepresentations in court). Therefore, this test also cannot apply.

The entirety of Defendants' alleged conduct constitutes protected petitioning activity under *Noerr-Pennington*, and the sham litigation exception does not apply. Further, because Uber cannot overcome this well-recognized immunity, leave to amend would be futile.  The Complaint should therefore be dismissed with prejudice.

## V.    DR. KHOUNGANIAN JOINS DEFENDANTS' ARGUMENTS

For the purpose of judicial economy, Dr. Khounganian does not repeat the remaining arguments raised in the other Defendants' motions to dismiss and/or anti-SLAPP motions, but instead incorporates them by reference here as further support that warrants dismissal of Uber's claims.

## VI.    CONCLUSION

For these reasons, Uber's claims against Dr. Khounganian should be dismissed with prejudice, and pursuant to California Code of Civil Procedure section 425.16, the Court should award Dr. Khounganian his attorneys' fees and costs incurred in bringing the anti-SLAPP motion.


Dated:  November 14, 2025          LARSON LLP



By:  ____/s/ *Stephen G. Larson*____
     Stephen G. Larson
     John S. Lee
     Amelia L.B. Sargent
     Benjamin Falstein
Attorneys for Defendant GREG KHOUNGANIAN

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Greg Khounganian certifies that this brief contains 47 pages, which complies with the page limit set forth in the parties' Joint Stipulation to Exceed Page Limitation filed by Defendant Greg Khounganiani on November 10, 2025.

Dated: November 14, 2025        LARSON LLP

By:    /s/ *Stephen G. Larson*
                Stephen G. Larson
                John S. Lee
                Amelia L.B. Sargent
                Benjamin Falstein
        Attorneys for Defendant Greg Khounganian

DEFENDANT GREG KHOUNGANIAN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE-LAW CLAIMS AND TO DISMISS ALL CLAIMS AGAINST DR. KHOUNGANIAN