**WINSTON & STRAWN LLP**
David Scheper (SBN 120174)
dscheper@winston.com
Alexander Cote (SBN 211558)
acote@winston.com
Katelyn Taira (SBN 359683)
ktaira@winston.com
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:  +1 213-615-1700
Facsimile:   +1 213-615-1750

Attorneys for Defendants
Igor Fradkin and Downtown LA Law Group

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBER TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DOWNTOWN LA LAW GROUP; IGOR FRADKIN; THE LAW OFFICES OF JACOB EMRANI; JACOB EMRANI; VALLEY ORTHOPEDIC AND SPINE CENTER D/B/A GSK SPINE; and GREG KHOUNGANIAN,<br><br>Defendants. | **Case No. 2:25-cv-06612**<br><br>**DOWNTOWN LA LAW GROUP'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[Filed concurrently with Igor Fradkin and Downtown LA Law Group's Request for Judicial Notice and Incorporation by Reference, the Declaration of Igor Fradkin, the Declaration of Alexander H. Cote, Igor Fradkin and Downtown LA Law Group's Notice of Joinder, and [Proposed] Order]<br><br>Date:      April 29, 2026<br>Time:      1:30 p.m.<br>Court:    Hon. Sherilyn Peace Garnett<br><br>Complaint Filed: July 21, 2025<br>FAC Filed:      December 19, 2025 |

DTLA's NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 2:25-cv-06612

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that on April 29, 2026 at 1:30 p.m., or as soon thereafter as the matter shall be heard, in Courtroom 5C of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Sherilyn Peace Garnett, Defendant Downtown LA Law Group ("DTLA"), by and through its counsel of record, will move for an order dismissing with prejudice the First and Sixth Causes of Action in Uber Technologies, Inc.'s ("Uber") First Amended Complaint ("FAC"), alleging violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Motions of Defendants Igor Fradkin, The Law Offices of Jacob Emrani, Jacob Emrani, Greg Khounganian, and Valley Orthopedic and Spine Center d/b/a GSK Spine; Fradkin and DTLA's Request for Judicial Notice and Incorporation by Reference; the Declaration of Igor Fradkin; the Declaration of Alexander H. Cote; and such other further evidence and argument as may be presented at any hearing of this motion.

This Motion is made after the conference of counsel under Local Rule 7-3. The parties met and conferred via videoconference on January 16, 2026. *See* Decl. of Alexander H. Cote ¶ 2. The parties were unable to resolve the issues raised in Fradkin's and DTLA's motions to dismiss during the videoconference. *Id.*

Dated: January 23, 2026

/s/ David Scheper

WINSTON & STRAWN LLP
David Scheper (SBN 120174)
dscheper@winston.com
Alexander Cote (SBN 211558)
acote@winston.com
Katelyn Taira (SBN 359683)
ktaira@winston.com
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:  +1 213-615-1700
Facsimile:   +1 213-615-1750

Attorneys for Defendants
Igor Fradkin and Downtown LA Law Group

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

    I.     CLAIM PRECLUSION BARS UBER'S CLAIMS .....................................3

         A.    The Claims Involve The Same Cause Of Action Under California Law....................................................................................................5

         B.    The Issue In The Federal Suit Involves The Same Parties Or Privies As In The State Cases .....................................................................11

         C.    The State Cases Ended In Final Judgments On The Merits .............12

    II.    UBER'S CLAIMS ARE BARRED BY CALIFORNIA'S COMPULSORY COUNTERCLAIM RULE.................................................................13

    III.   THE *ROOKER-FELDMAN* DOCTRINE BARS UBER'S CLAIMS ........19

         A.    Uber Was A Party In The State Court Actions...............................20

         B.    Uber's Federal Claims Are "Inextricably Intertwined" With The State Court Judgments ..............................................................21

         C.    Uber's Allegations Of Fraud In The State Court Proceedings Does Not Save It From The *Rooker-Feldman* Jurisdictional Bar..............24

CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agha-Khan v. United States*,
2015 WL 5734380 (E.D. Cal. Sep. 29, 2015) ....................................................11

*Align Tech., Inc. v. Tran*,
179 Cal. App. 4th. 949 (2009) ...............................................................14, 17

*Ann v. Tindle*,
321 F. App'x 619 (9th Cir. 2009) ..........................................................8

*Arthur v. JP Morgan Chase Bank, N.A.*,
569 F. App'x 669 (11th Cir. 2014) ........................................................15

*Banco Nacional de Cuba v. First Nat'l City Bank of N.Y.*,
478 F.2d 191 (2d Cir. 1973) ..................................................................17

*Bankcard Sys., Inc. v. Miller/Overfelt, Inc.*,
219 F.3d 770 (8th Cir. 2000) .................................................................15

*Barclay v. Murphy*,
2023 WL 5348821 (9th Cir. Aug 21, 2023) ........................................21

*Bass v. Butler*,
116 F. App'x 376 (3d Cir. 2004) ..........................................................20

*Berry v. California*,
205 F. App'x 610 (9th Cir. 2016) ........................................................21

*Birchfield v. Deutsche Bank Nat'l Tr. Co.*,
2020 WL 735870 (E.D. Tenn. Feb. 13, 2020)....................................16

*Boeken v. Philip Morris USA, Inc.*,
48 Cal. 4th 788 (2010) .....................................................................6, 7

*In re Bondanelli*,
812 F. App'x 474 (9th Cir. 2020) ........................................................5

*Brennan v. Lyon*,
915 F. Supp. 324 (M.D. Fla. 1996)......................................................16

*Brown v. Felsen*,
442 U.S. 127 (1979)...............................................................................................3, 4

*Brownback v. King*,
592 U.S. 209 (2021) ...................................................................................................3

*Browning Debenture Holders' Comm. v. DASA Corp.*,
454 F. Supp. 88 (S.D.N.Y. 1978), *aff'd*, 605 F.2d 35 (2d Cir. 1978) ................12

*Bucur v. Ahmad*,
244 Cal. App. 4th 175 (2016) ................................................................................5, 7

*Burgess v. Peebles*,
936 F.2d 576 (9th Cir. 1991) ..............................................................................10, 13

*Cedars-Sinai Med. Ctr. v. Sup. Ct.*,
18 Cal. 4th 1 (1998) ...................................................................................................9

*Chan v. Priority Records L.L.C.*,
2008 WL 2447147 (E.D. Mich. June 18, 2008) ....................................................16

*Chodosh v. Saunders*,
2020 WL 7020303 (C.D. Cal. Nov. 5, 2020) ...................................................2, 21

*Christophe v. Morris*,
198 F. App'x 818 (11th Cir. 2006)........................................................................20

*Chung v. Cnty. of Santa Clara*,
2024 WL 4678052 (9th Cir. Nov. 5, 2024) ........................................................5, 6

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
338 F. Supp. 3d 995 (N.D. Cal. 2018)..................................................................13

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*,
60 Cal. App. 4th 1053 (1998) ...........................................................................4, 12

*Clark v. California*,
2023 WL 4275500 (C.D. Cal. May 9, 2023)...................................................21, 23

*Constant v. S. Cal. Edison Co.*,
2020 WL 6293973 (C.D. Cal. Oct. 13, 2020) ......................................................10

*Cooper v. Ramos*,
704 F.3d 772 (9th Cir. 2012) ...........................................................................21, 22

*Craig v. State Bar of Cal.*,
  141 F.3d 1353 (9th Cir. 1998) ...............................................................19

*Crowe v. Smith*,
  1996 WL 101393 (5th Cir. Feb. 26, 1996) ............................................16

*In re Crown Vantage, Inc.*,
  421 F.3d 963 (9th Cir. 2005) ............................................................1, 13

*D'Alessio v. City of Costa Mesa*,
  2025 WL 2633105 (C.D. Cal. Sept. 25, 2025) (applying *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976))......................................18

*Daniels v. Farm Credit Leasing Servs., Corp.*,
  2022 WL 19396414 (W.D. Tenn. July 27, 2022)................................16

*District of Columbia Ct. of Appeals v. Feldman*,
  460 U.S. 462 (1983).......................................................................2, 18, 19

*DKN Holdings LLC v. Faerber*,
  61 Cal. 4th 813 (2015) ......................................................................3, 5, 6

*In re Dominelli*,
  820 F.2d 313 (9th Cir. 1987) ................................................................12

*Dye v. Autumn Breeze Holding, LLC*,
  2005 WL 8154946 (N.D. Ga. Aug. 12, 2005).....................................16

*Eagle Precision Techs., Inc. v. Eaton Leonard Robolix, Inc.*,
  2005 WL 6453556 (S.D. Cal. Aug. 12, 2005).....................................17

