GRANT B. GELBERG (SBN 229454)
Grant.Gelberg@halpernmay.com
S. ALBERT WANG (SBN 250163)
S.Albert.Wang@halpernmay.com
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071-2680
Tel: (213) 402-1900
Fax: (213) 402-1901

Attorneys for Defendant
RADIANCE SURGERY CENTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBER TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, GSK SPINE, GREG KHOUNGANIAN, and RADIANCE SURGERY CENTER,<br><br>Defendants. | Case No. 2:25-cv-06612 SPG (PDx)<br><br>Judge:    Hon. Sherilyn Peace Garnett<br><br>**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES PURSUANT TO CAL. CIV. PROC. CODE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of Grant Gelberg, and [Proposed] Order]*<br><br>DATE:      April 29, 2026<br>TIME:      1:30 p.m.<br>PLACE:    5C<br><br>Action Filed:    July 21, 2025<br>Trial Date:      None |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 29, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5C of the above-entitled Court, Defendant Radiance Surgery Center ("Radiance") will and hereby does move for an order:

1. Determining that Radiance is the prevailing defendant on its special motion to strike under Cal. Civ. Proc. Code § 425.16; and

2. Awarding Radiance its reasonable attorneys' fees and costs incurred in connection with the Anti-SLAPP Motion, the intertwined Rule 12(b)(6) Motion, and this fee application, in an amount to be established by declaration and accompanying documentation.

This Motion is made pursuant to Cal. Civ. Proc. Code § 425.16(c)(1) and in accordance with Fed. R. Civ. P. 54(d) and is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Grant B. Gelberg and its exhibits, the pleadings and records on file in this action, and such further evidence and argument as may be presented at or before the hearing.[1]

This Motion is made following the conference of counsel pursuant to L.R. 7-3. The parties met and conferred on January 16, 2026. *See* Gelberg Decl. ¶13.

DATED: January 23, 2026          HALPERN MAY YBARRA GELBERG LLP

By:      */s/ Grant B. Gelberg*
          GRANT B. GELBERG

          *Attorneys for Defendant Radiance Surgery Center*

---

[1] Radiance Surgery Center joins in and incorporates by reference the arguments advanced by Defendant Greg Khounganian and Defendants Jacob Emrani and The Law Offices of Jacob Emrani in support of finding "prevailing defendant" status under Cal. Civ. Proc. Code § 425.15(c)(1).

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

    A.    Uber's Original Allegations Against Radiance ............................. 3

    B.    Uber's Refusal to Dismiss Its Claims Against Radiance Forces Radiance to File Anti-SLAPP and Rule 12(b)(6) Motions .......................................................................................... 5

    C.    Uber Abandons All Claims Against Radiance .............................. 7

III.  RADIANCE IS A PREVAILING DEFENDANT UNDER SECTION 425.16(C)(1) ........................................................................ 8

    A.    Uber Cannot Avoid Mandatory Fee-Shifting by Amending after Radiance filed its anti-SLAPP Motion ..................... 8

    B.    Uber's Amendment After Radiance Filed Its Anti-SLAPP Motion Confers Prevailing-Party Status ............................... 9

    C.    Radiance Is a Prevailing Defendant Because Its Anti-SLAPP Motion Was Meritorious ....................................... 14

        1.    Uber's Claims Arose From Section 425.16(e) Protected Activity .................................................... 14

        2.    Uber Cannot Show A Probability Of Prevailing On The Merits ............................................................. 15

IV.   RADIANCE IS ENTITLED TO ALL FEES FOR ITS ANTI-SLAPP MOTION, RULE 12(B)(6) MOTION, AND FEE MOTION ............................................................................................... 18

    A.    The Lodestar Framework and Scope of Recoverable Fees .............. 18

    B.    Radiance's Hourly Rates Were Reasonable ............................... 21

    C.    The Hours Expended Are Reasonable and Compensable in Full .......................................................................................... 22

    D.    The Overall Amount Sought Is Reasonable ............................... 25

V.    CONCLUSION ...................................................................................... 25

DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES

# **TABLE OF AUTHORITIES**

## **CASES**

*125916 Ontario Ltd. v. Kagan*,
  2020 WL 7038605 (C.D. Cal. Nov. 16, 2020) ................................................. 21

*Bouman v. Block*,
  940 F.2d 1211 (9th Cir. 1991) .......................................................................... 21

*Brown v. Elec. Arts, Inc.*,
  722 F. Supp. 2d 1148 (C.D. Cal. 2010) .............................................................. 9

*Chacon v. Litke*,
  181 Cal. App. 4th 1234 (2010) ........................................................................ 20

*Coltrain v. Shewalter*,
  66 Cal. App. 4th 94 (1998) ......................................................................passim

*Cove USA LLC v. No Bad Days Enterprises, Incorporated*,
  No. 8:20-cv-02314-JLS-KES, 2022 WL 423400 (C.D. Cal. 2022) ................. 19

*eCash Techs., Inc. v. Guagliardo*,
  210 F. Supp. 2d 1138 (C.D. Cal. 2000) ............................................................ 14

*Gopher Media LLC v. Melone*,
  154 F.4th 696 (9th Cir. 2025) .......................................................................... 22

*Gopher Media, LLC v. Dring*,
  825 F. App'x 514 (9th Cir. 2020) ....................................................................... 8

*Gottesman v. Santana*,
  263 F.Supp.3d 1034 (S.D. Cal. 2017) ................................................................ 8

*Graham-Sult v. Clainos*,
  738 F.3d 1131 (9th Cir. 2013) .......................................................................... 25

*Horsford v. Board of Trustees*,
  132 Cal. App. 4th 359 (2005) .......................................................................... 24

*Hoyt A. Fleming v. Coverstone*,
  2009 WL 764940 (S.D. Cal. Mar. 18, 2009) .................................................... 14

*In re Toyota Motor Corp. Unintended Acceleration*,
  2013 WL 3224585 (C.D. Cal. June 17, 2013) .................................................. 21

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ................................................................................ 18

*Intermarketing Media, LLC v. Barlow*,
  2021 WL 6102516 (C.D. Cal. 2021) ........................................................... 19, 23

*Kearney v. Foley and Lardner*,
  553 F. Supp. 2d 1178 (S.D. Cal. 2008) ....................................................... 19, 23

ii

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) .......................................................................... 18, 22

*Lin v. City of Pleasanton*,
  176 Cal. App. 4th 408 (2009) ...................................................................... 10

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F. Supp. 2d 1020 (C.D. Cal. 2005) ......................................................... 9

*Metabolife Int'l, Inc. v. Wornick*,
  213 F. Supp. 2d 1220 (S.D. Cal. 2002) ........................................................ 25

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ......................................................................... 8

*Minichino v. First California Realty*,
  No. C–11–5185 EMC, 2012 WL 6554401 (N.D. Cal. Dec. 14,
  2012) ............................................................................................................ 19

*Mireskandari v. Daily Mail and General Trust PLC*,
  No. CV 12-02943 MMM, 2014 WL 12586434 (C.D.Cal., 2014) .................. 19

*Mireskandari v. Mail*,
  2014 WL 12561581 (C.D. Cal. Aug. 4, 2014) ............................................... 10

*Moore v. Liu*,
  69 Cal. App. 4th at 745 (1999) ..................................................................... 10

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) .......................................................................... 18

