Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
John S. Lee (SBN 272229)
jlee@larsonllp.com
Amelia L.B. Sargent (SBN 280243)
asargent@larsonllp.com
Benjamin Falstein (SBN 342867)
bfalstein@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendants GREG
KHOUNGANIAN and VALLEY
ORTHOPEDIC AND SPINE CENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UBER TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, VALLEY ORTHOPEDIC AND SPINE CENTER D/B/A GSK PRINE AND GREG KHOUNGANIAN, <br><br> Defendants. | Case No. 2:25-CV-06612-SPG-PD <br><br> **DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:      June 24, 2026 <br> Time:      1:30 p.m. <br> Crtrm.:   5C <br><br> Judge: Hon. Sherilyn Peace Garnett |

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN
SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

    A.  The *Noerr-Pennington* Doctrine Bars This Action...........................................2

        1.  Uber's Suit Burdens Personal Injury Victims' Petitioning Rights.................3

        2.  Dr. Khounganian's Medical Services and Testimony Qualify as Protected Petitioning Activity........................................................................5

        3.  The RICO Statute Can Be Construed to Avoid Burdening Petitioning Activity ........................................................................9

        4.  The Sham Exception Does Not Apply .........................................................9

    B.  Uber Fails to Plausibly Allege Predicate Mail or Wire Fraud ........................14

        1.  The Medical Records Are Not Fraudulent ..................................................15

        2.  The Causation Statements Are Not Fraudulent ..........................................16

        3.  The Concealed Side Agreements Are Not Fraudulent ................................17

    C.  Uber Fails to Plausibly Allege Defendants Operated Any RICO Enterprise .18

        1.  Valley Orthopedic Cannot Be a RICO Enterprise Because the FAC Alleges Nothing About It.............................................................18

        2.  The Alleged Association-In-Fact Enterprise Is Nothing More Than an Ordinary Business Relationship ...................................................21

        3.  The FAC Does Not Allege Dr. Khounganian and Valley Orthopedic "Directed" the Affairs of Any RICO Enterprise .........................................23

        4.  The FAC Does Not Plausibly Allege That Any RICO Enterprise Affected Interstate Commerce ....................................................................24

    D.  Uber Has Not Suffered Any Cognizable RICO Injury Proximately Caused By Defendants' Conduct........................................................................25

        1.  Litigation Expenses Are Not Compensable Under RICO...........................25

        2.  Defendants Did Not Proximately Cause Uber's Litigation Costs or Settlement Payments....................................................................................26

    E.  *Simon & Simon* Does Not Alter the RICO Analysis.....................................28

    F.  Dr. Khounganian and Valley Orthopedic Are In Privity As Alleged "Co-Conspirators" with the Law Firm Defendants .................................................30

III.  CONCLUSION....................................................................................................30

i

LARSON
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anza v. Ideal Supply Corp.*,
  547 U.S. 451 (2006) ..........................................................................................26

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022)..........................................................................3, 14

*Belczak v. Shute*,
  2009 WL 10674167 (C.D. Cal. June 29, 2009).................................................25

*Canyon Cnty v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008)............................................................................25

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ..........................................................................................20

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013).....................................................................15, 16

*Delta Aliraq, Inc. v. Martin*,
  2017 WL 11615775 (C.D. Cal. Aug. 4, 2017)..................................................30

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014).......................................................................15, 16

*Enttech Media Grp. LLC v. Okularity, Inc.*,
  2020 WL 6888722 (C.D. Cal. Oct. 2, 2020) ......................................................9

*Evans Hotels, LLC v. Unite Here Loc. 30*,
  433 F. Supp. 3d 1130 (S.D. Cal. 2020) ...............................................................9

*Experian Information Solutions, Inc. v. Stein Saks, PLLC*,
  2024 WL 5261159 (C.D. Cal. Nov. 19, 2024)...................................................12

*Ford Motor Co. v. Knight Law Group*,
  2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) .....................................1, 4, 9, 11

*Ford Motor Co. v. Mikhov*,
  2026 WL 691879 (C.D. Cal. Mar. 10, 2026) ................................................1, 4

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005)............................................................................*passim*

*Gomez v. Guthy-Renker, LLC*,
2015 WL 4270042 (C.D. Cal. July 13, 2015) ....................................................22

*Gonzales v. Lloyds TSB Bank, PLC*,
532 F. Supp. 2d 1200 (C.D. Cal. 2006)..............................................................19

*Hakak v. Geffen*,
2023 WL 4681385 (C.D. Cal. June 28, 2023).................................................6, 7

*In re Jamster Mkt. Lit.*,
2009 WL 1456632 (S.D. Cal. 2009)....................................................................21

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) ............................................................................*passim*

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) ..............................................................................11

*Lopez v. Cher Koon Teo*,
2010 WL 11515370 (C.D. Cal. Feb. 24, 2010)..................................................25

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002)............................................................................27

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) .....................................................19

*Montway LLC v. Navi Transp. Servs. LLC*,
No. 25-381, 2026 WL 866290 (D. Del. Mar. 30, 2026) .....................................7

*Moore v. Saniefar*,
2016 WL 2764768 (E.D. Cal. May 12, 2016) ("Moore lied to the
court regarding his disability.")..........................................................................12

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) ...........................................................................................20

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
2020 WL 5239856 (C.D. Cal. Aug. 3, 2020) .....................................................11

*Natural Immunogenics Corp. v. Newport Trial Group*,
2016 WL 11520711 (C.D. Cal. Aug. 1, 2016) ............................................12, 13

iii

LARSON
LOS ANGELES

*Ogden v. Wells Fargo Bank, N.A.*,
   2015 WL 13413390 (C.D. Cal Feb. 20, 2015).....................................................26

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019)............................................................................26

*Pyankovska v. Abid*,
   65 F.4th 1067 (9th Cir. 2023).........................................................................4, 5

*Relevant Grp., LLC v. Nourmand*,
   116 F.4th 917 (9th Cir. 2024).................................................................11, 12, 14

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ...................................................................................23, 29

*Rosen v. Duel*,
   2022 WL 18231777 (C.D. Cal. Nov. 23, 2022).................................................9, 10

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016).........................................................21, 22

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006).......................................................................*passim*

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007).......................................................................15, 18

*Thomas v. Baca*,
   308 Fed. App'x 87 (9th Cir. 2009)..............................................................26, 29

*Thomas v. Hous. Auth. of Cnty. of Los Angeles*,
   2006 WL 5670938 (C.D. Cal. Feb. 28, 2006)....................................................10

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011)..............................................................20

*In re Toyota Motor Corp.*,
   826 F. Supp. 2d at 1202-03 ............................................................................21

*Uber Technologies, Inc. et al. v. Simon & Simon P.C.*,
   2026 WL 1284178 (E.D. Pa. May 11, 2026) .............................................*passim*

*United States v. Juvenile Male*,
   118 F.3d 1344 (9th Cir. 1997).........................................................................25

iv

LARSON
LOS ANGELES

*United States v. Turkette*,
    452 U.S. 576 (1981) .................................................................................. 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................. 17

*Villarroel v. Recology Inc.*,
    2025 WL 2294908 (N.D. Cal. Aug. 8, 2025)........................................... 25

*Walter v. Palisades Collection, LLC*,
    480 F. Supp. 2d 797 (E.D. Pa. 2007)...............................................23, 29

*Webster v. Omnitrition Int'l, Inc.*,
    79 F.3d 776 (9th Cir. 1996) ...................................................................... 19

**California Cases**

*Gilman v. Dalby*,
    176 Cal. App. 4th 606 (2009)................................................... 1, 2, 4, 18

*Howell v. Hamilton Meats & Provisions, Inc.*,
    52 Cal. 4th 541 (2011)............................................................................... 17

*Pebley v. Santa Clara Organics, LLC*,
    22 Cal. App. 5th 1266 (2018)..................................................... 1, 3, 17

*Pratt v. Union Pac. R.R. Co.*,
    168 Cal. App. 4th 165 (2008)................................................................... 27

**Federal Statutes**

18 U.S.C.
    § 1962(c) ...................................................................................................... 20

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 9(b) ................................................................................................15, 21

LARSON
LOS ANGELES

v

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN
SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.      **INTRODUCTION**

Uber's pernicious exploitation of the RICO statute draws from a lawfare playbook that was recently rejected by another court in this district.  *See Ford Motor Co. v. Knight Law Group*, 2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) (dismissal of civil RICO claim against personal injury firm and attorneys) ("*Ford Motor I*"); *Ford Motor Co. v. Mikhov*, 2026 WL 691879 (C.D. Cal. Mar. 10, 2026) (dismissal of civil RICO claim with prejudice) ("*Ford Motor II*").  It is a classic example of litigation designed to chill petitioning activity of those harmed by Uber drivers so that, win or lose, Uber inflicts maximum costs on lesser-resourced opponents.[1]

But Uber's suit cannot avoid *Noerr-Pennington*'s bar.  *Noerr-Pennington* exists to prevent retaliation for participation in earlier litigation.  The FAC pleads conduct undertaken by Dr. Khounganian and Valley Orthopedic solely related to underlying personal injury actions.  *Noerr-Pennington* immunizes both petitioning activity and conduct incidental to it, which encompasses the allegations here. Uber's attempt to trigger the sham exception for "in-court" misrepresentations fails for lack of any "in-court" representations at all.  Further, the recent out-of-circuit decision in *Uber Technologies, Inc. et al. v. Simon & Simon P.C.*, 2026 WL 1284178 (E.D. Pa. May 11, 2026) applied a rudimentary *Noerr-Pennington* test that directly contradicts binding Ninth Circuit authority, and so cannot apply here.

