John C. Hueston
jhueston@hueston.com
Marshall A. Camp
mcamp@hueston.com
Bram M. Alden
balden@hueston.com
Stewart J. Rickert
srickert@hueston.com
HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile: (888) 866-4825

*Attorneys for Defendants Jacob Emrani and The Law Offices of Jacob Emrani*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UBER TECHNOLOGIES, INC.,

Plaintiff,

v.

DOWNTOWN LA LAW GROUP, IGOR FRADKIN, THE LAW OFFICES OF JACOB EMRANI, JACOB EMRANI, VALLEY ORTHOPEDIC AND SPINE CENTER D/B/A GSK SPINE, and GREG KHOUNGANIAN,

Defendants.

Case No. 2:25-cv-06612-SPG-PD

**JACOB EMRANI'S AND THE LAW OFFICE OF JACOB EMRANI'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) AND A STAY PENDING APPEAL; MEMORANDUM OF POINTS**

[Filed concurrently with Request for Judicial Notice and/or Incorporation by Reference]

Hearing Date: September 9, 2026
Time: 1:30 p.m.
Courtroom: 5C
Judge: Hon. Sherilyn Peace Garnett

**TO THE COURT, PARTIES, AND THEIR RESPECTIVE COUNSEL:**

PLEASE TAKE NOTICE THAT on September 9, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Sherilyn Peace Garnett, Defendants Jacob Emrani and The Law Offices of Jacob Emrani (the "Emrani Defendants"), by and through their counsel, will and hereby do move the Court for the following relief: (1) reconsideration, under Federal Rule of Civil Procedure 54(b) and Local Rule 7-18, of two discrete aspects of the Court's July 23, 2026 Order (ECF No. 134 (the "Order")), and dismissal of Plaintiff Uber Technologies, Inc.'s claims against the Emrani Defendants; or, in the alternative, (2) an order amending the July 23, 2026 Order to certify it for interlocutory appeal under 28 U.S.C. § 1292(b) on the single *Noerr-Pennington* question stated in the accompanying memorandum, and (3) a stay of all further proceedings in this Court pending resolution of that appeal.

This motion is based on this notice and motion; the attached memorandum; the concurrently filed Request for Judicial Notice and/or Incorporation by Reference and Exhibits 1-6 thereto; all pleadings and papers in this action; and such further argument and evidence as may be presented at or before the hearing on this motion.

Prior to this filing, counsel for the Emrani Defendants communicated the substance of this motion to counsel for Uber, proposed to meet and confer, and solicited Uber's position. Uber responded that it opposes this motion.

Dated: August 7, 2026

HUESTON HENNIGAN LLP

By: ______________________________
John C. Hueston
Marshall A. Camp
Bram M. Alden
Stewart J. Rickert

*Attorneys for Defendants Jacob Emrani and The Law Offices of Jacob Emrani*

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. The Court Should Reconsider Its Order and Dismiss the First Amended Complaint Against the Emrani Defendants ..... 3

1. The Court Should Reconsider Its Ruling That Uber Adequately Alleged Intentional Misrepresentations to a Court ..... 3

2. The Court Should Reconsider Its Sua Sponte Rejection of the Settlement Agreement Defense That Uber Never Opposed ..... 8

B. In the Alternative, the Court Should Certify Its *Noerr-Pennington* Ruling for Appeal and Stay This Case Until the Appeal Is Resolved ..... 10

1. The Court Should Certify an Interlocutory Appeal ..... 10

2. The Court Should Stay Further Proceedings Pending Appeal ..... 13

III. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ........ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*City of Los Angeles, Harbor Div. v. Santa Monica BayKeeper*,
254 F.3d 882 (9th Cir. 2001) ........ 3

*Clark v. Sweeney*,
607 U.S. 7 (2025) ........ 5

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ........ 13, 14

*First Nat. Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) ........ 12

*Ford Motor Co. v. Knight Law Grp.*,
2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) ........ 12

*Ford Motor Co. v. Mikhov*,
2026 WL 691879 (C.D. Cal. Mar. 10, 2026) ........ 12

*Garamendi v. Exec. Life Ins. Co.*,
17 Cal. App. 4th 504 (1993) ........ 8

*Ghazali v. Moran*,
46 F.3d 52 (9th Cir. 1995) ........ 2, 9

*Greenlaw v. United States*,
554 U.S. 237 (2008) ........ 5

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ........ 10, 11

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998) ........ 1, 4, 6, 12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 13