*Ellis v. U.S. Bank, N.A.*,
  2017 WL 477707 (M.D. Fla. Feb. 6, 2017)..........................................20

*Est. of Baumann*,
  201 Cal. App. 3d 927 (1988) ..................................................................4

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp*,
  544 U.S. 280 (2005)...........................................................................2, 19

*Feloni v. Coco*,
  2019 WL 2387761 (D. Mass. Mar. 4, 2019) ........................................16

*Flickinger v. Swedlow Eng'g Co.*,
45 Cal. 2d 388 (1955) ...............................................................................13, 14

*Ford v. Cohn*,
44 F. App'x 145 (9th Cir. 2002) ......................................................................22

*Fox v. Maulding*,
112 F.3d 453 (10th Cir. 1997) .........................................................................16

*Galvan v. Nationstar Mortg.*,
2014 WL 644320 (D. Nev. Feb. 18, 2014) .......................................................16

*Gilbank v. Wood Cnty. Dep't of Human Servs.*,
111 F.4th 754 (7th Cir. 2024) (en banc) ..................................................2, 19, 23

*Goodman ex rel. Goodman v. Sipos*,
259 F.3d 1327 (11th Cir. 2001) .......................................................................19

*Goose Island Dev. Corp. v. Preferred Invs. IX Ltd. P'ship*,
1992 WL 220649 (N.D. Ill. Sep. 3, 1992) ........................................................16

*Henrichs v. Valley View Dev.*,
474 F.3d 609 (9th Cir. 2007) ..........................................................................19

*Henry v. Farmer City State Bank*,
808 F.2d 1228 (7th Cir. 1986) .........................................................................11

*Heshejin v. Rostami*,
54 Cal. App. 5th 984 (2020) ...........................................................................14

*Higgins v. Am. Bottling Co.*,
2022 WL 13811816 (C.D. Cal. Oct. 21, 2022) .................................................18

*Hoffman v. Goli Nutrition, Inc.*,
2024 WL 230873 (C.D. Cal. Jan. 17, 2024) ..................................................2, 15

*United States ex rel. Hyatt v. Mirza*,
2018 WL 6653319 (E.D. Cal. Dec. 19, 2018) ....................................................8

*Insignia Disposal Servs., LLC v. Hrebenar*,
697 F. Supp. 3d 370 (E.D. Pa. 2023).................................................................17

*Int'l Ass'n of Certified Home Inspectors v. HomeSafe Inspection, Inc.*,
2018 WL 704384 (D. Colo. Feb. 5, 2018)..........................................................16

*Int'l Union of Operating Engrs.-Emps. Constr. Indus. Pension, Welfare, and Training Tr. Funds v. Karr*,
994 F.2d 1426 (9th Cir. 1993) ..............................................................................12

*Ison v. Schulman*,
2025 WL 1513772 (9th Cir. May 28, 2025)........................................................22

*Jakupovic v. Curran*,
850 F.3d 898 (7th Cir. 2017) ...............................................................................19

*In re JNC Cos.*,
996 F.2d 1225 (9th Cir. June 30, 1993)................................................................11

*Johnson v. Altamirano*,
2022 WL 3700845 (9th Cir. Aug. 26, 2022) .........................................................7

*Kafele v. Shapiro & Felty, L.L.P.*,
2006 WL 783457 (S.D. Ohio Mar. 27, 2006)..............................................11, 20

*Kamal v. Cnty. of L.A.*,
2018 WL 4328467 (C.D. Cal. Sep. 6, 2018), *adopted*, 2018 WL 4292190 (C.D. Cal. Sep. 7, 2018) ..............................................................................................................8

*Kearney v. Foley & Lardner, LLP*,
747 F. App'x 478 (9th Cir. 2018) ...............................................................*passim*

*Kim v. Reins Int'l Cal., Inc.*,
9 Cal. 5th 73 (2020) .......................................................................................7, 12

*Kincaid v. Cnty. of L.A.*,
2023 WL 4681603 (C.D. Cal. June 6, 2023)......................................................21

*Kolb v. Sherer Bros. Fin. Servs. Co.*,
6 F.3d 542 (8th Cir. 1993) ...................................................................................16

*Kriston v. Peroulis*,
500 F. App'x 744 (10th Cir. 2012)......................................................................15

*L.A.M. Recovery, Inc. v. Dep't of Consumer Affs.*,
184 F. App'x 85 (2d Cir. 2016) ...........................................................................19

*Lance v. Dennis*,
546 U.S. 459 (2006)...............................................................................2, 18, 20

*Lewis v. L.A. Met. Transit Auth.*,
  2019 WL 6448944 (C.D. Cal. Sep. 10, 2019) ...............................................20, 24

*Lyu v. Hight*,
  2020 WL 1052583 (C.D. Cal. Jan. 29, 2020) .......................................................12

*Mains v. Citibank, N.A.*,
  852 F.3d 669 (7th Cir. 2017) ..........................................................................22, 23

*Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*,
  649 F.3d 539 (7th Cir. 2011) ...............................................................................16

*Mattel, Inc. v. MGA Ent., Inc.*,
  705 F.3d 1108 (9th Cir. 2013) .............................................................................14

*Mazzocco v. Lehavi*,
  2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) ......................................................8

*McCann v. Taleff*,
  2019 WL 2406336 (D. Mont. Apr. 24, 2019).......................................................11

*McDonald v. Arapahoe Cnty.*,
  755 F. App'x 786 (10th Cir. 2018)......................................................................20

*McDowell v. California*,
  564 F. App'x 296 (9th Cir. 2014) ...................................................................2, 21

*Merola v. Coco*,
  2018 WL 4899456 (D. Mass. July 5, 2018) .........................................................16

*In re Met-L-Wood Corp.*,
  861 F.2d 1012 (7th Cir. 1988) .............................................................................16

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union,
  AFL-CIO*,
  215 F.3d 923 (9th Cir. 2000) .................................................................................8

*Moore v. Harper*,
  600 U.S. 1 (2023)...................................................................................................4

*Mycogen Corp. v. Monsanto Co.*,
  28 Cal. 4th 888 (2002) ................................................................................4, 5, 6

*Noel v. Hall*,
    341 F.3d 1148 (9th Cir. 2003) ...............................................................19

*Oyekwe v. Rsch. Now Grp., Inc.*,
    542 F. Supp. 3d 496 (N.D. Tex. 2021) ...................................................11

*Packwood v. City of Contra Costa*,
    2025 WL 444223 (9th Cir. Feb. 10, 2025) .............................................22

*Palumbo Design, LLC v. 1169 Hillcrest, LLC*,
    2020 WL 5498065 (C.D. Cal. July 14, 2020)..........................................17

*Patera v. Citibank, N.A.*,
    2016 WL 8948283 (N.D. Cal. Aug. 12, 2016) .........................................20

*Pedrina v. Chun*,
    97 F.3d 1296 (9th Cir. 1996) .................................................................10

*People v. Garcia*,
    39 Cal. 4th 1070 (2006) ........................................................................12

*People v. Sims*,
    32 Cal. 3d 468 (Cal. 1982)....................................................................12

*Phan v. Cnty. of Orange*,
    2025 WL 326474 (9th Cir. Jan. 29, 2025)..............................................19

*Pincus v. Law Offices of Erskine & Fleisher*,
    2010 WL 286790 (S.D. Fla. Jan. 19, 2010).............................................11

*Pochiro v. Prudential Ins. Co. of Am.*,
    827 F.2d 1246 (9th Cir. 1987) ...............................................................15

*Puff 'N Stuff of Winter Park, Inc. v. Fed. Tr. Bank, F.S.B.*,
    945 F. Supp. 1523 (M.D. Fla. 1996)......................................................16

*Puffin Co., LLC v. Kvitka*,
    2007 WL 1176638 (E.D.N.Y. Apr. 19, 2007).........................................16

*Rader v. Citibank (South Dakota), N.A.*,
    2007 WL 3119543 (D. Colo. Oct. 18, 2007)......................................16, 23

*Rangel v. PLS Check Cashers of Cal., Inc.*,
    899 F.3d 1106 (9th Cir. 2018) ...............................................................12

*Rechanik v. Microsoft Corp.*,
  2009 WL 721005 (N.D. Ill. Mar. 17, 2009) ........................................................9

*In re Rickert*,
  2020 WL 7043609 (B.A.P. 9th Cir. Dec. 1, 2020)..............................................11

*Riley v. Giguere*,
  631 F. Supp. 2d 1295 (E.D. Cal. 2009) .............................................................12