*Moralez v. Monterey Plaza Hotel Limited Partnership*,
  No. No. 22-cv-07540-SK, 2025 WL 2469334 (N.D.Cal., 2025) ................... 19

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ...................................................................... 22

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ................................................................................... 20

*Nemecek & Cole v. Horn*,
  208 Cal. App. 4th 641 (2012) ....................................................................... 20

*Pasternack v. McCullough*,
  65 Cal. App. 5th 1050 (2021) ....................................................................... 20

*People Who Care v. Rockford Bd. of Educ.*,
  90 F.3d 1307 (7th Cir. 1996) ........................................................................ 21

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................................... 21

*Pfeiffer Venice Props. v. Bernard*,
  101 Cal. App. 4th 211 (2002) ....................................................................... 10

iii

*PLCM Grp., Inc. v. Drexler*,
    22 Cal. 4th 1084 (2000) ............................................................................ 20

*Raining Data Corp. v. Barrenechea*,
    175 Cal. App. 4th 1363 (2009) ................................................................. 24

*Rivera v. City of Riverside*,
    763 F.2d 1580 (9th Cir. 1985) .................................................................. 23

*Run the World Digital v. Perfection Collection*,
    2025 WL 948059 (C.D. Cal. Mar. 5, 2025) ............................................ 10

*Rutherford v. Palo Verde Health Care District*,
    No. CV 13-1247, 2014 WL 12634510 (C.D. Cal. May 13, 2014)...9, 10, 13, 14

*Simmons v. Allstate Ins. Co.*,
    92 Cal. App. 4th 1068 (2001) ................................................................... 13

*Stonebrae v. Toll Bros., Inc.*,
    2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ........................................... 22

*Syers Props. III, Inc. v. Rankin*,
    226 Cal. App. 4th 691 (2014) ................................................................... 21

*Sylmar Air Conditioning v. Pueblo Contracting Servs.*,
    122 Cal. App. 4th 1049 (2004) ..........................................................passim

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .................................................................... 21

*Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081
    (9th Cir. 2004) ............................................................................................. 9

*Williams v. Stitt*,
    10 Cal. App. 5th 1244 (2017) ................................................................... 10

## STATUTES

425.16(e) ......................................................................................................... 14

Bus. & Prof. Code § 17200 .............................................................................. 4

Bus. & Prof. Code § 650 ................................................................................. 17

Cal. Civ. Proc. Code § 425.15(c)(1) ........................................................... 1, 3

Cal. Civ. Proc. Code § 425.16 ........................................................... 1, 13, 18

Cal. Civ. Proc. Code § 425.16(c)(1) ........................................................passim

Cal. Code. Civ. Proc. § 425.16(e)(1) ............................................................ 15

California Civil Code § 47(b) .......................................................................... 15

Fed. R. Civ. P. 41(a) .................................................................................... 6, 7

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

Fed. R. Civ. P. 54(d) ................................................................................................ 1

Fed. R. Civ. P. 9(b) ............................................................................................... 15

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After former Defendant Radiance Surgery Center ("Radiance") filed its special motion to strike under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, together with Radiance's cross-referenced and incorporated Rule 12 (b)(6) motion, Plaintiff Uber Technologies, Inc. ("Uber") amended its complaint to abandon all of its challenged state law claims against Radiance. Because Uber had pursued only state claims against Radiance—never bringing any federal claims—this was a total victory for Radiance that makes Radiance a prevailing defendant entitled to a mandatory award of attorneys' fees and costs under the anti-SLAPP statute.[1]

Both California and federal courts hold that when a plaintiff voluntarily dismisses or abandons the claims targeted by an anti-SLAPP motion after the motion is filed, the defendant is a "prevailing defendant" for purposes of section 425.16(c)(1), even where no ruling issues. *See, e.g., Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998).  The defendant is presumptively the prevailing party, and the burden falls on Uber to show that it dismissed its claims for reasons unrelated to Radiance's anti-SLAPP motion.  *Id.*

This Uber cannot do.  The meet-and-confer record confirms that Uber proposed abandoning its state law claims expressly for the purpose of mooting Radiance's anti-SLAPP motion.

Indeed, the same record also demonstrates why attorneys' fees are particularly appropriate here.  A fee award is necessary to vindicate the anti-SLAPP statute's core purpose: deterring plaintiffs from stifling protected First Amendment activity by prolonging meritless—but costly—litigation.  It was

---

[1] Radiance is entitled to a mandatory fee award under Cal. Civ. Proc. Code § 425.16(c)(1) and brings this motion in accordance with Fed. R. Civ. P. 54(d).

1

1    Uber's own choices that made these fees unavoidable.  Radiance proposed

2    straightforward Rule 41 procedures that would have dismissed the claims against

3    Radiance, and Radiance as a whole, from the case before Radiance's response

4    deadline, all while preserving Uber's ability to later assert other newly discovered,

5    viable claims against Radiance (if any).  Uber refused.

6        Instead, Uber asked Radiance to refrain from filing any response—thereby

7    placing Radiance in default—in exchange for Uber's assurance that it would not

8    seek default remedies and would, at a future date, amend its complaint to drop its

9    claims against Radiance.  Compounding the problem of not actually releasing

10   Radiance from the case once Uber decided its claims were meritless, the extended

11   briefing schedule for pleading motions necessitated by Uber's extensive complaint

12   meant that Uber's eventual amendment would not have removed Radiance from

13   the case for months, or longer.

14       In other words, rather than actually dismissing Radiance (while preserving

15   the right to later reassert claims if warranted), Uber tried to keep Radiance

16   embroiled as a named defendant—prolonging the pressure, chilling effects, and

17   reputational injury of ongoing litigation—for months (or longer) after Uber had

18   already conceded that it could not defend its only claims against Radiance.  This

19   use of meritless claims to turn the process of litigation into a weapon is exactly

20   what the anti-SLAPP seeks to deter with attorneys' fees awards.

21       Radiance refused to allow Uber to keep Radiance in procedural limbo and

22   simply continue to live with Uber's meritless claims still hanging over Radiance's

23   head.  Faced with a live complaint, a looming deadline, and no dismissal, Radiance

24   was forced to file its anti-SLAPP motion, incorporating Rule 12(b)(6) arguments

25   as required for Step Two of the anti-SLAPP analysis (where the Court determines

26   whether Uber can demonstrate a probability of success on the merits).

27       This record, together with the legal presumption that Radiance is the

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

prevailing party, alone justifies an award of attorneys' fees.  But, review of Radiance's anti-SLAPP motion and Rule 12(b)(6) motion also show that Radiance would have prevailed, had Uber been willing to face the music and allow the Court to adjudicate Radiance's anti-SLAPP arguments.

Finally, Radiance is entitled to recover attorneys' fees for the work its counsel performed on both the Anti-SLAPP motion and the Rule 12(b)(6) motion. Both motions attacked the same state law claims (there were no federal claims against Radiance) and relied on the same factual record.  Indeed, because Step Two of a federal court's anti-SLAPP analysis assesses the merits of the challenged claims on a Rule 12(b)(6) standard, Radiance's Rule 12(b)(6) arguments were an integral component of its anti-SLAPP arguments. Accordingly, because the work on both motions advanced Radiance's anti-SLAPP defense, Radiance is entitled to recover all fees incurred in connection with both motions.