Uber's RICO claims also fail for a host of other defects that its opposition brief cannot wish away.  Across its 75 pages, Uber does not once address the prevailing California Court of Appeal decisions in *Gilman v. Dalby*, 176 Cal. App. 4th 606 (2009) or *Pebley v. Santa Clara Organics, LLC*, 22 Cal. App. 5th 1266 (2018), which affirm California's strong public policy permitting personal injury

---

[1] Uber has also poured $32.5 million into a ballot initiative to achieve similar goals. *Uber ballot initiative sparks showdown with lawyers, doctors*, CALMATTERS (Feb. 24, 2026), https://calmatters.org/economy/2026/02/uber-california-ballot-initiatives/.

LARSON
LOS ANGELES

1

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

victims to recover the full cost of lien-based care from tortfeasors like Uber. Victims are not limited to any capped "market rate" set by Medicare, insurers, or otherwise. There is accordingly no such thing as a "fraudulent above-market" lien-based rate that any supposed side agreement "rendered false and misleading." Indeed, *Gilman* confirms that lien-based care sometimes results as a matter of course in providers not being paid the full amount of their services.

Uber's opposition brief instead resorts to hyperbolic assertions contradicted by its own pleaded allegations. For instance, Uber argues Dr. Khounganian employed a business model of "fabricated or exaggerated spinal injuries" to justify "medically unnecessary spinal fusion surgeries." But the FAC admits Dr. Khounganian did not perform *any* surgery on at least half of its 18 claimants, who: (i) were actually in Uber-related car accidents; (ii) sustained a range of significant injuries; and (iii) received treatments from various unaffiliated providers *before* seeing Dr. Khounganian. On this record, Uber's fraud theory is implausible.

Uber's FAC is also missing essential elements of its RICO claims. These include the existence of a cognizable RICO enterprise, a nexus to interstate commerce, proximate causation, and a permissible form of injury.

Uber's lawsuit thus fails at every level. Uber's claims are not genuine legal causes of action, but rather are engineered to destroy Defendants' reputations, drain their resources, and make others think twice before representing Uber's victims. At this juncture, the only just outcome is dismissal with prejudice. Uber has already amended its complaint to address the very arguments raised in this motion, and has been unable to cure its fatal defects. Because any further amendment would be futile, and would only further perpetuate the harm arising from this illegitimate litigation, the Court should rule with finality to end this matter.

## II.    ARGUMENT

### A.    The *Noerr-Pennington* Doctrine Bars This Action

Uber fails each prong of the Ninth Circuit's three-part test for *Noerr-*

2

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Pennington* immunity because: (1) Uber's retaliatory lawsuit is *designed* to burden petitioning rights; (2) the conduct alleged as part of the "fraud scheme"—including the medical treatment and testimony offered by Dr. Khounganian—constitutes protected petitioning activity; and (3) the RICO, mail fraud and wire fraud statutes can be construed to avoid burdening Defendants' protected petitioning activity. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022). And it is equally clear that Defendants' alleged conduct falls well outside the "narrow 'sham litigation' exception" that Uber misapplies here. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 n.6 (9th Cir. 2006). This fundamental defect in the FAC warrants dismissal. *See*, *e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005) (holding "*Noerr-Pennington* immunity is a sufficient ground to dismiss the complaint as to all defendants[]"—not only lawyers).

### 1.   Uber's Suit Burdens Personal Injury Victims' Petitioning Rights

Uber's platitude that "the First Amendment does not protect fraud" misses the fundamental point of the *Noerr-Pennington* inquiry. The Ninth Circuit has squarely rejected this red herring, as "the question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [plaintiff's] lawsuit would constitute a burden on petitioning rights." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009). The core purpose of Uber's lawsuit is to hold Defendants liable for representing and treating personal injury victims in connection with litigation against Uber—which comprises both direct petitioning activity, as well as "conduct incidental to" such activity. There can be no question that Uber's lawsuit, if successful, would impair personal injury victims' ability to prosecute claims and obtain redress for injuries treated by their provider of choice. *Cf. Pebley*, 22 Cal. App. 5th at 1276-77 ("A tortfeasor cannot force a plaintiff to use his or her insurance to obtain medical treatment for injuries caused by the tortfeasor."). To be clear, Uber's assertion of fraud is wholly baseless; but even more pertinently, it is outright immaterial to the *Noerr-Pennington* analysis.

LARSON
LOS ANGELES

3

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Uber's misplaced reliance on *Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023) has been expressly rejected in two recent decisions from this district. *Ford Motor II*, 2026 WL 691879, at *9; *see also Ford Motor I*, 2025 WL 3306280, at *8. The *Ford* decisions arose out of a similar RICO lawsuit brought against law firms and lawyers for alleged fraudulent billing records in connection with underlying plaintiff's litigation. *See Ford Motor I*, 2025 WL 3306280, at *5. The *Ford* decisions found *Pyankovska* inapposite for at least two reasons that apply here.

*First*, *Pyankovska*'s factual posture was simply "different in kind." *Ford Motor II*, 2026 WL 691879, at *9. It involved "the use of evidence stemming from the insertion of a recording device into a child's backpack to surreptitiously record private conversations." *Id*. That bears little resemblance to the submission of supporting documentation with disputed veracity in support of litigation claims, which "more squarely constitutes 'petitioning activity.'" *Ford Motor I*, 2025 WL 3306280, at *8. Indeed, "medical reports and bills from healthcare providers are typically essential to establish the extent of the plaintiff's injuries and damages." *Gilman*, 176 Cal. App. 4th at 617. Illicit recordings lack that defining hallmark.

*Second*, *Pyankovska* arose in an entirely distinct statutory context. *Ford Motor I*, 2025 WL 3306280, at *8 ("[W]ith Ninth Circuit having concluded that RICO claims 'quite plainly' burden petitioning activity—including sending allegedly fraudulent demand letters—the fact that *Pyankovska* arose under the Wiretap Act rather than as a RICO claim makes *Sosa* the more applicable precedent."). Uber ignores this crucial distinction by incorrectly asserting that "*Pyankovska* hinged on the illegal and unprotected nature of the conduct," rather than "the statute giving rise to the claim." Opp. at 12. But Uber has it backwards: the conduct was deemed unprotected *because of* the Wiretap Act's express prohibition, which mandates that "no part of the contents of [any illegally intercepted] communication … may be received in evidence … before any court." *Pyankovska*, 65 F.4th at 1077-1078 (citing 18 U.S.C. § 2515). Based on this text,

4

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

the Ninth Circuit held that "requiring [the defendant] to face the consequences specified by Congress for those who violated the law is not a cognizable 'burden' on any conduct he was lawfully entitled to participate in." *Id.* at 1078.

In contrast, neither RICO nor the mail and wire fraud statutes underlying Uber's lawsuit expressly prohibit the types of conduct at issue here. *See Sosa*, 437 F.3d at 939 ("RICO's general definition of racketeering activity does not in terms clearly reach the conduct at issue here. . . . Similarly, the mail and wire fraud statutes do not unambiguously reach demands to settle reasonably based legal claims.") For this reason, the Ninth Circuit has repeatedly held that RICO claims predicated on underlying litigation-related conduct "would quite plainly burden" the right to petition. *Id.* at 932; *see also Kearney*, 590 F.3d at 645 (same). Controlling law thus concludes that Uber's lawsuit burdens petitioning rights.