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
146 S.Ct. 1285 (2026) .......... 1, 2, 4, 9

*Optimum Prods. v. Home Box Off.*,
2019 WL 13464057 (C.D. Cal. Nov. 7, 2019) .......... 13

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......... 11, 12

*Relevant Grp., LLC v. Nourmand*,
116 F.4th 917 (9th Cir. 2024) .......... 12

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .......... 11, 12

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) .......... 5

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) .......... 9

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*,
31 F.3d 800 (9th Cir. 1994) .......... 8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 6

*Wilson v. Craver*,
994 F.3d 1085 (9th Cir. 2021) .......... 8

**Statutes**

28 U.S.C. § 1292(b) .......... 1, 2, 10, 11, 12, 13, 14

**Rules**

Federal Rule of Civil Procedure 54(b) .......... 3

C.D. Cal. Local Rule 7-12 .......... 10

C.D. Cal. Local Rule 7-18 .......... 3, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This is a deliberately narrow motion. The Emrani Defendants seek reconsideration of just two discrete points in the Court's July 23, 2026 Order, ECF No. 134 (the "Order"), or, in the alternative, certification of a single, case-dispositive legal question for interlocutory appeal under 28 U.S.C. § 1292(b), together with a stay of further proceedings. The motion does not relitigate the parties' briefing. It addresses rulings that rest on rationales appearing for the first time in the Order—rationales that Uber itself never advanced.

Some context frames both points. Uber is one of the largest companies in the world, with effectively limitless litigation resources. Defendants' motions to dismiss were first filed in November 2025 in response to Uber's original complaint, *see* ECF No. 65, and they were refiled in January 2026, with the same core arguments, in response to the First Amended Complaint. *See* ECF No. 77 ("FAC"); ECF No. 87 ("MTD"). Uber did not file its consolidated opposition—a 76-page brief—until March 23, 2026. ECF No. 105 ("MTD Opp."). Uber thus had ample time, space, and resources to develop every argument it wished to make. And under the principle of party presentation, Uber was required to actually make any argument it desired to advance. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S.Ct. 1285, 1288 (2026). Because "courts are essentially passive instruments of government" that "rely on the parties to frame the issues for decision," "points not argued will not be considered." *Id.* (quotation marks omitted). On two points that the Court should reconsider, the Order relieved Uber of the consequences of its own litigation choices.

*First*, the Court should reconsider one narrow component of its sham-litigation ruling: the conclusion that Uber satisfied the requirement of demonstrating a "'knowing fraud upon, or [] intentional misrepresentations to, *the court*.'" Order at 48 (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)). Uber bore the burden to establish the requirement of a misrepresentation to the court and

did not even attempt to carry it. It argued, instead, that the sham litigation exception is *not* limited to "in-court misrepresentations" and can be satisfied by "fraudulent discovery conduct." MTD Opp. at 23. In relieving Uber of its burden to identify any misrepresentation to any court, the Order reasoned that the Emrani Defendants made false statements in state-court complaints. Order at 48. The Emrani Defendants had no occasion to address that reasoning or submit the judicially noticeable complaints pertaining to it because Uber never advanced the argument. Accordingly, the Court should consider the underlying complaints themselves, for which the Emrani Defendants now seek judicial notice or incorporation by reference. Those complaints are form documents containing no representations about the extent of any Claimant's injuries or medical bills. Because a misrepresentation to a court is required, and Uber has identified none, the sham litigation exception cannot apply.

*Second*, the Court should reconsider its resolution of the Emrani Defendants' independent argument that Uber's settlement agreements bar this suit. As the Order recognizes, Uber never addressed that argument at all. Order at 56 n.5. The Court nevertheless proceeded to construct, and then sustain, contract-interpretation arguments in Uber's favor. *Ghazali v. Moran*—the decision the Order cites—does not authorize that course: it holds only that a litigant's failure to comply with the local rules "is a proper ground for dismissal" and that a district court acts within its discretion in dismissing on that basis. 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam). That the Court may overlook a violation of the local rules does not overcome the party-presentation principle. *See Margolin*, 146 S.Ct. at 1288. On the record the parties actually presented, the Emrani Defendants' argument regarding the underlying settlement agreements stood unopposed and should have been granted.