*Rohm & Haas Co. v. Brotech Corp.*,
  770 F. Supp. 928 (D. Del. 1991)........................................................................15

*Rooker v. Fidelity Tr. Co.*,
  263 U.S. 413 (1923)..............................................................................................2

*San Remo Hotel, L.P. v. City & Cnty. of S.F.*,
  545 U.S. 323 (2005).........................................................................................4, 19

*Shmuel Shmueli, Bashe, Inc. v. Lowenfield*,
  68 F. Supp. 2d 161 (E.D.N.Y. 1999) ..................................................................16

*Sourdough & Co. v. WCSD, Inc.*,
  2024 WL 872868 (E.D. Cal. Feb. 29, 2024) ..................................................13, 17

*Sprague v. Kobayashi Am., Inc.*,
  100 F.3d 964 (9th Cir. Oct. 23, 1996) ................................................................15

*Steinmeyer v. Am. Ass'n of Blood Banks*,
  715 F. Supp. 3d 1302 (S.D. Cal. 2024)..................................................................9

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)..............................................................................................4

*TolTest, Inc. v. N. Am. Specialty Ins. Co.*,
  362 F. App'x 514 (6th Cir. 2010) .......................................................................13

*Torrey Pines Bank v. Superior Ct.*,
  216 Cal. App. 3d 813 (1989) ..............................................................................12

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
  292 F.3d 384 (3d Cir. 2002) ...........................................................................15, 17

*Valentine v. BAC Home Loan Serv., LP*,
  2014 WL 1819697 (M.D. Fla. May 7, 2014) ......................................................16

*Waldner v. N. Am. Truck & Trailer, Inc.*,
    277 F.R.D. 401 (D.S.D. 2011) ...............................................................................16

*In re Wansdown Props. Corp. N.V. v. 29 Beekman Corp.*,
    2023 WL 2751288 (Bankr. S.D.N.Y. Mar. 31, 2023) .........................................11

*Weakley v. Sec. State Bank*,
    20 F.3d 468 (5th Cir. 1994) ...................................................................................16

*Weinberger v. Tucker*,
    510 F.3d 486 (4th Cir. 2007) .................................................................................11

*Zapata v. Dep't of Motor Vehicles*,
    2 Cal. App. 4th 108 (1991) ....................................................................................12

*Zimmerman v. JP Morgan Chase Bank, N.A.*,
    2012 WL 12860983 (S.D. Fla. Apr. 12, 2012) ...............................................16, 23

**Statutes**

28 U.S.C. § 1257 ........................................................................................................18

28 U.S.C. § 1738 .....................................................................................................1, 4

Cal. Civ. Proc. Code § 426.10(c) ..............................................................................13

Cal. Civ. Proc. Code § 426.30 ..............................................................................1, 13

Cal. Civ. Proc. Code § 426.30(a) ..............................................................................13

**Other Authorities**

6 *Cyclopedia of Fed. P.* § 16.40 (3d ed. 2025) .........................................................18

Fed. R. Civ. P. 13 ................................................................................................14, 17

Fed. R. Civ. P. 13(a) ..................................................................................................17

*Rutter Prac. Guide-Fed. Civ. Proc. Before Trial* (Calif. and 9th Cir. ed.) § 8.1125
    (2025) .....................................................................................................................17

**INTRODUCTION**

Uber seeks to relitigate cases brought by Downtown LA Law Group's ("DTLA") clients ("Clients") in California state courts against Uber that Uber already settled.[1]  After thoroughly investigating those claims, including extensive discovery, Uber settled them with its eyes wide open to the claims' strengths and weaknesses.  Those settlements resulted in final judgments against Uber.[2]  Feeling buyer's remorse, Uber claims it should not have settled those cases because the Clients fraudulently exaggerated or fabricated their injuries.  But Uber has not asked the California state courts to reopen the judgments entered in those cases.  Accordingly, those judgments remain final and binding on Uber.

Uber attempts to relitigate those state court suits here by suing DTLA under the Racketeer Influenced and Corruption Organization Act ("RICO"), but that effort fails for three reasons.  ***First***, because Uber's claims in this Court could have been brought in the various preceding state court actions that Uber attacks, claim preclusion bars Uber from raising these claims now.  Pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738, "[f]ederal courts must 'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'"  *Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478, 480 (9th Cir. 2018).  The Ninth Circuit has confirmed that California courts apply claim preclusion to bar federal RICO claims of the sort that Uber brings here, alleging that state court judgments were obtained by fraud. *Id.*

***Second***, Uber's claims here are compulsory counterclaims that should have been brought in the state court cases and, having failed to do so, it cannot bring them here.  As with the broader doctrine of claim preclusion, "[f]ederal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action."  *In re Crown Vantage, Inc.*, 421 F.3d 963, 973 n.7 (9th Cir. 2005).  California's compulsory counterclaim rule is broadly embodied in Code of

---

[1] Defendant Fradkin, who joins this motion, is an attorney at DTLA.

[2] The only exception is Claimant I, whose 2021 injury continues to be litigated.  As explained below, Uber's claims as to Claimant I are barred by the compulsory counterclaim rule and abstention is required in favor of the previously filed state court action.

Civil Procedure § 426.30, and this Court has found RICO claims alleging that state court judgments were fraudulently obtained barred by the compulsory counterclaim rule. *See, e.g.*, *Hoffman v. Goli Nutrition, Inc.*, 2024 WL 230873, at *13 (C.D. Cal. Jan. 17, 2024).

***Third***, Uber is foreclosed from challenging these final California state court judgments in federal court under the *Rooker-Feldman* doctrine, which "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'"[3]  This Court has concluded "[t]hat Plaintiffs now stylize their claims for relief as rising from RICO does not cure this deficiency." *Chodosh v. Saunders*, 2020 WL 7020303, at *82 (C.D. Cal. Nov. 5, 2020).  The Ninth Circuit agrees. *See, e.g.*, *McDowell v. California*, 564 F. App'x 296, 297 (9th Cir. 2014) (new RICO claim barred as "inextricably intertwined" with state court judgment).

Although the alleged primary beneficiaries of this supposed fraud are the Clients who settled with Uber in California state courts, Uber chose not to litigate those cases on the merits and to instead settle them.  But Uber must know that it cannot persuade the California state courts that those settlements were obtained through fraud because it has not even asked those state courts to reopen those judgments.

Uber also must recognize that claim preclusion, the compulsory counterclaim rule, and the *Rooker-Feldman* doctrine would prevent it from suing those Clients who it settled with in state court in this federal court because it has not tried that either.  Instead, Uber attempts to sidestep those legal bars by suing the California state court Clients' *lawyers*, rather than suing the Clients themselves.  But that is a legal misstep because the lawyers are in privity with their clients, so the same defenses that would preclude a judgment against the state court Clients also prevent a judgment against their lawyers.  And,

---

[3] *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam).  The doctrine derives from *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "[T]he doctrine has been invoked in tens of thousands of circuit and district court decisions since *Exxon Mobil*." *Gilbank v. Wood Cnty. Dep't of Human Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc).

regardless of privity, the *Rooker-Feldman* doctrine prevents Uber from relitigating issues here that are "inextricably intertwined" with the state court judgments against it. After filing this case, Uber appears to be trying to avoid the same mistake by countersuing Clients and their counsel who sue them in state court. *See* Fradkin Decl., Ex. V.

## ARGUMENT

## I. CLAIM PRECLUSION BARS UBER'S CLAIMS

Because Uber could have raised the claims it brings here in the preceding state court actions that it settled, claim preclusion bars Uber from raising these claims now. Claim preclusion ensures that final judgments are respected and litigation ends, but Uber flouts these principles by alleging the final state court judgments against it were wrongly decided and obtained through fraud. Of course, Uber could have defended those state cases on the very grounds it raises in this federal lawsuit—that the Clients' injuries were exaggerated or non-existent—and it could have appealed any loss or sought to reopen any state judgment obtained by fraud, but Uber did none of those things. Consequently, those state court judgments remain final, and res judicata—more precisely, claim preclusion[4]— prevents Uber from relitigating any claim that it could have raised in the state cases.