Radiance respectfully requests that the Court determine that Radiance is a prevailing anti-SLAPP defendant and award reasonable fees of $427,409.50, incurred and anticipated for its Anti-SLAPP Motion, the incorporated Rule 12(b)(6) Motion, and this fee motion.[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Uber's Original Allegations Against Radiance

Uber's original Complaint (Dkt. 1)—against which Radiance filed its anti-SLAPP motion (Dkt. 60) with incorporated Rule 12(b)(6) arguments (Dkt. 61) that is the basis of this fee motion—alleged a "fraud scheme" in which lawyers and medical providers supposedly provided medically unnecessary care and generated "artificially inflated bills," with those bills allegedly becoming the subject of

---

[2] Radiance Surgery Center joins in and incorporates by reference the arguments advanced by Defendant Greg Khounganian and Defendants Jacob Emrani and The Law Offices of Jacob Emrani in support of finding "prevailing defendant" status under Cal. Civ. Proc. Code § 425.15(c)(1).

3

"sham" liens, all to support personal injury lawsuits against Uber.  Compl. ¶¶ 1-3. Radiance is an outpatient surgical facility where some of the personal injury claimants suing Uber received services rendered by independent physicians.  *See id.* ¶¶ 8, 31-32.

Uber brought only two state law claims—no federal RICO claims—against Radiance: unjust enrichment and violation of the Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*, referred to below as the "UCL").  Compl. 199-209. The state law claims were all premised on litigation-related activity:

- Radiance's communications with personal injury law firms regarding the scheduling or pre-operative steps for those firms' clients (patients receiving care at Radiance's facility) as those clients prepared to make claims against Uber;

- Radiance's preparation of bills submitted to Uber by personal injury attorneys in demand packages or lawsuits, which allegedly reflected inflated charges for procedures that, while performed, were supposedly unnecessary; and

- Radiance's liens with its patients (individuals suing Uber) to cover Radiance's bills—liens that Uber alleged supported the patients' damages in litigation and were purportedly subject to secret side agreements under which Radiance would discount the liens based on litigation outcomes (what Uber characterized as a "kickback" for unspecified future referrals).  The alleged side agreement entirely anticipated and addressed litigation outcomes and could not have existed absent litigation being already concretely planned.

Compl. ¶¶ 2-4, 26-28, 40, 42-43, 47, 50-51, 55, 75-77, 138, 140-41; *see also id.* ¶¶ 8, 22, 25, 30-32, 35, 39, 61.  Uber identified only three claimants (A, B, and E) with whom Radiance was allegedly involved.  *Id.* ¶¶ 39–53, 66, 75-79, 154.

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1    Uber never alleged that it contracted with Radiance, sent patients to

2    Radiance, or had any sort of commercial relationship with Radiance. Rather, Uber

3    alleged that all of Radiance's challenged conduct was undertaken in concert with

4    law firms and—by Uber's own assertion—could impact Uber only through

5    litigation. Uber's alleged damages were limited to legal defense costs and

6    settlement payments. *Id.* at ¶¶ 125-27, 201-02, 208-09.

7    **B.    Uber's Refusal to Dismiss Its Claims Against Radiance Forces**

8    **Radiance to File Anti-SLAPP and Rule 12(b)(6) Motions**

9    Radiance emailed Uber on October 9, 2025 with a written outline of its anti-

10   SLAPP and Rule 12(b)(6) arguments. Gelberg Decl. Ex. A. The parties conferred

11   by videoconference the next day, during which Uber did not agree to dismiss its

12   claims against Radiance. *Id.* ¶ 5.

13   Four weeks later, and only one week before Radiance's filing deadline, Uber

14   emailed that it "intends to drop its Unjust Enrichment and 17200 state law claims"

15   and suggested that doing so should "obviate[] the need" for anti-SLAPP motions.

16   *Id.* Ex. B, at 8. Radiance responded the same day to ask if Uber would dismiss

17   Radiance entirely from the case, given that Uber had no other claims against it. *Id.*

18   at 7. Uber responded by reiterating it would "drop" the only two state law claims

19   against Radiance to "moot any anti-SLAPP motions," yet expressly refused "to

20   dismiss [Radiance] from the case at this time"—despite admitting that Uber had no

21   remaining claims against Radiance and no plan to assert any new ones. *Id.* at 6.

22   To be clear, Uber appeared to be saying, outright, that it was hoping to keep

23   Radiance embroiled in a litigation despite conceding that it had no claims against

24   Radiance.

25   Radiance replied that it would not file its anticipated anti-SLAPP motion and

26   incorporated Rule 12(b)(6) motion, provided Uber stipulated to dismiss the only

27   two pending state claims against Radiance, which would necessarily dismiss

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1  Radiance from the case as no claims against it would remain. *Id.* at 5. Radiance

2  also provided Uber with a draft dismissal stipulation, which clearly preserved

3  Uber's ability to later bring new, different claims against Radiance. *Id.* Ex. B, at 3;

4  Ex. C. Uber refused. Instead, it redlined Radiance's draft to delete all references

5  to the rule on dismissal (Fed. R. Civ. P. 41(a)) and to replace all instances of the

6  word "dismiss" with "drop." *Id.* Ex. D.

7       This exchange confirmed Radiance's concerns: Uber sought to both dodge

8  Radiance's anti-SLAPP motion and its accompanying attorneys' fee shifting, while

9  simultaneously refusing to dismiss Radiance from the case. Instead, Uber sought

10  to keep Radiance twisting as a defendant in the litigation despite admitting that it

11  had no viable claims against Radiance. And Radiance was to remain in this

12  limbo—in default (for failing to answer or move by its response deadline) and with

13  Uber's claims still pending and hanging over Radiance's head—for an unknown

14  period of time. For Uber's promise to "drop" its claims in a future amendment had

15  no set timeline—Uber could respond to the other defendants' pleading motions not

16  by amending, but by opposing. The briefing schedule would have left Radiance in

17  limbo for months until the hearing (then set for March 2026, Dkt. 57) and even

18  longer while awaiting a ruling and any subsequent amendment by Uber.

19       In practical terms, Uber wanted to keep Radiance staring down the barrel of

20  unknown claims for the better part of a year or more—maximizing the negative

21  effects of Uber's lawsuit despite conceding that Uber's only known claims were

22  not worth pursuing. Radiance could not agree and explained why:

23       Uber wishes to moot Radiance's anti-SLAPP motion by dismissing Uber's

24       state law claims; the idea being that Radiance need not file motions against

25       claims that are no longer in the case. But for that to work, *the claims need to*

26       *actually be out of the case. Rule 41(a) provides exactly the mechanism for*

27       *this* – because there are no other claims against Radiance, Uber's proposed

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1  |  dismissal would be (as Uber's redlines acknowledge) of Uber's entire
2  |  "action" against Radiance.  In fact, Uber could achieve its aims simply with
3  |  a unilateral notice under Rule 41(a)(1)(A)(i), without needing any agreement
4  |  from Radiance or action by the Court.

5  Gelberg Decl. Ex. B, at 2.  Radiance also offered to stipulate to a dismissal again:

6  |  In sum, Uber's choice is straightforward: if Uber wants to dismiss the only
7  |  claims pending against Radiance, then Uber can and should use the Rule
8  |  entitled "Voluntary Dismissal" (Fed. R. Civ. P. 41(a)).  If all of the claims
9  |  are dismissed and Radiance is out of the case, then Radiance is out and does
10 |  not need to/will not file its motions.  If, however, Uber will not dismiss the
11 |  state causes of action, then the claims are still in the case and Radiance is
12 |  still in the case, and Radiance must participate by filing its motions.