Uber also draws a false distinction between Dr. Khounganian and the Law Firm Defendants by claiming that "doctors do not petition courts on behalf of their patients." Opp. at 12. But the very case Uber relies on, *Freeman*, 410 F.3d at 1186, plainly holds otherwise. The Ninth Circuit explained it is the litigants themselves to which "[t]he First Amendment petition right belongs"—but "their agents in that litigation[] get to benefit as well." 410 F.3d at 1186. Thus, "*Noerr-Pennington* immunity is not limited to lawyers," and indeed, "a *Noerr-Pennington* case . . . need not involve claims against lawyers at all." *Id.* 1186; *see also Sosa*, 437 F.3d at 937 ("[W]e [have] held that *Noerr-Pennington* immunity extended to an individual who funded anticompetitive litigation but was not himself a party to the litigation and was therefore not himself petitioning the courts."). Here, there is no dispute Dr. Khounganian acted as an agent for personal injury plaintiffs in connection with their litigation claims, and his conduct is therefore encompassed by *Noerr-Pennington*.

2.    Dr. Khounganian's Medical Services and Testimony Qualify as Protected Petitioning Activity

Uber's effort to create artificial distance between Dr. Khounganian's activity

5

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

and the underlying litigation is discredited by Uber's own pleadings.  The FAC itself makes clear that Uber's lawsuit is predicated on conduct inextricably tied to the underlying litigation.  *See*, *e.g.*, FAC ¶ 3 ("These fraudulent bills and claims are typically presented to Uber … in the form of a personal-injury lawsuit and/or a pre-suit demand letter."); *id.* at ¶ 10 ("Khounganian produces fraudulent records of medical necessity and/or causation that he transmits to the lawyers for the purposes of artificially inflating amounts claimed in personal-injury lawsuits.").  Uber's opposition brief, in turn, admits that Dr. Khounganian's "testimony" caused the purported harm at issue.  Opp. at 45; *see also id.* at 65 ("false medical testimony"); *id.* ("false causation testimony"); *id.* at 46 ("Defendants could not accomplish their common purpose of fraudulently extracting inflated settlements and verdicts from deep-pocketed defendants like Uber without the participation of … Khounganian.").

Uber's pleadings thus refute the notion that Dr. Khounganian's role "significantly predated the personal injury lawsuits." Opp. at 14.  In fact, a core allegation is that Law Firm Defendants steered personal injury victims to Dr. Khounganian only after they sought legal representation to bring suit against Uber. *See, e.g.*, FAC ¶¶ 26, 31.  Indeed, many of these claimants were treated by Dr. Khounganian *after* the lawsuits were filed—including Claimant B, *id.* ¶¶ 77-78; Claimant C, *id.* ¶¶ 110, 388; Claimant G, *id.* ¶¶ 180, 391; Claimant H, *id.* ¶¶ 181, 392; Claimant O, *id.* ¶¶ 298, 399; Claimant P, *id.* ¶¶ 315-317; and Claimant R, *id.* ¶¶ 348, 402.  In any event, *Noerr-Pennington* immunity is not subject to any temporal limitation.  The doctrine extends to petitioning-related conduct "*even where no actual litigation was pending.*"  *Sosa*, 437 F.3d at 937 (emphasis added).

Uber's half-reading of *Hakak v. Geffen*, 2023 WL 4681385 (C.D. Cal. June 28, 2023), Opp. at 14, overlooks the key distinction between the two types of conduct at issue there.  The first type of conduct—providing "false information to the court" and engaging in "witness tampering"—was deemed to be protected because, while "not petitioning conduct itself, it is conduct incidental to the

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

prosecution of a suit." 2023 WL 4681385 at *1, 5. On the other hand, the second type of conduct—telling a bank that checks were forged—had nothing to do with the litigation and is thus "not [a] petition[] seeking redress from the government." *Id.* at *5. This distinction is fatal to Uber's position because its allegations against Dr. Khounganian, like the witness tampering allegations in *Hakak*, arise from conduct incidental to the underlying personal injury litigation. Dr. Khounganian's medical opinions and billing records were specifically "presented to Uber … in the form of a personal-injury lawsuit and/or a pre-suit demand letter." FAC ¶ 3. As such, these communications "are sufficiently related to petitioning activity" to fall within the protections of *Noerr-Pennington*. *Sosa*, 437 F.3d at 935.

The Eastern District of Pennsylvania's recent decision in *Uber Technologies, Inc. v. Simon & Simon P.C.*, 2026 WL 1284178 (E.D. Pa. May 11, 2026) does not change this result, because it did not apply the Ninth Circuit precedent that controls here. As that court explained, "our [Third Circuit] Court of Appeals has never opined on when conduct is 'incidental' enough to litigation to be covered by *Noerr-Pennington*," such that "[t]he scope of what qualifies as 'incidental' remains unsettled." *Id.* at *7 (citations omitted). The court thus invented its own test, finding that communications between doctors and lawyers were unprotected because they were not "directed to a court or opposing party" and because the doctors were not "the subject of a threatened suit." *Id.* at *8 (extending reasoning in *Montway LLC v. Navi Transp. Servs. LLC*, No. 25-381, 2026 WL 866290 (D. Del. Mar. 30, 2026)). The court distinguished *Ford I* on that basis. *Id.* at *14.

This approach, of course, directly contradicts the Ninth Circuit's well-developed *Noerr-Pennington* jurisprudence, which embraces an expansive interpretation of "incidental conduct," and does not create an arbitrary distinction for communications to third parties or whether the third parties were threatened with litigation. For example, in *Kearney*, the Ninth Circuit held that an attorney's instruction to outside engineers not to prepare a report of certain test results met the

7

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

threshold for *Noerr-Pennington* immunity because "communications surrounding [the] litigation … likewise come[] within *Noerr-Pennington*." 590 F.3d at 646 ("We … do not find 'incidental' so narrow."). This instruction was not directed to a court or opposing party, and did not threaten suit, but the Ninth Circuit held it was incidental litigation conduct nonetheless. *Freeman* takes a similarly expansive view of the "*Noerr-Pennington* cloak," covering allegations of discovery misconduct and witness tampering, and extending the protection not only to attorneys but also third-party "agents" in the litigation. *Freeman*, 410 F.3d at 1186. And *Sosa* explained that *Noerr-Pennington* applied to "an individual who funded anticompetitive litigation but was not himself a party to the litigation and was therefore not himself petitioning the courts." *Sosa*, 437 F.3d at 937; *see also id.* at 935 (holding pre-suit communications protected "so long as they are sufficiently related to petitioning activity"). All three of these Ninth Circuit cases would have gone the other way if the *Simon & Simon* court's definition of "incidental" applied. It does not.

Instead, under Ninth Circuit precedent, Dr. Khounganian's testimony and medical treatment were squarely protected under the penumbra of *Noerr-Pennington*. The FAC alleges Dr. Khounganian prepared "fraudulent bills and records of medical necessity and/or causation" specifically for use "*in lawsuits against Uber*." FAC ¶ 25 (emphasis added). It further asserts that "Khounganian performs [] medically unnecessary surgeries and provides … *false and fraudulent testimony* that such surgeries were [] medically necessary." Opp. at 45 (emphasis added). Such "incidental conduct" is directly tied to the underlying litigation, and accordingly resides within the "breathing space" that protects the effective exercise of petitioning rights. *Sosa*, 437 F.3d at 934. And as noted above, Uber's assertion of fraud as to Dr. Khounganian's medical and billing records has no bearing on whether this activity constitutes petitioning-related activity. *See Kearney*, 590 F.3d at 646 ("Kearney presses further that *misconduct* could not be petitioning conduct or conduct incidental because misconduct is not essential to the petition. In so doing,

8

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

she collapses the question of petitioning conduct with that of the sham exception's application.") (emphasis in original).