If the Court declines to reconsider its decision, the Emrani Defendants respectfully request certification to permit an interlocutory appeal of a single, narrow question under 28 U.S.C. § 1292(b): whether the sham litigation exception may apply where the underlying lawsuits arose from real accidents involving real victims that

were concededly not objectively baseless and the only alleged fraud concerns the extent of the victims' injuries and medical expenses. No Ninth Circuit decision has assessed application of the sham litigation exception in those circumstances. The question is purely legal, it remains undeveloped and undecided by precedent, and its resolution in the Emrani Defendants' favor would terminate this litigation. And because the very purpose of the *Noerr-Pennington* doctrine is to protect petitioning from the chilling effect of prolonged and costly litigation, relegating the Emrani Defendants to a post-trial appeal would negate the doctrine's benefits even if that appeal ultimately were to succeed. The Emrani Defendants do not lightly request certification. This is the rare case that warrants it—and a stay of further proceedings pending its resolution.

## II. ARGUMENT

### A. The Court Should Reconsider Its Order and Dismiss the First Amended Complaint Against the Emrani Defendants

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," and Rule 54(b) confirms that any order "may be revised at any time" until final judgment. *City of Los Angeles, Harbor Div. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis omitted); Fed. R. Civ. P. 54(b). Local Rule 7-18 permits reconsideration upon, *inter alia*, an unforeseeable material difference in fact or law or a manifest showing of a failure to consider material facts presented to the Court. L.R. 7-18(a), (c). This motion is timely, filed within fourteen days of the Order. L.R. 7-18. And it does not repeat any prior argument; it responds only to points that appear for the first time in the Order after Uber failed to advance them. *See id.*

#### 1. The Court Should Reconsider Its Ruling That Uber Adequately Alleged Intentional Misrepresentations to a Court

The Order resolves a governing legal question in the Emrani Defendants' favor, holding that the third sham litigation circumstance "must be premised on

'knowing fraud upon, or [] intentional misrepresentations to, *the court*.'" Order at 48 (quoting *Kottle*, 146 F.3d at 1060). That conclusion—which the Emrani Defendants briefed after Uber invoked the sham litigation exception, Dkt. 114 ("MTD Reply") at 4, 16, and which Defendant Greg Khounganian (whose arguments the Emrani Defendants joined, MTD 14 n.2) advanced even before Uber's opposition, *see* Dkt. 96 at 37-38—flows directly from controlling precedent, as the Court noted. Order at 48 (quoting *Kottle*).[1] Applying the rule from *Kottle*, the Order concluded that Uber "has plausibly alleged that Defendants made intentional misrepresentations to the courts" because, "[w]hile much of the FAC focuses on misrepresentations made in demand letters, Plaintiff also alleges that Defendants repeated these false statements in complaints and other documents formally filed before the courts." Order at 48 (citing FAC ¶¶ 37, 46, 48).

Three independent problems warrant reconsideration of that conclusion.

1. Uber never argued that the underlying complaints contained the alleged misrepresentations—and under the party-presentation principle, that should have ended the matter. Rather than attempt to satisfy the requirement of a misrepresentation to a court, Uber contended that the requirement does not exist: no case, Uber insisted, "limit[s]" the exception "to in-court misrepresentations," "[n]or would it make any sense" to do so. MTD Opp. at 23. Uber's affirmative theory located the misrepresentations elsewhere—in medical records, billing records, lien agreements, and demand letters on which Uber claims to have relied "in making settlement determinations." MTD Opp. at 19-20. Nowhere in 76 pages did Uber contend that any complaint contained a misrepresentation, and it identified none.