Importantly, "[r]es judicata ensures the finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *San Remo Hotel, L.P. v. City and Cnty. of S.F.*, 545 U.S. 323, 336

---

[4] "The terms res judicata and claim preclusion often are used interchangeably. But res judicata 'comprises two distinct doctrines.'" *Brownback v. King*, 592 U.S. 209, 215 n.3 (2021). Although not relevant here because the settlements involved no factfinding, "[t]he first is issue preclusion, also known as collateral estoppel. It precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* Relevant here though, "[t]he second doctrine is claim preclusion," which "prevents parties from relitigating the same 'claim' or 'cause of action,' even if certain issues were not litigated in the prior action. Suits involve the same 'claim' or 'cause of action' if the later suit 'aris[es] from the same transaction' or involves a 'common nucleus of operative facts.'" *Id.*; *see also DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823–24 (2015) (noting the California Supreme Court's terminology "has been inconsistent and may have caused some confusion" too and clarifying that "[c]laim preclusion, the 'primary aspect' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties").

DTLA'S NOTICE OF MOTION AND MOTION TO DISMISS
3                                    CASE NO. 2:25-cv-06612

n.16 (2005).  It "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown*, 442 U.S. at 131; *see Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'").  "'[T]he res judicata consequences of a final, unappealed judgment on the merits' are not 'altered by the fact that the judgment may have been wrong . . . .'" *Moore v. Harper*, 600 U.S. 1, 17 (2023).

The Full Faith and Credit Statute, 28 U.S.C. § 1738, provides: "[f]ederal courts must 'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Kearney*, 747 F. App'x at 480.  "The general rule implemented by the full faith and credit statute—that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction—predates the Republic." *San Remo Hotel*, 545 U.S. at 336.  This rule "has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation." *Id*.

California, in turn, views claim preclusion the same as federal law:

> The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation.

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998); *see Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002)) ("Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."); *Est. of Baumann*, 201 Cal. App. 3d 927, 937 (1988) (Crosby, J., concurring) ("Under res judicata principles litigants

must raise all defenses and counterclaims in the first action. After judgment is entered, arguments and claims that could have been asserted but were not are precluded in a subsequent action.").

Under California law, "[c]laim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *DKN Holdings*, 61 Cal. 4th at 824. California's "elements of res judicata in its claim preclusion form are (1) the claim in the present action must be identical to a claim litigated or that could have been litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Bucur v. Ahmad*, 244 Cal. App. 4th 175, 185 (2016); *see Chung v. Cnty. of Santa Clara*, 2024 WL 4678052, at *3 (9th Cir. Nov. 5, 2024); *In re Bondanelli*, 812 F. App'x 474, 475 (9th Cir. 2020). "A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.*'" *Mycogen*, 28 Cal. 4th at 897.

### A.  The Claims Involve The Same Cause Of Action Under California Law

Uber's FAC explicitly challenges the causes of action at issue in ten state court cases that it settled, resulting in final judgments against it. *See, e.g.*, FAC ¶405 (identifying eleven separate state court cases involving DTLA allegedly involving "fraudulent billing," ten settled). Uber alleges: "Downtown LA Law Group and Igor Fradkin use the associated fraudulent medical records and the evidence of the liens to pursue claims against Uber and others for inflated damages in [those] personal-injury lawsuits." FAC ¶358. As a result, Uber claims that Defendants "fraudulently induce[d] significantly larger settlement payments from Uber in personal injury lawsuits" and operated a "scheme to defraud Uber and others out of money or property by means of materially false representations . . . ." *Id.* ¶¶411, 417, 418; *see also id.* ¶¶12, 362 ("significantly larger settlement payments from Uber"). Uber claims "[t]he scheme has

resulted in millions of dollars of harm from defense costs and settlements. This action is intended to recover the full extent of such harm." *Id.* ¶361. Uber even seeks injunctive relief. *Id.* Prayer ¶6.

Uber quite plainly is alleging that its injuries are from the state court cases that it settled. Uber admits that it settled ten of the eleven cases brought by DTLA. Uber acknowledges that it obtained Clients' medical history and assessed these cases with "independent medical evaluation[s]" that it believes revealed fraud. FAC ¶¶172, 183, 197, 221 ("independent expert orthopedic surgeon"), 299, 338. Uber also claims "forensic billing review" or "independent expert[s]" concluded the medical charges were excessive. *Id.* ¶¶200, 321. Some Clients were even deposed by Uber. *Id.* ¶¶210, 217, 322, 349. Despite uncovering this alleged fraud pre-settlement, Uber inconsistently claims that it "relied on the fraudulent medical and billing records in determining whether and on what terms to settle" these claims. *Id.* ¶ 187.

"For purposes of claim preclusion, California law defines a 'cause of action' by employing a 'primary rights' approach." *Chung*, 2024 WL 4678052, at *3. "Under that approach, a 'cause of action' consists of '(1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists [of] a breach of such primary right and duty.'" *Id.* "The 'cause of action,' thus, is 'the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Id.* (quoting *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 798 (2010); *see also DKN Holdings*, 61 Cal. 4th at 818 n.1 ("Under the 'primary rights' theory, a cause of action arises from the invasion of a primary right. Although different grounds for legal relief may be asserted under different theories, conduct that violates a single primary right gives rise to only one cause of action.").

As the California Supreme Court explained in *Boeken*:

[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. Even where there are multiple legal theories upon

which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief.' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.

48 Cal. 4th at 798. In *Boeken*, for example, the California Supreme Court found a prior action for loss of consortium barred a subsequent claim for wrongful death because both stemmed from the same injury. *Id.*

Claim preclusion is not limited to the specific issues actually decided. "[T]he rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *Bucur*, 244 Cal. App. 4th at 185. California courts explain, "[t]he reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." *Id.*; *see Johnson v. Altamirano*, 2022 WL 3700845, at *2 (9th Cir. Aug. 26, 2022) (claim preclusion "bars the litigation not only of issues that were actually litigated but also issues that could have been litigated"); *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 92–93 (2020) ("[A] prior judgment between the same parties 'is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.'").

The primary right asserted by the Clients in the state court actions was the right to compensation for physical injuries caused by Uber, which is the very primary right challenged by Uber now in this federal action in arguing that the injuries alleged in those cases were non-existent or exaggerated.[5] Although Uber could have defended the state

[5] Frequently, the primary right of one party is the inverse of the other party's right. Here, state court Clients alleged a primary right to compensation for injuries caused by Uber, while Uber's defense raised a primary right not to be held liable. *See, e.g., Ann v. Tindle*,

cases on the same theory that it advances now—that those cases were fraudulently brought because Uber either did not cause any injury or the alleged injuries were grossly exaggerated—Uber instead chose to settle those cases and have them dismissed with prejudice. By electing not to challenge damages or causation in the state court actions, Uber bound itself through claim preclusion from making those arguments here.

Nor can Uber circumvent the claim preclusion bar by arguing that the state court judgments were obtained by fraud in violation of RICO. The Ninth Circuit has refused to allow claims "to be relitigated in the RICO context" where "[t]he harm alleged is fundamentally the same injury" at issue in the earlier proceedings. *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 215 F.3d 923, 928 (9th Cir. 2000); *see also Mazzocco v. Lehavi*, 2015 WL 12672026, at *9 (S.D. Cal. Apr. 13, 2015) (precluding claims because the "same primary right was at stake" in both actions, even though plaintiffs added a new RICO theory based on predicate acts discovered after the first judgment); *Kamal v. Cnty. of L.A.*, 2018 WL 4328467, at *11 (C.D. Cal. Sept. 6, 2018) (similar), *adopted*, 2018 WL 4292190, at *1 (C.D. Cal. Sept. 7, 2018).

In *Kearney*, for example, the plaintiff's property had been seized through eminent domain, and she initiated litigation over the valuation of the property that was resolved in state court. 747 F. App'x at 480. Subsequently, the plaintiff concluded that defendants fraudulently withheld evidence of an enhanced value for the property in the state court proceedings. Plaintiff then sued the state court defendants and their lawyers in federal court alleging that the state court judgment was fraudulently obtained in violation of RICO. The Ninth Circuit affirmed summary judgment on preclusion principles.

The Ninth Circuit recognized that "California gives preclusive effect to earlier proceedings, even when the suppression of evidence or other discovery misconduct is

---

321 F. App'x 619, 620 (9th Cir. 2009) (government prevailed against tenant for unlawful detainer of an apartment, which barred subsequent civil rights suit by tenant for wrongful eviction); *United States ex rel. Hyatt v. Mirza*, 2018 WL 6653319, at *4 (E.D. Cal. Dec. 19, 2018) (defenses in first action cannot be raised as claims in a second action).

alleged." *Id.* California only permits a litigant to challenge the conclusiveness of a judgment where there is extrinsic fraud, meaning "it deprived the opposing party of the opportunity to appear and present his case." *Id.* By contrast, "[t]he suppression of evidence is intrinsic fraud. Therefore, a judgment does not lose its res judicata effect because it was entered while evidence was being suppressed." *Id.* The same applies to "judgments procured by false testimony." *Id.* The Ninth Circuit explained: "In *Cedars-Sinai*, the California Supreme Court considered the doctrines of res judicata and collateral estoppel and concluded that 'a judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed' because a legal action 'based on litigation misconduct' 'would be productive of endless litigation.'" *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Sup. Ct.*, 18 Cal. 4th 1, 8–9 (1998)).