13 *Id.* at 2.  Despite having three more days before Radiance's motion deadline, Uber

14 never responded to Radiance's argument, nor did it dismiss its claims against

15 Radiance.  Gelberg Decl. ¶ 10.

16  With its deadline arriving and no dismissal, Radiance filed both its anti-

17 SLAPP motion and its incorporated Rule 12(b)(6) motion.  Dkts 60, 61.  Such

18 integration was efficient, for both two motions were based on the same factual

19 allegations and attacked the same two state law claims still pending against

20 Radiance.

21  **C.    Uber Abandons All Claims Against Radiance**

22  Faced with Radiance's anti-SLAPP and Rule 12(b)(6) motions, Uber

23 amended its complaint to abandon its two state law claims against Radiance,

24 without adding any new claims against Radiance.  Dkt. 77.  Uber then filed a brief

25 opposition to the motions that did not argue any merits, but rather simply pointed

26 out that they were mooted by Uber's First Amended Complaint.  Dkt. 78.

27  Radiance now seeks a prevailing-party determination and recovery of its

28

7

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1  reasonable fees and costs under Cal. Civ. Proc. Code § 425.16(c)(1).

2  **III.   RADIANCE IS A PREVAILING DEFENDANT UNDER SECTION**

3  **425.16(c)(1)**

4  **A.   Uber Cannot Avoid Mandatory Fee-Shifting by Amending after**

5  **Radiance filed its anti-SLAPP Motion**

6  Courts have resoundingly rejected the argument that a plaintiff can avoid

7  attorneys' fee-shifting by withdrawing a SLAPP claim after the defendant has

8  incurred the expense of preparing and filing an anti-SLAPP motion.  The court

9  must decide the issue and award fees even "where the plaintiff voluntarily

10  dismisses an alleged SLAPP suit while a special motion to strike is pending,"

11  because "[o]therwise, SLAPP plaintiffs could achieve most of their objective [to

12  suppress petitioning] with little risk — by filing a SLAPP suit, forcing the

13  defendant to incur the effort and expense of preparing a special motion to strike,

14  then dismissing . . . ."  *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 106-107 (1998);

15  *see Sylmar Air Conditioning v. Pueblo Contracting Servs.*, 122 Cal. App. 4th 1049,

16  1055 (2004) ("disagree[ing]" that "amendment of the complaint [to drop the

17  challenge claim] is qualitatively different than dismissal" and holding that "[g]iven

18  the public policy behind section 425.16, we perceive no distinction in substance").

19  Federal courts in the Ninth Circuit apply this same California substantive

20  law governing anti-SLAPP fee awards, consistently holding that plaintiffs cannot

21  evade liability by voluntarily dismissing or amending away SLAPP claims while

22  an anti-SLAPP motion is pending.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d

23  832, 845–46 (9th Cir. 2001) (recognizing anti-SLAPP fee-shifting as substantive

24  California law applicable in federal court); *Gopher Media, LLC v. Dring*, 825 F.

25  App'x 514, 515 (9th Cir. 2020) (affirming fee award where plaintiff voluntarily

26  dismissed claims after anti-SLAPP motion filed); *Gottesman v. Santana*, 263

27  F.Supp.3d 1034, 1041 (S.D. Cal. 2017) ("the wealth of authority explains that the

28

8

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1    Court retains the ability to assess whether Attorney Defendants are the prevailing

2    party for purposes of attorneys' fees and costs"); *see also Lockheed Martin Corp.*

3    *v. Network Solutions, Inc.*, 194 F. Supp. 2d 1020, 1024–25 (C.D. Cal. 2005)

4    (awarding anti-SLAPP fees despite plaintiff's dismissal of claims).  Once the

5    defendant is deemed the prevailing party under section 425.16(c)(1), the fee award

6    is mandatory – not discretionary – and the Court's role is limited to determining a

7    reasonable amount.

8         Uber's Opposition to defendants' motions to dismiss and anti-SLAPP

9    motions, Dkt. 78, at 4 n.2, argued that "[n]o such fees would be warranted given

10   Uber's omission of its state law claims from its First Amended Complaint, *see*

11   *Verizon* [*Delaware, Inc. v. Covad Communications Co.*], 377 F.3d [1081] at 1091

12   [(9th Cir. 2004)]." That exact argument has already been rejected.  As *Rutherford*

13   *v. Palo Verde Health Care District*, No. CV 13-1247, 2014 WL 12634510, at *5

14   n.3 (C.D. Cal. May 13, 2014) (emphasis added) explained: "**Verizon *does not hold***

15   ***that attorney's fees cannot be recovered by the moving party when the***

16   ***challenged claims have been dismissed voluntarily.***  Rather, *Verizon* confirms that

17   the federal policy of applying a liberal policy toward the amendment of complaints

18   applies, notwithstanding California's anti–SLAPP statute."  All *Verizon* held is

19   that, in federal court, Uber was permitted to amend its complaint despite the

20   pendency of the anti-SLAPP motions; it did not consider, much less decide,

21   whether a plaintiff may avoid mandatory fee-shifting by abandoning SLAPP-

22   targeted claims after an anti-SLAPP motion has been filed.  And the authorities

23   above demonstrate that the law is clearly to the contrary.

24   **B.    Uber's Amendment After Radiance Filed Its Anti-SLAPP Motion**

25   **Confers Prevailing-Party Status**

26        The term "prevailing defendant" is interpreted broadly in favor of fee

27   awards.  *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010);

28

9

*Lin v. City of Pleasanton*, 176 Cal. App. 4th 408, 425–26 (2009).  Defendants may prevail even when dismissal occurs without prejudice or when a plaintiff's procedural maneuvers prevent an adjudication on the merits.  "[T]he critical issue is which party realized its objectives in the litigation." *Coltrain*, 66 Cal. App. 4th at 107.

And because "the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant" where the plaintiff—as Uber did here—dismisses its challenged claims after the defendant files an anti-SLAPP Motion. *Id.*  Indeed, when there is a "voluntary dismissal," the law triggers "a presumption . . .  that defendants were the prevailing parties," shifting the burden to the plaintiff to come forward with evidence "to dispel this presumption," for example by showing that the plaintiff "actually dismissed because it had substantially achieved its goals through a settlement . . . ," "because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits." *Id.*  This framework for awarding attorneys' fees when plaintiffs dismiss or abandon the challenged claims while anti-SLAPP motions are pending is well-established in state courts,[3] and federal courts follow the same rule, "regularly rely[ing] on *Coltrain* and its progeny." *Run the World Digital v. Perfection Collection*, 2025 WL 948059, at *2, *4 (C.D. Cal. Mar. 5, 2025); *see also Mireskandari v. Mail*, 2014 WL 12561581, at *6 (C.D. Cal. Aug. 4, 2014); *Rutherford*, 2014 WL 12634510, at *5.

Even without the presumption, Radiance has undeniably achieved its litigation objectives: Radiance's goal was to defeat all of Uber's claims against it, which it did.  Uber asserted **only** two state law claims against Radiance, **both** of

---

[3] *See Moore v. Liu*, 69 Cal. App. 4th 745, 752–54 (1999); *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 218–19 (2002); *Sylmar*, 122 Cal. App. 4th at 1058–59 (2004); *Williams v. Stitt*, 10 Cal. App. 5th 1244, 1249–51 (2017).

DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES

which Uber abandoned in the face of Radiance's anti-SLAPP motion—leaving **no claims against Radiance at all**.  Dkt. 77 (Uber's FAC).  As Radiance forced Uber to "go away with its tail between its legs," *Coltrain*, 66 Cal. App. 4th at 107, it is hard to imagine a more complete defense victory or how Radiance could be anything other than a prevailing defendant under section 425.16(c)(1).

Layering on the presumption removes any doubt, for Uber has no argument (let alone sufficient evidence to carry Uber's burden) to rebut the *Coltrain* presumption that Uber dismissed for the purpose of avoiding anti-SLAPP fee-shifting.  There was no settlement, nor is Radiance insolvent.  *Compare Coltrain*, 66 Cal. 4th at 107.  Indeed, far from suggesting that Uber had "other reasons unrelated to the probability of success on the merits," Uber admitted that its decision was driven by Radiance's anti-SLAPP motion, expressly stating that Uber "intend[ed] to drop" its state law claims to "obviate[]" or "moot any anti-SLAPP motions."  Gelberg Decl. Ex. B, at 6, 8.

That is Uber's only, albeit meritless, argument against attorneys' fees: that Radiance's anti-SLAPP motion did not cause Uber to abandon its claims, because Uber had already planned to dismiss them *at some point in the future*.  **But holding meritless claims over the head of a defendant to sap its resources and continue to chill that defendant's First Amendment protected activity is precisely what the anti-SLAPP statute was implemented to prevent.**  *See, e.g.*, *Sylmar*, 122 Cal.App.4th at 1055-56; *Coltrain*, 66 Cal. App. 4th at 106-107.

The record confirms that Uber sought to prolong those chilling effects.  This was made clear when Radiance put Uber to the test by trying to accept Uber's offer to dismiss.  Radiance drafted and offered a Rule 41(a)(1)(A)(ii) stipulation, **which would have dismissed Radiance upon filing.**  Gelberg Decl., Ex. C.  **Uber refused.** *Id.* Ex. D. Radiance then pointed out that if Uber disliked Radiance's language, Uber could implement its proffered dismissal unilaterally with a simple notice

11

under Rule 41(a)(1)(A)(i), which also ***would have dismissed Radiance upon filing.*** *See id.* Ex. B, at 2. ***Again, Uber refused.*** *Id.* ¶10. Despite having multiple days before Radiance's filing deadline, Uber declined to use any of these quick, straightforward, established procedures to actually dismiss its claims before Radiance was forced to file its anti-SLAPP motion.

Instead, Uber proposed a novel, legally meaningless alternative—"dropping" its claims at some future time—while keeping Radiance in default and its claims technically pending. *Id.* Ex. D. Not only did Uber ask Radiance to rely on its invented procedure to avoid the severe consequences of default, but ***Uber demanded that Radiance stay in limbo—with Uber's claims still hanging over Radiance's head—for an unknown amount of time***. The existing schedule would not conclude briefing for another four months, after which Radiance would still be waiting on the Court to rule; only after that would Uber (potentially) amend to address the eventual Court ruling. *See* Dkt. 57. Far from being equivalent to a dismissal, Uber proposed to keep Radiance twisting as a defendant in this case for potentially another year—even after admitting that Uber had no viable claims against Radiance. *See* Ex. B at 6 (Uber refusing "to dismiss [Radiance] from the case at this time" even as it admitted it would not pursue the only claims plead against Radiance).

California courts have rejected these types of tactics:

> By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. . . . Such a plaintiff would accomplish indirectly what could not be accomplished directly, . . . . [which] would totally frustrate the Legislature's objective of providing a quick and inexpensive method for unmasking and dismissing such suits.

*See Sylmar*, 122 Cal. App. 4th at 1055-56 (quoting *Simmons v. Allstate Ins. Co.,* 92

12

Cal. App. 4th 1068, 1073-1074 (2001)).  If even established procedures such as amendment cannot be used to provide a SLAPP plaintiff "a ready escape from section 425.16's quick dismissal remedy," *id.*, then Uber's invented procedure of agreeing to "drop" claims sometime after the defendant's response deadline certainly cannot either.

Nor can Uber claim that Radiance ignored Uber's meet-and-confer efforts. As made clear in the discussion above and the meet-and-confer emails attached to the Gelberg Declaration (Ex. B), it was Uber who refused Radiance's invitation to straightforwardly, actually, dismiss Uber's claim, and it was Uber who had no response to Radiance's email about why actual dismissal was necessary.  More importantly, any imagined meet-and-confer controversy is still no reason to deny attorneys' fees.  As explained in *Rutherford*, plaintiffs must dismiss ahead of an anti-SLAPP motion being filed to avoid attorneys' fees, and breakdowns in meet-and-confer cannot change that requirement because "[t]here is nothing in the anti-SLAPP statute that sets forth such an exception."  2014 WL 12634510, at *6. Even where (unlike here) a court could put "some responsibility" on defendants "for a less than robust meet and confer process," it nevertheless still awarded attorneys' fees, because the bottom-line is that plaintiff's failure to dismiss earlier forced defendants to file an anti-SLAPP motion and incur recoverable costs.  *See id.* at *8.

The anti-SLAPP statute does not condone Uber's attempt to "forc[e] the defendant to incur the effort and expense of preparing a special motion to strike" and keep claims live to "continue to have a significant chilling effect on the defendant's exercise of its First Amendment rights," so that Uber "accomplished all the wrongdoing that triggers the defendant's eligibility for attorneys' fees"—all while leaving Radiance "cheated of redress."  *See Coltrain*, 66 Cal. App. 4th at 106-107.  Uber cannot have its cake and eat it too; either it dismisses its claim to

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

avoid paying Radiance's attorneys' fees or not. Uber's failure to actually dismiss before Radiance's deadline forced Radiance to file its anti-SLAPP motion to pursue its litigation goal of being free of Uber's SLAPP lawsuit. That goal was achieved and thus Radiance is the prevailing party entitled to recover its attorneys' fees. *See, e.g., Rutherford*, 2014 WL 12634510, at *6–8 (holding plaintiffs' amendment dropping challenged claims after anti-SLAPP motions were filed did not rebut *Coltrain* presumption and awarding fees); *Hoyt A. Fleming v. Coverstone*, 2009 WL 764940, at *5 (S.D. Cal. Mar. 18, 2009) (holding plaintiff cannot amend to avoid pending anti-SLAPP motion and awarding fees).

## C. <u>Radiance Is a Prevailing Defendant Because Its Anti-SLAPP Motion Was Meritorious</u>

Although the presumption alone is sufficient to declare Radiance the prevailing party, there is a second, independent reason as well. Where a plaintiff abandons claims after an anti-SLAPP motion is filed, courts may also consider whether the defendant "would have prevailed" on the motion. *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1154 (C.D. Cal. 2000). Here, Radiance's anti-SLAPP motion was meritorious, for the reasons set forth in its anti-SLAPP motion (Dkt. 60) and incorporated Rule 12(b)(6) motion (Dkt. 61).

Radiance satisfied both steps of the anti-SLAPP framework: (1) Uber's claims arose from protected petitioning activity under section 425.16(e), and (2) Uber cannot establish a probability of prevailing on the merits.