### 3. The RICO Statute Can Be Construed to Avoid Burdening Petitioning Activity

Courts have repeatedly held that the RICO (as well as mail and wire fraud) statutes do not expressly proscribe allegedly fraudulent conduct in the context of pending or contemplated litigation. *See Sosa*, 437 F.3d at 940 (RICO and "the mail and wire fraud statutes do not unambiguously reach demands to settle reasonably based legal claims" that allegedly contained "false representations of fact and law."); *Rosen v. Duel*, 2022 WL 18231777, at *9 (C.D. Cal. Nov. 23, 2022) (RICO and mail/wire fraud statutes can be construed to avoid burdening demand letters falsely alleging nonpayment of rent); *Ford Motor I*, 2025 WL 3306280, at *12 ("[T]he Court does not find the text of the mail and wire fraud statutes to unambiguously reach the submission of inflated fee petitions" containing false evidence regarding hours worked); *Enttech Media Grp. LLC v. Okularity, Inc.*, 2020 WL 6888722, at *3 (C.D. Cal. Oct. 2, 2020) ("Nothing in these statutes unavoidably restricts the petitioning activities here.  While fraud and extorsion may be based on filing of a lawsuit, filing of DMCA take-down notices, and making pre-litigation settlement demands, the RICO statutes do not explicitly proscribe such activities."); *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1153 (S.D. Cal. 2020) ("Plaintiffs' RICO claims predicated on federal and California extortion statutes may be construed not to apply to protected petitioning activity.").

Uber unsurprisingly identifies no authority to the contrary.  The position it advances here is contrary to established law and should be rejected.

### 4. The Sham Exception Does Not Apply

Uber admits that the first two categories of the *Noerr-Pennington* sham exception do not apply here.  Opp. at 18, n. 4.  It instead seeks refuge in the third exception, but this is similarly unavailing because it can be invoked only: (i) "where

9

the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court'"; (ii) that "deprive the litigation of its legitimacy." *Kearney*, 590 F.3d at 646. Neither prong of the third exception can be satisfied.

a.    The FAC Fails to Specifically Allege that Defendants Made Any In-Court Misrepresentations

Uber again flouts prevailing law when it urges that the third sham exception need not be "limited to in-court misrepresentations." Opp. at 23. To the contrary, the Ninth Circuit has expressly limited this exception to "misrepresentations *to the court*." *Kearney*, 590 F.3d at 646 (emphasis added). Courts have accordingly applied the exception with this express limitation. In *Freeman*, for example, the Ninth Circuit specifically delineated alleged out-of-court "[d]iscovery misconduct" from representations "to the court." 410 F.3d at 1185. The court found that, "[u]nlike [] other allegations, which concern out-of-court misconduct," the allegation in question "falls within the third [] exception" because it was based on "false factual representations to the court." *Id.* at 1185, n. 2 (emphasis added).

Uber does not dispute that the FAC lacks any specific allegation of a misrepresentation to a court. For instance, Uber does not allege a single falsehood in any court pleading, or that a court acted in reliance upon any such falsehood. *See* FAC *generally.* This by itself renders the third sham exception inapplicable. *See, e.g., Thomas v. Hous. Auth. of Cnty. of Los Angeles*, 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006) ("Plaintiffs do not allege knowing fraud upon, or intentional misrepresentations to, the unlawful detainer court that deprived the eviction action of its legitimacy."); *Rosen*, 2022 WL 18231777, at *10 ([T]he court finds Plaintiff's allegations are not sufficient to demonstrate any Defendant committed knowing fraud upon, or intentional misrepresentations to, the California state court that deprived the litigation of its legitimacy such that the third exception applies.").

Uber mistakenly contends that "both *Kearney* and *Living Designs*[] allowed civil RICO suits to proceed" notwithstanding the absence of in-court misconduct

10

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

"because there was 'fraudulent discovery conduct in prior litigation.'"  Opp. at 23 (citing *Kearney*, 590 F.3d at 647).  Not so.  In *Kearney*, the third sham exception arose from the fact that "Kearney has alleged intentional misrepresentations *to the court*, and fraud upon the court through the suppression of evidence."  590 F.3d at 646-47 (emphasis added).  Likewise, *Living Designs* involved an allegation of "falsely representing to the court and to plaintiffs" and "falsely den[ying] withholding evidence" during "consolidated discovery proceedings."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 356-58 (9th Cir. 2005).  These misrepresentations were so severe that "the district court asked the United States Attorney to 'investigate and prosecute' DuPont for criminal contempt."  *Id.* at 358.  In stark contrast, Uber asserts no such allegations here.

                b.      <u>The Personal Injury Actions Were Not Illegitimate</u>

Uber also cannot establish the separate prong of the third exception that requires conduct to render the underlying litigation illegitimate.  This is because "any misrepresentation exception to the doctrine should be limited to misrepresentations respecting the substance of the claim that show that the party's litigation position had no objective basis."  *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 5239856, at *9 (C.D. Cal. Aug. 3, 2020) (citation omitted).  Uber's own allegations demonstrate otherwise.

<u>First</u>, all 18 personal injury cases identified in the FAC resulted in successful settlements.  *See Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 932 (9th Cir. 2024) ("[S]ettlement indicates a lawsuit is not objectively baseless.").  <u>Second</u>, even if Defendants "artificially inflate[d] the damages claimed in lawsuits against Uber," FAC ¶ 25—which they did not—this would not strip the lawsuits of all legitimacy.  *See Ford Motor Co*, 2025 WL 3306280, at *11 ("Here, even accepting as true the allegation that some of Defendants' purported work entitling them to fees was fictitious, that misrepresentation is not sufficient on its own to deprive the entire fee petition process—let alone the entire lawsuit—of legitimacy.").  <u>Third</u>, the

11

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

successful outcome for the personal injury claimants occurred notwithstanding Uber's admitted ability to "investigate and … respond[] to [the] fraudulent evidence," FAC ¶ 362, allowing it to uncover the alleged fraud through the course of numerous "independent medical evaluations," *id.* ¶¶ 70, 119, 172, 183, 197, 221, 299, 338; claimant depositions, *id.* ¶¶ 32 n. 2, 210, 217, 322, 349; and a "forensic billing review." *Id.* ¶ 362.  <u>Fourth</u>, that each personal injury claimant independently sought counsel following vehicle-related incidents involving Uber evinces a reasonable belief in the validity of their claims, regardless of the quantum of injury. *See Relevant Grp., LLC*, 116 F.4th at 932 ("[O]bjective reasonableness … requires no more than a reasonable belief that there is some chance that a claim may be held valid upon adjudication."[2]

c.      <u>Uber's Proffered Authority Is Inapposite</u>

Uber's misplaced reliance on three district court decisions only further undermines its position because—unlike here—each involved in-court misrepresentations that were central to the application of the third sham exception. *See Moore v. Saniefar*, 2016 WL 2764768, at *7 (E.D. Cal. May 12, 2016) ("Moore lied to the court regarding his disability."); *Experian Information Solutions, Inc. v. Stein Saks, PLLC*, 2024 WL 5261159 (C.D. Cal. Nov. 19, 2024) (detailing specific false statements showing that the defendants "knowingly and intentionally made false allegations in [their] Complaint."); *Natural Immunogenics Corp. v. Newport Trial Group*, 2016 WL 11520711 (C.D. Cal. Aug. 1, 2016) ("[T]he material allegations supporting the class representative's claims in the operative complaint were intentionally false.").

Uber's citation to *Natural Immunogenics* is particularly misleading because

---

[2] Uber's position is also internally inconsistent.  It posits that the personal injury cases were illegitimate because the alleged fraud "infected all aspects of the litigation," while at the same time claiming "[t]he fraud in this case is prior to and external to the litigation."  Opp. at 12, 24.

12

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

the holding invoked the *first* sham exception, which Uber admits does not apply. 2016 WL 11520711, at *6 ("[T]hese allegations are sufficient to invoke the first sham litigation exception."). Tellingly, the court described the third exception as *inapplicable* in the absence of court reliance on misrepresentations. *Id.* at *8 ("Defendants' motion to dismiss also argues that Natural-Immunogenics has failed to allege that the presiding courts in each action relied on the [] Defendants' fraudulent representations.… This argument is misplaced. The presiding court's reliance is only relevant under the third sham litigation exception to the *Noerr-Pennington* doctrine.").

Finally, the Eastern District of Pennsylvania's decision in *Simon & Simon*, 2026 WL 1284178, applies both a different test and a different proof standard than the Ninth Circuit, and so its ruling that Uber plausibly established the sham exception to *Noerr-Pennington* carries no weight here.