That choice matters. Courts "rely on the parties to frame the issues for decision," and abide by a simple rule: "points not argued will not be considered." *Margolin*, 146 S.Ct. at 1288 (quotation marks omitted). Bound by the party-

[1] The MTD also cited *Kottle* in two places, including in discussing the sham litigation exception. MTD at 14, 18.

presentation principle, courts may not grant relief on a claim the plaintiff fails to assert. *Clark v. Sweeney*, 607 U.S. 7, 9 (2025). "This rule avoids the potential for prejudice to parties who might otherwise find themselves losing a case on the basis of an argument to which they had no chance to respond." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1055 (9th Cir. 2025) (quotation marks omitted). And district courts err by failing to apply the rule. *Id.* at 1054-55.

This case was a particularly unworthy candidate for judicial supplementation of the arguments actually presented. Uber is a sophisticated litigant with vast resources. *Cf. Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights."). Pursuant to this Court's stipulated order, Uber was allowed to file an opposition brief of up to *131 pages*. ECF 85 at 2 ¶ 5 (permitting omnibus opposition up to combined length of all Defendants' opening briefs); *see* ECF 87 (46 pages); ECF 93 (23 pages); ECF 94 (24 pages); ECF 96 (38 pages). And it had over four months to do so—the initial motions to dismiss on *Noerr-Pennington* grounds were filed in November 2025, *see* ECF 65; Uber did not file its opposition until March 2026, MTD Opp. When it invoked the sham litigation exception to *Noerr-Pennington*, Uber made a deliberate strategic choice to contest the legal rule rather than to claim compliance with it. Having correctly rejected Uber's legal position, the Court should have held Uber to the case it presented rather than supplying the factual theory Uber bypassed.

2. The paragraphs of the FAC that the Court cited, Order at 48 (citing FAC ¶¶ 37, 46, 48), do not allege a single specific misrepresentation in any filed complaint. Paragraph 37 alleges, in full, that "Fradkin and Emrani direct the employees of their respective firms to send Uber demand letters and file complaints in court that seek damages based on these fraudulent and misleading medical bills." FAC ¶ 37. Paragraphs 46 and 48 add only that each firm's "typical practice is to send

demand letters and complaints citing the full Charge amount." *Id.* ¶¶ 46, 48. That is all. No paragraph of the 129-page FAC identifies a complaint that contained a misrepresentation, the statement alleged to have been false, the claimant or case at issue, the court in which it was filed, or when. The FAC's predicate-act allegations confirm the omission: as to the purported fraud in filed complaints, Uber alleges only that Emrani's firm "effected service of [a Claimant's] fraudulent complaint and related papers on Uber." FAC ¶¶ 387(c), 388(a), 389(c), 390(a), 391(b). "Fraudulent" is a label, not a fact, and "mere conclusory statements[] do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

These allegations would fail under any standard, but two heightened standards govern here. RICO predicate acts sounding in fraud must be pleaded with Rule 9(b) particularity—"the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks omitted). And where, as here, a plaintiff seeks to strip petitioning activity of First Amendment protection through the sham exception, the Ninth Circuit demands "more specific allegations than would otherwise be required," because "the mere pendency of the action will chill the exercise of First Amendment rights." *Kottle*, 146 F.3d at 1063 (citation omitted). *Kottle* applied this heightened standard specifically to "the third of the sham exception possibilities," explaining that the standard "would have no force" if a party could satisfy it simply by recasting the underlying litigation as built on "misrepresentations." 146 F.3d at 1063. Yet that is precisely what Uber's bare characterization of the complaints as "fraudulent" does.

The contrast with the FAC's demand-letter allegations is telling. When Uber wanted to plead a specific misrepresentation, it knew how: it alleged, for example, that on December 28, 2020, Emrani's firm sent Uber's insurer a demand letter representing that Claimant B "suffered from numerous spinal injuries and would need to undergo future cervical fusion surgery." FAC ¶ 75; *see* Order at 47. The FAC contains nothing comparable for any complaint. And whatever the demand-letter

allegations may show, demand letters are not filed with courts. The Order's holding rests on statements in documents "formally filed before the courts," Order at 48, but as to those documents, the FAC offers labels and nothing more.