The Ninth Circuit explained that "California law is firm that such intrinsic fraud does not upset the finality of an earlier judgment" and that "post-trial motions" provide an "opportunity for making the truth appear" where testimony was perjured or evidence was suppressed. *Id.* When a litigant "fails to show the injustice that has been done him[,] on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy." *Id.* Accordingly, the Ninth Circuit gave preclusive effect to the state court valuation judgment and, consequently, plaintiff's RICO claim based on that judgment being obtained fraudulently failed. *Id.*; *see also Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302, 1316 (S.D. Cal. 2024) (destruction of evidence is intrinsic fraud and cannot be raised in collateral proceedings under California law).

Other courts have reached similar conclusions. In *Rechanik v. Microsoft Corp.*, for example, a federal plaintiff sued Microsoft under RICO for its litigation tactics in securing a favorable state court judgment. 2009 WL 721005, at \*4 (N.D. Ill. Mar. 17, 2009). The Court found the RICO claim barred by claim preclusion, explaining (at \*4):

> Essentially, plaintiff is alleging that Microsoft's prior case against him was part of a RICO scheme to defraud plaintiff. Were plaintiff to prevail on his RICO claim, it would nullify rights won by Microsoft in the prior claim. So, while Count II is

not technically a compulsory counterclaim, it is a claim that should have been brought in the prior suit.

The Ninth Circuit in *Kearney* also rejected the plaintiff's arguments that her federal claims for emotional distress and attorney's fees should survive. The Ninth Circuit explained: "Were we to hold otherwise, a dissatisfied litigant could circumvent the California doctrine on the finality of judgments by seeking emotional distress damages or attorney's fees for alleged litigation misconduct committed in an earlier state court proceeding simply by asserting a federal claim in federal court." 747 F. App'x at 482. The Ninth Circuit concluded that "[s]uch a result would be contrary to Congress's mandate that federal courts give full faith and credit to the judgments of state courts." *Id.*; *see also Constant v. S. Cal. Edison Co.*, 2020 WL 6293973, at *6 (C.D. Cal. Oct. 13, 2020) (citing *Kearney* in finding "Plaintiff's claims are based on the facts, events, and transactions litigated in [the prior state case],[ ]and they all were actually litigated or could have been litigated in [the prior state case]").

In *Burgess v. Peebles*, the Ninth Circuit also found the defendants' failure to raise RICO as a counterclaim in a state case brought against them precluded them from filing a federal RICO claim. 936 F.2d 576, at *2 (9th Cir. 1991) (unpublished). The Burgesses had been sued in California state court by the owners of property to quiet title and eject the Burgesses, and the owners prevailed. The Burgesses then brought a federal case alleging a RICO violation, arguing that the owners made misrepresentations regarding their attempted purchase of the property and that the title should be transferred to the Burgesses. *Id.* at *1. In affirming the district court's dismissal as res judicata under California law, the Ninth Circuit "conclude[d] that the Burgesses could easily have asserted their present claim in the state court action brought against them by the owners for ejectment and quiet title." *Id.*; *see also Pedrina v. Chun*, 97 F.3d 1296, 1303 (9th Cir. 1996) (finding federal RICO claim barred by res judicata due to a prior state court judgment on a state claim).

In short, claim preclusion bars Uber's claims that the state court cases filed against it were baseless because Uber could have raised that defense in each of those actions.

**B.   The Issue In The Federal Suit Involves The Same Parties Or Privies As In The State Cases**

There is no question that this federal case involves the same parties or privies as in the state cases. Uber was the defendant in each of the state cases and is the plaintiff here, and DTLA represented the Clients in those state court cases.

"Lawyers are privies with their clients for purposes of *res judicata*." *McCann v. Taleff*, 2019 WL 2406336, at *5 (D. Mont. Apr. 24, 2019) (collecting cases). Privity exists where "a party's attorneys are 'added as defendants because of their roles in their clients' alleged wrongdoing." *In re Wansdown Props. Corp. N.V. v. 29 Beekman Corp.*, 2023 WL 2751288, at *16 (Bankr. S.D.N.Y. Mar. 31, 2023); *Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 507–08 (N.D. Tex. 2021) (finding the law firm Blank Rome in privity with its client in prior litigation for purposes of collateral estoppel); *Pincus v. Law Offices of Erskine & Fleisher*, 2010 WL 286790, at *2 n.1 (S.D. Fla. Jan. 19, 2010) (collecting cases).

Thus, "when a law firm defendant appears in a subsequent action 'by virtue of their activities as representatives' of a party in a prior action, privity exists." *Agha-Khan v. United States*, 2015 WL 5734380, at *5 (E.D. Cal. Sept. 29, 2015); *id.* ("[A]ny liability of the attorney would be derivative; because the client 'has prevailed,' the attorney 'too is entitled to judgment.'").[6] Again, *Kearney* is instructive, as there the Ninth Circuit found

---

[6] Case law support is legion. *See, e.g.*, *In re Rickert*, 2020 WL 7043609, at *4 (B.A.P. 9th Cir. Dec. 1, 2020) (finding claim preclusion as to an attorney who was in privity with his client in a prior action); *In re JNC Cos.*, 996 F.2d 1225, at *3 (9th Cir. June 30, 1993) (table) (attorney representing a party in prior action was in privity with the client for purposes of claim preclusion); *Weinberger v. Tucker*, 510 F.3d 486, 492–93 (4th Cir. 2007) ("Courts have held that the attorney-client relationship itself establishes privity."); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1232 (7th Cir. 1986) (holding federal RICO claim brought by losing state court litigants against the state court victors and their counsel alleging the state court victory was obtained through fraud was barred by res judicata); *Oyekwe*, 542 F. Supp. at 507–08 ("privity may exist where . . . a party's attorneys are 'added as clients' alleged wrongdoing'" and collecting cases in which "attorneys were given the benefit of res judicata as to their role in their clients' alleged wrongdoing" when

a RICO claim brought against the attorneys for the prevailing party in state court was entitled to res judicata. 747 F. App'x at 748.

### C. The State Cases Ended In Final Judgments On The Merits

Ten of the eleven state cases identified in the FAC were dismissed with prejudice (*see* Fradkin Decl., Ex. L–U;) and "[a] dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim." *Kim*, 9 Cal. 5th at 91. Nor does it matter that Uber settled those claims. "California courts have expressly invoked res judicata in the settlement context." *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 n.3 (9th Cir. 2018). "A judgment entered . . . by consent or stipulation, is as conclusive a . . . bar as a judgment rendered after trial." *Citizens for Open Access*, 60 Cal. App. 4th at 1065 (settlement agreement incorporated into a judgment is a final determination on the merits); *see Rangel*, 899 F.3d at 1110 ("It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and 'is as conclusive a bar as a judgment rendered after trial.'"); *In re Dominelli*, 820 F.2d 313, 316–17 (9th Cir. 1987) (dismissal with prejudice pursuant to a settlement agreement is a final judgment on the merits and precludes parties from reasserting the same claim in a subsequent action), *accord Int'l Union of Operating Engrs.-Emps. Constr. Indus. Pension, Welfare, and Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993); *Kim*, 9 Cal. 5th at 91 (a "dismissal

---

the "attorneys were added to a second lawsuit for allegedly helping their clients commit fraud that was alleged, or could have been alleged, against the clients in the first lawsuit"); *Kafele v. Shapiro & Felty, L.L.P.*, 2006 WL 783457, at *5 (S.D. Ohio Mar. 27, 2006) (finding federal RICO claim against parties and their counsel who prevailed in obtaining an allegedly fraudulent state court victory barred by res judicata); *Browning Debenture Holders' Comm. v. DASA Corp.*, 454 F. Supp. 88, 104 (S.D.N.Y. 1978) ("[T]he principle of res judicata bars subsequent actions not only between the same parties, but also between those in privity with the original parties. DASA's directors and lawyers are privies of DASA with respect to the operative facts of this case."), *aff'd*, 605 F.2d 35 (2d Cir. 1978). This principle is followed in California as well. *See People v. Sims*, 32 Cal. 3d 468, 488 (Cal. 1982) (finding privity for collateral estoppel between an attorney who represented a client in prior litigation), *accord People v. Garcia*, 39 Cal. 4th 1070, 1078–79 (2006) (reaffirming *Sims*); *Zapata v. Dep't of Motor Veh.*, 2 Cal. App. 4th 108, 113 (1991); *Lyu v. Hight*, 2020 WL 1052583, at *5 (C.D. Cal. Jan. 29, 2020); *Riley v. Giguere*, 631 F. Supp. 2d 1295, 1308 (E.D. Cal. 2009).

with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim"); *Torrey Pines Bank v. Superior Ct.*, 216 Cal. App. 3d 813, 820 (1989) ("Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again").