### *1. Uber's Claims Arose From Section 425.16(e) Protected Activity*

For Step One, as detailed in Radiance's anti-SLAPP Motion (Dkt. 60, at 6-12 (Sec. IV.B)), Uber's claims arose from Radiance's supply of medical bills for use in personal-injury litigation, along with the facilitation of their use in litigation via the alleged side agreement (that the liens for those bills were allegedly contingent on litigation outcomes) and via communications with the law firms.

Compl. ¶¶ 35, 39, 47, 51, 75–77.  That is, Uber's claims against Radiance were all based on communications that were either evidence in an active or anticipated lawsuit, or else transmitted or facilitated the use of such evidentiary materials. This is paradigmatic "petitioning activity" protected by Cal. Code. Civ. Proc. § 425.16(e)(1) and (2).  *See* cases and argument in Dkt. 60, at 6-12 (Sec. IV.B).

### 2. Uber Cannot Show A Probability Of Prevailing On The Merits

In Step Two, the burden shifts to Uber to demonstrate a probability of prevailing on the merits of its claims.  It cannot do so, for the reasons detailed in Radiance's anti-SLAPP Motion (Dkt. 60, at 12-18 (Sec. IV.C)), as well as its incorporation (Dkt. 60, at 17-18 (Sec. IV.C.3)) of Radiance's Rule 12(b)(6) motion (Dkt. 61, at 5-25 (Sec. IV)).

- From Radiance's anti-SLAPP brief:
  - **California's Litigation Privilege Bars Uber's Claims:** Radiance's communications meet all four requirements of California Civil Code § 47(b)'s litigation privilege, barring any torts (other than malicious prosecution) from being brought upon them. *See* cases and argument in Dkt. 60, at 12-15 (Sec. IV.C.1).
  - ***Noerr–Pennington* Bars Uber's Claims:** This doctrine, rooted in the First Amendment, defeats Uber's claims because it immunizes petitioning of the government—including Radiance's litigation and incidental litigation conduct upon which Uber premises its claims—from civil liability.  *See* cases and argument in Dkt. 60, at 15-17 (Sec. IV.C.2).
- From Radiance's Rule 12(b)(6) brief:
  - **Uber's Claims Sound in Fraud Yet Fail Fed. R. Civ. P. 9(b):** Uber alleges a unified course of fraudulent conduct: allegedly "inflated" prices on bills, medically unnecessary procedures, and "sham" liens, and thus must plead its claims with particularity—which it failed to do.  *See* cases

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1    and argument in Dkt. 61, at 5-7 (Sec. IV.A).

2    o **Uber's Unjust Enrichment Claim Fails** (Dkt. 61, at 7-19 (Sec. IV.B))

3    ▪ "Unjust enrichment" not a cause of action, but a restitutionary theory

4    sounding in quasi-contract that Uber applies to a relationship that is

5    nothing like a contract.  And, no matter how styled, Uber failed to

6    plead that it conferred any benefit upon Radiance or that Radiance

7    performed any "unjust" action requiring that benefit's return.  *See*

8    cases and argument in *id.* at 7-8 (Sec. IV.B.1).

9    ▪ Uber's inflated bills theory fails as prices are non-actionable opinions;

10   nor has Uber adequately pled falsity, materiality, reliance, or

11   causation.  *See* cases and argument in *id.* at 8-13 (Sec. IV.B.2(a)).

12   ▪ Uber's medically unnecessary theory fails because differing medical

13   opinions are not actionable fraud; Uber did not plead falsity,

14   materiality, reliance, or causation with particularity; and Uber's

15   admission that Radiance does not exercise medical judgment further

16   prevents Uber from pleading those elements or even fraudulent intent.

17   *See* cases and argument in *id.* at 13-14 (Sec. IV.B.2(b)).

18   ▪ Uber's lien theory fails because Uber again failed to plead falsity,

19   materiality, reliance, and causation with particularity, and even admits

20   that it never saw the language that allegedly defrauded it.  Nor do the

21   liens signal fraud, as liens are a common practice recognized by courts

22   as legitimate.  *See* cases and argument in *id.* at 14-15 (Sec. IV.B.2(c)).

23   ▪ Uber's unjust enrichment claim is foreclosed by California doctrine

24   rejecting, regardless of the label, follow-on tort claims for litigation

25   misconduct like perjury, falsification, or concealment of evidence in a

26   prior case.  *See* cases and argument in *id.* at 15-17 (Sec. IV.B.3).

27   ▪ The voluntary payment doctrine, precluding recovery of monies paid

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1    with knowledge of the material facts, applies as Uber did not plead

2    materiality.  *See* cases and argument in *id.* at 17-18 (Sec. IV.B.4).

3    ▪ Uber has no unjust enrichment claim because it never alleged that it

4    enriched Radiance: Uber's defense costs were not paid to Radiance,

5    nor did Uber allege that any of its settlement payments went to

6    Radiance.  *See* cases and argument in *id.* at 18-19 (Sec. IV.B.5).

7    ○ **Uber's UCL Claim Fails** (Dkt. 61, at 19-25 (Sec. IV.C))

8    ▪ Uber lacks UCL standing because it never alleged any transfer of

9    value from it to Radiance that could be recovered as restitution.  *See*

10    cases and argument in *id.* at 19-20 (Sec. IV.C.1).

11    ▪ The UCL's unlawful prong is unavailing, as Uber did not plead any

12    statutory violations.  *See* cases and argument in *id.* Dkt. 61, at 20-22

13    (Sec. IV.C.2.(a)).

14    • Uber cannot rely on wire or mail fraud because it failed to allege

15    misrepresentations or materiality; plus, Uber never identified any

16    Radiance mailing or wire.  *See* cases and argument at *id.* at 20

17    (Sec. IV.C.2.(a)(1)).

18    • Uber cannot rely on Bus. & Prof. Code § 650 (California's

19    healthcare anti-kickback statute), because Uber never pled that it

20    applies to Radiance, that any Radiance discount falls outside of the

21    statute's safe harbor, or any particulars of the supposed kickbacks.

22    *See* cases and argument at *id.* at 20-22 (Sec. IV.C.2.(a)(2)).

23    ▪ The UCL's fraudulent prong is unavailing, as Uber failed to

24    adequately plead fraud.  *See* cases and argument at *id.* at 22-23 (Sec.

25    IV.C.2(b)).

26    ▪ The UCL's unfair prong is unavailing, as Uber offers only generalized

27    condemnation untethered to any clearly articulated public policy.  *See*

28

17

1    cases and argument in *id.* at 23 (Sec. IV.C.2(c)).

2    ▪ Uber has no UCL remedies, as it never transferred value that could be

3       restored as restitution and its requested injunctive relief is legally

4       unavailable, impossibly vague, unmanageable, and against public

5       policy.  *See* cases and argument in *id.* at 23-25 (Sec. IV.C.3).

6  **IV.   RADIANCE IS ENTITLED TO ALL FEES FOR ITS ANTI-SLAPP**

7  **MOTION, RULE 12(b)(6) MOTION, AND FEE MOTION**

8       Section 425.16(c)(1) provides that a prevailing defendant on a special

9  motion to strike "*shall* be entitled to recover his or her attorney's fees and costs."

10  (emphasis added).  Thus, once a defendant is determined to be a prevailing party,

11  the fee award is mandatory, and the statute will be construed broadly to fulfill its

12  remedial purpose of compensating defendants who are forced to respond to

13  meritless suits targeting protected activity and deterring such suits in the future.