Unlike the Ninth Circuit, which applies a "<u>narrow</u>" three-prong sham exception test, *Sosa*, 437 F.3d at 932 n.6 (emphasis added), the Third Circuit asks whether a claimant alleges one or multiple sham petitions, and applies different standards to each. Where multiple sham petitions are alleged, the Third Circuit applies a "more flexible," "holistic" approach to determine whether the series of lawsuits "were filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade." *Simon & Simon*, 2026 WL 1284178, at * 9. Ignoring the requirement that the suit harm a "market rival and restrain trade," the *Simon & Simon* court found that Uber's allegations met the test. The court found particularly instructive an allegation—not present here—that Uber was dismissed from the suits as soon as it sought discovery into the doctors' treatment records. *Id.* at *10.

This test has no precise analogue in the Ninth Circuit—the closest is the "second" sham exception for a series of lawsuits, which Uber concedes cannot apply because it does not meet the Ninth Circuit's more stringent requirements that the

13

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

suits were brought "without regard to the merits" and "for an unlawful purpose." *See B&G Foods*, 29 F.4th at 539 (citation omitted).  And unlike the exception Uber argues applies here, the *Simon & Simon* court's test does not contain *any* in-court misrepresentation requirement.  *See id.*  Moreover, in supporting its finding that the lawsuits lacked merit, the court also noted that "[t]he existence of settlements does not resolve the inquiry."  *Id.*  Conversely, the Ninth Circuit recognizes that a "settlement indicates a lawsuit is not objectively baseless."  *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 932 (9th Cir. 2024).

The Eastern District of Pennsylvania's determination that Uber had plausibly established the sham exception was also premised on its recognition that, in the Third Circuit, "[t]he question whether a petition is a sham is generally a question of fact for the jury" and best "resolved after discovery."  *Id.* at *9, 24.  In contrast, the Ninth Circuit specifically holds that "*Noerr-Pennington* immunity is a sufficient ground to dismiss [a] complaint," *Freeman*, 410 F.3d at 1186, and in fact imposes a heightened pleading standard that "requires more specific allegations than would otherwise be required" given "the danger that the mere pendency of the action will chill the exercise of First Amendment rights." *Kearney*, 590 F.3d at 647.

Every aspect of the *Simon & Simon* court's *Noerr-Pennington* analysis is thus legally distinguishable.  *Noerr-Pennington* applies in full force under established Ninth Circuit law to bar Uber's claims here.

**B.    Uber Fails to Plausibly Allege Predicate Mail or Wire Fraud**

Uber alleges three types of purported fraud: (1) false medical records detailing claimants' diagnoses and the surgeries that Dr. Khounganian recommended or performed; (2) false causation statements; and (3) fraudulent medical bills due to the concealed side agreements.  Opp. at 49-53.  None of these allegations plausibly amount to fraud.[3]

_____

[3] The FAC does not even mention Valley Orthopedic's involvement in any of the

14

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

### 1.    The Medical Records Are Not Fraudulent

Uber cannot demonstrate "the existence of a scheme which was reasonably calculated to deceive." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  Uber posits that Dr. Khounganian rendered "false diagnoses and unnecessary surgeries," Opp. at 49-50, but is unable to surmount the more plausible conclusion that the claimants *were* injured and their treatments *were* medically necessary.  "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed . . . in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

The FAC itself acknowledges that many of the claimants sustained injuries from car accidents.  *See, e.g.,* FAC ¶¶ 58, 132, 147, 155, 174.  Indeed, before ever seeing Dr. Khounganian, these claimants underwent a range of medical treatments from other providers not alleged to be RICO conspirators.  *See*, *e.g.*, *id.* ¶¶ 147, 175, 206, 261, 349.  For instance, Claimant J "was cleared for surgery" by a separate, unrelated provider, *id.* ¶ 210, and the surgery Dr. Khounganian recommended to Claimant F "was performed by a different physician than Khounganian." *Id.* ¶ 140.  Notably, "Khounganian recommended that Claimant O . . . begin physical therapy" rather than surgery—undercutting the notion of inflated medical bills through indiscriminate surgeries.  FAC ¶ 294.  In fact, the purported scheme rests on the fanciful idea that claimants voluntarily submitted to highly invasive surgeries that served no medical purpose.

alleged predicate acts. *See* FAC ¶¶ 380-406.  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "[A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (cleaned up).

15

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

LARSON
LOS ANGELES

Uber moreover asserts "the FAC presents 18 concrete examples of Defendants' scheme to defraud." Opp. at 56. Yet, *half* of these claimants never received *any* surgery. *See* FAC ¶ 405. If Dr. Khounganian's *modus operandi* was to operate regardless of medical justification, why would he forgo profit in half of Uber's self-serving examples identified in the FAC? Given the centrality of unnecessary surgeries to Uber's fraud theory, this glaring defect undermines the plausibility of Uber's claim that Dr. Khounganian acted in furtherance of a scheme reasonably calculated to deceive Uber.

Uber thus flunks its burden to establish "the existence of a scheme [] reasonably calculated to deceive" from which "the court [could] infer a defendant's specific intent to defraud." *Eclectic Props. E.*, 751 F.3d at 997. The defects identified above preclude such an inference, and instead collectively highlight Uber's failure to allege "[s]omething more" that would "exclude the possibility that the alternative [i.e. non-fraudulent] explanation is true." *In re Century Aluminum Co.*, 729 F.3d at 1108.

### 2. The Causation Statements Are Not Fraudulent

Uber's reliance on claimants' purported "preexisting degenerative conditions" unrelated to Uber does not give rise to plausible fraud. Opp. at 51. Indeed, the FAC merely takes issue with Dr. Khounganian's assessment that a diagnosis was "caused by *and/or exacerbated by* the injury during the date of loss." FAC ¶¶ 61, 81-83, 111, 125, 165, 182, 198, 208, 234, 249, 266, 282, 300, 313, 331, 350 (emphases added). But California's long-recognized eggshell-plaintiff doctrine takes claimants in their preexisting condition, including those whose earlier injuries are magnified by Uber's accidents. Mot. at 24 (citing *Smith v. Schumacker*, 30 Cal. App. 2d 251, 263 (1938)). Uber's innuendo and conclusory statements cannot upend this established legal principle, and Uber's admission of treatment by *other* providers further strips its fraud claims of plausibility.

LARSON
LOS ANGELES

16

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

### 3.     The Concealed Side Agreements Are Not Fraudulent

Uber also attributes fraud to the concept of lien collections forgiveness in the event of a failed personal injury litigation, even though California law recognizes this is how lien-based medical care operates.  *See* FAC ¶¶ 32-36.  But Uber fails at the threshold to establish "what is false or misleading about" purported agreements to forgo lien collections or "why [they are] false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Uber's reliance on *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 548 (2011) is undermined by the California Court of Appeal's interpretation of that decision.  Specifically, "*Howell* had clarified the law with respect to the recovery of medical damages where the injured person is *insured*." *Pebley v. Santa Clara Organics, LLC*, 22 Cal. App. 5th 1266, 1275 (2018) (emphasis added).  On the other hand, where treatment is lien based, *Pebley* explained that recovery "turns on the reasonable value of the services rendered or expected to be rendered." *Id.* at 1269.  In fact, limiting recovery to "the actual amount paid for medical care" under *Howell* would be nonsensical in the lien context because the patient does not pay anything *until* there is a recovery.  Accordingly, the amount of recovery requires "a wide-ranging inquiry into the reasonable value of medical services provided." *Id.*

This "wide-ranging inquiry" established by California law results in a sensible process for medical claims that was followed here.  The process enables Defendants to "present additional evidence . . . to establish that the amount billed is a reasonable value for the service rendered," after which Uber could "then test [that] opinion … and present [its] own expert opinion [] that the reasonable value of the service is lower." *Id.* at 1275-76.  Uber has the ability to settle the case at any point in the process—exactly as it did here.  Uber simply ignores this black letter law.  Its claim does not describe fraud; rather, it is the medical lien-based system operating as prescribed by law to strike an appropriate balance between making personal injury victims whole while equipping tortfeasors like Uber an adequate opportunity

17

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

to test the quantum of injury.  To label this a RICO conspiracy is outright absurd.

To the extent there is a "shortfall" in the personal injury litigation that necessitates "negotiat[ion for] a lower amount for his fees," this likewise is not fraud.  FAC ¶ 11.  In *Gilman*, the California Court of Appeal explained that post-hoc loan forgiveness arises from the litigation reality that "a collection action against a patient with limited resources is economically unfeasible" and "[t]hus, unless the patient gets a monetary recovery in a lawsuit, the medical liens will usually remain unpaid, and the provider will never obtain payment for the services rendered."  176 Cal. App. 4th at 618.  A decision to reduce medical bills based on economic realities, rather than institute cost-prohibitive and likely futile collection proceedings, has no legal bearing on the reasonable value of the medical services that Uber was liable to pay.