3. Uber's silence is no accident, because the underlying complaints refute the theory. The six complaints filed by the seven Emrani Claimants' are attached as Exhibits 1-6 to the Request for Judicial Notice and/or Incorporation by Reference ("RJN") filed herewith. Like the settlement agreements as to which the Court already took notice, the complaints are court records that form the basis of Uber's claims and are incorporated by reference into the FAC. *See* Order at 42. Considering the complaints now is a matter of simple parity: because Uber invoked the sham litigation exception without pointing to the complaints themselves as the source of the alleged misrepresentations, the Emrani Defendants could not have foreseen their materiality to the defense until the Court relied upon them sua sponte. *See* L.R. 7-18(a).

Every one of the complaints is a Judicial Council form complaint. RJN Exs. 1-6. Each checks the form's preprinted boxes for categories of damages, and each recites the same boilerplate: that the plaintiff was "hurt and injured in his [or her or their] health, strength and activities, sustaining injuries and damage[s] to his [or her or their] body and nervous system." Exs. 1-6 § 11 Each seeks compensatory damages "according to proof." Exs. 1-6 § 14. None states the nature or extent of any injury. None identifies any medical treatment, provider, bill, or dollar amount. None says a word about surgery, severity, diagnosis, or future care. There is, in short, nothing in these complaints that could constitute a misrepresentation about "the existence and severity of the Claimants' injuries," Order at 49, because there is nothing in them about the existence or severity of injuries at all.

Claimant B illustrates the point. She is the Order's principal Emrani example: the Order recounts that she "denied any injuries" at the scene, yet "18 months after the accident, the Emrani Firm sent a demand letter indicating that Claimant B suffered from numerous spinal injuries and would need to undergo cervical fusion

surgery." Order at 47 (citing FAC ¶¶ 72, 74-75). Every alleged misrepresentation in that account resides in a demand letter or medical records. Her form complaint contains none of it. The complaint alleges negligence, checks the preprinted damages boxes, and prays for damages according to proof—no spinal injuries, no cervical fusion, no medical expenses, no amounts. RJN Ex. 2. The same is true of each of the other five complaints. RJN Exs. 1, 3-6. Because the Court is "not required to accept as true allegations that contradict matters properly subject to judicial notice," *Wilson v. Craver*, 994 F.3d 1085, 1095 n.8 (9th Cir. 2021) (quotation marks omitted), Uber's conclusory characterization of the complaints as "fraudulent" cannot sustain the finding that misrepresentations were made "directly in court," Order at 48.

* * *

Based on any one of these reasons—or all three—the Court should reconsider its ruling and hold, instead, that Uber did not "sustain its burden of showing that the [Emrani Defendants'] conduct falls within the sham exception to the *Noerr-Pennington* doctrine." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). The Court should therefore dismiss the claims against the Emrani Defendants.

2. <u>The Court Should Reconsider Its Sua Sponte Rejection of the Settlement Agreement Defense That Uber Never Opposed</u>

The Emrani Defendants separately moved to dismiss because Uber's own settlement agreements—contracts Uber drafted to resolve each of the underlying cases—bar this suit. MTD at 23-24 & Exs. A-G; MTD Reply at 18-20. [redacted] Order at 56-57 (quoting agreements); *see also Garamendi v. Exec. Life Ins. Co.*, 17 Cal. App. 4th 504, 518 (1993) [redacted] Uber's omnibus

opposition said nothing in response. As the Court correctly explained, Uber "has not explicitly challenged this portion of the Motion to Dismiss except to argue that the Emrani Defendants improperly rely on federal preclusion law." Order at 56 n.5.

Although Uber's approach left the Emrani Defendants' argument unopposed, the Court itself devised and sustained a merits arguments Uber never made: that the [redacted] Order at 56-57. Whatever the merits of that theory, it is not one to which the Emrani Defendants had any opportunity to respond. And constructing Uber's arguments for it is precisely what the party-presentation principle forbids. Again, "points not argued will not be considered." *Margolin*, 146 S.Ct. at 1288. It is the parties, not the Court, that are "responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020). If any litigant is to be held to that premise, it is Uber—among the best-resourced parties in American courts, represented by able counsel, with months to respond and dozens of pages to spare in its omnibus brief. The "volume of the briefing in this case," Order at 56 n.5, is never a basis to set aside the party-presentation principle, and certainly not when Uber chose to bring suit, pleaded claims that relate to settled cases, and stipulated to the briefing schedule and page limits.