## II. UBER'S CLAIMS ARE BARRED BY CALIFORNIA'S COMPULSORY COUNTERCLAIM RULE

As to all the cases Uber alleges, Uber's claims are barred by California's narrower statutory compulsory counterclaim rule. *See Burgess*, 936 F.2d 576, at *2 ("The separate doctrine of res judicata independently can preclude a subsequent action even where the compulsory counterclaim rule does not."); *TolTest, Inc. v. N. Am. Specialty Ins. Co.*, 362 F. App'x 514, 516 (6th Cir. 2010) (res judicata is broader than the compulsory counterclaim bar). As with claim preclusion, "[f]ederal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action." *In re Crown Vantage, Inc.*, 421 F.3d at 973 n.7.

Under Code of Civil Procedure § 426.30, "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." "'Related cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." *Id.* § 426.10(c). "If a party fails to plead a compulsory counterclaim, he is held to waive it and is precluded by res judicata from ever suing upon it again." *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995, 1006 (N.D. Cal. 2018).

"Section 426.30(a) is designed to prevent piecemeal litigation and is to be liberally construed to effectuate that purpose." *Sourdough & Co. v. WCSD, Inc.*, 2024 WL 872868, at *3 (E.D. Cal. Feb. 29, 2024); *see Flickinger v. Swedlow Eng'g Co.*, 45 Cal. 2d 388, 393

(1955) ("The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the counterclaim statutes . . . was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction."); *Align Tech., Inc. v. Tran*, 179 Cal. App. 4th. 949, 959 (2009) ("[N]umerous cases have held that the compulsory cross-complaint statute . . . must be liberally construed to effectuate its purpose."). "Because of the liberal construction given to the statute to accomplish its purpose of avoiding a multiplicity of actions, 'transaction' is construed broadly; it is 'not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated.'" *Heshejin v. Rostami*, 54 Cal. App. 5th 984, 993–94 (2020). "Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion." *Flickinger*, 45 Cal. 2d at 393.

In determining the scope of California's compulsory counterclaim rule, California courts often look to the equivalent federal rule in Federal Rule of Civil Procedure 13. *See, e.g.*, *Align Tech.*, 179 Cal. App. 4th at 964–65. California's compulsory counterclaim rule, like its Rule 13 federal equivalent, applies a "logical relationship" test. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013); *Align Tech.*, 179 Cal. App. 4th at 964. "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel*, 705 F.3d at 1110. Courts ask whether the claims are logically related or whether the claims are of the sort a defendant might raise as a defense or counterclaim to the original action. *Align Tech.*, 179 Cal. App. 4th at 952.

Uber's claims here are logically related to claims it could have brought in the state court actions, as Uber's federal claims arise from the same occurrences at issue in the state cases. All the state cases alleged that Uber's drivers caused personal injuries, and Uber

DTLA's NOTICE OF MOTION AND MOTION TO DISMISS
14                    CASE NO. 2:25-cv-06612

could have defended those cases on the same grounds it raises here, claiming those very same state cases were fraudulently brought against Uber with fictitious evidence to suggest injuries that were either overblown or did not occur at all.  Yet Uber did not assert those defenses or counterclaims in the state cases that Uber instead settled.  Thus, the compulsory counterclaim rule prevents Uber from raising those issues now.

The Ninth Circuit has found these sorts of abuse of process claims are compulsory counterclaims that should have been brought in the same action that was originally initiated.  *See, e.g.*, *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252 (9th Cir. 1987).  It also has held that res judicata precludes a litigant who failed to raise a RICO claim in prior state court litigation from raising it in a subsequent federal case.  *Sprague v. Kobayashi Am., Inc.*, 100 F.3d 964, at *1 (9th Cir. Oct. 23, 1996) (unpublished) ("[B]ecause state courts are as competent as federal courts to decide due process and RICO claims, Sprague could have raised those claims in his prior state court action.  Because he failed to do so, those claims are also barred by res judicata.").

In *Rohm and Haas Co. v. Brotech Corp.*, Circuit Judge Roth rejected a similar claim. 770 F. Supp. 928 (D. Del. 1991).  After a plaintiff brought patent infringement claims in one case, the defendant filed a new case raising RICO claims arguing that the patents had been procured through fraud.  Judge Roth found the RICO claim was barred because it should have been a compulsory counterclaim in the initial suit, as it went to the merits of the initial action.  *Id.* at 933; *see Transamerica Occidental Life. Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 391 (3d Cir. 2002) (Alito, J.) (following Judge Roth's decision); *Hoffman*, 2024 WL 230873, at *13 (C.D. Cal. Jan. 17, 2024) (Snyder, J.) (RICO claim barred by compulsory counterclaim rule because it arises from the same facts as a prior lawsuit), as do the federal Courts of Appeals, *see Arthur v. JP Morgan Chase Bank, N.A.*, 569 F. App'x 669, 676 (11th Cir. 2014) (Florida RICO claim alleging fraud barred as a compulsory counterclaim that should have been raised in a Wisconsin state case); *Kriston v. Peroulis*, 500 F. App'x 744, 746 (10th Cir. 2012) (RICO claim

raised in federal case alleging unlawful debt collection was a compulsory counterclaim to a state case brought to collect the debt); *Bankcard Sys., Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 775 (8th Cir. 2000) (RICO claim raised in a federal case was barred as a compulsory counterclaim to a prior state case, binding the state court defendant and "someone in privity with that party"); *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) (RICO claim raised in a federal case was barred as a compulsory counterclaim to a prior state case, binding the state court defendant and "those in privity" with him); *Crowe v. Smith*, 1996 WL 101393, at *10 (5th Cir. Feb. 26, 1996) ("The use of civil RICO litigation in federal court by unsuccessful state court litigants in an attempt to turn state court defeat into federal court victory thwarts the salutary purposes of the preclusion doctrine, as well as the mandate that federal courts give full faith and credit to state court judgments."); *Weakley v. Sec. State Bank*, 20 F.3d 468, at *3 (5th Cir. 1994) (RICO claim barred as a compulsory counterclaim); *Kolb v. Sherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 545 (8th Cir. 1993) (RICO claim raised in federal case based on the same transactions at issue were compulsory counterclaims in prior state cases).  Numerous federal District Courts have found federal RICO claims barred as compulsory counterclaims to prior state courts cases as well.[7]

---

[7] *See Daniels v. Farm Credit Leasing Servs., Corp.*, 2022 WL 19396414, at *12 (W.D. Tenn. July 27, 2022); *Birchfield v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 735870, at *8 (E.D. Tenn. Feb. 13, 2020); *Feloni v. Coco*, 2019 WL 2387761, at *11 (D. Mass. Mar. 4, 2019); *Merola v. Coco*, 2018 WL 4899456, at *9 (D. Mass. July 5, 2018); *Int'l Ass'n of Certified Home Inspectors v. HomeSafe Inspection, Inc.*, 2018 WL 704384, at *6 (D. Colo. Feb. 5, 2018); *Valentine v. BAC Home Loan Serv., LP*, 2014 WL 1819697, at *2 (M.D. Fla. May 7, 2014); *Galvan v. Nationstar Mortg.*, 2014 WL 644320, at *3 (D. Nev. Feb. 18, 2014); *Zimmerman v. JP Morgan Chase Bank, N.A.*, 2012 WL 12860983, at *7 (S.D. Fla. Apr. 12, 2012); *Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401, 413 (D.S.D. 2011); *Chan v. Priority Records L.L.C.*, 2008 WL 2447147, at *3 (E.D. Mich. June 18, 2008); *Rader v. Citibank (South Dakota), N.A.*, 2007 WL 3119543, at *9 (D. Colo. Oct. 18, 2007); *Puffin Co., LLC v. Kvitka*, 2007 WL 1176638, at *2 (E.D.N.Y. Apr. 19, 2007); *Dye v. Autumn Breeze Holding, LLC*, 2005 WL 8154946, at *14 (N.D. Ga. Aug. 12, 2005); *Shmuel Shmueli, Bashe, Inc. v. Lowenfield*, 68 F. Supp. 2d 161, 165 (E.D.N.Y. 1999); *Puff 'N Stuff of Winter Park, Inc. v. Fed. Tr. Bank, F.S.B.*, 945 F. Supp. 1523, 1530 (M.D. Fla. 1996); *Brennan v. Lyon*, 915 F. Supp. 324, 329 (M.D. Fla. 1996); *Goose Island Dev. Corp. v. Preferred Invs. IX Ltd. P'ship*, 1992 WL 220649, at *4 (N.D. Ill. Sept. 3, 1992).