14  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–33 (2001).

15       **A.    The Lodestar Framework and Scope of Recoverable Fees**

16       Courts calculate reasonable fees using the lodestar method: the number of

17  hours reasonably expended multiplied by a reasonable hourly rate. *See Intel Corp.*

18  *v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Once calculated, there is a

19  "strong presumption" that the lodestar figure is reasonable, and adjustments are

20  appropriate only in rare cases. *Morales v. City of San Rafael*, 96 F.3d 359, 364 &

21  n.8 (9th Cir. 1996).

22       Courts applying the anti-SLAPP statute have repeatedly confirmed that a

23  prevailing party is entitled to recover the fees incurred in connection with litigating

24  the fee award itself (the fees on fees).  *Ketchum*, 24 Cal. 4th at 1133, 1141 ("an

25  award of fees may include not only the fees incurred with respect to the underlying

26  claim, but also the fees incurred in enforcing the right to mandatory fees under

27  Code of Civil Procedure section 425.16").  Federal courts mirror this state practice.

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

*See, e.g., Mireskandari v. Daily Mail and General Trust PLC,* No. CV 12-02943 MMM, 2014 WL 12586434, at *4 (C.D.Cal., 2014) ("The fees awarded should encompass all proceedings directly related to defendants' special motion to strike, including those hours expended in obtaining fees."); *see also Moralez v. Monterey Plaza Hotel Limited Partnership,* No. No. 22-cv-07540-SK, 2025 WL 2469334, at *9 (N.D.Cal., 2025) ("Time spent in establishing entitlement to statutory attorneys' fees and the amount of the fee is compensable").

Moreover, where—as here—an anti-SLAPP motion and a Rule 12(b)(6) motion are based on the same factual allegations and advance overlapping legal arguments directed at defeating the same claims, courts do not require apportionment because the work is "inextricably intertwined" and all undertaken for the same purpose: defeating the SLAPP claims on the merits. *Cove USA LLC v. No Bad Days Enterprises, Incorporated*, No. 8:20-cv-02314-JLS-KES, 2022 WL 423400, at *2 (C.D. Cal. 2022) ("[T]he non-anti-SLAPP grounds raised in the Motion [to dismiss] were inextricably bound with the anti-SLAPP arguments. Accordingly, the Court will award all reasonable attorneys' fees associated with the entirety of [D]efendants' motion to [dismiss].") (internal quotation marks omitted); *Intermarketing Media, LLC v. Barlow*, 2021 WL 6102516, at *1 (C.D. Cal. 2021) ("…the legal bases for the 12(b)(6) motion and the anti-SLAPP motion are inextricably intertwined, and therefore, "all reasonable attorneys' fees associated with the entirety of defendants' motion to strike will be awarded."") (citing *Kearney v. Foley and Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008)); *Minichino v. First California Realty*, No. C–11–5185 EMC, 2012 WL 6554401, at *4 (N.D. Cal. Dec. 14, 2012) (motion to dismiss was "inextricably intertwined" with simultaneously filed motion to strike).

That is precisely the case here.  Uber asserted only state-law claims against Radiance, all of which were subject to the anti-SLAPP statute and targeted by both

Radiance's anti-SLAPP motion and its Rule 12(b)(6) motion. There were no additional claims, theories, or allegations addressed in the Rule 12(b)(6) motion that fell outside the scope of the anti-SLAPP analysis.  As Radiance explained in its anti-SLAPP motion, Uber could not survive Step Two of the anti-SLAPP analysis because its claims failed on the merits for the reasons set forth in—and expressly incorporated from—Radiance's Rule 12(b)(6) motion.  Because Step Two of the anti-SLAPP analysis requires a merits-based showing analogous to a Rule 12(b)(6) motion, every merits argument from Radiance's Rule 12(b)(6) motion was integral to Radiance's anti-SLAPP Step Two showing that Uber could not establish a probability of success on its claims.  *See Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002) (anti-SLAPP step two requires the plaintiff to demonstrate a legally sufficient claim supported by a prima facie showing of facts).

Under these circumstances, apportionment is neither required nor appropriate, and Radiance is entitled to recover all fees reasonably incurred in litigating both the anti-SLAPP motion and the overlapping Rule 12(b)(6) merits issues, as well as the fees incurred in seeking this fee award.

Finally, the lodestar does not depend on what the client actually paid.  "The reasonable market value of the attorney's services is the measure of a reasonable hourly rate.  This standard applies regardless of whether the attorneys claiming fees charge . . . discounted rates . . . ." *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651-52 (2012) (quoting *Chacon v. Litke*, 181 Cal. App. 4th 1234, 1260 (2010)) (citations omitted).  This principle applies with full force to a motion for fees under Cal. Civ. Proc. Code § 425.16(c).  *See Pasternack v. McCullough*, 65 Cal. App. 5th 1050, 1058 (2021) ("In sum, *PLCM*, *Nemecek*, *Syers*, and their like tell us that a trial court has discretion to award an hourly rate under the lodestar method that exceeds the rate that was actually incurred or paid.") (*citing PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095–96 (2000); *Nemecek,* 208 Cal. App.

20

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

1  4th at 650–51; *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 701–03

2  (2014)). T hus, it matters not that, for the lone month of November 2025, Radiance

3  received a discount (Gelberg Decl. ¶ 18)—Uber is still responsible for the full

4  amount of Radiance's reasonable November attorneys' fees.

5  **B.    Radiance's Hourly Rates Were Reasonable**

6  Radiance's requested hourly rates, ranging from $895 to $1095 for attorneys

7  and $375 for paralegals (Gelberg Decl. at 16), fall well within the range courts

8  have routinely approved for complex commercial and anti-SLAPP litigation in the

9  Los Angeles market. *See In re Toyota Motor Corp. Unintended Acceleration*,

10  2013 WL 3224585, at *9–12 (C.D. Cal. June 17, 2013) (approving rates from

11  $500–$1,250); *see also 125916 Ontario Ltd. v. Kagan*, 2020 WL 7038605, at *2

12  (C.D. Cal. Nov. 16, 2020) (approving $625–$825 and noting prior approval of

13  $790–$1,000); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *16–17

14  (C.D. Cal. Mar. 24, 2015) (approving rates up to $930/hour).  Radiance's requested

15  rates are already in the range approved by prior decisions in this district, and are all

16  the more reasonable when considering inflation over the years since these

17  decisions were rendered.

18  Moreover, an attorney's actual billing rate is presumptively the market rate.

19  *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996).

20  And, counsel declarations are also sufficient evidence to support that requested

21  rates are reasonable, market rates. *See United Steelworkers of Am. v. Phelps*

22  *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Bouman v. Block*, 940 F.2d 1211,

23  1235 (9th Cir. 1991).  Here, the declaration of Radiance's counsel demonstrates

24  that Radiance agreed to these rates in the ordinary course, through arm's-length

25  negotiation, and that they are representative of rates that counsel has obtained for

26  other comparable matters.  Gelberg Decl. ¶¶ 16-17.  That declaration also further

27  supports these rates by providing the background of the attorneys working on this

28

21

matter for Radiance, all of whom attended top law schools and have almost twenty years of experience each.  Gelberg Decl. ¶¶ 14-15.