Uber misleadingly makes vague reference to an agreement by unnamed providers to accept a predetermined price for their services that was a "far lower sum" than "the inflated lien amount the provider was directed to bill."  Opp. at 52-53 (citing FAC ¶¶ 40-48).  But the FAC does not connect any such agreement to Dr. Khounganian or the 18 identified claimants.  Indeed, the FAC pleads to the contrary as to Dr. Khounganian, as it contends he would instead seek the full invoiced amount absent a shortfall in the personal injury litigation.  These unrelated and anonymous arrangements as to predetermined prices are thus immaterial here because Uber makes no attempt to plead Dr. Khounganian's "role … in the alleged fraudulent scheme."  *Swartz*, 476 F.3d at 765.

## C.  Uber Fails to Plausibly Allege Defendants Operated Any RICO Enterprise

### 1.  Valley Orthopedic Cannot Be a RICO Enterprise Because the FAC Alleges Nothing About It

Uber grasps at straws in naming Valley Orthopedic as essentially a nominal RICO enterprise.  The procedural history here is revealing.  Uber's original

18

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

complaint labeled a fictional limited liability company "GSK Spine" as a RICO enterprise. Upon realizing the non-existence of this entity—which basic due diligence like a Secretary of State website search would have shown—Uber simply swapped in Valley Orthopedic without any threshold supporting allegations.

The FAC lacks basic factual allegations concerning the function of this entity or its distinctness from Dr. Khounganian's alleged conduct. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). While the distinctiveness requirement is somewhat relaxed where the alleged enterprise is a legal entity, *see* Opp. at 42 (citing *United States v. Blinder*, 10 F.3d 1468, 1474 (9th Cir. 1993)), Uber is not relieved of its threshold obligation to state basic information as to how the enterprise was used in furtherance of a RICO scheme. Under Ninth Circuit authority, the "participation" of an entity is a predicate to "give the enterprise a structure separate from the racketeering activity." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 786 (9th Cir. 1996).

The FAC fails this requirement because "the mere naming of a corporation will not satisfy the enterprise requirement if there are no allegations that the corporation was involved in the acts of racketeering." *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1209 (C.D. Cal. 2006); *see also Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *9 (N.D. Cal. Mar. 5, 2019) (explaining that, "[w]hen alleging a legal entity 'enterprise'" there "must be *some* 'distinctness' between the 'person' and the 'enterprise.'" (emphasis added)). No such distinction exists under the FAC, which merely advances the conclusory allegation that "Defendant Khounganian operated, managed, and controlled the medical practice directly in furtherance of the scheme through a pattern of racketeering activity." FAC ¶ 371. The FAC does not allege Valley Orthopedic was used to treat any of the 18 claimants or to issue medical bills and records at issue. To the contrary, the lien agreements for each of these claimants were entered

19

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

into by "Greg S. Khounganian, MD" in his personal capacity, and make no mention of Valley Orthopedic at all.  ECF 95-2–95-12.  Tellingly, across 60 pages that purport to chronicle Dr. Khounganian's alleged conduct with respect to each claimant, the FAC fails even once to mention Valley Orthopedic.  FAC ¶¶ 57-353.[4]

Uber cannot simply allege Valley Orthopedic is a medical corporation without establishing that Dr. Khounganian used this entity in furtherance of the scheme.  RICO liability requires that one "conduct or participate … in the conduct of [the] *enterprise's* affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c) (emphasis added).  In other words, an enterprise is "the vehicle through which the unlawful pattern of racketeering activity is committed." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994).  Uber offers no such role as to Valley Orthopedic, but rather merely alleges Dr. Khounganian engaged in mail and wire fraud with no pleaded nexus to the entity.  This is insufficient as a matter of law.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[A]n 'enterprise' [] is not simply the same 'person' referred to by a different name."); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 922 (C.D. Cal. 2011) ("RICO seeks to prevent a person from using a corporation for criminal purposes… Here, Plaintiffs allege that the person and the tool are the same entities and, therefore, Plaintiffs have not met the distinctness requirement.") (citation omitted).

---

[4] As explained in the Motion to Dismiss, Uber is unable to state baseline allegations because Valley Orthopedic does not actually participate in Dr. Khounganian's medical practice.  Mot. at 14, n. 1.  Uber blithely responds that Valley Orthopedic is a professional medical corporation and has the same address that Dr. Khounganian lists on his own website, Opp. at 41, but this does nothing to resolve the defects with Uber's enterprise theory.  To be clear: (i) Dr. Khounganian is a sole practitioner; (ii) Valley Orthopedic is not his medical practice; and (iii) Valley Orthopedic does not provide medical services, employ clinical staff, or bill patients for professional medical services.  Uber does not plausibly plead otherwise.

20

## 2. The Alleged Association-In-Fact Enterprise Is Nothing More Than an Ordinary Business Relationship

Uber cannot overcome the RICO bar that deems it insufficient merely "to characterize routine commercial relationships as RICO enterprises." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016). Uber puffs up its allegations as describing "a scheme far outside the ordinary business relationship between a personal injury lawyer and his client's treating physician." Opp. at 45. But Uber fails at core to substantiate this with plausible facts, and instead dresses up an ordinary referral relationship with colorful adjectives.

"Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose. . . . Pleading by adjective does not comply with Rule 9(b)." *In re Jamster Mkt. Lit.*, 2009 WL 1456632, at *5 (S.D. Cal. 2009). The FAC contravenes this by conclusorily asserting "the Law Firm Defendants steer clients with high-limit insurance policies to Khounganian and direct him to provide specific, medically unnecessary [] surgeries" and "false and fraudulent testimony that such surgeries were both medically necessary and caused by the underlying car accidents." Opp. at 45. Slapping on adjectives like "fraudulent" and "unnecessary" cannot transform an otherwise standard referral arrangement. Personal injury attorneys refer clients to physicians as a matter of course, and patients are entitled to rely on the resulting medical opinion to seek recovery. The attorneys and physicians pursue independent economic interests, and a conclusory label of fraud does not establish a common RICO purpose. *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1202-03 ("[T]he SAC alleges no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently," which "is incompatible with the types of conduct RICO was enacted to prevent.").

Uber cannot circumvent this limitation through an unfounded, novel contention that a common purpose can be derived from a claim that "extracting

21

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

inflated settlements" could not be accomplished "without the participation of both the Law Firm Defendants and Khounganian." Opp. at 46. Such would swallow the rule protecting ordinary business conduct, as business relationships are inherently interdependent in the ordinary course. Courts thus reject the type of relabeling Uber attempts, because "the statutory requirements of RICO cannot be circumvented by attempting to characterize a routine contractual relationship for services as an independent enterprise." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015).

Uber resorts to circular reasoning in an effort to wish away the weight of authority that "overwhelmingly reject[s] attempts to characterize routine commercial relationships as RICO enterprises." *Shaw*, 220 F.Supp.3d at 1054. Uber argues that, in cases such as *Shaw*, the defendants "were acting in their own respective corporate interests," whereas here, "there is no legitimate corporate interest in knowingly engaging in a coordinated scheme to manufacture false evidence." Opp. at 46. This simply presumes coordination to manufacture false evidence rather than coordination to treat individuals injured by Uber. *Shaw* rejected a similar contention that the "allegation that [defendants] shared a common purpose of fraudulently selling defective vehicles is all that is needed to satisfy the requirement of plausibly stating the existence of an enterprise." 220 F.Supp.3d at 1055. The court disagreed, finding that "[s]omething more is needed" to establish conduct other than "ordinary business activity." *Id.* at 1056. Uber's allegations similarly fail here in the absence of specific facts rendering plausible the conclusory claim of a coordinated scheme.

Uber's purported "voluminous factual allegations" of a common purpose amounts to a single email communication from DTLA Law to Dr. Khounganian "asking that Claimant K be scheduled for an appointment 'ASAP' and listing the type of case as 'Passenger v. Uber Driver.'" Opp. at 47 (quoting FAC ¶ 226.) All this shows is an attorney referring a claimant to a treating physician, consistent with their respective ordinary business activities. Infusing this mundane email with

22

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

innuendo and adjectives cannot plausibly transform ordinary business into a nefarious RICO enterprise.