*Ghazali* cannot bear the weight the Court placed on it to conclude otherwise. There, a pro se prisoner failed to file an opposition to a motion to dismiss, as the District of Nevada's local rules required. 46 F.3d at 53. The district court granted the motion on that basis, and the Ninth Circuit affirmed, holding that "[f]ailure to follow a district court's local rules is a proper ground for dismissal" and that the district court did not abuse its discretion in enforcing its rules against the litigant who ignored them. *Id.* at 53-54. *Ghazali* thus addresses when a court may rule *against* a

party that defaulted on its obligations. It says nothing about a court assuming the defaulting party's role and litigating the merits on its behalf. The same is true of Local Rule 7-12, which provides that a failure to file a required document may be deemed consent to ruling in favor of the *non-defaulting* party. The discretion the rule confers is to treat silence as consent, not license to serve as the silent party's advocate.

On the record the parties actually presented, the Court should reconsider its ruling, decline to make Uber's case for it, and grant the Emrani Defendants' motion as unopposed because Uber failed to respond to the argument that the underlying settlement agreements bar this suit.

**B. In the Alternative, the Court Should Certify Its *Noerr-Pennington* Ruling for Appeal and Stay This Case Until the Appeal Is Resolved**

1. <u>The Court Should Certify an Interlocutory Appeal</u>

If the Court does not reconsider its ruling, the Emrani Defendants respectfully request that the Court amend the Order to certify it for interlocutory appeal on one narrow question: whether the sham litigation exception may apply where the underlying lawsuits arose from genuine accidents involving genuine victims, were concededly not objectively baseless, and were voluntarily settled, and the alleged fraud concerns the claimed extent of the victims' injuries and medical expenses. Certification is proper where an order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Emrani Defendants recognize that Section 1292(b) is reserved for "exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). This is that exceptional case.

All three statutory requirements are met.

*The question is controlling, and it is one of law.* A question is "controlling" if its resolution "could materially affect the outcome of litigation in the district court."

*Id.* at 1026. Resolution of the *Noerr-Pennington* question in the Emrani Defendants' favor would not merely affect the outcome; it would end the case. The FAC survived *Noerr-Pennington* solely because the Court found the sham litigation exception adequately pleaded. Order at 51. If the exception cannot apply in these circumstances, the doctrine supplies "immunity" that bars the suit outright. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The question is also purely legal. It would not require the court of appeals to "study the record," *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000), because the predicate facts are fixed by Uber's own litigation positions and by the Order itself: Uber "does not challenge whether the underlying accidents occurred," Order at 47; Uber "does not contend" that the underlying suits were objectively baseless or were serial filings brought without regard to the merits, MTD Opp. 18 n.4; and every underlying case ended in a voluntary settlement, Order at 56-57. What remains is a pure question about the scope of a doctrine of statutory construction rooted in the First Amendment—exactly the kind of question § 1292(b) exists to answer "quickly and cleanly." *See Ahrenholz*, 219 F.3d at 677.

*There is substantial ground for difference of opinion.* That standard is met "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed," and "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions," and appeal may be certified "without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). This question is novel, and jurists have already divided over closely adjacent terrain. No circuit court in the country has applied the sham litigation exception to underlying suits that were concededly non-baseless and arose from real injuries to real people. Whether the exception can extend to genuine lawsuits alleged to have been settled at inflated values is an open question. As the Court knows, the recent decisions in *Ford Motor Co.*, held the exception inapplicable to allegations that lawyers inflated fee amounts

in concededly meritorious cases, resulting in the wrongful payment of "more than $100 million." *Ford Motor Co. v. Mikhov*, 2026 WL 691879, at *1, 10-12 (C.D. Cal. Mar. 10, 2026); *Ford Motor Co. v. Knight Law Grp.*, 2025 WL 3306280, at *2, 9-12 (C.D. Cal. Nov. 24, 2025). Though this Court distinguished *Ford Motor Co.* as different "in both kind and degree," Order at 50, the rejection of the sham exception there at least reflects that fair-minded jurists might disagree as to its application here. The Ninth Circuit has cautioned that courts should not "lightly" strip litigants of "the ordinary protections afforded by the First Amendment" and should instead "overprotect" petitioning activity. *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 934-35 (9th Cir. 2024). Reasonable judges could reach different conclusions about whether the sham litigation exception should overcome First Amendment protections in a case like this one.