DTLA'S NOTICE OF MOTION AND MOTION TO DISMISS

16

CASE NO. 2:25-cv-06612

In *In re Met-L-Wood Corp.*, the Seventh Circuit found a RICO claim concerning the sale of property upheld by a state court judgment barred by the compulsory counterclaim rule.  861 F.2d 1012, 1016 (7th Cir. 1988).  As Judge Posner put it, "[b]ringing the suit under RICO could make no difference. RICO is many things, but it is not an exception to res judicata."  *Id.*; *accord Matrix IV, Inc. v. Am. Nat'l Bank and Tr. Co. of Chi.*, 649 F.3d 539, 549 (7th Cir. 2011) (describing the RICO suit as a "thinly disguised collateral attack on the [bankruptcy court's] judgment confirming the sale" and noting that "RICO is many things, . . . but it is not an exception to res judicata").  Uber's federal suit is not thinly veiled; it is a declaration of war on the ten California state court judgments against it.

Nor can Uber escape the compulsory counterclaim rule by suing the Clients' lawyers in those cases, rather than the Clients themselves, because they are in privity.  As then-Judge Alito explained in the leading case on this issue, "courts interpret[] 'opposing party' broadly for essentially the same reasons that courts have interpreted 'transaction or occurrence' liberally—to give effect to the policy rationale of judicial economy underlying Rule 13."  *Transamerica*, 292 F.3d at 391.  He explained: "Courts have recognized the close connection between Rule 13(a) and the doctrine of claim preclusion . . ., where an earlier lawsuit establishes the rights or liabilities of a party, both the named party and those in privity with it are bound by the holding."  *Id.*  This "Court agrees with the analysis of the Third Circuit," as espoused by Justice Alito.  *Palumbo Design, LLC v. 1169 Hillcrest, LLC*, 2020 WL 5498065, at *7 (C.D. Cal. July 14, 2020) (Fischer, J.) (applying *Transamerica* and finding the Rule 13 bar applicable to a non-party); *see also Banco Nacional de Cuba v. First Nat'l City Bank of N.Y.*, 478 F.2d 191, 193 n.1 (2d Cir. 1973) (treating distinct parties as the same for purposes of Rule 13); *Sourdough & Co.*, 2024 WL 872868, at *4 (applying the compulsory counterclaim bar against non-parties to the prior state court action because they were "part of a single, larger entity with Defendants"); *Insignia Disposal Servs., LLC v. Hrebenar*, 697 F. Supp. 3d 370, 378 (E.D.

Pa. 2023) (following "*Transamerica*'s clear directive to interpret Rule 13 'broadly' and 'liberally'"); *Align Tech.*, 179 Cal. App. 4th. at 965.

"'[O]pposing party' in Rule 13(a) should include parties in privity with the formally named opposing parties." *Eagle Precision Techs., Inc. v. Eaton Leonard Robolix, Inc.*, 2005 WL 6453556, at *6 (S.D. Cal. Aug. 12, 2005); *Rutter Prac. Guide—Fed. Civ. P. Before Trial* (Calif. and 9th Cir. ed.) § 8.1125 (2025) ("More recent cases generally interpret 'opposing party' liberally to include claims against a third party who is the *alter ego* of the named plaintiff, or who otherwise *controls* the litigation so as to be 'functionally equivalent' to a named party."); 6 *Cyclopedia of Fed. P.* § 16.40 (3d ed. 2025) ("As used in the compulsory-counterclaim rule, the term 'opposing party' includes parties in privity with the formally named opposing parties.  In fact, the 'opposing party' requirement should be interpreted broadly to promote the goal of judicial efficiency, particularly when an unnamed party may be closely identified with a named party."). DTLA was in privity with the Clients in the state cases, so the compulsory counterclaim rule applies.

The compulsory counterclaim rule applies to the pending state court case concerning Claimant I.  Because that litigation has been pending for years, the Court should abstain to allow that litigation to resolve Uber's issues and become res judicata. *See D'Alessio v. City of Costa Mesa*, 2025 WL 2633105, at *6 (C.D. Cal. Sept. 25, 2025) (applying the abstention doctrine of *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976)).  Like its tactic of settling state cases to cap its liability only to sue in federal court to collaterally challenge those agreed upon outcomes, Uber's tactics of defending against Claimant I's claims in both state and now federal court "smack of gamesmanship" and warrants abstention.  *Higgins v. Am. Bottling Co.*, 2022 WL 13811816, at *15 (C.D. Cal. Oct. 21, 2022).

## III.    THE *ROOKER-FELDMAN* DOCTRINE BARS UBER'S CLAIMS

Uber is foreclosed from challenging the final California state court judgments in federal court under the *Rooker-Feldman* doctrine, which "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance*, 546 U.S. at 460.   Pursuant to 28 U.S.C. § 1257, the Supreme Court held that "United States District Courts . . . do not have jurisdiction . . . over challenges to state court decisions in particular cases" and that "[r]eview of those decisions may be had only in this Court."   *Feldman,* 460 U.S. at 486.   Thus, "no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it."   *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

Consequently, the *Rooker-Feldman* doctrine precludes claims that "are a 'de facto appeal' of a prior state court judgment or are 'inextricably intertwined' with that judgment." *Phan v. Cnty. of Orange*, 2025 WL 326474, at *1 (9th Cir. Jan. 29, 2025); *see also Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003) ("A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. . . . [I]t must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision."); *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) ("The doctrine extends . . . to claims that are 'inextricably intertwined' with a state court judgment.   A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.").   Summary state decisions are given preclusive effect under the *Rooker-Feldman* doctrine. *Feldman*, 460 U.S. at 479 (applied to a summary *per curiam* decision); *Craig v. State Bar of Cal.*, 141 F.3d 1353, 1355 n.3 (9th Cir. 1998) (applied to a summary denial by the California Supreme Court).[8]

---

[8] "*Rooker-Feldman* does not override or supplant issue and claim preclusion doctrines." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007); *see Exxon Mobil Corp.*

DTLA's NOTICE OF MOTION AND MOTION TO DISMISS
19                    CASE No. 2:25-cv-06612

There are three elements to a *Rooker-Feldman* bar to federal jurisdiction:

> (1) [T]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment or have been in privity with such a party; (2) the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment; and (3) the federal claim must not be parallel to the state court claim.

*Lewis v. L.A. Met. Transit Auth.*, 2019 WL 6448944, at *4 (C.D. Cal. Sept. 10, 2019) (internal quotation marks omitted).

## A.   Uber Was A Party In The State Court Actions

Uber's alleged injury in this FAC is having been sued in California state courts and paying those state courts judgments, cases in which Uber was a party.   There is no requirement that any party other than the federal court plaintiff have been a party to the state court proceedings.  *See, e.g.*, *Lance*, 546 U.S. at 464.  As the Third Circuit explains:

> [T]he *Rooker-Feldman* doctrine only requires identity of the party against whom the doctrine is being invoked. Just as with collateral estoppel, there is no convincing reason to require identity of the party seeking to bar a claim under *Rooker-Feldman*. To the contrary, requiring identity would effectively allow plaintiffs to reverse a state decision in federal district court merely by making an adjustment in the named defendants, establishing a loophole that would undermine the spirit and intent of *Rooker-Feldman*.

*Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004); *see also McDonald v. Arapahoe Cnty.*, 755 F. App'x 786, 790 n.6 (10th Cir. 2018) (*Rooker-Feldman* applies if the party against whom it is asserted was a party to the state case, regardless of other parties); *Christophe v. Morris*, 198 F. App'x 818, 824–25 (11th Cir. 2006) (rejecting argument that not all defendants were parties to the state court proceedings because "the 'party' that matters is the plaintiff"); *Patera v. Citibank, N.A.*, 2016 WL 8948283, at *7 (N.D. Cal.