Finally, Radiance's actual payment of almost all of its counsel's invoices in full is further "particularly forceful" evidence that the fees charged for Radiance's anti-SLAPP efforts were reasonable.  *See Stonebrae v. Toll Bros., Inc.*, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011).  That Radiance received a small discount on one month's bill (out of five) does not detract from the fact that, as a result of an arms-length negotiation, it agreed to and did pay counsel's billed hourly rates on the vast majority of counsel's work on this case.

Radiance's requested rates are reasonable market rates, as shown not just by its counsel's declaration about the market, but also by the nature of counsel's relationship with Radiance and as measured against prior decisions in this district.

## C.    The Hours Expended Are Reasonable and Compensable in Full

In evaluating hours, courts defer to the prevailing lawyer's judgment as to the time reasonably required, and may not engage in hindsight-driven second-guessing absent evidence of overstaffing, redundancy, or waste. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111–12 (9th Cir. 2008).  Anti-SLAPP motions are often "complex and time consuming," requiring careful factual development and substantial legal analysis. *Ketchum*, 24 Cal. 4th at 1139–40. Courts therefore routinely approve substantial hours where, as here, the motion addressed substantial factual allegations and multiple complex legal doctrines.

Here, Radiance's counsel reasonably and efficiently spent time analyzing Uber's convoluted complaint; researching the interplay of state anti-SLAPP doctrine and evolving federal anti-SLAPP practice,[4] state litigation privilege,

---

[4] For example, just weeks before the anti-SLAPP motion here, the Ninth Circuit handed down the en banc decision of *Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025), which had the potential to substantially alter whether federal courts in this Circuit apply California's anti-SLAPP statute.

22

unjust enrichment, Unfair Competition Law and related common law issues (such as California's broader prohibition on follow-on suits for litigation misconduct) as well as federal *Noerr–Pennington* and Rule 9(b) pleading issues; drafting interrelated anti-SLAPP and Rule 12(b)(6) motions; and preparing this fee application.

Not only was substantial work required, but the overall relief obtained further justifies the time expended. Radiance's counsel eliminated all claims against it, protecting it from exposure to monetary judgments (which Uber did not plead, but it would likely have sought millions given the Complaint's multiple references to Uber's one million dollar per incident insurance policy) as well as to non-monetary injunctive relief that would have interfered with Radiance's business. And counsel achieved this result on the pleadings, further shielding Radiance from the burdens of discovery. *See Rivera v. City of Riverside*, 763 F.2d 1580, 1582 (9th Cir. 1985) (fee reasonableness turns on the significance of the overall relief obtained relative to the hours reasonably expended).

As covered above, Radiance is legally entitled to recover not just for the attorney time entries labeled "anti-SLAPP," but also for time expended on the intertwined and incorporated Rule 12(b)(6) motion as well as on this fee motion. *E.g.*, *Kearney*, 553 F. Supp. 2d at 1184; *Intermarketing*, 2021 WL 6102516 at *1.

Radiance's Gelberg Declaration provides the supporting details for Radiance's request, which are summarized in the tables below. This first table shows the 396.5 hours (for a total billable value of $366,559.50) worked up through the day before filing this motion:

| Timekeeper | Rate per Hour | Hours Worked | Total Billable |
|---|---|---|---|
| Grant B. Gelberg (partner) | $1095 | 58.7 | $64,276.50 |
| S. Albert Wang (partner) | $995 | 175.8 | $174,921.00 |

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

| Timekeeper | Rate per Hour | Hours Worked | Total Billable |
|---|---|---|---|
| Gwendolyn Toczko (of counsel) | $895 | 128.1 | $114,649.50 |
| Jillian Song (paralegal) | $375 | 5.2 | $1,950.00 |
| Candice Spoon | $375 | 19.1 | $7,162.50 |
| Alisha Chandler | $375 | 9.6 | $3,600.00 |

*See* Gelberg Decl., Ex. H.  This second table summarizes the hours anticipated for
(a) the finalization of this motion on the day of filling; (b) the reply on this motion;
and (c) the hearing on this motion:

| Timekeeper | Rate per Hour | Hours Anticipated | Total Anticipated |
|---|---|---|---|
| Grant B. Gelberg (partner) | $1095 | 11 | $12,045 |
| S. Albert Wang (partner) | $995 | 23 | $22,885 |
| Gwendolyn Toczko (of counsel) | $895 | 21 | $18,795 |
| Alisha Chandler, Jillian Song (paralegals) | $375 | 19 | $7,125 |

Gelberg Decl. ¶ 22.  The anticipated hours total 74 hours, for a total billable value
of $60,850.  *Id.* ¶ 23.

These hours are supported by counsel's detailed contemporaneous time
records and sworn declaration, which constitute prima facie evidence that the hours
and rates are reasonable.  *See Raining Data Corp. v. Barrenechea*, 175 Cal. App.
4th 1363, 1375 (2009).  These verified time statements are entitled to credence
absent a clear indication they are erroneous.  *Horsford v. Board of Trustees*, 132
Cal. App. 4th 359, 396 (2005).

These materials provide a sufficient evidentiary basis for Radiance's total
requested fees of $427,409.50 for 470.5 total hours.

1

**D.    The Overall Amount Sought Is Reasonable**

2    The $427,409.50 Radiance seeks is comparable to fee awards that courts

3 have approved in anti-SLAPP cases involving complex litigation and complete, or

4 even just substantial, success. *See, e.g., Graham-Sult v. Clainos*, 738 F.3d 1131,

5 1158–60 (9th Cir. 2013) (affirming award exceeding $240,000 in anti-SLAPP fees

6 plus fees on fees); *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1228

7 (S.D. Cal. 2002) (awarding more than $300,000 in anti-SLAPP fees).

8    Uber refused to dismiss its claims against Radiance until after Radiance filed

9 its anti-SLAPP and Rule 12(b)(6) motions.  With those motions, Radiance obtained

10 a complete victory when Uber abandoned every claim asserted against Radiance.

11 In light of that success and the complex, intertwined nature of the issues presented,

12 not to mention the mandatory nature of section 425.16(c)(1), Radiance is entitled

13 to a full award of $427,409.50 as its reasonable attorneys' fees incurred for its anti-

14 SLAPP motion and incorporated Rule 12(b)(6) motion, as well as this fee motion.

15 **V.    CONCLUSION**

16    For the foregoing reasons, the Court should declare Radiance as the

17 prevailing party and award its requested attorneys' fee in full.

18

19 DATED: January 23, 2026          HALPERN MAY YBARRA GELBERG LLP

20

21                           By:          */s/ Grant B. Gelberg*
                                          GRANT B. GELBERG
22

23                           *Attorneys for Defendant Radiance Surgery*
                             *Center*
24

25

26

27

28

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR
DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant RADIANCE SURGERY CENTER, certifies that this brief is not based on word count under Local Rule 11-6.1 because this action is governed by the Standing Order (Dkt. 14 at G.4) providing that "[m]emoranda of points and authorities in support of or in opposition to motions shall not exceed twenty-five (25) pages."

DATED: January 23, 2026          HALPERN MAY YBARRA GELBERG LLP


                                 By:        /s/ Grant B. Gelberg
                                 _____
                                      GRANT B. GELBERG

                                 *Attorneys for Defendant Radiance Surgery Center*

**DEFENDANT RADIANCE SURGERY CENTER'S NOTICE OF MOTION AND MOTION FOR DETERMINATION OF PREVAILING PARTY AND FOR ATTORNEYS' FEES**