### 3. The FAC Does Not Allege Dr. Khounganian and Valley Orthopedic "Directed" the Affairs of Any RICO Enterprise

Uber's enterprise theories further fail in the absence of any plausible allegation that Dr. Khounganian or Valley Orthopedic "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Uber reliance on the allegation that "Khounganian participated in the enterprise's affairs" is insufficient as a matter of law. Opp. at 48. "[T]o participate . . . in the conduct of such enterprise's affairs, one must have some part in *directing* those affairs." *Walter*, 538 F.3d at 1248 (emphasis added) (citation omitted). As such, "simply being involved" or "[s]imply performing services for the enterprise does not rise to the level of direction." *Id.* at 1249.

The FAC makes clear that the management and operation of any alleged enterprise was carried out by others, not Dr. Khounganian. *See* Mot. at 11-12 (citing FAC ¶¶ 30, 41, 50, 51, 403, 73, 101, 124, 133). Uber's own pleading contradicts its contention that Dr. Khounganian is "within the 'chain of command'" and that "without his expertise and decision-making, the scheme would fall apart." Opp. at 48. This false assertion stands in direct conflict with repeated allegations in its FAC that there were "various medical providers involved," FAC ¶ 7; that "the firm often refers the client to different preferred providers," *id.* ¶ 30; and that "[t]he law firms also direct patients to a range of other medical providers, including physical therapists, chiropractors, acupuncturists, pain management physicians, and surgeons." *Id.* ¶ 50. Uber cannot logically scapegoat Dr. Khounganian as the purported linchpin of an operation that apparently simultaneously involved an interchangeable cast of other, non-culpable medical providers. *See In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013) ("Plaintiffs' allegations do not establish that WellPoint was 'vital' to

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

the alleged scheme" because it "was just one of many insurers upon which Ingenix relied to receive data.").

In fact, Uber's newfound characterization of Dr. Khounganian's "expertise and decision-making" role in the purported enterprise inverts the FAC, which alleges "Khounganian and Valley Orthopedic [] treated the patients *at the lawyers' direction*," and that the law firms "*authorize* and *direct* diagnostic tests and treatments to be performed." FAC ¶¶ 41, 403 (emphasis added). Unsurprisingly, Uber's opposition itself undercuts the notion of Dr. Khounganian's "expertise and decision-making" role. *See* Opp. at 45 ("Rather than refer patients to a doctor who will exercise independent medical judgment, the Law Firm Defendants steer clients with high-limit insurance policies to Khounganian and direct him to provide specific, medically unnecessary treatments and surgeries.").

At bottom, the allegations concerning Dr. Khounganian are confined to activities—"accepting referrals, producing fraudulent documents for use in the litigation, and producing fraudulent lien bills"—that fall well short of the managerial or operational control that RICO requires. Opp. at 48. The law does not deem it sufficient for Uber to merely allege Dr. Khounganian produced supposedly fraudulent documents "with the knowledge and intention that the Law Firm Defendants" would use them in personal injury litigation. *Id*.; *see also WellPoint*, 2013 WL 12130034, at *12 ("[T]hat WellPoint submitted false data … did not show that WellPoint controlled the other members of the associated-in-fact enterprise, but only established that WellPoint was acting on its own by submitting data."). Uber's claims thus fail on this point as well.

        4.    <u>The FAC Does Not Plausibly Allege That Any RICO Enterprise Affected Interstate Commerce</u>

Uber's gesture to Defendants' use of phones, email, and the internet (plus a single instance of interstate travel) does not give rise to a sufficient nexus to interstate commerce that can satisfy RICO. Opp. at 69-70. Tellingly, Uber relies

24

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

predominantly on out-of-state cases, while ignoring the clear guidance of *Lopez v. Cher Koon Teo*, 2010 WL 11515370, at *5 (C.D. Cal. Feb. 24, 2010), which held that generic allegations of "instrumentalities of interstate commerce, such as telephone, e-mail, and international travel" are insufficient.  *See also Villarroel v. Recology Inc.*, 2025 WL 2294908, at *4 (N.D. Cal. Aug. 8, 2025).

Uber mistakenly relies on *United States v. Juvenile Male*, 118 F.3d 1344, 1349 (9th Cir. 1997) to argue its status as "a business with nationwide operations" suffices.  Opp. at 70.  The reasoning of *Juvenile Male*, however, was based on the fact that a specific store was part of a franchise system that sent a portion of its profits to its "out-of-state headquarters," as well as the fact that "defendants allegedly stole … sandwiches and chips, many of whose ingredients were purchased from out-of-state suppliers."  118 F.3d at 1349.  In contrast here, Uber is a California-based company headquartered in San Francisco, and its FAC is otherwise devoid of any additional allegations that would establish the requisite effect on interstate commerce.  *See Belczak v. Shute*, 2009 WL 10674167, at *2 (C.D. Cal. June 29, 2009) (distinguishing *Juvenile Male* on the same grounds).

### D.    Uber Has Not Suffered Any Cognizable RICO Injury Proximately Caused By Defendants' Conduct

Uber's opposition brief confirms yet another defect in its RICO claims: a failure to show "(1) that [its] alleged harm qualifies as injury to [its] business or property; and (2) that [its] harm was by reason of the RICO violation, which requires … proximate causation[.]" *Canyon Cnty v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

#### 1.    Litigation Expenses Are Not Compensable Under RICO

Uber's attempt to shoehorn litigation expenses as a qualifying injury wrongly relies on the carefully phrased premise that "the Ninth Circuit has not yet squarely addressed [the] issue" of whether litigation-related expenses are cognizable under RICO.  Opp. at 61-62.  But Uber ignores the Ninth Circuit's discussion of this very

25

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

issue in *Thomas v. Baca*, 308 Fed. App'x 87, 88 (9th Cir. 2009), where the Court expressly declined to recognize "the incurment of legal fees as an injury cognizable under RICO." Since then, with few exceptions, courts throughout the Ninth Circuit have regularly followed this guidance. *See, e.g.*, *Ogden v. Wells Fargo Bank, N.A.*, 2015 WL 13413390, at *2 (C.D. Cal Feb. 20, 2015) ("The Ninth Circuit has generally refused to recognize legal fees as a valid injury to a business or property under RICO."); *see also* Mot. at 26-27. While Uber nitpicks immaterial facts and points the Court to out-of-circuit cases, it cannot avoid the inescapable reality that the weight of authority in this circuit rejects Uber's theory of injury.

2. <u>Defendants Did Not Proximately Cause Uber's Litigation Costs or Settlement Payments</u>

Uber, in any event, is unable to show that Defendants' alleged conduct "led directly" to the purported injury of legal fees or settlement costs. *Anza v. Ideal Supply Corp.*, 547 U.S. 451, 461 (2006). As to fees Uber "was forced [] to incur" to "investigate and defend" against the supposedly "false and inflated claims," FAC ¶ 362, Uber has failed to allege "what damages are attributable to Defendants' alleged RICO violation, as opposed to factors other than, and independent of, Defendants' alleged misrepresentations." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1251 (9th Cir. 2019). According to Uber, for example, "had Khounganian not provided a false diagnosis, false causation testimony, and performed a medically unnecessary cervical fusion surgery on Claimant A, Uber alleges that case would have been resolved much more quickly and at less overall expense." Opp. at 65 (citing FAC ¶¶ 57-66). But the FAC admits Claimant A actually sustained an injury, "myalgia (muscle pain)," from an actual Uber accident. FAC ¶ 58. Regardless of the quantum of injury, Uber would have had to incur legal fees to respond to the claim, review the medical reports and resulting bills, and defend against the action.

Uber's allegations of inflated settlement payments are similarly undermined

26

LARSON
LOS ANGELES

by its own pleading.  The FAC contends Uber learned of the purported misrepresentations through "independent medical evaluations" before settling the underlying actions.[5]  *See* FAC ¶¶ 70, 119, 172, 183, 197, 221, 299, 338 (describing independent medical evaluations for various claimants); *id.* ¶¶ 32 n. 2, 210, 217, 322, 349 (explaining that it deposed numerous claimants); *id.* ¶ 200 (describing a "forensic billing review" of Dr. Khounganian's medical bills).  The two proffered categories of Uber's injury are therefore self-defeating.  If Uber did in fact incur expenses to investigate and uncover the alleged fraud, this would negate any purported settlement inflation that can be proximately tied to Dr. Khounganian.