*An immediate appeal would materially advance the termination of this litigation.* If the Ninth Circuit holds that the sham litigation exception cannot apply in these circumstances, the case is over. Even short of outright reversal, definitive guidance on the exception's boundaries would frame—or eliminate—what will otherwise be extraordinarily burdensome proceedings: RICO discovery spanning eighteen underlying personal-injury cases, years of medical treatment and billing records, and the files of the lawyers and medical practitioners Uber has sued. Section 1292(b) does not require certainty that the appeal will end the case, "only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. This appeal plainly may.

Finally, the nature of the right at stake makes interlocutory review exceptionally appropriate here. The *Noerr-Pennington* doctrine exists "to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Sosa*, 437 F.3d at 934. And "the mere pendency of [this] action" risks accomplishing the very First Amendment chill *Noerr-Pennington* exists to deter. *Kottle*, 146 F.3d at 1063; *see also First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 785 n.21 (1978) (the "burden and expense of litigating" an issue can "impinge on the exercise of the

constitutional right"); *Optimum Prods. v. Home Box Off.*, 2019 WL 13464057, at *2 (C.D. Cal. Nov. 7, 2019) ("[T]he threat of being put to the defense of a lawsuit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." (ellipsis omitted)). If the Emrani Defendants must litigate this RICO case through discovery and trial before the Ninth Circuit decides whether the suit was ever permissible, the doctrine's protections will have failed even if the eventual appeal succeeds because the costs will already have been inflicted. Other lawyers, too, may be deterred from representing accident victims against Uber lest they suffer the retaliation of a racketeering suit. Again, the Emrani Defendants recognize that certification is the exception, not the rule. But if any case satisfies the standard, it is one in which early appellate resolution of a pure, undecided, and case-dispositive question is necessary to protect First Amendment freedoms.

2. <u>The Court Should Stay Further Proceedings Pending Appeal</u>

Section 1292(b) contemplates that the Court may stay its proceedings pending an interlocutory appeal. 28 U.S.C. § 1292(b) (proceedings are not stayed "unless the district judge or the Court of Appeals . . . shall so order"). The power to stay is also "incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In exercising that discretion, courts weigh "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Every factor favors a stay. The hardship to the Emrani Defendants absent one is the very harm *Noerr-Pennington* exists to prevent: being forced through the full weight of RICO litigation before the court of appeals decides whether this suit may proceed at all. On the other side of the ledger, Uber faces no serious injury from delay: it seeks money damages for settlements its insurers paid years ago, and there

is no ongoing conduct to halt. Any delay in a monetary recovery is not "irreparable damage" or the sort of harm that defeats a stay. *See CMAX*, 300 F.2d at 268-69. And the orderly course of justice strongly favors waiting: this case is at the pleadings, no discovery has been taken, and an appeal could end the litigation or substantially reshape it. Proceeding now would risk squandering the Court's resources and burdening the Emrani Defendants in a case the Ninth Circuit may hold should never have been brought. Accordingly, in connection with its request for certification of a narrow appeal regarding the sham litigation exception to the *Noerr-Pennington* doctrine, the Emrani Defendants also request that the Court stay all further proceedings—including the deadline to answer and all discovery—pending the Ninth Circuit's determination as to whether to accept interlocutory review and, if the petition is granted, resolution of the appeal.

## III. CONCLUSION

For the foregoing reasons, the Emrani Defendants respectfully request that the Court reconsider either of the two discrete rulings addressed above and dismiss Uber's claims against the Emrani Defendants. In the alternative, the Court should amend the Order to certify the question presented for interlocutory appeal under 28 U.S.C. § 1292(b) and stay all further proceedings pending the Ninth Circuit's resolution of any petition for interlocutory review.

Dated: August 7, 2026

HUESTON HENNIGAN LLP

By: ______________________
John C. Hueston
Marshall A. Camp
Bram M. Alden
Stewart J. Rickert

*Attorneys for Defendants Jacob Emrani and The Law Offices of Jacob Emrani*