---

*v. Saudi Basic Indus. Corp*, 544 U.S. 280, 281 (2005) (same); *L.A.M. Recovery, Inc. v. Dep't of Consumer Affs.*, 184 F. App'x 85, 88 (2d Cir. 2016) ("*Exxon Mobil* teaches that *Rooker-Feldman* and preclusion are entirely separate doctrines."). Consequently, "[d]octrines of claim and issue preclusion will often apply to bar relitigation," even where *Rooker-Feldman* is inapplicable. *Gilbank*, 111 F.4th at 767. Conversely, "even if preclusion law would not block a litigant's claim, the *Rooker-Feldman* doctrine might." *San Remo Hotel*, 545 U.S. at 351 (Rehnquist, C.J., concurring).

Aug. 12, 2016) (explaining "[i]t would not make sense for a plaintiff to be able to frustrate *Rooker-Feldman* simply by naming [ ] additional defendant[s] who w[ere] not [ ] part[ies] to the state court action"); *Ellis v. U.S. Bank, N.A.*, 2017 WL 477707, at *3 (M.D. Fla. Feb. 6, 2017) ("But the *Rooker-Feldman* doctrine requires only that the party against whom the doctrine is being asserted in federal court—Plaintiff—to have been a party in the prior state-court proceeding."). Numerous cases have applied the *Rooker-Feldman* doctrine to bar claims brought against state court litigants and their counsel. *Kafele*, 2006 WL 783457, at *4 (because plaintiff's "claims have merit only to the extent the state court's judgment in this regard was wrong," the *Rooker-Feldman* doctrine precluded federal jurisdiction over plaintiff's claims against its state court opponents and their lawyers).

**B.      Uber's Federal Claims Are "Inextricably Intertwined" With The State Court Judgments**

In determining whether a federal claim is "inextricably intertwined" with a state court judgment, the Ninth Circuit has found Justice Marshall's guidance "useful": "it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* Accordingly, the Ninth Circuit "found claims inextricably intertwined where 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Id.*; *see Clark v. California*, 2023 WL 4275500, at *6 (C.D. Cal. May 9, 2023). The Ninth Circuit added that claims are "'inextricably intertwined' with state court decisions where federal adjudication 'would impermissibly undercut the state ruling on the same issues.'" *Barclay v. Murphy*, 2023 WL 5348821, at *1 (9th Cir. Aug. 21, 2023).

*Rooker-Feldman* applies because Uber's alleged injury is the state court judgments against it. It is well-established that *Rooker-Feldman* applies where "the legal injuries [Plaintiff] alleges arise from the state court's purportedly erroneous judgment." *Kincaid v. Cnty. of L.A.*, 2023 WL 4681603, at *11 (C.D. Cal. June 6, 2023). In similar circumstances, this Court found such claims barred by the *Rooker-Feldman* doctrine, noting "[t]hat Plaintiffs now stylize their claims for relief as rising from RICO does not cure this deficiency." *Chodosh*, 2020 WL 7020303, at *82. The Ninth Circuit agrees. *See, e.g., McDowell*, 564 F. App'x at 297 (RICO claim barred as "inextricably intertwined" with state court judgment); *see also Berry v. California*, 205 F. App'x 610, 611 (9th Cir. 2016) (barring claims for prospective relief on the basis that state court judgment was wrong); *Ford v. Cohn*, 44 F. App'x 145, 148 (9th Cir. 2002) (affirming dismissal where federal plaintiff could not prevail without rejecting state court legal conclusions).

In *Cooper*, a California state court criminal defendant was sentenced to death, and he filed a federal civil rights suit against the prosecutor and other public officials alleging they conspired against him by submitting false or misleading expert testimony in a hearing on his failed state habeas petition. 704 F.2d at 778. The Ninth Circuit found this claim barred by the *Rooker-Feldman* doctrine:

> The alleged conspiracy is a fig leaf for taking aim at the state court's own alleged errors. It is precisely this sort of horizontal review of state court decisions that the *Rooker–Feldman* doctrine bars. Because the second claim "succeeds only to the extent that the state court wrongly decided the issues before it" and "federal relief can only be predicated upon a conviction that the state court was wrong," . . . Cooper cannot escape the reality that his second claim is inextricably intertwined with the state court decision, no matter what label he puts on it. Federal adjudication of this claim would impermissibly "undercut the state ruling" on the same issues.

*Id.* at 782 (internal citations omitted). Likewise, the Ninth Circuit found the plaintiff's claim that public officials denied him a fair investigation and obtained a tainted conviction by manipulating the crime scene, planting false evidence, evidence tampering, and

DTLA's NOTICE OF MOTION AND MOTION TO DISMISS
22                    CASE NO. 2:25-cv-06612

manipulating testimony barred as well. *Id.* at 783; *see Ison v. Schulman*, 2025 WL 1513772, at *1 (9th Cir. May 28, 2025) (federal conspiracy charge that state court litigants conspired to obtain fraudulent state court judgment barred by *Rooker-Feldman*); *Packwood v. City of Contra Costa*, 2025 WL 444223, at 81 (9th Cir. Feb. 10, 2025) (federal claims that state court judgment was tainted by false testimony was barred by *Rooker-Feldman*).

The Seventh Circuit rejected similar claims in *Mains v. Citibank, N.A.*, observing that "even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment. 852 F.3d 669, 675 (7th Cir. 2017). Plaintiffs there alleged that "a RICO conspiracy by the defendants misled the state trial court," and the court found that the claim was "barred by *Rooker-Feldman*, because they are dependent upon and interwoven with the state-court litigation." *Id.* at 677.

Similarly, in *Rader v. Citibank (South Dakota), N.A.*, a state court determined that Rader owed the bank a debt, but she turned around and sued the bank under RICO for its allegedly unlawful actions in trying to collect the debt because that debt was not owed. 2007 WL 3119543, at *7 (D. Colo. Oct. 18, 2007). In rejecting Rader's RICO claim, the court explained: "For Ms. Rader to now claim that Citibank was fraudulently attempting to collect on a debt not owed as a predicate act for her RICO claim would require this Court to consider the state court judgment a nullity." *Id.* The court added that, "[u]nder *Rooker-Feldman*, the redress for these alleged injuries is through the state court appellate process to the United States Supreme Court." *Id.*; *see Zimmerman v. JPMorgan Chase Bank, N.A.*, 2012 WL 12860983, at *5 (S.D. Fla. Apr. 12, 2012) (finding "claims for fraud and violations of Florida's RICO Statute to be a thinly veiled attempt by the Adjudicated Plaintiffs to move this Court to rule that the state courts' determinations were void").

**C.     Uber's Allegations Of Fraud In The State Court Proceedings Does Not Save It From The Rooker-Feldman Jurisdictional Bar**

Uber claims the state court cases were "shams" (FAC ¶3) but that is irrelevant to *Rooker-Feldman* analysis.  This Court rejects claims "that *Rooker-Feldman* applies only to 'legitimate' cases and the underlying state-court proceedings here were a 'sham.'" *Clark*, 2023 WL 4275500, at \*6.  A recent *en banc* Seventh Circuit decision explains: "All judges . . . agree that the *Rooker-Feldman* doctrine, whatever its proper scope, should not recognize what we describe below as a 'fraud exception.'" *Gilbank*, 111 F.4th at 761.

Echoing the Ninth Circuit, this Court held that "[i]ntrinsic fraud is not an exception to the *Rooker-Feldman* doctrine." *Clark*, 2023 WL 4275500, at \*8.  This Court explains: "Intrinsic fraud is fraud which pertains to the issues involved in the original action and is most often accomplished through perjury or the submission of forged or altered documents into evidence." *Id.*  It rejects claims that *Rooker-Feldman* should contain an exception where a state court litigant prevailed by concealing evidence.  *Lewis*, 2019 WL 6448944, at \*4.  The *Rooker-Feldman* doctrine bars Uber's claims concerning cases it settled.

## CONCLUSION

The Court should dismiss Uber's claims as barred by claim preclusion, the compulsory counterclaim rule, and the *Rooker-Feldman* doctrine.

Dated: January 23, 2026

*/s/ David Scheper*
WINSTON & STRAWN LLP
David Scheper (SBN 120174)
dscheper@winston.com
Alexander Cote (SBN 211558)
acote@winston.com
Katelyn Taira (SBN 359683)
ktaira@winston.com
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:  +1 213-615-1700
Facsimile:   +1 213-615-1750

Attorneys for Defendants
Igor Fradkin and Downtown LA Law Group

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Downtown Law Group LA, certifies that this brief contains 24 pages, which complies with the page limit set by court order. *See* Standing Order, Dkt. 14 at 11.

Dated: January 23, 2026           WINSTON & STRAWN LLP


By: */s/ David Scheper*
David Scheper
Alexander Cote
Katelyn Taira