Uber also cannot overcome the fact that "there are more direct victims of the alleged wrongful conduct."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002).  Despite conceding its alleged damages would be covered under its insurance policy, Uber now argues that it has still suffered a cognizable RICO injury because it could *theoretically* be subject to a "deductible, coinsurance, self-insured retention, or other cost-sharing."  Opp. at 59.  But the FAC contains no such allegation.  Uber's reference to the collateral source rule, meanwhile, misses the fundamental point that Uber's insurer is the more direct victim of Defendants' alleged conduct.  Uber simply claims it "is the most obvious and 'direct' victim of Defendants' alleged racketeering scheme," but fails to explain this illogical *ipse dixit*.  *Id.* at 64.  Any deductible, coinsurance, or other cost-sharing amount would be plainly incidental to the primary harm sustained by its insurer.

Uber likewise cannot resolve the immense difficulties inherent in "ascertain[ing] the amount of [its] damages attributable to [] defendant[s'] wrongful conduct," as opposed to the conduct of various unnamed parties.  *Mendoza*, 301

---

[5] Significantly, the "independent medical evaluations" Uber frequently describes in the FAC are conducted during the course of litigation by a physician of Uber's own choosing.  *See, e.g.*, *Pratt v. Union Pac. R.R. Co.*, 168 Cal. App. 4th 165, 181 (2008) ("[T]he choice of the examining physician generally belongs to the defendant.").

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

LARSON
LOS ANGELES

F.3d at 1169.  While Uber confidently asserts "the damages Uber sustained can be identified and attributed to each underlying personal injury claim," this rote oversimplification ignores the undeniable complexity of such a task.  Opp at 64-65.  The FAC alleges "[t]he law firms [] direct[ed] patients to a range of other medical providers, including physical therapists, chiropractors, acupuncturists, pain management physicians, and surgeons," some of whom were supposedly in on the scheme while others were not.  FAC ¶ 50.  The Court would thus have to parse provider-by-provider across each claimant to determine whether and to what extent Dr. Khounganian's conduct can be traced to a particular incremental increase in a fee amount.  This impracticable task underscores the absence of the direct causal link that the law requires to assert a RICO claim.

### E.    *Simon & Simon* Does Not Alter the RICO Analysis

Key factual and legal differences underpinning every step of the Eastern District of Pennsylvania's RICO analysis render it wholly inapplicable here.

Any finding as to the alleged predicate acts of mail and wire fraud is necessarily a fact-specific inquiry, and the mechanics of the alleged scheme in *Simon & Simon* differ markedly from those alleged here.  *See generally* 2026 WL 1284178, at *2-4.  First, the purported scheme involved "a conveyor belt" of numerous named medical providers whose treatment "followed a consistent sequence."  *Id.* *2.  The records prepared "use[d] cut-and-pasted boilerplate statements and verbatim recitations."  *Id.*  Logs showed treatment records being signed within minutes or before the appointment was even scheduled to occur.  *Id.*  Here, by contrast, Dr. Khounganian's treatment of each of the 18 claimants, even as alleged, varied widely—in at least half, no surgery at all was performed.  Other medical professionals who treated the claimants' injuries are not alleged to be involved in the fraud scheme.  And there are no allegations specifying cut-and-paste records or that treatments were not performed.  Second, that case did not involve lien-based healthcare, which is the heart of Uber's fraud theory here.  Instead,

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

lawyers compensated medical professionals on a "flat fee, per-procedure basis." *Id.* Third, in *Simon & Simon*, Uber advanced numerous allegations of the lawyers controlling nearly every aspect of the claimants' treatment. *See id.* at * 2-4; *see also id.* * 18 ("[Uber] alleges the lawyers 'orchestrated and directed' the doctors to generate the false records . . . ."). Here, Uber can only identify a single email from DTLA Law to Dr. Khounganian "asking that Claimant K be scheduled for an appointment 'ASAP' and listing the type of case as 'Passenger v. Uber Driver.'" Opp. at 47 (quoting FAC ¶ 226).

With respect to establishing the existence of a RICO enterprise, the court never once addressed whether the defendants participated in the "operation or management of the enterprise," a requirement that Uber cannot satisfy here. *Reves*, 507 U.S. at 183. The court also found that, for the purpose of satisfying the common purpose requirement for an association-in-fact enterprise, Uber had alleged more than a routine business relationship among the defendants because of the "repeated coordination" among the participants and the "standardized reporting practices." *Simon & Simon*, 2026 WL 1284178, at *22. But *Simon & Simon*'s "conveyor belt" allegations have no analogue here. As discussed in the opening papers, the FAC alleges nothing more than a standard referral relationship where the Law Firm Defendants refer personal injury claimants to Dr. Khounganian for treatment. Mot. at 8-11. There is only a single factual allegation of scheduling coordination, and Dr. Khounganian treated each claimant's injuries differently.

Even the RICO injury element differs between the Ninth Circuit and Third Circuit, which recognizes the incurment of legal fees as a cognizable injury. *Compare Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) ("[T]he payment of legal fees can be actionable injuries under RICO."); *with Thomas v. Baca*, 308 Fed. App'x 87, 88 (9th Cir. 2009) (declining to so recognize).

As Uber repeats its unlawful playbook from jurisdiction to jurisdiction, different facts and legal frameworks necessarily mean the outcomes may diverge.

LARSON
LOS ANGELES

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

That it overcame a motion under a different standard and facts has no bearing here.

### F.  Dr. Khounganian and Valley Orthopedic Are In Privity As Alleged "Co-Conspirators" with the Law Firm Defendants

Uber's attempt to negate Dr. Khounganian and Valley Orthopedic's incorporation of the other Defendants' arguments relies on a faulty contention that the parties are "obviously [] not in privity."  Opp. at 27.  This position was rejected in *Delta Aliraq, Inc. v. Martin*, 2017 WL 11615775, at *10  (C.D. Cal. Aug. 4, 2017), where the court applied claim preclusion based on derivative co-conspirator liability to bar a RICO claim against a defendant who was not a party to the prior action.  The court explained that "mutuality is 'not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability' of the defendant sued in the prior suit."  *Id.* (citing *Bernard v. Bank of America*, 19 Cal. 2d 807, 812 (1942)).  "As such, co-conspirators are in privity when their liability is 'derivative,' i.e., liability is imposed on one person for the direct acts of another."  *Id.* (citation omitted).  Because Uber is pursuing co-conspirator liability here against Dr. Khounganian and Valley Orthopedic, the claim preclusion that protects Law Firm Defendants is imputed as a matter of law.

The *Delta Aliraq* court additionally deemed the privity requirement satisfied because the "[p]laintiff's RICO claim, as alleged, relie[d] on an agency relationship between" the two defendants.  *Id.* at *11 ("[T]he Court must infer that Martin either controlled Weisman or acted as the racketeering enterprise's employee. These are precisely the types of relationships where privity is found and res judicata applies.").  The FAC alleges that Dr. Khounganian and Valley Orthopedic acted at the direction of the Law Firm Defendants.  As such, the defenses invoked by the Law Firm Defendants are applicable to Dr. Khounganian and Valley Orthopedic as well.

### III.  CONCLUSION

For these reasons, Uber's claims against Dr. Khounganian and Valley Orthopedic should be dismissed with prejudice.

LARSON
LOS ANGELES

30

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated:  May 20, 2026          LARSON LLP


                              By:    _/s/ John S. Lee_____
                                     John S. Lee
                                     Amelia L.B. Sargent
                                     Benjamin Falstein
                              Attorneys for Defendant GREG
                              KHOUNGANIAN and VALLEY
                              ORTHOPEDIC AND SPINE CENTER D/B/A
                              GSK SPINE

DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Greg Khounganian certifies that this brief contains 30 pages, which complies with the page limit set forth in the Court's January 6, 2026 Order Granting Joint Stipulation To Set Page Limits for Briefs Related to Motions to Dismiss. Dkt. 85 at 2.

Dated:  May 20, 2026                    LARSON LLP

                                        By:    /s/ John S. Lee
                                               Stephen G. Larson
                                               John S. Lee
                                               Amelia L.B. Sargent
                                               Benjamin Falstein
                                        Attorneys for Defendants Greg Khounganian
                                        and Valley Orthopedic and Spine Center

LARSON
LOS ANGELES

32
DEFENDANTS GREG KHOUNGANIAN AND VALLEY ORTHOPEDIC AND SPINE CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT